# *Exhibit 1*

LEVINS001

Page 1

1              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
2
                                )
3    ELAINE LEVINS and WILLIAM   )
     LEVINS, on behalf of        )
4    themselves and others       )
     similarly situated,         )
5                                )
             Plaintiffs,         )
6                                )
        vs                       )DEPOSITION OF:
7                                )DAVID M. FRIEDLANDER
     HEALTHCARE REVENUE RECOVERY )
8    GROUP, LLC d/b/a ARS ACCOUNT )
     RESOLUTION SERVICES, and    )
9    JOHN AND JANE DOES 1 THROUGH )
     25,                         )
10                               )
             Defendants.         )
11                               )
     _____
12
13
14
15
16           TRANSCRIPT of the stenographic notes of
17   the proceedings in the above-entitled matter, as
18   taken by and before KATHLEEN SWENOR, a Registered
19   Professional Reporter, Certified Court Reporter
20   and a Notary Public of the State of New Jersey,
21   held at the offices of MARKS O'NEILL O'BRIEN
22   DOHERTY & KELLY, PC, 535 Route 38 East, Cherry
23   Hill, New Jersey on October 24, 2019, commencing
24   at 10:00 in the morning.
25

Page 2

```
 1   A P P E A R A N C E S:

 2

 3   STERN THOMASSON, LLP
     BY:   PHILLIP D. STERN, ESQ.

 4   150 Morris Avenue, 2nd Floor
     Springfield, New Jersey 07081

 5   973-379-7500
     Phillip@sternthomasson.com

 6   Attorneys for Plaintiffs

 7

 8
     MARKS O'NEILL O'BRIEN DOHERTY & KELLY, PC

 9   BY:   CHRISTIAN SCHEUERMAN, ESQ.
     535 Route 38 East, Suite 501

10   Cherry Hill, New Jersey 08002
     856-663-4300

11   Cscheuerman@moodklaw.com
     Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1                      I N D E X

 2

 3    WITNESS                           PAGE

 4    David Friedlander

 5    BY MR. STERN............................4

 6    BY MR. SCHEUERMAN.....................176

 7    BY MR. STERN..........................179

 8

 9

10                    E X H I B I T S

11    NO.        DESCRIPTION            PAGE

12    D-1, Term definitions..................16

13    D-2, Document Bates-stamped

14    ARS1 through ARS12.....................19

15    D-3, Responses to interrogatories........55

16    D-4, Transcript of message..............139

17    D-5, Court's decision.................166

18

19

20

21

22

23

24

25
```

- David Friedlander -

Page 4

```
 1   DAVID FRIEDLANDER,
 2   having been first duly sworn by the Notary Public,
 3   was examined and testified as follows:
 4   EXAMINATION BY
 5   MR. STERN:
 6        Q.    Mr. Friedlander, can you state your
 7   full name and spell your last name for the record,
 8   please.
 9        A.    Yes.  David M. Friedlander,
10   F-R-I-E-D-L-A-N-D-E-R.
11        Q.    My name is Phillip Stern.  I'm one of
12   the attorneys representing Elaine Levins and
13   William Levins in connection with a lawsuit that
14   they brought against Healthcare Revenue Recovery
15   Group, LLC.
16             Do you have some understanding as to
17   what that lawsuit is about?
18        A.    Yes.
19        Q.    Before we begin there's going to be
20   some instructions I would like to be able to
21   inform you about in terms of the deposition.  At
22   one point in this case Mr. Scheuerman, on behalf
23   of Healthcare Revenue Recovery Group, and I, on
24   behalf of the plaintiffs, agreed that depositions
25   should be held in accordance with -- there's a
```

- David Friedlander -

Page 5

```
 1    court decision from 1993 that outlined some rules
 2    with respect to that.  The case is called Hall
 3    versus Clifton Precision.  So there's some things
 4    that are to be read to inform you at the beginning
 5    of the deposition, so I'm going to do that quoting
 6    from that decision.
 7              Number one, "At the beginning of the
 8    deposition deposing counsel shall instruct the
 9    witness to ask deposing counsel, rather than the
10    witness's own counsel, for clarifications,
11    definitions, or explanations of any words,
12    questions, or documents presented during the
13    course of the deposition.  The witness shall abide
14    by these instructions."
15              Do you understand that instruction?
16         A.    Yes.
17         Q.    Two, "All objections except those which
18    would be waived if not made at the deposition
19    under Federal Rules of Civil Procedure
20    32(d)(3)(b).
21              MR. SCHEUERMAN:  Federal rules of
22         evidence.
23              MR. STERN:  I'm sorry.
24              MR. SCHEUERMAN:  Federal Rules of
25         Evidence.
```

- David Friedlander -

Page 6

```
1              MR. STERN:  What's Federal Rules of
2        Evidence?
3              MR. SCHEUERMAN:  Federal rule 32(d)(b).
4              MR. STERN:  You're saying it's a
5        Federal Rule of Evidence?
6              MR. SCHEUERMAN:  That's what the
7        decision said.
8              MR. STERN:  Mine said Federal Rules of
9        Civil Procedure.  I'm not aware of a Federal
10       Rule of Evidence 32.
11             MR. SCHEUERMAN:  I have a Federal Rule
12       of Evidence right here.
13             MR. STERN:  Federal Rule 329(d)?
14             MR. SCHEUERMAN:  Actually, I'm sorry,
15       no.  You are right.  No, you are right.
16       Federal rules.  You are right.  I'm sorry.
17       Go ahead.  My apologies.
18             MR. STERN:  I'm going to restart.
19   BY MR. STERN:
20       Q.    Paragraph two says, "All objections
21   except those which would be waived if not made at
22   the deposition under Federal Rules of Civil
23   Procedure 32(d)(3)(b), and those necessary to
24   assert a privilege to enforce a limitation on
25   evidence directed by the court or to present a
```

LEVINS007

- David Friedlander -

1   motion pursuant to Federal Rules of Civil

2   Procedure 30(d) shall be preserved; therefore,

3   those objections need not and shall not be made

4   during the course of depositions."

5            Three, "Counsel shall not direct or

6   request that a witness not answer a question

7   unless that counsel has objected to the question

8   on the ground that the answer is protected by a

9   privilege or a limitation on evidence directed by

10  the court."

11           Four, "Counsel shall not make

12  objections or statements which might suggest an

13  answer to a witness.  Counsel statements when

14  making objections should be succinct and verbally

15  economical stating the basis of the objection and

16  nothing more."

17           Five, "Counsel and their witness,

18  clients shall not engage in private off-the-record

19  conferences during the depositions or during

20  breaks or recesses except for the purpose of

21  deciding whether to assert a privilege."

22           Do you understand that, instruction

23  number five?

24       A.    Yes.

25       Q.    Number six, "Any conferences which

- David Friedlander -

Page 8

```
 1    occur pursuant to or in violation of guideline
 2    five are a proper subject for inquiry by deposing
 3    counsel to ascertain whether there has been any
 4    witness coaching and, if so, what."
 5              Seven, "Any conferences which occur
 6    pursuant to or in violation of guideline five
 7    shall be noted on the record by counsel who
 8    participated in the conference.  The purpose and
 9    outcome of the conference shall also be noted on
10    the record.  Deposing counsel shall provide to the
11    witness's counsel a copy of all documents shown to
12    the witness during the deposition.  The copy shall
13    be provided either before the deposition begins or
14    contemporaneously with the showing of each
15    document to the witness.  The witness and
16    witness's counsel do not have the right to discuss
17    documents privately before witness answers
18    questions about them."
19              And number nine, "Depositions shall
20    otherwise be conducted in compliance with the
21    opinions which accompanies this order."
22              I don't expect you will know what
23    number nine is because I have not provided you the
24    opinion to read.
25              With respect to those first eight
```

- David Friedlander -

Page 9

1    instructions, are there any questions you have

2    about them or anything you did not understand?

3        A.    Two I didn't really understand.  If you

4    could go over that and maybe explain that.

5        Q.    Okay.  That talks about objections

6    raised by your counsel and the limitations on what

7    objections can be made.  That direction -- that

8    guideline is really more guided towards what your

9    counsel's behavior is as opposed to you and the

10   answers you must give.

11       A.    Okay.

12       Q.    It has to do with what objections are

13   reserved automatically and what objections must be

14   raised during the deposition in order to be

15   preserved.

16       A.    Okay.  Other than that, I'm okay.

17       Q.    Okay.  Particularly talking about the

18   need to speak with counsel during the course of

19   the deposition, is there -- before we begin the

20   deposition -- let me start over.

21            With regard to the guidelines

22   concerning your ability to confer with counsel

23   once the deposition is underway, you understand

24   it's very limited.  You can only discuss with your

25   counsel any issues as to a privilege that you

- David Friedlander -

Page 10

```
 1    might assert; do you understands that?
 2         A.    Yes.
 3         Q.    So before we begin the deposition,
 4    would you like the opportunity to be able to
 5    confer with your counsel privately?
 6         A.    Before we start?
 7         Q.    Yes.
 8         A.    No, it's not necessary.
 9         Q.    Okay.  But you understand once we start
10    your ability to request a conference with your
11    counsel is limited to issues regarding whether you
12    have a privilege to not provide information?
13         A.    Yes.
14         Q.    Do you understand you are appearing for
15    depositions to answer questions both as to your
16    own personal knowledge of facts and as an
17    authorized representative of Healthcare Revenue
18    Recovery Group, LLC?
19         A.    Yes.
20         Q.    What is your understanding of what this
21    lawsuit is about?
22         A.    The Levins are contending they didn't
23    know who ARS was when they received information
24    about a debt that was owed.
25         Q.    When you say "they received
```

1  information," do you know what information they
2  received?
3      A.   I don't know what information might
4  have made them unclear as to the company that was
5  collecting on behalf of the physicians, so I don't
6  know what it was that led to the unclarity.  I
7  believe it was a phone call that they received.
8      Q.   Did you do anything in preparation for
9  the deposition today?
10     A.   Yes.
11     Q.   What did you do?
12     A.   I reviewed the account information in
13  our account notes; I looked at the document that
14  was presented that had the subjects that would be
15  discussed or questions that might be asked during
16  the deposition; I met with counsel to talk about
17  the facts and what I was being deposed about; and
18  I reviewed the information we had received about
19  the deposition today.
20     Q.   Did you speak with anyone, other than
21  counsel, in preparation for the deposition?
22     A.   No.  Oh, maybe internally with Kim
23  Durr, she is a paralegal.
24     Q.   Spell the last name.
25     A.   D-U-R-R.

- David Friedlander -

1      Q.    She is a paralegal.  For whom is she

2   employed?

3      A.    She is employed by Healthcare Financial

4   Services and TeamHealth.

5      Q.    When you reviewed the account notes,

6   did they reflect phone calls being placed to the

7   Levins?

8      A.    Yes.

9      Q.    From those account notes, were you able

10  to ascertain any information about the content of

11  those phone calls?

12     A.    Yes.

13     Q.    What were you able to ascertain about

14  the content of those phone calls?

15     A.    The time of the phone calls, the dates

16  of the phone calls, and the conversations that

17  took place in highly abbreviated terms.  There

18  could be notes that are entered by an agent.

19     Q.    What do you mean by the word "agent"?

20  I'm referring specifically -- you used the word

21  agent in your last answer.  I'm asking what do you

22  mean by agent?

23     A.    A representative of Healthcare Revenue

24  Recovery Group or ARS.

25     Q.    When you say "representative," are all

- David Friedlander -

Page 13

1    agents employees?

2         A.    Yes.

3         Q.    What's the name of the entity that --

4    actually, withdraw that.

5               You made reference before to a debt

6    which was attempted to be collected from the

7    Levins.  Do you recall making reference to such a

8    debt?

9         A.    Yes.

10        Q.    What's your understanding of what that

11   debt was?

12        A.    Can you clarify the question?

13        Q.    Sure.  What facts do you know about the

14   debt?

15             MR. SCHEUERMAN:  I'm going to -- how is

16        this related to the true name issue?  I'm

17        going to object.

18             MR. STERN:  Are you instructing him not

19        to answer?

20             MR. SCHEUERMAN:  I don't know.  Can you

21        give me a proffer?  Getting into the merits

22        of the debt, how is that relevant to the true

23        name issue?

24             MR. STERN:  I think we had an

25        instruction about what he said, what his

- David Friedlander -

Page 14

1    understanding of what the case is about.  I

2    think it would be easier to talk if we had

3    some understanding as to what the debt is.

4         MR. SCHEUERMAN:  But how is that

5    related to the true name issue, whether

6    HRRG -- it's limited, as the judge said,

7    whether -- you know the two issues, so how is

8    that relevant?

9         MR. STERN:  I just said in order to

10   have a discussion about that we need to have

11   some foundational information so that we are

12   on the same page about what we are talking

13   about.

14        MR. SCHEUERMAN:  About what?  About a

15   debt was owed?

16        MR. STERN:  Not about there was a debt

17   owed but some understanding of what the

18   nature of that debt is.

19        MR. SCHEUERMAN:  How is the nature of

20   the debt relevant to --

21        MR. STERN:  I think it will come out

22   because I think -- have your client leave the

23   room.

24        MR. SCHEUERMAN:  Sure.

25        (Witness leaves the room.)

Page 15

1          MR. STERN:  The position has been taken
2     ARS is an unincorporated subdivision of HRRG.
3          MR. SCHEUERMAN:  Okay.
4          MR. STERN:  I don't know what the
5     basis -- why some medical debts are collected
6     by that subdivision and some medical debts
7     are not collected by that subdivision but are
8     being collected by HRRG.  I think that having
9     some understanding of having him describe
10    what the debt is can lead into that.  I'm
11    saying it's foundational in terms of getting
12    to -- talking about and understanding because
13    what the issue is going to come down to is
14    what HRRG's use of the term is.
15         MR. SCHEUERMAN:  Okay.  That's fine.
16         MR. STERN:  So I need to know when.
17         MR. SCHEUERMAN:  You want to know the
18    distinction to see how it's used by HRRG?
19         MR. STERN:  I don't know if it's -- I
20    haven't gotten there yet.  I don't think I
21    have to approach it in a particular order.  I
22    think that -- but I think this is sort of --
23         MR. SCHEUERMAN:  For that issue, then
24    that's fine.
25         MR. STERN:  Okay.  That's all I want to

- David Friedlander -

Page 16

1          do.  We are not getting into the merits of

2          the debt.

3                    MR. SCHEUERMAN:  Okay.

4                    (Witness returns.)

5    BY MR. STERN:

6          Q.    I'll repeat the question.  The question

7    is, what is your understanding of what the debt is

8    that was allegedly owed by the Levins?

9          A.    It's an obligation to pay money to the

10   physician group that provided, I believe the

11   Levins' daughter, with healthcare services.

12         Q.    HRRG provided the collection services

13   for that physician group; correct?

14         A.    For the company that bills for the

15   physician services.

16                    MR. STERN:  Let's mark this as D-1.

17                    (Exhibit D-1, Term definitions, marked

18         for identification, as of this date.)

19   By MR. STERN:

20         Q.    Mr. Friedlander, I'm showing what has

21   been marked as D-1.  It's a document that I

22   prepared trying to define some terms.  I make

23   reference --

24                    MR. SCHEUERMAN:  I'm going to note this

25         is something that --

- David Friedlander -

1          MR. STERN:  Hold on.  Are you making an

2     objection?

3          MR. SCHEUERMAN:  I object to the form

4     of the document.  This is not something that

5     was ever produced in discovery before today.

6     This is the first time I'm looking at it, and

7     it was prepared by counsel.  So it's not in

8     the discovery record.

9          MR. STERN:  Okay.  Your objection is

10     noted.

11 BY MR. STERN:

12     Q.    So I want to explain it to you, and we

13 can talk about the substance of it, what I did

14 here.  So there's a document that your counsel

15 produced.  The document is marked.  Do you know

16 the term used sometimes as a "Bates stamp"?  Have

17 you ever heard that term?

18     A.    Yes.

19     Q.    And just sort of to cut this, a Bates

20 stamp is a way of paginating documents in a

21 litigation.  It's one of the uses of it by usually

22 having some kind of prefix and digits to follow it

23 that are sequential.  Is your understanding

24 similar or the same?

25     A.    I didn't know in that much detail what

- David Friedlander -

1    a Bates stamp is, but yes.

2         Q.    So I'll represent to you your counsel

3    produced documents that use the ARS prefix, and a

4    document -- a page in those documents called ARS3.

5    And in that document, I'm happy to show it to you

6    if you would like to see it, but -- if you are not

7    familiar with it, but it's a document which

8    identifies, has a field called business name, that

9    I actually, what's on here or shows source.

10             MR. SCHEUERMAN:  I have the documents

11        here.

12             MR. STERN:  No, I'm handling the

13        deposition.  You can't hand him documents in

14        the middle of my examination.

15             MR. SCHEUERMAN:  Okay.

16   BY MR. STERN:

17        Q.    But I have copied and pasted into --

18   under the section called business name the actual

19   portion of that document on ARS3 here.  So I was

20   just using that document referred -- called

21   Healthcare Revenue Recovery Group, LLC, the

22   business name.  I thought it would make sense for

23   purposes of the deposition when we are talking

24   about this because we are talking about names,

25   when we refer to the business name we are talking

- David Friedlander -

1    about Healthcare Revenue Recovery Group, LLC.  Are

2    you okay if we use that term business name as

3    meaning Healthcare Revenue Recovery Group, LLC?

4         A.    Do you have the document that you

5    said --

6         Q.    Yes.

7              MR. STERN:  Mark this as D-2.

8              (Exhibit D-2, Document Bates-stamped

9         ARS1 through ARS12, marked for

10        identification, as of this date.)

11             MR. SCHEUERMAN:  This has a different

12        Bates stamp number compared to the one -- I

13        have Bates stamp numbers on all of them.  I

14        don't know if there's --

15             MR. STERN:  The one that's

16        Bates-stamped including the account notes?

17             MR. SCHEUERMAN:  Yeah.

18             MR. STERN:  I don't know if they

19        were -- I see what happened.

20             MR. SCHEUERMAN:  They are

21        Bates-stamped.

22             MR. STERN:  I guess what happened is

23        when printing those pages that you produced

24        as the account notes were printed in

25        landscape mode and you put it on that way.

- David Friedlander -

```
 1        When they printed out from mine as one PDF,

 2        because we produced electronically as one

 3        PDF, the Bates stamp on those pages of the

 4        account notes did not come out.  I have no

 5        problem if you want -- if you want to use

 6        that.  I don't know if you have extra copies

 7        we can print from that.

 8            MR. SCHEUERMAN:  This is the one I

 9        produced.  I can't -- I haven't gone through

10        and compared it.

11            MR. STERN:  That's fine.

12            THE WITNESS:  I'm okay to use this.

13            MR. STERN:  Let's -- off the record.

14            (Discussion off the record.)

15  BY MR. STERN:

16        Q.    So you have now in front of you D-2.

17  If you turn, you see at the bottom right the first

18  page says ARS01?

19        A.    Yes, I see.

20        Q.    If you go to page 03.

21        A.    Yes.

22        Q.    And you see there's numbered paragraph

23  1?

24        A.    Yes.

25        Q.    And it says business name?
```

Page 21

1      A.     Yep.

2      Q.     That's what was cut and pasted --

3  copied and pasted and put into what I marked as

4  D-1 --

5      A.     Yes.

6      Q.     -- under business name.

7      A.     Yes, I see.

8      Q.     While we are on ARS03, do you know what

9  ARS03 is?

10     A.     It's a photocopy of something from the

11  State of New Jersey.

12     Q.     Okay.  To your knowledge, is the

13  business name which is shown on D-1, specifically

14  Healthcare Revenue Recovery Group, LLC, is that

15  the name of the entity which was collecting the

16  debt from the Levins?

17     A.     Yes.

18     Q.     To your knowledge, is that the legal

19  name of the entity?

20          MR. SCHEUERMAN:  Objection to form.

21      Calls for legal conclusion.  But you can

22      answer.

23     A.     I believe it is.

24     Q.     Do you have some understanding as to

25  what a limited liability company is?

- David Friedlander -

1      A.    Yes.

2      Q.    Are you a member of Healthcare Revenue

3  Recovery Group, LLC?

4      A.    No.

5      Q.    Do you know who the members are, member

6  or members?

7      A.    No.

8      Q.    Do you hold a position with Healthcare

9  Revenue Recovery Group, LLC?

10     A.    Yes.

11     Q.    What's your position?

12     A.    President.

13     Q.    How long have you held that position?

14     A.    For approximately six years.

15     Q.    Have you held any other positions with

16  Healthcare Revenue Recovery Group?

17     A.    Yes.

18     Q.    What other positions have you held?

19     A.    I was vice-president, and prior to that

20  I was assistant -- I think I was director prior to

21  that.

22     Q.    Have each of the positions you

23  described, each of them were full-time positions?

24     A.    Yes.

25     Q.    So you didn't -- at the time that you

- David Friedlander -

Page 23

```
1    were president and vice-president and director, at

2    those times you were not -- you didn't have

3    full-time employment somewhere else; correct?

4         A.    Yes.

5         Q.    The earliest position you held was

6    director?

7         A.    Manager.  I was manager prior to

8    director.

9         Q.    So manager was your first position

10   with --

11        A.    Yes.

12        Q.    -- Healthcare --

13              When did you become a manager?

14        A.    I was hired as manager for a different

15   entity named IMBS that later became Healthcare

16   Revenue Recovery Group.  And I was hired in 1996.

17        Q.    How long were you a manager?

18        A.    In the entirety of my career or when I

19   was with --

20        Q.    The position of manager that you were

21   hired for in 1996, how long did you hold that

22   position?

23        A.    I don't recall how many years it was.

24   It was -- I can't recall the dates that I was

25   promoted to director.
```

- David Friedlander -

Page 24

```
 1      Q.    Okay.  At some point you became
 2  director?
 3      A.    Yes.
 4      Q.    You held that position -- do you recall
 5  for about how long you held that position?
 6      A.    That was approximately two years.
 7      Q.    Then you were promoted to
 8  vice-president?
 9      A.    Yes.
10      Q.    And do you remember when you became
11  vice-president?
12      A.    No.  No.  The years are kind of running
13  together.  I have been with the company a long
14  time.
15      Q.    And do you recall about how long you
16  were vice-president?
17      A.    About nine years.
18      Q.    Then you went from being vice-president
19  to becoming president?
20      A.    Yes.
21      Q.    What's your understanding of --
22  withdrawn.
23            In talking about when you were hired as
24  manager, you said you were hired by IMBS and at
25  some point it became HRRG?
```

- David Friedlander -

Page 25

1        A.    Yes.

2        Q.    What's your understanding of what that

3    transition was?  To give you a "for instance," to

4    be more clear about my question is, was it simply

5    a change of name?  Was it a merger?  Was it some

6    combination?  What happened that it went from IMBS

7    to HRRG?

8        A.    It was a name change that had more to

9    do with corporate structure than changing the

10   company name for identification purposes.  There

11   were other parts of the billing and collection

12   operation that were part of IMBS that did not have

13   anything to do with the collection agency that we

14   had set out to establish.  The name change was

15   associated with disassociating the collection

16   agency from the billing operations that were part

17   of IMBS.

18       Q.    So did IMBS continue to exist handling

19   billing operations?

20       A.    Yes, I believe so.

21       Q.    And continuing under that name or a

22   different name?

23       A.    Continuing under that name for a period

24   of time.

25       Q.    So the collection services that were

- David Friedlander -

Page 26

```
 1    part of IMBS then got segregated out and was put

 2    under the umbrella of HRRG; is that a fair

 3    statement?

 4         A.    You are calling it an umbrella, I

 5    wouldn't call it that under the name of HRRG,

 6    Healthcare Revenue Recovery Group, LLC.

 7         Q.    Do you know who the member or members

 8    are of Healthcare Revenue Recovery Group, LLC?

 9         A.    I don't know.  No, I don't know.

10         Q.    Do you know if any members are natural

11    persons or whether they are, like, a corporation

12    or another LLC -- withdrawn.

13              Is Healthcare Revenue Recovery Group,

14    LLC a subsidiary of another entity?

15              MR. SCHEUERMAN:  I object.  How is this

16         in any way related to the true name issue?

17              MR. STERN:  I need the witness to leave

18         the room.  Sir, please step out.

19              MR. SCHEUERMAN:  Sorry, David.

20              THE WITNESS:  That's okay.

21              (Witness leaves the room.)

22              MR. STERN:  So as I read the

23         interrogatory answers is that, and my

24         investigation of these entities is the issue

25         is whether -- let me get the language
```

- David Friedlander -

```
 1          exactly.  Is ARS the name under which
 2          Healthcare Revenue Recovery Group usually
 3          transacts business.  I need to have some
 4          understanding of what the nature and scope of
 5          that business is.  There is reference in the
 6          interrogatory answers to simply that it began
 7          using this name from the start but it doesn't
 8          say who began using that name.  And my own
 9          investigation suggests that there is a much
10          more elaborate corporate structure.  This is
11          not -- an LLC appears there's an LLC which is
12          simply owned by one or a handful of
13          individuals.  When I say "individuals" I mean
14          natural persons.  And so, therefore, I have
15          to have an understanding of what that is
16          before I can be able to tell is this
17          something that's a name which usually
18          transacts business, I have to understand the
19          nature of the business.
20              MR. SCHEUERMAN:  Judge Williams
21          specifically referenced the corporate
22          organizational number seven, and she said
23          that was too broad.
24              THE WITNESS:  No, she didn't say that.
25              MR. SCHEUERMAN:  She did.  And she said
```

- David Friedlander -

```
 1      you can ask about -- corporate organization
 2      is too broad.  Having -- asking about a
 3      subsidiary -- why don't you ask him what's
 4      ARS?  When did they start using ARS?  You
 5      don't have to get into subsidiaries.  It's
 6      far afield from the true name issue.  Meaning
 7      if you want to ask him what's ARS, how is it
 8      different than HRRG, those are the
 9      specifics --
10              MR. STERN:  Which number are you
11      referring to?
12              MR. SCHEUERMAN:  Number seven.  She
13      said the corporate --
14              MR. STERN:  She said the corporate
15      organizational management structure of HRRG
16      was fine.
17              MR. SCHEUERMAN:  Was too broad.
18              MR. STERN:  She didn't say that.  When
19      it went to management and oversight
20      responsibilities that that was too broad.
21      Her point was to contrast, part of that was
22      fine and the part of it was not.
23              MR. SCHEUERMAN:  She said the
24      management structure was fine and the rest
25      was too broad.  So I'm going to object to
```

- David Friedlander -

Page 29

```
 1        that.  That's beyond the scope of the order.

 2              I don't understand.  I'm not going to

 3        tell you what to do, but if you want to ask

 4        what's ARS, how is it different than HRRG,

 5        what's the distinction, is this a company,

 6        that's all fair game.  But you're asking

 7        about subsidiaries which --

 8              MR. STERN:  I didn't ask about

 9        subsidiaries.  I'm trying to find out what

10        the business is.

11              MR. SCHEUERMAN:  It's not relevant --

12              MR. STERN:  It is relevant.

13              MR. SCHEUERMAN:  -- to the true name

14        issue.

15              MR. STERN:  How is it not relevant?

16              MR. SCHEUERMAN:  Whether there's a

17        parent corporation or it's a subsidiary, how

18        is that relevant to the true name issue?

19              MR. STERN:  It's for purpose of

20        defining what is the nature of its business

21        so that I can determine -- then I can proceed

22        to find out what name it usually transacts

23        business -- that business under.

24              MR. SCHEUERMAN:  A subsidiary?  HRRG

25        is --
```

- David Friedlander -

Page 30

```
 1            MR. STERN:  What subsidiary?
 2            MR. SCHEUERMAN:  You are asking about
 3       is it a subsidiary.  That's what you were
 4       asking.
 5            MR. STERN:  That's all --
 6            MR. SCHEUERMAN:  It's beyond the scope.
 7       She specifically referenced corporate
 8       organization.  So I suggest if you want to
 9       call her let's make a list, let's add this to
10       the list.  There may be other issues, let's
11       make one call rather than waiting.  If you
12       want to agree on an issue that we can bring
13       to her that's fine, let's put it aside and
14       move on.  We will do one call with the
15       objections.
16            MR. STERN:  My view is we will just --
17       the information from -- that's on their
18       website that explains all that information,
19       we will present that in summary judgment and
20       you won't have the ability to respond to it
21       because you are not letting me inquire of
22       this witness.
23            MR. SCHEUERMAN:  It's beyond the scope
24       of the judge's order, whether a parent
25       company owned HRRG.  I don't see how --
```

- David Friedlander -

```
 1          MR. STERN:  It's for purposes of
 2     identifying what that company is and what
 3     business they do.
 4          MR. SCHEUERMAN:  That's not relevant.
 5     It's beyond the scope of the order.
 6          MR. STERN:  It helps to define what
 7     business HRRG does.
 8          MR. SCHEUERMAN:  It's a debt collector.
 9     We all know that.  It's beyond the scope.
10     That's my stand, so let's move on.  We can
11     call the judge -- if you want to call her
12     now, I say we wait, there may be other
13     issues.
14          MR. STERN:  Can you mark the last
15     question that he objected to, read that back?
16          (Record read.)
17          MR. STERN:  So if you can tell me --
18     there's been some discussion -- obviously
19     mark that last question.
20          (Witness returns.)
21  BY MR. STERN:
22     Q.   Did Healthcare Revenue Recovery Group,
23  LLC exist prior to the separation of the
24  collection activity from IMBS?
25     A.   Yes.
```

- David Friedlander -

1        Q.    And what kind of business did
2    Healthcare Revenue Recovery Group do prior to the
3    collection activity from IMBS coming into
4    Healthcare Revenue Recovery Group?
5        A.    Start the question again, please.
6        Q.    Let me ask you this, we started off in
7    D-1, which is in front of you, names.  We got so
8    far the first item, the business name.  We have
9    talked about that name.  Is there any reason we
10   can't refer to that when we are stating that name,
11   just refer to it as HRRG?  Is that --
12       A.    No, there's no reason you couldn't
13   refer to it as HRRG.
14       Q.    For purposes of this, if for some
15   reason either in context or in your answering if
16   HRRG means something to you other than Healthcare
17   Revenue Recovery Group, LLC, you'll let me know;
18   but otherwise, we are going to assume when we are
19   saying HRRG that means or that's a substitute for
20   Healthcare Revenue Recovery Group, LLC.  Okay?
21       A.    Okay.
22       Q.    Let's get back to it.  So I don't want
23   to misstate your testimony.  As I understood your
24   testimony so far is that IMBS included debt
25   collection at one point in time.  And that there

- David Friedlander -

Page 33

```
 1    came a point in time where the collection
 2    activities of IMBS was transferred to or became
 3    part of what HRRG.  Is that -- am I misstating it?
 4         A.    Yes.  There were multiple functions
 5    happening under IMBS, including both billing and
 6    collections.  There was a desire by the company to
 7    separate those functions into their own individual
 8    business units, one that handled billing and one
 9    that handled collections.  So HRRG was established
10    to house the collection activity that had once
11    been handled -- that had once been part of what
12    was handled by IMBS.
13         Q.    Okay.  And you also testified that
14    prior to the housing of the collection activity,
15    which had formerly been under IMBS, that HRRG was
16    engaged in some form of business.  I think you
17    said --
18         A.    Just establishment of the business for
19    getting a corporate entity established, an LLC
20    established.  So it wasn't -- there was no
21    activity happening prior to the use of the name
22    for the collection operations.
23         Q.    Do you know when HRRG was formed?
24         A.    I believe it was 2004.
25         Q.    And beginning in -- at some point -- it
```

LEVINS034

- David Friedlander -

Page 34

1    was formed in 2004.  At some point either in later

2    2004 or thereafter the collection activity of IMBS

3    was taken from IMBS and housed in HRRG; correct?

4         A.    I would say transitioned is probably a

5    better way of putting it.

6         Q.    I'm trying to use housed -- you used

7    housed before.  I was trying to use the same word.

8    So transitioned; right?

9         A.    Yes.

10        Q.    Has the collection activity of any

11   other entity been transitioned into HRRG?

12        A.    No.

13        Q.    With respect to the Levins' debt, how

14   did it come about that that debt was placed with

15   HRRG?

16        A.    After the Levins' account went through

17   an active billing process with HCFS billing

18   company, the Levins' account was part of a

19   selection process that took place based on the

20   account's age to be placed in collections in an

21   electronic data file with accounts that were

22   placed with Healthcare Revenue Recovery, HRRG.

23        Q.    You mentioned HCFS.

24        A.    Healthcare Financial Services.

25        Q.    Is that a -- the Healthcare Financial

- David Friedlander -

1    Services a generic term or that's a specific

2    entity?

3        A.    It's a specific entity.

4        Q.    Is that an entity that engages in

5    medical billing?

6        A.    Yes.

7        Q.    Is there any relationship or historical

8    relationship between IMBS and Healthcare Financial

9    Services?

10       A.    Yes.

11       Q.    What is that relationship?

12       A.    I think at one time Healthcare

13   Financial Services was the managing member for

14   IMBS or HRRG, the LLC.  I think they were either

15   one or the managing member.  I'm not sure if the

16   LLC had multiple managing members when HRRG was

17   first formed.

18       Q.    Does HRRG only collect

19   healthcare-related debts?

20       A.    Yes.

21       Q.    And does HRRG only receive placement of

22   debts from billing companies?

23       A.    Yes.

24       Q.    To your knowledge, is there any -- are

25   there any billing companies that have no

- David Friedlander -

1   affiliation with HRRG who place debts with HRRG?

2          MR. SCHEUERMAN:  I object.  How is this

3       relevant to the issues again?

4          MR. STERN:  I'm trying to define what

5       the business is and with whom they transact

6       business.

7          MR. SCHEUERMAN:  It's beyond the scope.

8       Objection.

9          MR. STERN:  With whom they transact

10      business is not beyond the scope.

11         MR. SCHEUERMAN:  With whom, what?  With

12      whom, who?

13         MR. STERN:  With whom HRRG transacts

14      business.

15         MR. SCHEUERMAN:  For what reason?

16         MR. STERN:  I don't know, I'm trying to

17      find out.

18         MR. SCHEUERMAN:  There's got to be a

19      reason.  What's the proffer for that?

20         MR. STERN:  The third circuit said,

21      quote, "The name under which it usually

22      transacts business."

23         MR. SCHEUERMAN:  Okay.

24         Mr. STERN:  I'm trying to find out what

25      business it transacts.

- David Friedlander -

Page 37

1        MR. SCHEUERMAN:  Who HRRG usually

2    transacts business with, is that what you are

3    trying to get at?

4        MR. STERN:  That's one of the things

5    I'm trying to find out, yes.  And also

6    defining what its business is.

7        MR. SCHEUERMAN:  What HRRG's business

8    is?

9        MR. STERN:  Yes.  Because it seems that

10   there's a deal.

11       MR. SCHEUERMAN:  Ask him that.

12       MR. STERN:  I'm asking the questions

13   the way I'm asking.  That doesn't make the

14   questions not relevant or outside the scope

15   of discovery.

16       MR. SCHEUERMAN:  The proffer of this

17   line is?

18       MR. STERN:  I'm going to have you stop.

19   Mr. Friedlander, I'm going to ask you to

20   leave the room if we are going to discuss the

21   substance of the questions or the testimony.

22       (Witness leaves the room.)

23       MR. SCHEUERMAN:  So I'm clear, the

24   proffer is you are trying to figure out with

25   whom HRRG does business to ascertain whether

- David Friedlander -

1        they typically use ARS as an acronym; is that

2        what I'm --

3             MR. STERN:  That's what we are going to

4        get to, yeah.

5             MR. SCHEUERMAN:  Okay, that's fine.

6        Why don't you just ask him that, who they

7        usually transact business with?

8             MR. STERN:  I have no problem doing

9        that.  I assumed if I was going to ask that

10       question you were going to tell me that's

11       confidential, you know, who their customers

12       are.  You want me to ask him, I'll ask him

13       that.

14            MR. SCHEUERMAN:  What are you trying to

15       get at, whether they use it with their

16       clients -- whether they use ARS with their

17       clients?

18            MR. STERN:  I want to find out if they

19       use ARS with everybody.

20            MR. SCHEUERMAN:  Why don't you just ask

21       him that?  To me it seems like you are trying

22       to get --

23            MR. STERN:  I'm trying to get the lay

24       of the land first.

25            MR. SCHEUERMAN:  It seems you are

- David Friedlander -

Page 39

```
 1        trying to inquire as to things that are not

 2        relevant to corporate structure.

 3              MR. STERN:  This is not corporate

 4        structure.  This is asking him --

 5              MR. SCHEUERMAN:  You have been on this

 6        line of questioning for almost 45 minutes and

 7        we haven't gotten into anything that's

 8        germane to the issues.

 9              MR. STERN:  I disagree.  We have gotten

10        a lot of good information so far.

11              (Whereupon there was a recess in the

12        proceedings from 10:59 to 11:07 a.m.)

13   BY MR. STERN:

14        Q.   With whom does HRRG -- is there a term

15   that you use to describe as a group the entity or

16   entities who place accounts with HRRG?

17        A.   Is there a term?  I'm --

18        Q.   In my experience with other debt

19   collectors, they refer to the entities that refer

20   the accounts as customers or clients.

21        A.   Clients we would refer to.

22        Q.   As clients?

23        A.   Yeah, as clients.

24        Q.   Who are HRRG's clients?

25        A.   The clients are the billing customers
```

- David Friedlander -

Page 40

1   of Healthcare Financial Services, HCFS; and what

2   they call OSB, outsource billed clients in

3   addition to those that are owned.

4        Q.    So I understand, the billing customers

5   of HCFS, are those healthcare providers?

6        A.    Yes.

7        Q.    So it is your understanding that

8   healthcare providers use the services of HCFS for

9   billing and then collections if need be?

10       A.    Yes.

11       Q.    HCFS, what you referred to as the OSB

12   clients, are those also billing entities for

13   healthcare providers?

14       A.    They are physician groups providing

15   services to patients with billing services

16   provided by Healthcare Financial Services, HCFS,

17   but not necessarily owned by HCFS's parent.

18            MR. SCHEUERMAN:  Do you have a new

19       sticker?  This is the new D-2.

20   BY MR. STERN:

21       Q.    Does HRRG market itself to potential

22   new clients?

23       A.    No.

24       Q.    I'm not trying to put words in your

25   mouth.  I'm trying to put a description on this.

- David Friedlander -

Page 41

```
1    Is it fair to say that HRRG, sort of, does

2    collection work, and it's captive in a sense that

3    it does the work for -- within a corporate

4    structure of related companies?

5          A.    Yes.

6          Q.    And that there is some -- would it be

7    fair to say that the marketing of HRRG services is

8    really encompassed within the billing services for

9    which HCFS seeks to obtain their clients?

10              MR. SCHEUERMAN:  Objection to form.

11         You are misstating what his testimony was.

12              MR. STERN:  He can certainly correct me

13         if I'm wrong.

14              MR. SCHEUERMAN:  You just misstated.

15         He said --

16              MR. STERN:  He can correct me if it's

17         wrong.  It's not for counsel to tell me if I

18         misstated the testimony.

19   BY MR. STERN:

20         Q.    Certainly I'll tell you, Mr.

21   Friedlander, I'm not trying to put words in your

22   mouth.  I'm trying to understand and repeat back

23   to at least have you confirm so I know I

24   understand what your testimony is.  So if I'm

25   misstating it, please, that's not my intent to
```

- David Friedlander -

1   either overstate or understate something you said.

2           MR. SCHEUERMAN:  Objection to form.

3       Misstating the client's testimony.

4           MR. STERN:  Mark that objection,

5       please.

6   BY MR. STERN:

7       Q.   I'm trying to understand the business

8   model under which HRRG operates.  And so maybe

9   drawing some inferences from your testimony I want

10  to clarify it so I can move on.

11          HRRG is one business entity among other

12  business entities which offer services to

13  healthcare providers for billing and collections;

14  is that a fair statement?

15      A.   I'm not sure.

16      Q.   Okay.  Well, so I understand it, HRRG

17  does not market itself to get new accounts, but

18  instead gets assigned -- accounts get placed by an

19  entity that, from your testimony as I understand

20  it, is a related entity in some fashion, HCFS?

21      A.   Yes.

22      Q.   And that I know the term "affiliate"

23  can be a somewhat ambiguous term, but there is

24  some affiliation between HRRG and HCFS, whether

25  it's by way of, you know, common ownership or

- David Friedlander -

1    subsidiary or parent or sister companies, but

2    there's a relationship.  And they work together in

3    providing services to the healthcare providers?

4         A.    Yes.

5         Q.    In HRRG's attempts to collect debts it

6    sends letters to consumers; correct?

7         A.    Yes.

8         Q.    And in HRRG's attempts to collect debts

9    it places calls to consumers; correct?

10        A.    Yes.

11        Q.    Does HRRG use the services of outside

12   vendors for either mailing letters to consumers or

13   placing phone calls to consumers?

14        A.    Yes.

15        Q.    Does it use a mailing vendor for

16   letters?

17        A.    Yes.

18        Q.    Having handled cases like this and

19   having some understanding of what the relationship

20   is, I'm going to try and get through it quickly.

21   So if I'm misstating something that's -- I'm

22   drawing from my general knowledge to see if it

23   applies with HRRG.  That's what these next

24   questions are going to relate to.

25              Is the mailing vendor provided with

- David Friedlander -

Page 44

1    templates of form letters that HRRG uses?

2         A.    Yes.

3         Q.    And is the mail vendor then provided

4    with data to merge into those templates as and

5    when HRRG decides to send letters to consumers?

6         A.    Yes.

7         Q.    That mail vendor is then responsible

8    for printing out the merged document, the form

9    letter, putting it in an envelope and mailing it

10   out; correct?

11        A.    Yes.

12        Q.    And does the mail vendor provide

13   reports back to HRRG which identifies, or the date

14   in which forms were used to send letters?

15        A.    Yes.

16        Q.    Are those reports in an electronic form

17   that then get inputted into the account notes?

18        A.    I don't know that I would call them

19   reports.

20        Q.    Okay.

21        A.    But --

22        Q.    HRRG receives electronic data from the

23   mail vendor; yes?

24        A.    Yes.

25        Q.    Which provides information about the

- David Friedlander -

1  mailing of the letters that HRRG has requested the

2  mail vendor to mail?

3       A.    Yes.

4       Q.    That electronic data, or some of that

5  electronic data gets placed into the account notes

6  for the accounts on which letters were mailed;

7  correct?

8       A.    Yes.

9       Q.    Does the mail vendor -- withdrawn.

10            Is the return address used for those

11  letters an address which goes back to the mail

12  vendor or which goes back to HRRG?

13       A.    Can you state a time frame, because the

14  process has changed over time?

15       Q.    Okay.

16       A.    So there was a time when it may have

17  been handled differently from the way it's handled

18  now.

19       Q.    All right.  Let's talk about the date

20  of -- I understand that there was a letter sent

21  dated November 30, 2015 to the Levins, so we are

22  talking about that.  I don't know how broad a

23  period you need, whether year or season or what.

24       A.    Are you reviewing -- did you get that

25  information from a document that you are --

- David Friedlander -

Page 46

1         Q.    Yes.  In fact --

2         A.    -- referring to as one of the --

3         Q.    -- in D-2.

4               MR. SCHEUERMAN:  The letter -- it's not

5         D-2.

6    BY MR. STERN:

7         Q.    It's page 4 in D-2, ARS4.

8         A.    Yes, I see that.

9         Q.    That letter is dated November 30, 2015?

10        A.    Yes.

11        Q.    So that's what I'm referring to.

12        A.    Okay.  Now, can you restate the

13   question?

14        Q.    Sure.  Actually withdraw, and maybe we

15   can get back to it.

16              Let's talk about this letter.  Is there

17   anything in this letter that tells you -- that

18   informs you as to what -- identifies which

19   template was used for creating the letter?

20        A.    Yes.

21        Q.    Where is that?

22        A.    In the lower right corner of the

23   letter.

24        Q.    If you can refer to -- is there a

25   specific text you can refer to?

- David Friedlander -

1      A.    It's barely visible.  It says A1, I
2  believe.
3      Q.    Okay.
4      A.    But it's hard to read because it's been
5  reduced in size from what's normal.
6      Q.    All right.  I do see -- and for
7  purposes of the record there's, sort of, like a
8  barcode beneath the address that's in the lower
9  right corner, and then below that and to the right
10 there it says A1.
11     A.    Looks like it says A1, yes.
12     Q.    Looks like that to me as well.
13           What does A1 tell you about the
14 template?
15     A.    A1 would be one of the letter types
16 used by ARS.
17     Q.    Okay.  And the return address that
18 would appear from the outside of the envelope, is
19 that the address that appears in the upper left
20 corner of ARS04?
21     A.    Can you read the address you are
22 referring to, please?
23     Q.    Sure.  It looks like it says PO Box
24 459079, Sunrise, Florida.
25     A.    Yes, that's -- that is the return

- David Friedlander -

Page 48

1    address.

2         Q.     Okay.

3              MR. SCHEUERMAN:   Note my objection to

4         form.  That wasn't the full return address.

5              MR. STERN:  Okay.

6    BY MR. STERN:

7         Q.     So that's the address that would have

8    appeared from the outside of the envelope;

9    correct?

10        A.     Yes.

11        Q.     And is that address an address for HRRG

12   or is it an address for the mail vendor?

13        A.     That's an address that would be for

14   ARS.

15        Q.     For ARS?

16        A.     Yes.

17        Q.     We have not talked about ARS yet, but

18   understood.  I understand your answer.  We will

19   dovetail back to that.

20              Looking at ARS04, are you able to tell

21   from whom the letter was sent?  I said that

22   awkwardly.  Who sent the letter?

23        A.     The print mail service.  They are

24   called Nordis, N-O-R-D-I-S.

25        Q.     That's the vendor?

- David Friedlander -

Page 49

1       A.    Yes.

2       Q.    How long have they been the mail

3   vendor?

4       A.    I believe since 1997.

5       Q.    So it's not -- it's not like there's a

6   possibility there's another vendor involved?

7       A.    No.

8       Q.    So you said the letter is sent from

9   ARS; correct?

10      A.    I don't recall saying that.

11      Q.    Okay.  The letter was physically sent

12  by Nordis; correct?

13      A.    Yes.

14      Q.    Nordis printed the letter, put it in an

15  envelope and mailed it; correct?

16      A.    Yes.

17      Q.    Nordis did that because it received, in

18  some form, instructions to merge data into the

19  template A1 and mail this letter?

20      A.    Yes.

21      Q.    Does Nordis have a contract governing

22  its relationship with regard to sending these

23  letters?

24      A.    Yes.

25      Q.    With whom does Nordis contract?

- David Friedlander -

Page 50

```
 1        A.    I'm not sure.  I believe its contract
 2   is between HRRG and Nordis.
 3        Q.    Is the contract between ARS and Nordis?
 4        A.    No.
 5        Q.    Refer -- I know it's somewhat small,
 6   the first line in the body of the letter.  It's
 7   actually the first sentence.  I'll read it.  It
 8   says, "The healthcare creditors," and it has the
 9   letter S in parenthesis, "shown below hired ARS
10   Account Resolution Services," then an open paren,
11   ARS, close paren, "to collect the balance due."
12              Do you see that?
13        A.    Yes.
14        Q.    Who is ARS Account Resolution Services?
15        A.    ARS is a business unit, a division of
16   HRRG.
17        Q.    I want to be specific here because the
18   letters ARS in parenthesis right after ARS Account
19   Resolution Services --
20        A.    Yes.
21        Q.    -- signals that the letters "ARS" are
22   going to be used in this letter to refer to ARS
23   Account Resolution Services; correct?
24              MR. SCHEUERMAN:  You are talking about
25        the first sentence in ARS4, to clarify?
```

Page 51

1          MR. STERN:  Who are you clarifying it
2      for?
3          MR. SCHEUERMAN:  To me.
4          MR. STERN:  If he doesn't understand
5      the question he can ask me.  It's improper
6      for you to be signaling to the witness
7      there's something he should be cautious about
8      my question.
9          MR. SCHEUERMAN:  It wasn't any type of
10     signal.
11     A.    The use of ARS in parenthesis in that
12  first line of the first sentence in this letter is
13  just to clarify in the remainder of the text of
14  the letter that we may use just the initials ARS
15  to mean ARS Account Resolution Services.
16     Q.    Right.
17     A.    In much the same way as when you say,
18  you are referring to HRRG rather than saying
19  Healthcare Revenue Recovery Group, you would just
20  use HRRG.
21     Q.    I understand.  I think there's a subtle
22  difference that we don't need to get into right
23  now between -- even though it's subtle it may be
24  very significant between the two examples.  But
25  yes, I agree that it's a signal that these three

- David Friedlander -

Page 52

1    letters are going to refer to the longer version,

2    right; for whatever reason, convenience, save

3    space, right, it doesn't matter?

4         A.    Yeah, it's like a short form.

5         Q.    Exactly.  It's a short form.  Agreed.

6    And I agree to that extent that your example of

7    HRRG is correct that it's a short form of doing

8    it.  I understand that's why it's there.

9              It's probably a good time to go back to

10   D-1 now.  Because the second item on D-1 is

11   alternate name; do you see that?

12        A.    Yes.

13        Q.    And do you see that I had put there ARS

14   Account Resolution Services; do you see that?

15        A.    Yes.

16        Q.    And if you want in D-2 you can go back

17   to page 3, you'll see at paragraph 3 on page 3 it

18   refers to alternate name and says ARS Account

19   Resolution Services; do you see that?

20        A.    Yes.

21        Q.    And I have copied and pasted that page

22   3 paragraph 3 onto D-1; do you see that?

23        A.    Yes.

24        Q.    Do you have an understanding of what's

25   meant by an alternate name in the context of

- David Friedlander -

1  ARS03, the document -- that document?

2      A.    I'm not sure I do.

3      Q.    If I were to say to you that ARS03 is a

4  document that is filed with the State of New

5  Jersey that is a public record that identifies

6  that the name ARS Account Resolution Services is a

7  name that will be used to identify Healthcare

8  Revenue Recovery Group, LLC, does that refresh

9  your recollection at all in terms of what --

10             MR. SCHEUERMAN:  Object to form.

11      Counsel is testifying as to the document, not

12      pointing to any facts in the record to

13      support what he just said.

14             MR. STERN:  Object to the form, that's

15      fine.

16      A.    The question again that you are asking

17  is?

18      Q.    I'm trying to see if I can refresh your

19  recollection with information about -- let me say

20  this, my understanding from materials that your

21  counsel has submitted to in this case --

22             MR. SCHEUERMAN:  What materials?

23             MR. STERN:  Excuse me?

24             MR. SCHEUERMAN:  Objection to form.

25      He's misstating evidence.

- David Friedlander -

Page 54

```
 1   BY MR. STERN:
 2        Q.    That the document which is ARS03, which
 3   is contained in D-2, is a certificate filed with
 4   the State of New Jersey which identifies an
 5   alternate name for Healthcare Revenue Recovery
 6   Group, LLC, and that alternate name is ARS Account
 7   Resolution Services.
 8             Having said that, is that -- does that
 9   refresh your recollection as to the document
10   ARS03?
11        A.    Can you go back to -- can we reread
12   what the initial question was?
13             MR. SCHEUERMAN:  He rephrased it after
14        the initial question.
15   BY MR. STERN:
16        Q.    Let me tell you where I'm at.
17        A.    I thought we were talking --
18             MR. SCHEUERMAN:  I objected and he
19        rephrased.
20   BY MR. STERN:
21        Q.    I want to clarify the question.
22        A.    I thought we were talking about do I
23   understand what an alternate name is.
24        Q.    Maybe -- I apologize if I got off on a
25   tangent instead of dealing with that.  Let's talk
```

- David Friedlander -

Page 55

1    about that.

2            Can you answer that?  Do you have an

3    understanding of what an alternate name is in the

4    context of a document being filed to register an

5    alternate name?

6        A.    And I think I answered I'm not sure.

7    I'm still not sure.

8        Q.    Okay.  Then in terms of -- let's get to

9    D-1.  Let's get to the third thing that I have

10   listed on there, the third and final thing.  I say

11   abbreviation of alternate name and I have there

12   ARS.  And I can point you to -- I haven't

13   identified the document yet, but I can point you

14   to responses to interrogatories.  I guess it would

15   probably make sense to do that.

16            (Exhibit D-3, Responses to

17        interrogatories, marked for identification,

18        as of this date.)

19   BY MR. STERN:

20       Q.    Take a moment and page through, and I'm

21   going to draw your attention to the last page of

22   D-3.

23            MR. SCHEUERMAN:  Take your time and

24        read the document.  Let us know when you are

25        ready.

- David Friedlander -

Page 56

1       A.      Yes.   Okay.

2       Q.      All right.   The last page, go to the

3  last page.

4       A.      Yes.

5       Q.      Is that your signature that appears on

6  the last page?

7       A.      Yes.

8       Q.      When was the first time that you saw

9  the document marked D-3?

10      A.      I don't recall the first time I saw it.

11      Q.      Did you understand that D-3 was a

12  document that was prepared by your counsel?

13              MR. SCHEUERMAN:   Objection.   Form.

14      A.      Yes.

15      Q.      Did you review the document which is

16  D-3 in preparation for the deposition today?

17      A.      I believe I reviewed parts of it.

18      Q.      Before you signed D-3, did you review

19  the entire document?

20      A.      Yes.

21      Q.      Did you understand everything that was

22  in D-3 or were you -- to the extent you didn't

23  understand it, did you get -- were you satisfied

24  with -- withdrawn.

25              Did you understand everything that you

- David Friedlander -

Page 57

1    read in D-3 before you signed it?

2         A.    Yes.

3         Q.    Let's move back a little bit.  What's

4    your highest level of education?

5         A.    Bachelor's in business administration.

6         Q.    From where?

7         A.    From Boston University, School of

8    Management.

9         Q.    Prior to your being hired by IMBS, had

10   you worked in the debt collection field?

11        A.    Yes.

12        Q.    When you were hired by IMBS, were you

13   working in debt collection or on the billing side?

14        A.    Debt collection.

15        Q.    What was your experience with debt

16   collection prior to being hired by IMBS?

17        A.    I had worked at a company called Exeter

18   Management on debt collection for multiple clients

19   of theirs.

20        Q.    Were those medical debts or other types

21   of debts?

22        A.    Both.

23        Q.    Was the debt collection consumer debt

24   collection when you worked at Exeter or was it

25   mixed, or was it not?

- David Friedlander -

Page 58

1        A.    For the most part it was not consumer

2   debt.  It was -- yeah, it was different types of

3   debt but commercial debt.

4        Q.    Commercial debt?

5        A.    Primarily.

6        Q.    Did you have experience in debt

7   collecting prior to working for Exeter?

8        A.    No.

9        Q.    Can you tell me from when you

10  graduated -- did you attend Boston University

11  full-time?

12       A.    Yes.

13       Q.    From the time you graduated till the

14  time you started at Exeter, did you have other

15  full-time employment?

16       A.    No.

17       Q.    So it was basically once you graduated

18  your --

19       A.    I actually worked part-time at Exeter

20  while I was attending school as a full-time

21  student.

22       Q.    I was asking, given the Exeter name,

23  was it in the Massachusetts area?

24       A.    Yes.  Why, have you heard of it?

25       Q.    No.  Exeter is a city in Massachusetts.

- David Friedlander -

Page 59

```
 1    Phillips Academy has an Exeter campus.  The prep
 2    school was there, so I assumed that was a New
 3    Englander, certainly Massachusetts-based company.
 4              When you worked at Exeter, did you
 5    reside in Massachusets or New England?
 6         A.    Yes.
 7         Q.    And was IMBS located in Florida?
 8         A.    Yes.
 9         Q.    When you took the job did you move to
10    Florida?
11         A.    I moved to Florida before I took the
12    job?
13         Q.    Have you taken any courses at an
14    educational institution subsequent to graduating
15    from Boston University?
16         A.    No.
17         Q.    Have you taken any seminars offered by
18    the debt collection industry?
19         A.    Yes.
20         Q.    And you have done that with some
21    regularity over the course of your career?
22         A.    Yes.
23         Q.    What I -- when I said "some
24    regularity," do you attend a seminar or conference
25    at least once a year?
```

Page 60

```
 1      A.    Yes.
 2      Q.    Does HRRG have a general counsel or
 3   in-house counsel?
 4      A.    No.
 5      Q.    Is there a general counsel within any
 6   of the related entities that provides in-house
 7   legal services for HRRG?
 8      A.    Yes.
 9      Q.    Who manages litigations brought under
10   the Fair Debt Collection Act against HRRG?
11           MR. SCHEUERMAN:  Objection to form.
12      I'm sorry, how is that related?  Who manages
13      what?
14           MR. STERN:  I'm trying to find out to
15      make sure I know -- we have -- if there's
16      some other representative we need to talk to.
17      I want to find out basically who manages
18      litigation control.
19           MR. SCHEUERMAN:  At HRRG?
20           MR. STERN:  Either at HRRG or for HRRG
21      within the group of entities.
22           MR. SCHEUERMAN:  What do you mean by
23      "manages"?
24           MR. STERN:  Typically there's -- a
25      corporate counsel will have oversight or will
```

- David Friedlander -

1      be basically the direct liaison with outside

2      counsel in litigation.

3            MR. SCHEUERMAN:  What's -- the proffer

4      for this is what?

5            MR. STERN:  If you want a proffer I can

6      do it without the witness being present.

7            MR. SCHEUERMAN:  Can you leave?

8            (Witness leaves the room.)

9            MR. SCHEUERMAN:  What's the proffer?

10           MR. STERN:  He's being produced as?

11           MR. SCHEUERMAN:  A 30(b)(6) witness and

12     individual.  What's the proffer?

13           MR. STERN:  Right.  I'm just confirming

14     I was quite frankly expecting him to say he's

15     the one in charge, or you know there's

16     in-house counsel for, you know, HCFS who

17     manages that.  That's all I wanted to know.

18           MR. SCHEUERMAN:  Who manages what?

19           MR. STERN:  Who manages litigation.

20           MR. SCHEUERMAN:  Managing this

21     litigation or what litigation in particular?

22           MR. STERN:  Just the corporate

23     responsibilities, how the responsibilities

24     are divvied out so I have an understanding.

25           MR. SCHEUERMAN:  I think someone -- if

- David Friedlander -

1       you want to ask him if there's someone

2       managing this litigation for HRRG that's

3       fine, but I'm going to object to someone in

4       general who is managing some other

5       litigation.  That's not relevant to this

6       case.

7             MR. STERN:  I don't know if it's not

8       relevant to this case.

9             MR. SCHEUERMAN:  You can ask him.

10            MR. STERN:  I don't know how many other

11      times they have been -- the same claim that's

12      raised here has been raised by others.

13            MR. SCHEUERMAN:  Why don't you ask him

14      that?

15            MR. STERN:  You say why don't I ask

16      him, you don't get to control how I ask the

17      questions.  I don't have to get to the

18      end-of-the-line question and make me have to

19      ask that first before I can lay the

20      foundation for that.

21            MR. SCHEUERMAN:  I'm going to object.

22      If you are asking him who is managing

23      litigation in general not involved with this

24      case I object.  If you are asking if someone

25      is managing this litigation --

- David Friedlander -

Page 63

1          MR. STERN:  Okay.

2          MR. SCHEUERMAN:  -- then that's a fair

3      question.

4          MR. STERN:  When I said okay, I

5      understand your position.  I'm not assenting

6      to it.

7          MR. SCHEUERMAN:  I understand.

8  BY MR. STERN:

9      Q.   We have been referring to HRRG and HCFS

10 as being related entities.  Is there a name that

11 you would use that would describe the -- well,

12 before I do that.

13          Are there other entities that are

14 related to HRRG and HCFS in the provision of

15 billing and collection services to healthcare

16 providers?

17          MR. SCHEUERMAN:  I'm going to object.

18      I mean, it's the same -- basically the same

19      question you asked before, is there a

20      subsidiary.  I don't see how any of that is

21      relevant in connection with the discovery

22      order.

23      A.   So answering --

24          MR. SCHEUERMAN:  I object based on that

25      order, the limitation of discovery.  If you

- David Friedlander -

 1          want to mark that we can talk to the judge.

 2              MR. STERN:  Mark that.

 3      BY MR. STERN:

 4          Q.     What is TeamHealth?

 5              MR. SCHEUERMAN:  Again, objection to

 6          form.  Same objection.  Not a form objection.

 7          It's objection based on this order.

 8              Is there a proffer for how it's related

 9          to how the business typically transacts

10          business or is ARS a commonly used acronym?

11              MR. STERN:  Mr. Friedlander, can you

12          please step out.

13              (Witness leaves the room.)

14              MR. SCHEUERMAN:  That question is

15          relating to organization, which the judge

16          specifically said was too broad.

17              MR. STERN:  It's not true, that's not

18          what she said.  I'm not going to argue with

19          you over what she said.  She did not say

20          that.

21              But I have information that suggests

22          that HRRG has held itself out to being a

23          division of an entity called TeamHealth.  As

24          a division of, I don't understand what that

25          means when he says it's a separate entity.

- David Friedlander -

1          I'm trying to find out so I understand what

2          its business is.

3               MR. SCHEUERMAN:  That hasn't been

4          produced in discovery.  What are you

5          referring to?

6               MR. STERN:  I'm referring to some of my

7          own investigation.

8               MR. SCHEUERMAN:  Okay.  It's not

9          related.

10              MR. STERN:  It doesn't matter it's not

11         produced in discovery.

12              MR. SCHEUERMAN:  That's goes to the

13         organization of the company, and I think it's

14         beyond the scope of the discovery order.  If

15         you want to mark that one we can raise that

16         with the judge as well.

17              Can I bring him back in?

18              MR. STERN:  Sure.

19              (Witness returns.)

20    BY MR. STERN:

21         Q.    Is one of HRRG vendors, I don't know if

22    it's pronounced Genesis or Gensis?

23         A.    Genesis.  Yes.

24         Q.    What services does Genesis provide?

25         A.    Genesis, they actually took over a

- David Friedlander -

1    vendor we used for their speech analytic system

2    called Utopi (ph).  Genesis purchased Utopi.  We

3    use speech analytic software they used to call

4    Speech Minor.  Genesis re-branded it, but that's

5    what we use.

6         Q.    And how is speech analytics used in the

7    debt collection activities of --

8         A.    We use it to analyze our recorded

9    conversations with consumers.  And it categorizes

10   the conversations into topics.

11        Q.    Is there a contract with Genesis for

12   its services?

13        A.    Yes.

14        Q.    And who are the parties to that

15   contract?

16        A.    Genesis and HRRG.

17        Q.    And in that contract does it refer to

18   HRRG as ARS?

19        A.    The contract covers ARS in addition to

20   HRRG.

21        Q.    So let's go back to D-1 for a moment,

22   which was the page with the different names on it.

23   I want to be clear so there's no misunderstanding.

24   We have on that page the alternate name, which

25   comes from that certificate, 03 that's on there,

- David Friedlander -

Page 67

1   which is ARS Account Resolution Services?

2        A.    Yes.

3        Q.    When we refer to -- when you are

4   referring to ARS, that's just a shortened version

5   of the alternate name; correct?

6        A.    Yes.

7        Q.    And that alternate name is a name which

8   HRRG uses to identify itself; correct?

9             MR. SCHEUERMAN:  I'm sorry, objection

10        to form.  Ambiguous.  You can answer.

11        A.    No, I don't think that's correct.

12        Q.    Does HRRG use the alternate name?

13            MR. SCHEUERMAN:  I'm going to object.

14        There's alternate names listed twice.  One

15        for -- if you want him to step out, I think

16        the questions are improper.

17            MR. STERN:  Have him step out.

18            (Witness leaves the room.)

19            MR. SCHEUERMAN:  First of all, D-1 is

20        not in evidence, as I said before; it's your

21        document.  But the second item it says

22        alternate name and it says ARS Account

23        Resolution Services.  The one at the bottom

24        also says alternate name ARS.  So when you

25        say "alternate name," I don't think he --

- David Friedlander -

Page 68

```
 1        MR. STERN:  It doesn't say alternate

 2    name.

 3        MR. SCHEUERMAN:  It does.  It says it

 4    under Account Resolution Services in number

 5    three.  And that's referring to the business

 6    formation document, which says alternate name

 7    Account Resolution Services.  And then at the

 8    bottom of your self-serving document it says

 9    abbreviation ARS and it says alternative

10    name.  It says abbreviation of alternative

11    name.

12        But your question was confusing because

13    I don't think he knew which alternate name

14    you're talking about.  I didn't know what you

15    are talking about.

16        MR. STERN:  You're saying there's more

17    than one alternate name on D-1?

18        MR. SCHEUERMAN:  No.  You are using

19    alternate name interchangeably.  And it's

20    referring to ARS and ARS Account Resolution

21    Services.

22        MR. STERN:  No, it doesn't.

23        MR. SCHEUERMAN:  It's a form objection.

24    And he can answer.  I'm not telling him not

25    to answer.  But based on how you were saying
```

- David Friedlander -

Page 69

```
 1        the question it was confusing.
 2             MR. STERN:  All D-1 does is take the
 3        information that you have given me and put it
 4        into -- on one piece of paper.  Let me
 5        finish -- on one piece of paper.  The
 6        business name is what the business name is
 7        provided for in ARS03, which you provided to
 8        me.  The alternate name is ARS Account
 9        Resolution Services, which is the alternate
10        name that appears on ARS03 which you provided
11        to me.
12             MR. SCHEUERMAN:  You said he didn't
13        know what alternative -- alternate name
14        meant.
15             MR. STERN:  No, not alternative,
16        alternate name.  He did not know -- that's
17        true.  But he doesn't know what the
18        significance of alternate name is, but he
19        acknowledges that that's what the document
20        that you provided to me says.
21             And then what is there as ARS is
22        abbreviation of alternate name, because in
23        his sworn answer to interrogatories, which
24        you provided to me, it says, quote, ARS,
25        unquote, has always been used by the
```

- David Friedlander -

1    defendant as an abbreviation of ARS Account

2    Resolution Services.  ARS Account Resolution

3    Services is the alternate name as shown on

4    ARS03.  So all that says is abbreviation of

5    alternate name ARS.  So there's no two

6    alternate names on here.  There is an

7    alternate name and the abbreviation of

8    alternate name.  He already said ARS is a

9    shortened form of or short name or a

10   shortening of ARS Account Resolution

11   Services.

12       MR. SCHEUERMAN:  The question was

13   confusing because it was unclear what you

14   were referring to when you said the alternate

15   name.  Moreover --

16       MR. STERN:  If the question is

17   confusing it's not for you to identify it as

18   confusing.

19       MR. SCHEUERMAN:  It's an objection.

20   And I said ambiguous.  I have to make that

21   objection or it's waived.

22       MR. STERN:  You can make an objection

23   as to form.

24       MR. SCHEUERMAN:  I didn't tell him not

25   to answer.  I made a form objection.

LEVINS071

- David Friedlander -

1           MR. STERN:  I didn't say that.  When

2       you say it's ambiguous or confusing to you,

3       it signals to the witness that the witness

4       should be careful that -- the witness may not

5       think it's ambiguous.  The witness may think

6       it's crystal clear.  But now the witness's

7       counsel told him, Look out, that question is

8       ambiguous.

9           MR. SCHEUERMAN:  Under the rules I have

10      to say the basis for the form objection to

11      give you an opportunity to amend it.

12          MR. STERN:  Not unless I ask you for

13      it.  You also cannot, as I read in the

14      guidelines from Hall versus Clifton, you

15      cannot give objections which signal to the

16      witness anything about responding to the

17      question.

18          MR. SCHEUERMAN:  It didn't.  All I said

19      was the basis for the form of the objection.

20          MR. STERN:  I disagree.

21          MR. SCHEUERMAN:  Can we bring him back

22      in?

23          MR. STERN:  What's your --

24          MR. SCHEUERMAN:  You can ask him

25      anything you want.

- David Friedlander -

Page 72

```
 1              MR. STERN:  I don't understand what
 2       your problem is.
 3              MR. SCHEUERMAN:  Your question that you
 4       asked him, it was unclear what you meant by
 5       alternate name.  So maybe you can walk him
 6       through that.
 7              MR. STERN:  If he doesn't understand
 8       the question, and I have no problem giving
 9       the instruction again.  The witness seems to
10       have no problem if I'm not accurately stating
11       something of telling me that or saying it's
12       not clear or he doesn't understand.  If he
13       doesn't understand it's not for you to raise
14       an objection to signal to him to say he
15       doesn't understand.
16              MR. SCHEUERMAN:  I have to raise an
17       objection if it's a bad question.
18              MR. STERN:  You can object to form.  If
19       I want to rephrase it I may ask you to
20       explain why -- what the problem with the form
21       is.  But you have preserved your objection by
22       saying objection to the form.
23              MR. SCHEUERMAN:  I will make the
24       objections as I see fit and interpret the
25       rules.
```

- David Friedlander -

1            MR. STERN:  You can make any objections

2       you want.  But if they are outside the bounds

3       of the guidelines then it's not proper.

4            Let's take a five-minute break.

5            (Whereupon there was a recess in the

6       proceedings from 12:07 to 12:09 p.m.)

7   BY MR. STERN:

8       Q.    Is there someone at HRRG who is in

9   charge of the management of this lawsuit?

10      A.    Yes.  Me.

11      Q.    Is there anyone that you have to report

12  to with respect to the management of this case?

13      A.    No.

14      Q.    What I understood in your response to

15  my question about whether ARS is named in the

16  contract between HRRG and Genesis, I was left with

17  the impression that ARS is not all of HRRG.  Is

18  ARS -- is referring to ARS refer to HRRG as the

19  entire company?

20      A.    No.

21      Q.    What does ARS do that the rest of HRRG

22  does not do?

23      A.    ARS performs collection services

24  related to more severely delinquent accounts,

25  older accounts than the accounts HRRG collects

- David Friedlander -

Page 74

```
 1    for.
 2         Q.    Are the employees of HRRG -- excuse me,
 3    withdrawn.
 4               Are the employees of ARS separate and
 5    distinct from employees of HRRG?
 6         A.    Yes.
 7         Q.    Does ARS occupy space that is separate
 8    and apart from space occupied by HRRG?  And by
 9    "space," I mean like office space where it
10    conducts its business.
11         A.    Yes.  It's contiguous space.  It's in
12    the same building and area within the building,
13    but it is not -- it's a separate space.
14         Q.    And it has its own structure of
15    hierarchy of management?
16         A.    Yes.
17         Q.    You are president of HRRG; correct?
18         A.    Yes.
19         Q.    And so that includes HRRG of which part
20    of that is ARS?
21         A.    Yes.
22         Q.    I would assume that there are multiple
23    ways to measure the size of a debt collection
24    business; by that, just for instance, number of
25    accounts, total of balances that are due on
```

- David Friedlander -

1    accounts, total amount that's actually collected

2    at any given period.  Would you agree those are

3    different ways that one could measure the size of

4    a debt collection business?

5         A.    Yes.

6         Q.    Okay.  Is there a way to measure the

7    size of the business that ARS does compared to the

8    remainder of what HRRG does?

9         A.    Yes.

10        Q.    How would you do that?

11        A.    There's a separation of accounts that

12   are placed in collections with HRRG as opposed to

13   the accounts placed with ARS.  So the results of

14   the two business units could be measured

15   separately based on the placement of those

16   accounts.

17        Q.    Are they, in fact, measured separately?

18        A.    Yes.

19        Q.    Do you know -- can you relate either by

20   way of percentages or fractions of how much

21   overall HRRG's business is ARS's business?

22        A.    Yes, I could estimate.  It would be a

23   very rough estimate.

24        Q.    If you -- with that understanding, what

25   would that estimate be?

- David Friedlander -

1      A.    I would estimate ARS to be about a

2    third the size of HRRG.

3      Q.    And if you wanted to know more

4    specifically or a more accurate number, what would

5    you look at?  Are there documents, records, or

6    reports that you could look at to get a more

7    accurate number?

8      A.    Yes.

9      Q.    What are those documents that you would

10   look at?

11     A.    They would -- there are multiple

12   documents that would house that information, but

13   the financials.

14     Q.    How often are the financials prepared?

15     A.    They are updated monthly.  There are

16   separate reports that are run each month end.

17     Q.    So you could take -- for any given

18   month you could take the reports for that month

19   and have a fairly accurate number of what

20   percentage of HRRG's business is ARS?

21     A.    Yes.

22     Q.    And when you are roughly estimating a

23   third, month to month would -- you know, to what

24   extent do you think that would vary off of that

25   rough estimate, or would it stay pretty much in

- David Friedlander -

Page 77

1    that range?

2        A.    It would stay pretty much in that

3    range.

4        Q.    So it doesn't fluctuate that much?  It

5    doesn't fluctuate greatly?

6        A.    No.

7        Q.    Obviously "greatly" is a loose term,

8    but okay.

9              Are all of the accounts that ARS

10   attempts to collect accounts that are transferred

11   from the other side of HRRG's business?

12       A.    I'm not sure.  Could you explain what

13   you mean by "the other side of HRRG's business"?

14       Q.    Sure.  From what I understood from your

15   testimony is that ARS addresses the more severely

16   delinquent accounts; is that a fair statement?

17       A.    Yes.

18       Q.    Do accounts get placed directly with

19   ARS or do they get placed with HRRG, and then once

20   the account is evaluated for the severity of their

21   delinquency then the more severe ones are placed

22   with ARS?

23       A.    The accounts are first placed with

24   HRRG.

25       Q.    Because they are not delinquent yet?

- David Friedlander -

Page 78

1        A.    Then at some point after placement with

2   HRRG the accounts are evaluated and returned to

3   the HCFS billing system.

4        Q.    Okay.

5        A.    And a portion of those accounts are

6   then transferred in electronic file to be worked

7   by ARS.

8        Q.    Okay.  And when you say they are

9   evaluated, is that done by way of formulas or

10  algorithms, or is it done by an individual, you

11  know, looking at case-by-case basis or both?

12       A.    It's done based on parameters that have

13  been set up.

14       Q.    Okay.

15       A.    Those parameters may change from time

16  to time.

17       Q.    Understood.  And that's a judgment

18  called made by?

19       A.    By a person.

20       Q.    By a person.  Then it's programed into

21  your system to make those determinations?

22       A.    Yes.

23       Q.    And that's all done in-house?  That's

24  not done by outside third-party vendors; correct?

25       A.    Correct.

- David Friedlander -

1      Q.    With respect to -- I wanted to finish

2   up with Genesis and the speech analytics that you

3   referred to it.

4      A.    Yes.

5      Q.    Is that done -- is that just purely a

6   quality control and training kind of function that

7   that serves?

8      A.    Yes.

9      Q.    Because I'm imaging what's happening,

10   it's analyzing, you know, its speech.  It's

11   recognizing the speech in those phone calls.  And

12   then based upon, again, whatever parameters you

13   set up in terms of what was discussed, maybe words

14   that are used, a whole bunch of analytics, voice

15   volume and how rapidly someone is speaking and

16   that kind of information goes into and is figured

17   out this is something that needs to be reviewed or

18   maybe corrected or we can improve in this way or

19   we need to talk to this agent, you know, and

20   compliment them because of the job they did, that

21   kind of stuff; that's what it's used for?

22      A.    Yes.

23      Q.    You are aware that this case involves

24   voicemail messages that were left for the Levins

25   by HRRG?

- David Friedlander -

Page 80

1          A.     Yes.

2          Q.     The voicemail messages left were either

3     prerecorded or computer-generated; correct?

4          A.     I believe so.

5          Q.     And just to be clear, to contrast that

6     from an actual agent being on the phone, and the

7     phone rings, voicemail comes on, and an agent left

8     a message; correct?

9          A.     Can you start the question again?

10         Q.     I was saying -- I was contrasting, you

11    know, a prerecorded message from a live agent is

12    actually leaving, you know, is on the line and

13    leaves the message, speaks the message live so

14    it's being recorded on the voicemail system is a

15    human being speaking to create that recording?

16         A.     Yes.  I was thinking about when you

17    said -- I think you said computer-generated.  And

18    we don't use any computer-generated messages.

19         Q.     Okay.  But it's a prerecorded?

20         A.     It would be a prerecorded message as

21    opposed to a live human leaving a message.

22         Q.     You have a vendor who provides the

23    messages itself, in other words, does the

24    recording?

25         A.     We use a vendor to record the messages

- David Friedlander -

Page 81

1    we leave, yes.

2         Q.    And do you use a vendor to draft the

3    script of what's being said?

4         A.    No.

5         Q.    So that's -- the script is prepared

6    in-house?

7         A.    Yes.

8         Q.    And the script that was used in the

9    messages left for the Levins, has that script been

10   changed since the filing of this lawsuit?

11        A.    I don't believe it has.

12        Q.    Who approved the use of the script that

13   was used for the Levins' messages?

14        A.    I would say more than one person

15   reviewed it.  Ultimately I approved it.

16        Q.    When did HRRG first start using the

17   message that was left for the Levins?

18        A.    I don't recall the date that the

19   message was being -- was first used.

20        Q.    Were the calls placed by an outside

21   vendor?

22        A.    Not that I'm aware of.

23        Q.    Does HRRG or -- I don't know if it's

24   separate from ARS or not.  Does HRRG have its own

25   dialers?

- David Friedlander -

1      A.    Yes.

2      Q.    So is it correct that the calls placed

3  to the Levins did not arise each time a call was

4  placed by a human being saying let's place a call

5  to the Levins now, but instead the Levins -- the

6  phone number was part of a batch of accounts on

7  which calls were going to be placed and were

8  queued into the dialer system?

9          MR. SCHEUERMAN:  Objection.  How is

10         this relevant to the two issues of the real

11         name issue?

12         MR. STERN:  It has to do with the use

13         of the ARS name.

14         MR. SCHEUERMAN:  What's the proffer?

15     A.    Well --

16         MR. SCHEUERMAN:  Stop.  I'm going to

17         object.  I object.  Don't answer the

18         question.  If you can go outside, I want to

19         see what the proffer is for this line.

20         MR. STERN:  You can stay right here.

21         The proffer is the voice messages say ARS.

22         MR. SCHEUERMAN:  Okay.

23         MR. STERN:  So the voice messages

24         reflect evidence of the use of ARS.  All

25         right?  Which is the issue -- the issue as

- David Friedlander -

```
 1        defined by the court is the use of, quote
 2        unquote, ARS.
 3              MR. SCHEUERMAN:  So what's -- what are
 4        you trying to get at, that they say ARS in
 5        the message?  What's the proffer?
 6              MR. STERN:  I'm trying to find out how
 7        they use ARS.
 8              MR. SCHEUERMAN:  What they say in the
 9        message?
10              MR. STERN:  No.
11              MR. SCHEUERMAN:  What's the issue?
12              MR. STERN:  I know they say in the
13        message, they use ARS.  I'm trying to find
14        out how they use it.
15              MR. SCHEUERMAN:  What you don't mean
16        "how they use it"?
17              MR. STERN:  Exactly what I'm getting
18        at.  Exactly what we are talking about.  Is
19        it a dialer or --
20              MR. SCHEUERMAN:  How is using a
21        dialer --
22              MR. STERN:  -- or individual.
23              MR. SCHEUERMAN:  How does using a
24        dialer, how is that relevant to this?
25              MR. STERN:  It goes to the general
```

LEVINS084

- David Friedlander -

Page 84

```
 1        usage of the name.
 2             MR. SCHEUERMAN:  If they are using a
 3        dialer or not, if the message is the same it
 4        doesn't matter.  So using a dialer or someone
 5        physically picking up and calling --
 6             MR. STERN:  So if you want to stipulate
 7        that we can exclude that any fact as to
 8        whether HRRG uses the name ARS in messages to
 9        any other consumer, then we can take that out
10        of the case.
11             MR. SCHEUERMAN:  I'm not stipulating
12        anything.
13             MR. STERN:  I'm trying to find out
14        about the facts about that.
15             MR. SCHEUERMAN:  There's no class --
16        what are you trying to figure out, whether
17        they use the same message with other
18        consumers?  You're talking about use of a
19        dialer.
20             MR. STERN:  I don't know what I'm
21        talking about because he hasn't answered the
22        question.
23             MR. SCHEUERMAN:  I object.  You can
24        mark that down.
25             MR. STERN:  You are not going to let me
```

- David Friedlander -

1      ask him how they use this voice message?  You

2      are not going to let me ask him how they do

3      that?

4            MR. SCHEUERMAN:  That's not your

5      question.

6            MR. STERN:  The question is related to

7      the usage.

8            MR. SCHEUERMAN:  What's the question

9      you want to use?

10           MR. STERN:  You can't ask -- make me

11     ask the question you want me to ask.

12           MR. SCHEUERMAN:  I'm not.

13           MR. STERN:  I can ask the question to

14     get to the facts the same way.

15           MR. SCHEUERMAN:  I object.  It's beyond

16     the scope based on what I heard.

17           MR. STERN:  Let's mark it.

18           I can't ask him anything about the

19     dialer and how they use the dialer; right?

20           MR. SCHEUERMAN:  No.  What's the

21     proffer?

22           MR. STERN:  I want to be clear.

23           MR. SCHEUERMAN:  What's the proffer?

24           MR. STERN:  I made the proffer already.

25     I'll ask the question.

- David Friedlander -

1   BY MR. STERN:

2       Q.    Does the dialer use an IVR system?

3       A.    No.

4       Q.    Does the dialer or any other mechanism

5   allow for detecting whether or not a phone call is

6   answered by a live person or by a machine?

7       A.    Yes.

8       Q.    Is there more than one prerecorded

9   message that HRRG uses when leaving a voicemail

10  message?

11      A.    Yes.

12      Q.    How many currently are used?

13      A.    I don't know.

14      Q.    How many of them identify the caller as

15  ARS?

16      A.    I don't know.

17      Q.    Do all of them identify the caller as

18  ARS?

19      A.    No.

20      Q.    Was the Levins' debt placed with HRRG

21  but not with ARS at any point in time?

22      A.    Yes.

23      Q.    Was it placed with HRRG but not with

24  ARS prior to or after it was placed with ARS?

25      A.    Prior to.

- David Friedlander -

1      Q.    The copy of the letter that was sent to
2   the Levins that appears as ARS4 in D-2, you said
3   that the return address was an address for ARS;
4   correct?
5      A.    Yes.
6      Q.    Does the non-ARS part of HRRG send
7   collection letters?
8      A.    Can you just go back to the -- does the
9   non what?
10     Q.    The non-ARS part of HRRG --
11     A.    Okay.
12     Q.    -- use collection letters?
13     A.    Yes.
14     Q.    And they use the same vendor?
15     A.    Yes.
16     Q.    And do they use the same return
17  address, the same PO Box that's reflected in ARS4?
18     A.    No.
19     Q.    Do letters sent by the mail vendor ever
20  get returned undelivered?
21     A.    Yes.
22     Q.    What happens with those undelivered
23  letters?
24     A.    They go -- some go back to the letter
25  vendor, some are returned to our office in

- David Friedlander -

1    Sunrise.

2         Q.    Why would some be returned to the

3    vendor and some come back to the office?

4         A.    It depends what -- it depends on a

5    number of factors.  But it could be sent back as

6    the result of being non-deliverable or it could be

7    sent back as the result of someone not being at

8    the address that we are sending the letter out to.

9         Q.    So it depends on what's -- what the

10   post office put on the envelope; is that fair?  Is

11   that one of the factors?

12        A.    Yes.  The post office determines what

13   happens with the return mail.

14        Q.    Sometimes the post office will put a

15   label on with a forwarding address but saying the

16   forwarding address had expired, is that one of

17   the -- correct?

18        A.    Not normally, no.

19        Q.    Okay.  Are all return envelopes checked

20   for -- to re-verify the address?

21        A.    No.

22        Q.    Is there any information placed in the

23   account notes when an envelope is returned?

24        A.    Yes.

25        Q.    Are all return envelopes -- is the fact

- David Friedlander -

Page 89

1    that an envelope is returned always noted in the

2    account notes?

3         A.    I wouldn't say always, but we try to

4    make sure that all return mail is processed and

5    noted in the system.

6         Q.    And what happens to returned mail is

7    all determined in-house; in other words, within

8    HRRG as an initial matter; correct?

9         A.    Yes.

10        Q.    I understand some of it goes back to

11   the mail vendor so the mail vendor may have

12   followup subsequent.  But initially it's all

13   in-house, as you said?

14        A.    I said it was determined at HRRG.

15        Q.    Yes.  Initially?

16        A.    Yes.

17             MR. STERN:  Off the record.

18             (Discussion off the record.)

19             (Whereupon there was a recess in the

20        proceedings from 12:39 to 1:42 p.m.)

21   BY MR. STERN:

22        Q.    Do you have D-3 in front of you?  It's

23   the answers to interrogatories.

24        A.    Yes.

25        Q.    Let's go back to D-2.  Drawing your

- David Friedlander -

1    attention to ARS7 through 12.  You had referred

2    earlier in your testimony to account notes.  Is

3    ARS7 through 12 the account notes for the debt ARS

4    tried to collect from the Levins?

5         A.    This is a printout for the account

6    notes, yes, for the Levins.  80864955 is the

7    account.

8         Q.    Does it show on -- you said it's a

9    printout of the account notes.  Referring to them

10   as the account notes is not accurate.  It's a

11   printout of the account notes.  The account notes

12   are maintained electronically?

13        A.    Yes, that's true.

14        Q.    You made that distinction.  If I

15   referred to these pages as the account notes, that

16   would not be accurate; correct?

17        A.    I said this is a printout of the

18   account notes.  It's an accurate representation of

19   the account notes at the time it was printed up.

20        Q.    On page ARS7, you see that not quite --

21   about halfway down the page on the left-hand side

22   in all capital letters it has the word NOTES?

23        A.    Yes.

24        Q.    And are the notes all the text which

25   follows and follows all the way through ARS12

- David Friedlander -

1    until it says end of report?

2          A.    Yes.

3          Q.    And is there a description you have

4    for, I don't know, the text that precedes these

5    notes on ARS7?  Do you see where -- is there a

6    name for that section?  I don't know if it's one

7    or more sections on ARS7, in other words, which is

8    above the notes.

9          A.    Yes, I see that section.

10         Q.    Okay.

11         A.    Is there a name for that?  No, we don't

12   use a specific name for that section.

13         Q.    Okay.  When it says -- I want to go

14   through this in some detail.  I have some

15   questions about these -- the printout of the

16   account notes.

17         A.    Okay.

18         Q.    I'll try to do it in the order it

19   appears.  It says -- there's a line that says,

20   "collector HSA0 house route," what does that mean?

21         A.    It is a term that is referencing the

22   collector route; that it is not assigned to an

23   individual agent, it is a house route, which would

24   be meaning the agency.

25         Q.    Okay.  Let me ask you, in the upper

- David Friedlander -

1    left it's got a date there of 2-17-17; do you see

2    that?

3        A.    Yes.

4        Q.    And a time of 10:33 a.m.?

5        A.    Yes.

6        Q.    Is that the date and time this printout

7    was made?

8        A.    Yes.

9        Q.    And it's PJB, is that the initials of

10   the individual who generated the report?

11       A.    Yes.

12       Q.    Generated the printout?

13       A.    Yes.

14       Q.    Do you know who PJB is?

15       A.    Yes, I do.

16       Q.    Who is that?

17       A.    A Patrick Brennan.  Pat Brennan.  Pat

18   is short for Patrick.

19       Q.    Is Patrick Brennan an employed by HRRG?

20       A.    Yes.  He's employed by -- I'm going to

21   take back the yes on that.

22       Q.    Okay.

23       A.    And say I believe he's an HRRG

24   employee.

25       Q.    When you referred to agents, there are

- David Friedlander -

1    agents who work within ARS and there are agents

2    who work within HRRG but not within ARS; correct?

3        A.    Yes.

4        Q.    Are those -- is an agent who works for

5    HRRG but not ARS and an agent who works for ARS

6    paid by the same entity?

7            MR. SCHEUERMAN:  Objection to form.

8        How is this related to the issues, the true

9        name issue?

10           MR. STERN:  Can you please step out?

11           MR. SCHEUERMAN:  You can step out.

12           (Witness leaves the room.)

13           MR. STERN:  One aspect of any

14       businesses transaction is the payment of its

15       employees.  If all the employees are paid by

16       HRRG with no designation of ARS, that's

17       relevant to whether ARS is a name under which

18       HRRG usually transacts business.  If it

19       doesn't pay its employees -- some employees

20       as ARS and others as HRRG, I think that is a

21       fact relevant to whether or not --

22           MR. SCHEUERMAN:  Okay, I agree.

23       Anything else for that line?

24           MR. STERN:  I don't know where it's

25       going to go.

- David Friedlander -

Page 94

1          MR. SCHEUERMAN:  In that aspect I
2      agree.  I may not agree with everything else
3      you are going to say related to this.
4          (Witness returns.)
5          MR. STERN:  Can you read that back,
6      please?
7          (Record read.)
8      A.    Yes.
9      Q.    Who is that entity?
10     A.    Ameriteam Services.
11     Q.    Can you spell that?
12     A.    A-M-E-R-I-T-E-A-M Services.
13     Q.    Is Ameriteam Services an affiliated
14  company with HRRG and HCFS?
15     A.    I don't know.
16     Q.    Is Ameriteam an employee leasing
17  company?
18     A.    I don't know.
19     Q.    Does Ameriteam manage the agents?
20     A.    No.
21     Q.    Does HRRG pay money to Ameriteam that's
22  used to pay the agents?
23     A.    I don't know.
24     Q.    Are agents paid either a salary or an
25  hourly wage or commission or a combination?

- David Friedlander -

Page 95

1      A.    A combination.

2      Q.    Is Ameriteam like a payroll service?

3      A.    I don't know what they are.  I just see

4  the name on the checks.

5      Q.    By whom are you paid?

6      A.    My checks have Ameriteam Services on

7  them.

8      Q.    Do you receive a W-2 form every year?

9      A.    Yes.

10      Q.    Do you know whose name is the employer

11  on your W-2?

12      A.    Yes.  I think it's Healthcare Revenue

13  Recovery Group --

14      Q.    Do you know --

15      A.    -- LLC.

16      Q.    I'm sorry.  Do you know whose name

17  appears as the employer on the W-2s that are

18  issued to the agents?

19      A.    I believe it's also Healthcare Revenue

20  Recovery Group, LLC.

21      Q.    Is there any information different in

22  terms of identifying the employer depending on

23  whether an agent is working within ARS or not

24  working within ARS but working for HRRG?

25      A.    I'm not sure.  I think there is.  I'm

- David Friedlander -

1   not sure what name is on their checks as far as

2   the, you know, the subgroup.

3      Q.   When ARS receives payments from

4   consumers on the debts, where do those payments

5   go?

6      A.   The payments are directed to a lockbox

7   in Cincinnati, Ohio.

8      Q.   You mean for mailing checks?  Is that

9   what you mean when you say payments are directed

10   to a lockbox?

11      A.   Yes.

12      Q.   Where do they get deposited?

13      A.   They get deposited into Fifth Third

14   Bank.

15      Q.   Whose account?

16      A.   Whatever the lockbox number is that's

17   on the remittance that comes with the check.

18      Q.   And what does that lockbox number

19   represent?

20      A.   The lockbox number would represent the

21   business unit that is collecting the money.

22      Q.   So is that the billing company or the

23   healthcare provider?

24      A.   There are lockboxes for the billing

25   company and there are lockboxes associated with

LEVINS097

- David Friedlander -

Page 97

1    Healthcare Revenue Recovery Group and separate

2    lockboxes for ARS.

3        Q.    Okay.  If a payment is made by a credit

4    card on an account that's been collected by ARS, I

5    understand there's language in -- either on your

6    website or in your letter materials which state

7    that ARS will appear on the consumer credit card's

8    statement; are you aware of that?

9        A.    Yes, I am.

10       Q.    When ARS takes a credit card payment,

11   is that payment processed through a merchant

12   servicer?

13       A.    Yes.

14       Q.    Is the same merchant servicer that

15   process payments made on an account being

16   collected by HRRG but not ARS?

17       A.    Yes.

18       Q.    Is it the same merchant servicer for

19   both?

20       A.    Yes.

21       Q.    Is there a contract for the merchant

22   servicer's services?

23       A.    Yes.

24       Q.    Who are the parties to the contract?

25       A.    The processor Billing Tree.  And the

- David Friedlander -

Page 98

```
1    contracts are between Billing Tree and HRRG, and
2    separate contracts between Billing Tree and ARS.
3         Q.    Who signs the contract on behalf of
4    HRRG?
5         A.    I sign it.
6         Q.    And who signs the contract on behalf of
7    ARS?
8         A.    I sign it.
9         Q.    When you sign on behalf of ARS, is
10   there any designation of ARS and HRRG?
11        A.    In my signing it?
12        Q.    Yes.
13        A.    I don't make a distinction when I sign.
14        Q.    So when you sign the contract with ARS
15   you are signing as president of HRRG?
16        A.    I would just sign as president.  The
17   ARS would be above where I would sign it.
18        Q.    But ARS is not a separate entity;
19   correct?
20        A.    Correct.
21        Q.    It's a group or, I don't know how you
22   would term it, a division, a group, a section, a
23   team; how do you refer to it?
24        A.    I refer to it as a division, but it's a
25   separate business unit.
```

- David Friedlander -

Page 99

```
 1        Q.    It's a separate business unit but it
 2   doesn't have a separate corporate entity; correct?
 3        A.    To tell you the truth, I'm not sure if
 4   they have a separate tax ID for ARS and HRRG.
 5   They may, I'm not sure.
 6        Q.    Okay.  And whether they have a separate
 7   ID number, you understand a single -- withdrawn.
 8             I'm sure counsel is going to object
 9   when we start talking about the legal
10   distinctions.  But do you understand that a
11   limited liability company and a corporation are
12   treated as if it were a person with respect to
13   having certain legal rights; do you understand
14   that concept?
15             MR. SCHEUERMAN:  Objection to form.
16        A.    Yes.
17        Q.    As I understand your testimony, as well
18   as the information that's been provided by counsel
19   in this case, is that ARS Account Resolution
20   Services is an alternate name for HRRG and we have
21   looked at that certificate.  And we have also
22   talked about that the letters A-R-S is just a
23   short version of ARS Account Resolution Services.
24   So my understanding is that ARS Account Resolution
25   Services is not a separate legal entity; in other
```

- David Friedlander -

1    words, it's treated as a person, the same way as a

2    corporation or LLC is treated as a person?

3              MR. SCHEUERMAN:  Objection to form.  I

4         object to form.

5    BY MR. STERN:

6         Q.    The distinction I'm making in what I

7    just described --

8              MR. SCHEUERMAN:  I object to form.  I'm

9         going to put the basis on.  If you want him

10        to step out I'm going to put the basis for

11        the objection.

12             MR. STERN:  You don't have to.  I don't

13        need him to --

14             MR. SCHEUERMAN:  Yes or no?

15             MR. STERN:  I'm not withdrawing the

16        question.  You observed your objection.

17             MR. SCHEUERMAN:  I need to put the

18        basis on.  Do you want him to step out or

19        put --

20             MR. STERN:  Please step out.

21             (Witness leaves the room).

22             MR. SCHEUERMAN:  It calls for a legal

23        conclusion.  You can come back in, David.

24             MR. STERN:  Not yet.  Hold on a second.

25        The problem I have is that the position that

- David Friedlander -

1     has been presented is one of legal

2     significance as to whether it's shortened as

3     ARS or longer as ARS Account Resolution

4     Services is a division, or as he described

5     it, a business separate unit.  But it's not a

6     separate legal entity.  If you have a witness

7     that doesn't understand the distinction it's

8     very difficult for me to get the information

9     that I need.

10          MR. SCHEUERMAN:  Well --

11          MR. STERN:  Because that's the position

12     you have taken.  He doesn't understand what

13     alternate names are.  He doesn't understand

14     the distinction between that HRRG is a formed

15     limited liability company in the State of

16     Florida and, therefore, it's treated as a

17     legal person versus a business unit.  He

18     doesn't understand the distinction, and

19     that's a problem I think.

20          And I think the scope of the topics,

21     and I can go through them, clearly requires

22     that somebody is here who understands that

23     distinction.

24          MR. SCHEUERMAN:  Ask the witness that.

25          MR. STERN:  I have asked him, he

- David Friedlander -

1    doesn't understand that.

2              MR. SCHEUERMAN:  I didn't tell him not

3         to answer.

4              MR. STERN:  He doesn't understand.

5              MR. SCHEUERMAN:  You are telling me.

6         The record reflects what the record reflects.

7              MR. STERN:  I know it was a lengthy

8         explanation before the question which he

9         objected to.  But if you can read that back.

10             (Previous record read.)

11   BY MR. STERN:

12        Q.    Mr. Friedlander, I had given an

13   explanation and then asked you a follow-up

14   question based upon what I was explaining.  Your

15   counsel raised an objection that was placed on the

16   record.  I'm going to have the court reporter read

17   back the explanation again and I'll follow up with

18   the question.

19             (Previous record read.)

20   BY MR. STERN:

21        Q.    Do you understand the distinction

22   between use of an alternate name and a legal

23   entity that I'm talking about in that explanation?

24        A.    No, I don't really understand.

25        Q.    Okay.  In your mind, is either ARS or

- David Friedlander -

Page 103

1    ARS Account Resolution Services a separate entity

2    from HRRG?

3                MR. SCHEUERMAN:  Same objection.  You

4        can answer.

5        A.    I don't think it is.

6        Q.    Do you agree that ARS and ARS Account

7    Resolution Services are names that HRRG applies to

8    the separate business unit that you described that

9    handles the more delinquent debts?

10       A.    Yes.

11       Q.    We can get back now to the printout of

12   the account notes on D-2, page 7.

13                Moving down, there's a line that begins

14   status.  I think you identified that's the account

15   number that was applied to this account.  And then

16   it's followed by the word disposition, colon, and

17   it says -- can you explain what that -- those next

18   words mean?

19       A.    Yeah.  It's just a descriptor for the

20   disposition, which is the computer classification.

21   Like a 3ATY means represented by an attorney.

22       Q.    Okay.  So the 3ATY is sort of a code?

23       A.    Yes.

24       Q.    And the code means represented by

25   attorney.  So both appear there?

- David Friedlander -

1     A.    Yes.

2     Q.    And what does "wait" mean, and it's

3  followed by a date?

4     A.    That would hold activity until a

5  certain date, is what I believe that means.

6     Q.    Okay.  The next line starts, it says

7  debtor and it says name Levins, **REDACTED** followed

8  by what I presume is what ARS understood to be her

9  social security number, followed by a phone number

10  for her.

11     A.    Yes.  That's the -- yes.

12     Q.    So on the next line it says RP, what

13  does that mean?

14     A.    Responsible party.  **REDACTED** is the

15  patient, Elaine is the responsible party.

16     Q.    Okay.  Is there any way that you can

17  tell from, I guess you can from further down where

18  it says born.

19     A.    Date of birth of the patient.

20     Q.    You would know the patient is a minor.

21  You would be able to tell that from the date of

22  birth?

23     A.    From the date of the birth, yes.

24     Q.    And then a few lines down, I assume

25  that it's a shortened form for client, CLNT?

- David Friedlander -

Page 105

1          A.     Yes.

2          Q.     Followed by a six-digit number, and

3     then a reference -- that's the identification of

4     the provider, the healthcare provider?

5          A.     That's the -- our client code, yes.

6          Q.     Is that a unique client code, a name

7     for -- that ARS uses, or is that -- does that sort

8     of get carried forward from the billing company?

9          A.     It is one of the data elements that

10    comes from the billing company.

11         Q.     And on the next line it starts with the

12    word list.  What does that -- there's a date under

13    that, November 24, 2015.  What does that

14    represent?

15         A.     That's the date that the account was

16    placed with ARS.

17         Q.     And the next one, SRD, September 2,

18    2014.

19         A.     That's the service date.  The date the

20    physician services were provided.

21         Q.     And LTRS, is that the number of letters

22    that were sent?

23         A.     Yes.

24         Q.     By ARS?

25         A.     Yes.

- David Friedlander -

1      Q.    And then there's the word time, and it

2    says 5; what does that mean?

3      A.    I don't know.

4      Q.    And call 67, is that the number of

5    calls placed to the responsible party?

6      A.    That is, I believe, the number of call

7    attempts.

8      Q.    The next word is con zero; what does

9    that mean?

10      A.    I don't know.

11      Q.    And the balance, I assume that's the

12    amount of the balance shown on the account?

13      A.    Yes.  The remaining balance on the

14    account.

15      Q.    The next -- I don't know if you call it

16    a subsection or not.  Moving down it says multiple

17    accounts.  Were there multiple accounts involved

18    here?

19      A.    No.

20      Q.    So the information that appears in the

21    few lines below that is just the same information

22    on the same debt, not a different debt; correct?

23      A.    Correct.

24      Q.    Let's move down to the section on

25    notes.  I observed that in the first column there

- David Friedlander -

1    are a few variations on the first page, it says

2    GAP.

3          A.    Yes.

4          Q.    And that proceeds until ARS9.  And then

5    there's GC.  GC is on 10.  On ARS 11 there's GC

6    and PJB.  And on 12 there's GC and PJB.  Am I

7    correct that the PJB refers to Patrick Brennan?

8          A.    Yes.

9          Q.    What do the others refer to?  The GA --

10         A.    GAP refers to Gregory Preston.

11         Q.    And GC?

12         A.    GC is a system generated transaction.

13         Q.    Does ARS perform any scrubs on any

14   accounts as a matter of course?

15         A.    Yes.

16         Q.    What scrubs do they perform?

17         A.    They perform scrubs to find

18   bankruptcies.

19         Q.    Is that the banco?

20         A.    Yes.  That's -- that's one of the

21   scrubs that they do, yep.  I think they do a

22   deceased scrub and they do a scrub for accounts

23   who are frequent litigants.  That's the web recon,

24   W-E-B  R-E-C-O-N, scrub.

25         Q.    We talked about the account was first

- David Friedlander -

Page 108

 1    listed on November 24, 2015.  And there's, I think
 2    rough count quickly, about seven lines that have a
 3    date of November 24, 2015 on page ARS07.  Do you
 4    see that?  Do you see those lines?
 5         A.    Yes.
 6         Q.    In there is the web recon that you just
 7    mentioned.
 8         A.    Yes.
 9         Q.    And is there any indication in any of
10    those notes as to the bankruptcy scrub or the
11    deceased scrub?
12              MR. SCHEUERMAN:  How is this relevant
13         to the true name issue?  Objection.  How is
14         that relevant?  Do you want him to step out?
15         I mean, we are going far afield here.
16              MR. STERN:  I am -- this is a document
17         that you produced in discovery.
18              MR. SCHEUERMAN:  Okay.
19              MR. STERN:  Not withstanding that if it
20         was not -- if it was outside the scope of
21         discovery maybe that would have been an
22         objection at the time you produced this.  I'm
23         trying to find out what this means.  I don't
24         know what it means, so I don't know if it's
25         related or not.  He just testified to scrubs

- David Friedlander -

1          that were done.  And so I'm just trying to

2          find out where that information comes from.

3              MR. SCHEUERMAN:  I object.  I mean, the

4          judge's order from yesterday says discovery

5          is limited to the true name issue at this

6          juncture.  I don't know how a bankruptcy

7          scrub is relevant to that issue.

8              MR. STERN:  I don't know until I can

9          find out.  I'm trying to find out what the

10         information is you provided to me.

11             MR. SCHEUERMAN:  I object.

12             MR. STERN:  If you don't want him to

13         answer.

14    BY MR. STERN:

15         Q.   Don't tell me where the bankruptcy

16    scrubs are or the deceased scrubs are.

17              Do you see there on ARS07 there's a

18    line with a date of November 25, 2015.  There's a

19    whole bunch and they are all dated 844.  So there

20    are a series of ones on the 25th that within the

21    line there are dates that predate November 24,

22    2015.

23         A.   Yes, I see that.

24         Q.   Okay.  And there is one that I see that

25    refers to -- has the word "letter" in the

- David Friedlander -

Page 110

1    description.  Do you see that one?

2        A.    Yes.

3        Q.    With an internal date of January 24,

4    2015, 12 p.m.  What letter is that?

5        A.    These are notes that were imported.

6    When ARS first loaded the account information

7    there are transactional notes that come over from

8    HRRG's system.  And this is all part of the notes

9    that are imported into the ARS record from HRRG's

10   actual transactional information.

11       Q.    Okay.  And is there --

12       A.    Some of the HRRG transactional

13   information is imported from the billing system.

14       Q.    Okay.

15       A.    So where it says -- on the line you're

16   talking about where it says credit letter sent to

17   994 --

18       Q.    Yes.

19       A.    -- that is a financial class change

20   that's taken place on the client billing system

21   before the account went to HRRG.  It is used for

22   historical purposes to know that certain processes

23   took place prior to the account making its way to

24   the collection agency and to that part of the

25   revenue cycle.

Page 111

1    Q.    Okay.  Now, let me ask you this:  A
2  number of the entries, we have the column with the
3  initials of the person or the GC -- I'm running
4  across the line -- a date, a time, and then we
5  start to have some text.  There's quite a number
6  that start with the letters HRG.
7    A.    Yes.
8    Q.    Does that indicate that the information
9  is information that was brought over from HRG?
10    A.    Yes, it does.
11    Q.    Are there other entries that are also
12  brought over from HRG that don't begin with HRG at
13  the beginning of the line?
14    A.    There are lines that are carried over
15  from the preceding line --
16    Q.    Right.
17    A.    -- that don't have HRG at the beginning
18  of the line.  There are the -- I think seven lines
19  up above that don't have the HRG that are not from
20  the HRRG record.
21    Q.    Okay.
22    A.    But for the most part, all of that data
23  going down to -- through where the time is 8:44,
24  11-25 at 8:44, that would, for the most part, be
25  all imported transactional notes that loaded when

- David Friedlander -

Page 112

1    the account first was placed with ARS.

2        Q.    Are there account notes that HRRG has

3    that preceded the placement of the account with

4    ARS?

5        A.    Yes.

6        Q.    And are all of those account notes

7    incorporated within the ones you just described?

8        A.    Not necessarily all the notes that HRRG

9    has.  Only the notes that are part of the data

10   interfaced that is imported --

11       Q.    Okay.

12       A.    -- at the time ARS first loads the

13   account.

14       Q.    Okay.  So if you turn to the ARS8.

15       A.    Yep.

16       Q.    Actually, I have a bunch of questions

17   mostly on this page about all those entries that

18   were imported or about some of the entries.

19            The first five lines refer to a series

20   of dates that occurred in March 2015 and times.

21   Do you know what those notes mean?

22       A.    Yes.

23       Q.    What do they mean?

24       A.    These are transactional notes.  The

25   TRNA -- these notes were imported into HRRG's

- David Friedlander -

Page 113

```
 1    system from their prior collection software

 2    system, which was CR Software.  The TRNA is an

 3    abbreviation for "telephone residence, no answer."

 4    And CMP01 is the calling campaign that was dialed,

 5    campaign 1.

 6         Q.    What's a calling campaign?

 7         A.    It's numbers that are within a calling

 8    list.

 9         Q.    When you say a "campaign," that

10    reflects -- so the very first one on ARS8, that

11    notes a record of a phone call having been placed

12    to Ms. Levins; correct?

13         A.    Yes.

14         Q.    Does it reflect -- on those calling

15    campaigns that's loaded into your -- I assume it's

16    computers but the telephone systems that you use

17    in-house, I think I referred to them as a dialer

18    before.  Correct, that's where it gets loaded?

19    You said there's a list that gets loaded into the

20    dialing system?

21         A.    No, I wouldn't -- I don't agree with

22    that.

23         Q.    When these calls are placed, are

24    these -- are agents individually picking up the

25    phone and dialing these numbers on one of these
```

- David Friedlander -

Page 114

1   campaigns or on this campaign?

2       A.    Agents are on the phone.  They are not

3   picking up the receiver of a phone.  They are

4   wearing headsets.  They are making and receiving

5   calls.

6       Q.    All right.  Is this call that's

7   designated on the first line a call that was

8   placed by -- let me step back so we are clear.

9            I assume what you are saying they are

10  on a headset.  They can place a call by something

11  on their screen shows them there's a phone number

12  and somehow they can click on something and the

13  call gets placed; is that correct, as opposed to a

14  manual telephone that they are pushing buttons?

15  Correct, is that how it's done when they place a

16  call?

17      A.    No, no.  That's not how it's done.

18      Q.    How does an agent place a call?

19           MR. SCHEUERMAN:  Objection.  Beyond the

20       scope of the discovery order.

21           MR. STERN:  It's not.  These are calls

22       placed by HRRG to my clients.

23           MR. SCHEUERMAN:  You're saying how --

24       how the manner in which they dial it --

25           MR. STERN:  I'm trying to describe --

- David Friedlander -

Page 115

1        he described the campaign.

2               MR. SCHEUERMAN:  How is that relevant

3        to whether they typically use ARS as a name?

4        How is that relevant?

5               MR. STERN:  We will find out -- once I

6        know how the call was placed, I can find out

7        what was -- how -- what was used.

8               MR. SCHEUERMAN:  What's your proffer?

9               MR. STERN:  Can you please leave the

10       room?

11               (Witness leaves the room.)

12               MR. STERN:  I'm going to say generally

13       again, first is any kind of activity of your

14       client and then that activity and whether

15       they are using HRRG or ARS or some other name

16       is relevant to the issues in this case.

17               MR. SCHEUERMAN:  An activity in

18       which --

19               MR. STERN:  Any activity that they

20       engage in.  What manner in which they use

21       that activity is relevant.  So HRRG, we

22       already know HRRG, whether it's the business

23       entity that's ARS or HRRG, it's all coming

24       from HRRG.  That's the only legal entity

25       here.

- David Friedlander -

Page 116

1             MR. SCHEUERMAN:  Why don't --

2             MR. STERN:  So if he called up -- if in

3      this campaign they called up and said HRRG

4      calling, that's evidence of them not using

5      ARS.  But I don't even know what it means,

6      this campaign.

7             MR. SCHEUERMAN:  I don't understand why

8      you can't simplify and ask him that.  If

9      during oral communications how did you

10     represent yourself, as ARS, as HRRG, or what,

11     or what oral communications do you -- I don't

12     understand.

13            MR. STERN:  Because I have a record

14     that you have provided to me of a specific

15     call on a specific date and time.  And I want

16     to know what that information is on that

17     specific call.

18            MR. SCHEUERMAN:  As to what --

19            MR. STERN:  Because we know there are

20     calls that they used ARS.  But I want to know

21     about this call.

22            MR. SCHEUERMAN:  As to whether someone

23     physically called or whether it was --

24            MR. STERN:  I don't know.

25            MR. SCHEUERMAN:  -- a message?

- David Friedlander -

Page 117

1          MR. STERN:  I don't know.  I don't know

2     yet.  He hasn't answered the question.  If

3     someone physically called, what script were

4     they provided?  How were they trained in

5     terms of what they were supposed to say?  I

6     don't know that.

7          MR. SCHEUERMAN:  But you are not asking

8     those questions.

9          MR. STERN:  I haven't gotten there yet.

10          MR. SCHEUERMAN:  You never seem to

11     be -- it doesn't seem like that's your end

12     game.

13          MR. STERN:  That is.

14          (Witness returns.)

15 BY MR. STERN:

16     Q.   Maybe try a different approach.  Maybe

17 a more general question.  Maybe I can get the

18 information I'm looking form.

19          You identified in that first line that

20 a call was placed to my client on March 3, 2015 at

21 6:49 p.m.  I'm trying to find out how was the call

22 placed and what information is there about what

23 happened during that call.

24     A.   Okay.  As we were saying, these are

25 notes that were imported from two systems before

- David Friedlander -

Page 118

```
1    the system that's --
2         Q.    You're currently using.
3         A.    -- we are on.  So those notes were from
4    when HRRG was collecting in the primary phase of
5    collections for this account from the Levins.
6         Q.    Right.
7         A.    The agent had a headset.  The number
8    would be selected to be dialed from the database
9    based on the parameters that are set up within
10   that system.  So a campaign would be an
11   integration that causes a phone number to be sent
12   from the database to be dialed by the dialer.
13   Before the agent can get that call they have to be
14   logged in, and they have to be available and
15   waiting for a call.  And they have to be the agent
16   who is logged into that specific calling campaign;
17   and they have to be the agent that's been waiting
18   for a call the longest with the specific skill set
19   needed to answer the call.
20        Q.    The system places the call and then
21   detects if there was a live answer; right?
22        A.    Yes.
23        Q.    A human being, somebody answered the
24   phone?
25        A.    Yes.
```

1      Q.    And then once it's answered the system

2   queues it up to --

3      A.    Subsecond transfer -- there's a

4   subsecond transfer to the agent with that skill

5   set who has been waiting the longest.

6      Q.    Okay.  Is there any information in the

7   account notes you have in front of you, the

8   printout, that reflects what happened during that

9   call that -- the first one on the first line of

10   ARS8?

11      A.    Yes.  The NA is what we call the result

12   code, and that's the code for no answer.  So the

13   call was made, it wasn't answered.

14      Q.    Had the call been answered and had

15   there been an available agent that was

16   transferred, would the agent have identified who

17   was calling?

18      A.    Are we speculating what might have

19   happened?

20      Q.    No.  I'm assuming there are training

21   policies and procedures about what happens when --

22   you have said it only goes to an agent who has the

23   proper skill set.  I assume there's some training

24   in terms of what happens.  So I assume when the

25   call connects the first thing that happens in some

- David Friedlander -

1    way that agent qualifies the person on the other

2    line as the debtor; is that the first thing that

3    happens?

4         A.    It depends on the call.

5         Q.    Okay.  Well, I mean for this campaign,

6    if the daughter -- if the patient had answered the

7    phone, isn't the first thing that the agent would

8    do is make sure they are talking to the

9    responsible party or her husband?

10        A.    Yes.  They would go through --

11        Q.    That's what I mean by qualifying.

12        A.    They would go through a process of

13   identifying that they have a right party on the

14   phone.

15        Q.    Okay.  A right party.  And then once

16   they do that, they would identify who is calling?

17        A.    Yes.  Assuming they have the right

18   party on the phone, they will then identify the

19   name of the company, yep.

20        Q.    And when this particular call was

21   placed, the one we are talking about on March 3rd

22   of 2015, had the phone been answered and it was a

23   right party, would the agent have identified HRRG

24   or ARS?

25        A.    At that time they would have identified

- David Friedlander -

Page 121

1    HRRG.

2         Q.    And the same is true for all calls

3    placed to the Levins prior to the listing date of

4    November 24, 2015; correct?

5         A.    No, that's not correct.

6         Q.    So would any calls placed to the Levins

7    prior to November 24, 2015, have identified the

8    caller as either ARS or ARS Account Resolution

9    Services?

10        A.    No.

11        Q.    But they may not have identified

12   themselves as HRRG; correct?

13        A.    They may not use -- are you asking if

14   they may --

15        Q.    From your answer before that no -- my

16   prior question, I was assuming you were saying --

17   I think I asked that they would have been

18   identified as HRRG and you said no, they wouldn't

19   necessarily have been, not all the calls.  Isn't

20   that what you were saying?

21        A.    Well, my "no" had to do with the timing

22   of when calls would have started.

23        Q.    Okay.

24        A.    Outbound calling on this -- on the

25   Levins didn't begin until December 10th, according

- David Friedlander -

Page 122

1    to these notes.

2         Q.    December 10th of what year?

3         A.    2015.

4         Q.    What about the --

5         A.    From ARS.  Those notes were -- those

6    notes that you are looking at were imported from

7    HRRG.  Calls from ARS did not start until December

8    10, 2015.

9         Q.    To your knowledge, has HRRG produced

10   notes from the collection of -- the collection of

11   the debt by HRRG prior to when it was placed with

12   ARS, other than what's incorporated in these

13   notes?

14        A.    To my knowledge, no.

15        Q.    Have you reviewed those notes in

16   preparation for this deposition?

17        A.    No.  Only to the extent that they are

18   on the imported --

19        Q.    The imported ones.

20        A.    I have reviewed the imported notes.

21        Q.    Right, understood.  If you go down on

22   ARS8, down about, I'll say the line that

23   immediately precedes the line that starts with the

24   word "machine."  Do you see that?

25        A.    I'm not following.  Where?

- David Friedlander -

Page 123

1        Q.     There's a line that's --

2        A.     We are on ARS8 or ARS9?

3        Q.     8.  I'm sorry.

4        A.     Okay.  On 8, yep.

5        Q.     It's the sixth line down.

6        A.     Okay.  And you are looking at the line

7    preceding that?

8        Q.     Yeah.  Actually, before we get into

9    that.  Lines two and three, other than the dates

10   and times it's the same as the first line;

11   correct?  It shows the transaction, no answer, and

12   it was the campaign 1.

13       A.     Yes.

14       Q.     And then the third and fourth lines --

15   excuse me, the fourth and fifth lines show the

16   transaction no answer, that's also a call placed

17   but there's no campaign noted; correct?

18       A.     Yes.

19       Q.     And would either of those five -- first

20   five lines have had some notation if there was a

21   message left?

22       A.     Yes.

23       Q.     So the absence of any notation means

24   there was no message left, there was no answer?  I

25   guess if there's no answer you couldn't leave a

- David Friedlander -

Page 124

1  message; right?

2        A.    Right.

3        Q.    I guess those questions were silly, I'm

4  sorry.

5              The next line is the one -- the fifth

6  one that says HRG, GC.

7        A.    Yes.

8        Q.    And that refers to -- in July there was

9  a call placed at 11:26, I assume that's a.m., and

10  shows the phone number and says, "left message,

11  answering machine."  Do you see that?

12        A.    Yes, I see that.

13        Q.    So where it says "left message,

14  answering machine," is that a prerecorded message

15  or a live message or can you not tell?

16        A.    That was an -- I believe that's a

17  prerecorded message that was left.

18        Q.    Okay.  That prerecorded message would

19  not have identified the caller as ARS at that

20  call?

21        A.    That's correct.

22        Q.    Would it have -- it would have

23  identified HRRG?

24        A.    Yes, it would have.

25        Q.    Okay.  To be clear, when you mentioned

- David Friedlander -

Page 125

1    before some of the lines go onto the next line, I

2    assume it's spacing?

3         A.    Yes.

4         Q.    That's a two-line entry for one note;

5    correct?

6         A.    Yes.

7         Q.    Now, the next following line, which

8    shows the date of July 24, 2015 at 11:26, is that

9    still relating to the same message?

10        A.    I believe so.

11        Q.    Do you know what it means when it says

12   "active account"?

13        A.    I see the line you are referring to.  I

14   believe it is, but I'm not a hundred percent sure

15   of that.

16        Q.    Okay.  The next line, which is -- the

17   internal date there is July 28, 2015?

18        A.    Yes.

19        Q.    Do you see it refers to letter number

20   seven, final notice?

21        A.    Yes.

22        Q.    Is that a letter sent to the Levins?

23        A.    These are still referencing

24   transactional information that was imported into

25   ARS from HRRG's system notes.  And that final

- David Friedlander -

1    notice "S" is a note pertaining to a letter sent

2    by HRRG to the Levins, yep.

3        Q.    And would that have been -- is there a

4    way to tell from these notes whether that was the

5    first letter that HRRG sent to the Levins?

6        A.    Is there a way to tell from these notes

7    that is --

8        Q.    Can you --

9            COURT REPORTER:  One at a time.

10       A.    -- by reading?  It's not a first

11   notice.  It's a final notice, it's not a first

12   notice.

13       Q.    So a fair implication from this

14   information is that there was at least one letter

15   prior to this letter that HRRG sent?

16       A.    Yes.

17       Q.    Is there any way you can tell from this

18   information how many were previously sent?

19       A.    No.  I'm looking back at prior notes,

20   and I can tell from looking at the prior notes

21   that there were -- there was an "A" notice sent,

22   there was a "B notice" sent prior to this.  So

23   there were two notices prior to this final notice

24   that went out that are indicated in these imported

25   notes --

- David Friedlander -

Page 127

1      Q.     Okay.

2      A.     -- you are looking at.

3      Q.     So let me ask you this, going back down

4   to ARS7, is that "A" notice, is that the entry on

5   1-27-15?

6      A.     Yes.

7      Q.     And is the "B" notice on 3-3-15?

8      A.     Yes.

9      Q.     Just to state what I think is obvious,

10  obviously the "A" notice and "B" notice made no

11  mention of ARS; correct?

12     A.     Correct.

13     Q.     On the -- picking up where we left off.

14  There's a line that says -- it starts requested;

15  do you see that?  And it looks like it's OLT7

16  index; do you see that line?

17     A.     Yes.

18     Q.     Is that referring to a different letter

19  form than the letter 7?

20     A.     No.

21     Q.     It's the same?

22     A.     It's part of that.  Yeah, it's just the

23  continuation of that line --

24     Q.     Got it.

25     A.     -- from above.

- David Friedlander -

Page 128

1        Q.    Does the -- on ARS7, remember there's

2   the list of calls placed of 67, it was up there?

3        A.    Okay.  I'm on ARS7.  Where are we

4   looking?

5        Q.    Calls.

6        A.    Okay.

7        Q.    And it's a 67.

8        A.    Yes.

9        Q.    And you testified those were the number

10  of calls placed?

11       A.    Call attempts is what I explained.

12       Q.    Call attempts, you're right.  I

13  apologize.  The call attempts.  Is that count,

14  that number 67, does that include the ones that

15  were imported from HRRG or is that 67 just the

16  call attempts by ARS?

17       A.    I'm not sure.  I believe it's just ARS.

18       Q.    So we started talking about this letter

19  7 on that one line, and then there's a series of

20  entries that are on July 28th at 11:30 p.m.

21            MR. SCHEUERMAN:  We are back on 8?

22            MR. STERN:  Yes, sorry, back on 8.  I

23       apologize for not saying that.

24  BY MR. STERN:

25       Q.    There's a handful of lines that have

- David Friedlander -

Page 129

```
1    that same date.  Again, I assume I'm correct that

2    those all refer to the same -- or notes about the

3    same letter being sent; correct?

4         A.    We are still in the imported --

5         Q.    Yeah, the imported ones.

6         A.    -- notes?  And what line are we talking

7    about after requested?  Old --

8         Q.    The line --

9               COURT REPORTER:  One at a time.

10              MR. STERN:  Sorry.

11   BY MR. STERN:

12        Q.    The line immediately above requested,

13   because the date and time is July 28th at 11:30.

14        A.    Yes.

15        Q.    And all the ones that continued down,

16   and they are contiguous, that have that entry of

17   July 28, 11:30, all relate to our notes about the

18   sending of that one letter?

19        A.    Yes.

20        Q.    So we get down to -- there's two

21   entries for July 29, 2015.  It appears the first

22   one is still about that same letter; is that

23   correct?

24        A.    Yes.

25        Q.    And what's the second one on July 29th,
```

- David Friedlander -

Page 130

1    it has the time of 9:04?

2         A.    I'm not sure what that means.

3         Q.    Maybe hopefully I can do these by -- in

4    a group.  There's a series of ones that start on

5    September 9th at 10:58 and go through to November

6    9th at 8:55.  Are all those notes concerning calls

7    that were attempted?

8         A.    They are either notes concerning a call

9    that was attempted when the account was with HRRG

10   or a continuation of the preceding line.

11        Q.    It actually looks like, in looking at

12   it, that there are -- they come sort of in pairs.

13        A.    Yes.

14        Q.    So it refers to four different phone

15   calls that were attempted?

16        A.    That's what it appears to me, yep.

17        Q.    And in each of those it reflects a

18   message was left; correct?

19        A.    Yes.

20        Q.    And in each of those four calls the

21   message that was left identified the caller as

22   HRRG and not ARS; correct?

23        A.    Yes.

24        Q.    Now, the first entry on November 11th,

25   what does that mean, "stop zero letters"?

- David Friedlander -

Page 131

1      A.    It's part of the process of returning

2   accounts to the billing system.

3      Q.    So I see there's -- I'm going to

4   estimate 10, 15 lines that are all dated November

5   11th at 10:42.  Is that -- all those notes relate

6   to the returning of the account to the billing

7   system?

8      A.    Yes.

9      Q.    Then we get to November 24th.  It looks

10  like there's three entries on November 24th at

11  9:04; do you see those?

12     A.    Yes.

13     Q.    And do those relate to then placing the

14  account with ARS?

15     A.    Yes.

16     Q.    Can you turn to ARS9, the next page?

17  Do you see beginning -- there is entries that

18  start on December 10th of 2015?

19     A.    Yes.

20     Q.    And then there seems to be similar

21  notations through the end of the page of paired

22  lines.  Do each of those paired lines reflect a

23  different call attempt in which a message was left

24  on the Levins' answering machine?

25     A.    I believe so.

- David Friedlander -

Page 132

1       Q.    And in each of those call attempts they
2   would have identified ARS as the caller?
3       A.    Yes, I believe so.
4       Q.    Is the same true for -- with respect to
5   the paired lines and the leaving messages as
6   reflected on ARS10?
7       A.    Yes.
8       Q.    And although on ARS11 not all of them
9   are paired lines but there looks to be like the
10   majority of those lines are the same kind of
11   paired lines, those also reflect that messages
12   were left?
13       A.    Only down to, I think, the fifth line,
14   and then you have PJB.
15       Q.    I see that.  But then it picks up on
16   9-20, do you see that, for the rest of the page?
17       A.    Yes.
18       Q.    That's why I said the majority of them,
19   just looking at it.  There's sort of three groups,
20   if you will --
21       A.    Yes.
22       Q.    -- the first five or six lines, and
23   then about four lines, and then probably more than
24   half of the rest of the page.
25       A.    Yes.

- David Friedlander -

Page 133

1     Q.    Let's talk about -- again, I assume if

2  we went through them one by one it would be the

3  same testimony, that those represent call attempts

4  in which a message was left and the message

5  identified the caller as ARS?

6     A.    Yes.

7     Q.    And those would all be the same

8  prerecorded messages?

9     A.    I'll say I think so.

10    Q.    Okay.

11    A.    Only because I don't know if there were

12 potentially other messages that may have been left

13 at some point in time.  But it does seem to

14 indicate that those are the same messages.

15    Q.    When you were describing a campaign

16 before and the process of the dialer making a call

17 and then if there's a live answer it hooks up the

18 agent that's been dormant the longest; right?  You

19 remember describing that?

20    A.    That's been waiting the longest.

21    Q.    What happens when it detects that it's

22 an answering machine?  Is there a standard

23 procedure that happens when it's an answering

24 machine, or is it -- does it vary?  What happens?

25    A.    When an answering machine is detected

- David Friedlander -

Page 134

1   by the system it looks at the settings in the

2   specific calling campaign and chooses the action

3   it performs based on the calling campaign

4   instructions definition.

5        Q.    Whether the account is with HRRG or

6   ARS, and obviously if it's ARS it's with HRRG, but

7   either way, is there ever a time when if an

8   answering machine is detected that it just hangs

9   up and doesn't leave a message?

10       A.    Yes.

11       Q.    I mean, that's intentional, that

12  sometimes you do that?

13       A.    Yes.

14       Q.    On page ARS11, the line entries that

15  are not records of call attempts, are those all

16  information relating to scrubs?

17       A.    No.

18       Q.    Which ones were not?  Are any of them

19  relating to scrubs?

20       A.    Yes.

21       Q.    Can you indicate which ones are and

22  which ones are not?

23       A.    There are lines that have the initials

24  LN.

25       Q.    Yes.

- David Friedlander -

1       A.    LN stands for Lexus Nexus.  That is

2   indicative of a different process where we are

3   looking for demographic information such as an

4   address update or a phone update.

5       Q.    Okay.   And the others are scrubs?

6       A.    Yes.

7       Q.    Obviously the ones that say banco,

8   that's a scrub?

9       A.    Yes.

10       Q.    If you turn to ARS12, the entries up

11   through and including the January 19, 2017, those

12   reflect call attempts where there was an answering

13   machine and a message -- prerecorded message was

14   left; correct?

15       A.    Yes.

16       Q.    And those messages identified the

17   caller as ARS?

18       A.    Yes.

19       Q.    And then there's one on February 7,

20   2017, does that notation mean there was no message

21   left?

22       A.    Yes.

23       Q.    And then there's two lines on February

24   10th of 2017, does that refer to notes that were

25   entered as to the statute of limitations date on

- David Friedlander -

Page 136

1    that debt?

2        A.    Yes, I believe so.

3        Q.    And then the remaining entries are on

4    February 17th of 2017, which is the date the

5    report was created.  Is that where the information

6    was put in about the fact that the Levins had

7    counsel?

8        A.    Yes.

9        Q.    Is there anything in the printout of

10   the notes which reflects whether there was any

11   credit reporting on this day?

12       A.    No, there isn't anything that I see

13   that indicates credit reporting.

14       Q.    Does the absence of that information

15   indicate there was no credit reporting?

16       A.    I don't know.

17       Q.    Okay.  Does ARS, excuse me, a debt

18   that's placed with ARS -- strike that.

19             Does ARS do any credit reporting --

20       A.    Yes.

21       Q.    -- for any accounts?

22             Do they do it for all accounts?

23       A.    No.

24       Q.    And what about accounts placed just on

25   HRRG but not with ARS, are there -- are those --

- David Friedlander -

Page 137

1    are there accounts that are credit reported?

2         A.    No.

3         Q.    HRRG does not credit report?

4         A.    That's correct.

5              MR. STERN:  Let's take a ten-minute

6         break.

7              MR. SCHEUERMAN:  Are we getting out of

8         here today?

9              MR. STERN:  That's one of the things I

10        want to look at and go over where I'm at.  We

11        covered a lot of stuff with going through the

12        account notes, so let me see what I have got.

13             (Whereupon there was a recess in the

14        proceedings from 3:08 to 3:24 p.m.)

15   BY MR. STERN:

16        Q.    There was an account number that's on

17   the account notes that is an account number that's

18   used by ARS to identify this debt; correct?

19        A.    Can you be more specific?  Can we make

20   sure that we are talking about the same thing?

21        Q.    In D-2, the first page of the printed

22   account notes.

23        A.    Okay.  Yes, I have that.

24        Q.    There is an account number listed on

25   there.

- David Friedlander -

Page 138

1       A.      Yes.

2       Q.      When the debt was listed with HRRG

3    prior to it being listed with ARS, did it have the

4    same account number?

5       A.      No.

6       Q.      Is there any information in the account

7    notes or other documents that you have or that you

8    reviewed that identifies the account number that

9    was used by HRRG before -- when it was collecting

10   it before it was assigned to ARS?

11      A.      I'm not sure.  There is a -- the answer

12   is I'm not sure.

13      Q.      Okay.

14      A.      The client account number appears on

15   this exhibit here.

16      Q.      The client account number.  I assume

17   the client had many debts that were placed with

18   HRRG and with ARS under that account number --

19      A.      No.

20      Q.      -- under the client number.

21      A.      That's a client number, okay.  There's

22   a client code and a client account number.

23      Q.      I'm sorry.  So which were you referring

24   to, client account number --

25      A.      The client account number is --

- David Friedlander -

Page 139

```
 1        Q.     The account number that the creditor or
 2   the billing company refers --
 3        A.     Refers to this individual account.
 4        Q.     And so ultimately, the reason I was
 5   asking whether there was an account number when it
 6   was on the HRRG side is whether you would be able
 7   to get a printout of the account notes of this
 8   account when it was on the HRRG side.
 9        A.     Yes, I can get that.
10        Q.     Okay.  And to your knowledge, those
11   account notes would still be on the system or
12   retrievable from archives?
13        A.     I believe so.
14               MR. STERN:  Mark this D-4.
15               (Exhibit D-4, Transcript of message,
16          marked for identification, as of this date.)
17   BY MR. STERN:
18        Q.     I'm showing what is marked as D-4.
19   I'll tell you it's a document that I prepared, but
20   it is taken from the complaint that was filed in
21   this case, which is a -- which contains a
22   transcript of the message that -- or of the --
23   there were three messages that we identified in
24   the complaint or we identified to -- our clients
25   had I guess preserved and retrieved that all sound
```

- David Friedlander -

Page 140

```
 1    identical, I'm representing to you they sound
 2    identical, and that this is the transcript of
 3    those messages.  What I have done though is break
 4    them out by sentences and just in bracketed
 5    numbers so in discussing it we can refer to
 6    particular sentences, that's why I did it that
 7    way.
 8               What I'm going to do first is before we
 9    go any further is play one of the messages that I
10    have so you can be satisfied that, you know -- or
11    correct if there is any correction that needs to
12    be made in this transcript that's marked as D-4.
13               MR. SCHEUERMAN:  I object to the form.
14         Again, this is counsel's document that he
15         prepared.  It's not something that is in
16         discovery.  But go ahead.
17               Before you play.  What are you playing
18         it from, the complaint that was filed?
19               MR. STERN:  The complaint filed -- does
20         the complaint that was filed have an embedded
21         file?
22               MR. SCHEUERMAN:  Whatever you are
23         playing it from just identify it.
24               MR. STERN:  Assuming it would work,
25         there's a sound file embedded in the
```

- David Friedlander -

1       electronically filed or amended complaint,

2       which is document 9 on the court's docket.

3       This is -- the link to it is adjacent to

4       paragraph 32 of the amended complaint.

5       That's what I'm going to double click on.

6               I am going to play one of the

7       electronic files that I provided in discovery

8       instead because the complaint embedded did

9       not work that I had provided in discovery to

10      Mr. Scheuerman.

11              (Audiotape played.)

12  BY MR. STERN:

13      Q.    Did you hear that?

14      A.    Yes.

15      Q.    Does that sound like the prerecorded

16  messages that ARS used?

17      A.    Yes, it sounds like it.  It is missing

18  at the beginning of it I think the words "this

19  is."

20      Q.    Okay.  Was there an -- in creating the

21  prerecorded message, were there any constraints,

22  that you are aware of, in terms of how long in

23  terms of the time the message could be?

24      A.     I'm not aware of any.  I'm sure there

25  are, I'm not aware of any.

- David Friedlander -

Page 142

1      Q.    If you would turn to I think D-2, ARS4.

2   It's the letter.

3      A.    Yes.

4      Q.    I'm just pointing that out to recall to

5   you your earlier testimony that the letters ARS

6   was put in parenthesis in the body of the letter

7   as suggesting -- as indicating that that was going

8   to be a shortened form of ARS Account Resolution

9   Services; right?  Do you recall that?

10      A.    Yes.

11      Q.    So that someone reading that letter,

12   when they would see ARS standing alone that they

13   would understand from that letter that ARS meant

14   ARS Account Resolution Services; correct?

15      A.    Correct.

16      Q.    And they could do that without having

17   to call ARS or HRRG; correct?

18      A.    Correct.

19      Q.    And they could do that without going to

20   any website; correct?

21      A.    Correct.

22      Q.    Is there anything in the telephone

23   message that would alert the listener to the fact

24   that ARS was a shortened version of ARS Account

25   Resolution Services?

- David Friedlander -

Page 143

```
1        A.    Can you repeat the question?

2              MR. STERN:  Can you read that back?

3              (Record read.)

4              MR. SCHEUERMAN:  I object.  How is this

5        related to the true name issues?  It seems to

6        be related to your issue that your clients

7        were confused when they got the message.  How

8        is this related to true name?  That's my

9        objection.

10             MR. STERN:  You are seriously raising

11       that?  I'm flabbergasted that you would make

12       that objection to that question.  Please step

13       out, Mr. Friedlander.

14             (Witness leaves the room.)

15             MR. STERN:  The court said that the

16       three factual issues is whether, quote

17       unquote, ARS is HRRG's full business name, a

18       commonly used acronym of its registered name,

19       ARS Account Resolution Services, or a name

20       under which it usually transacts business.

21             MR. SCHEUERMAN:  Okay.

22             MR. STERN:  Okay.  Well, so it used

23       ARS.  I'm trying to find out --

24             MR. SCHEUERMAN:  Can you read back the

25       question?
```

- David Friedlander -

Page 144

```
 1            MR. STERN:  He identified a letter
 2       where it said this is what ARS is.  All I did
 3       was ask him is -- you know, without having to
 4       place a phone call, without having to go on
 5       the Internet, that on the face of the letter
 6       he's testified that you could know that ARS
 7       means ARS Account Resolution Services.  So I
 8       asked him if there's anything in this
 9       telephone message which would alert the
10       listener -- to inform the listener as to
11       whether ARS means ARS Account Resolution
12       Services.  That goes directly to whether it's
13       a commonly used acronym of it's a registered
14       name.
15            I think this is a critical issue.  The
16       fact that you can even suggest that this
17       might be outside the scope of discovery is --
18       I can't even get my head around that.
19            MR. SCHEUERMAN:  The fact that it uses
20       it in the thing is what proves -- is what is
21       relevant in terms of discovery for the judge.
22       The fact whether it alerts it to what the
23       actual name -- how does that make any sense?
24            MR. STERN:  You argued to the district
25       court and court of appeals that the inclusion
```

- David Friedlander -

1        of the phone number and the inclusion of the

2        web address allowed the consumer to identify

3        the caller.

4              MR. SCHEUERMAN:  That's a different

5        issue.  That's a totally different issue.

6        That's whether the caller -- whether the

7        consumer would be confused.  It's not the

8        issue of whether they typically transact

9        business as ARS or whether it's a commonly

10       acronym.

11             MR. STERN:  Whether they are confused

12       is still part of the case.

13             MR. SCHEUERMAN:  It's not.  That's not

14       the true name.  The judge said it's the true

15       name issue.  It's not whether it's confused.

16             MR. STERN:  And the true name issue --

17             MR. SCHEUERMAN:  It's not whether they

18       would associate the name with another debt

19       collector as you pointed out, that could be a

20       germane issue later.  But the true name issue

21       is whether it's their full business name,

22       whether they usually transact business, or

23       whether it's a commonly used acronym.  So

24       that question doesn't relate to that.  It

25       relates to your issue as to whether the

- David Friedlander -

Page 146

1    consumer would think it would be another debt

2    collector, which is a different issue.

3         MR. STERN:  So the third circuit

4    dealing with the true name issue said we

5    adopt FTC commentary; correct?

6         MR. SCHEUERMAN:  That's not the --

7    Judge Williams narrowed it down to those

8    issues in the true name issue.

9         MR. STERN:  No.  Her order said the

10   true name issue is what she said.

11        MR. SCHEUERMAN:  The order before that

12   says those are the issues.  Whether it's --

13        MR. STERN:  No, it's not what she said.

14        MR. SCHEUERMAN:  -- ARS -- whether it's

15   the full business name, the name under which

16   it transacts business, or commonly used

17   acronym.  With this perspective -- that's

18   what discovery is limited to.

19        MR. STERN:  That's not what -- her

20   order says --

21        MR. SCHEUERMAN:  This has attorney

22   notes on it.

23        COURT REPORTER:  One at a time.

24        MR. STERN:  Fine.  Identify what you

25   are reading from.

- David Friedlander -

1          MR. SCHEUERMAN:  The 11-7-2018 order.

2          MR. STERN:  The 11-7-18 order says --

3      gives reasons and then says, "It is with this

4      perspective," so in other words that informed

5      the court, "that the court views the parties'

6      dispute relating to the discovery being

7      sought in the case at this juncture and

8      determines that the discovery is limited to

9      that which is necessary to the claims and

10     defenses under section 1692(e)(14), as this

11     is the only claim that remains in the case."

12          So she didn't limit it to the issues.

13     Her discussion of the third circuit is what

14     informed her to say the discovery is limited

15     to (e)(14).

16          MR. SCHEUERMAN:  I disagree.

17          MR. STERN:  You can disagree, that's

18     what it says.

19          MR. SCHEUERMAN:  The subsequent order

20     says it's limited to the true name issue.

21     And the third circuit, they identified the

22     true name issue is whether it's the true name

23     under which they usually transact business or

24     commonly used acronym.

25          MR. STERN:  That's not what they

- David Friedlander -

Page 148

```
1        limited it to.
2               MR. SCHEUERMAN:  Which is what the
3        judge's order --
4               MR. STERN:  You have -- can you mark
5        the question that was asked about it?
6               Do you have a speakerphone so we can
7        call the judge?
8               (Phone call with Judge's paralegal.)
9               MR. STERN:  This is Phillip Stern.  I'm
10       calling from the deposition Levins versus
11       Healthcare Revenue Recovery Group.  We have
12       an issue -- a question and objection that I
13       would like the Judge to rule on.
14              PARALEGAL:  What case is this
15       regarding?
16              MR. STERN:  It's Levins versus Health
17       Care Revenue.  It's case 17928.
18              PARALEGAL:  Okay.  And I'm sorry, you
19       are in a deposition of whom?
20              MR. STERN:  It's the deposition of the
21       corporate representative for the defendant.
22              PARALEGAL:  Okay.  And you are in the
23       conference room now and you have me on
24       speaker?
25              MR. STERN:  Yes.
```

- David Friedlander -

Page 149

```
 1            PARALEGAL:  Okay.  And you have a court
 2      reporter in the room as well?
 3            MR. STERN:  Yes.  And the court
 4      reporter is ready to read back the question
 5      and also to record.
 6            PARALEGAL:  Okay.  All right.  Let me
 7      put you on hold, get -- the judge is
 8      finishing up her initial conference in
 9      another matter so you may have to hold for a
10      few minutes.
11            MR. STERN:  Okay, thank you.
12 BY MR. STERN:
13      Q.    Do you have D-3, that's the answers to
14 interrogatories?
15      A.    Yep.
16      Q.    Do you have a pen?  On D-4, the
17 transcript, D-4 is that transcript.
18      A.    Yes.
19      Q.    You said you think on the first line
20 the words "this is" is missing?
21      A.    Yes.
22      Q.    Could you just sort of write that in,
23 write that in, carrot that in?
24      A.    (Witness complies.)
25      Q.    You are comfortable that that is now an
```

- David Friedlander -

Page 150

```
 1    accurate transcript of what the message that you
 2    understood was left?
 3         A.    Yes.
 4         Q.    So if you could go to D-3, the
 5    interrogatories.
 6         A.    Yes.
 7         Q.    If you would turn to interrogatory
 8    number 8.
 9         A.    Uh-hum.
10         Q.    And for the record, I'm going to read
11    the question or the request.  First, 8, "State
12    each name, acronym, and abbreviation under which
13    Healthcare Revenue Recovery Group, LLC has
14    identified itself to others since its formation,
15    and for each include dates when the name, acronym,
16    or abbreviation was first used and last used."
17              You see then below that there is an
18    answer, and the first word it says "objection," do
19    you see that?
20         A.    Yes.
21         Q.    And then there's -- the next sentence
22    states an objection?
23         A.    Yes.
24         Q.    And then the next sentence starts,
25    "Without waiving same," in other words, without
```

- David Friedlander -

Page 151

```
 1  waiving the objection, it says, "ARS Account

 2  Resolution Services began operations in January

 3  2009."

 4          Do you see that?

 5      A.    Yes.

 6      Q.    I believe you testified that HRRG was

 7  formed in 2004 and started operations doing debt

 8  collection shortly after that, I assume, before

 9  the end of 2005; is that an accurate time frame?

10      A.    Yes.

11      Q.    The operations -- so HRRG was operating

12  without this ARS business unit until January of

13  2009; correct?

14      A.    Yes.

15      Q.    So what it's saying here is that ARS

16  Account Resolution Services began operations.

17  That means just that one business unit, not that

18  HRRG began operations in 2009?

19      A.    That's correct.

20      Q.    Okay.  If you look down to now number

21  10, what's -- why don't you read it to yourself,

22  the question and answer, so you're more familiar

23  with it?

24      A.    Yes.

25      Q.    And just rather than reading the whole
```

Page 152

1   thing, the last, sort of, phrase -- the last

2   sentence says, "And since then," you see that?

3        A.    Yes.

4        Q.    "And since then" is referring to since

5   January of 2009; correct?

6        A.    Yes.

7        Q.    "And since then, ARS is the name under

8   which it usually transacts business with the

9   public."  Do you see that?

10       A.    Yes.

11       Q.    The pronoun "it," does that refer to

12  HRRG or refer only to the business unit that

13  operates as ARS Account Resolution Services?

14       A.    That refers only to the business unit

15  ARS.

16       Q.    With respect to the same question

17  number 8, it --

18            MR. SCHEUERMAN:  Which question?

19            MR. STERN:  I'm sorry, question 10.  I

20       apologize, question 10.

21  BY MR. STERN:

22       Q.    It talks about transacts business with

23  the public.  Do you see that at the end of the

24  sentence?

25       A.    Yes.

- David Friedlander -

1      Q.    You understand this is your -- the

2   answer that you certified to; do you understand

3   that?

4      A.    Yes.

5      Q.    What did you mean by "the public"

6   there?

7      A.    The consumers who had accounts that

8   reached the later stage of delinquency, vendors

9   through which we did business, our website.

10     Q.    When you say "our" --

11         MR. SCHEUERMAN:  Can you let him

12     finish?  Go ahead.  Were you done?

13         THE WITNESS:  No.

14         MR. SCHEUERMAN:  Go ahead.

15     A.    The website, the notices that we sent

16   out to consumers.  I think that's it.

17         MR. STERN:  Can you read the answer

18     back?

19         (Record read.)

20   BY MR. STERN:

21     Q.    You used the first person plural when

22   you said "we" or "our."  I think when you are

23   referring to vendors you said, "we did business

24   with."  When you say "we," do you mean HRRG or do

25   you mean the ARS business unit?

- David Friedlander -

Page 154

```
 1        A.     I'm answering for the ARS business
 2   unit.
 3        Q.     It's the same for each time you used
 4   "our" or "we," that was referring just to the ARS
 5   business unit; correct?
 6        A.     I believe so.
 7        Q.     I mean, I can have her read back the
 8   answer again if you would like.
 9        A.     Yeah, let's read it back again.
10               (Record read.)
11        A.     Can you start with the question that
12   preceded that response?
13               THE JUDGE:  Hello.
14               MR. STERN:  We are here, Your Honor.
15          While we were waiting we put it on mute for a
16          moment.
17               THE JUDGE:  Okay.
18               MR. STERN:  That's why, I'm sorry, I
19          didn't jump on real quick.
20               This is Phillip Stern, plaintiff's
21          counsel.  I can certainly give the court
22          whatever background it needs, but we have
23          been deposing Mr. Friedlander, the 30(b)(6)
24          representative for Healthcare Revenue.
25               And I asked a question that related to
```

- David Friedlander -

1     the voicemail message that was left.  Earlier
2     in the deposition there was examination about
3     a letter that had been sent to my clients by
4     the defendant, about eight months prior to
5     the messages, where the letter, and I can
6     cite -- it is on the docket if Your Honor
7     wants to view it.  But essentially the letter
8     opens by saying that the letter is from ARS
9     Account Resolution Services, which is the
10    full alternate name that's been registered
11    with the State of New Jersey.  And then in
12    parenthesis after that name said ARS.  And
13    the witness testified that that ARS in
14    parenthesis was -- indicated that it was a
15    short name of the full alternate name that
16    was in the letter.  So that wherever ARS
17    appeared later in the letter the reader would
18    know that it was referring to ARS Account
19    Resolution Services.
20          And the witness testified that that way
21    the reader would not have to call the phone
22    number or go to the website to find out who
23    was sending them the letter.
24          The argument has been made by defendant
25    that -- when you get to the message that,

Veritext Legal Solutions

- David Friedlander -

Page 156

```
1     which never mentioned -- it did not mention
2     the full alternate name that was the
3     registered alternate name -- that it just
4     says ARS.  But the argument has been made
5     that had they called the phone number or gone
6     to the website they could have found out.
7          So I asked a question, and the court
8     reporter is prepared to read it back as a
9     follow-up to that, which counsel objects to
10    as being outside the scope of the discovery
11    limitations.  And my view is it actually goes
12    to the very core of what the litigation is
13    about.  So I'll ask the court reporter to
14    read that question back to, Your Honor.
15          THE JUDGE:  Go ahead.
16          (Previous testimony is read.)
17          THE JUDGE:  What's the objection to
18    that?
19          MR. SCHEUERMAN:  Your Honor, this the
20    Chris Scheuerman.  My objection is that goes
21    to a different issue.  Issues were raised in
22    connection with a motion to dismiss that
23    since they were using ARS the consumer would
24    be confused and think it was from another
25    debt collector and, therefore, violate the
```

- David Friedlander -

1      FDCPA.  In reading Your Honor's decision or

2      order yesterday that says it's limited to the

3      true name, and then the November 2008 order,

4      the third circuit drew the narrow issue is

5      whether -- the issue is whether it's ARS's

6      full name, a name under which it usually

7      transacts business, or a commonly used

8      acronym.  So, you know, the fact that they

9      just use it in the message, I think that is

10     obviously discoverable.  But whether the

11     plaintiff would be confused, that's a

12     different issue than what the narrow issue,

13     respectfully, my interpretation of Your

14     Honor's order gives.  It goes to a different

15     issue.  It doesn't go to whether it's the

16     name they usually transact business using or

17     whether it's a commonly used acronym.

18          THE JUDGE:  Counsel, you can make

19     whatever arguments you want to make about the

20     fact that after -- I think this question, as

21     I understand it, what I heard was is there

22     anything in the voice message to suggest to

23     you that it was ARS.  You are analyzing the

24     question and potential answer.  You are not

25     objecting based on my orders.  That's not

Veritext Legal Solutions

- David Friedlander -

Page 158

1      what we are here for.  The deposition is for

2      discovery to obtain factual information, and

3      that's question is pertinent.

4              What's the next question?

5              MR. STERN:  Your Honor, the only other

6      issue was something we had earlier, I was

7      trying to understand how this business

8      operates.  And it's a little different than

9      what I, sort of, intuitively thought about a

10     debt collector.  It doesn't act -- what I

11     learned through the deposition, it doesn't

12     act independently.  Apparently it's one

13     company amongst a group of companies --

14     related companies that are under some kind of

15     either common ownership or umbrella or -- but

16     some kind of structure, but counsel would not

17     let me probe into this, where they sell

18     billing and collection services, the whole

19     gamut, to healthcare providers.  So the

20     healthcare provider -- so all the billing

21     from the get-go through when it's in default

22     and delinquency.  So there are companies --

23     related companies that are just billing

24     companies.  And, in fact, HRRG began as being

25     severed as doing the debt collection work

- David Friedlander -

Page 159

```
1         severed off from a billing company that did
2         both billing and collections.  And that goes
3         back over 20 years ago.  And that -- so HRRG
4         does collection once the billing company
5         feels that it's at the point where it now has
6         to go to collection.  So the account gets
7         transferred.  All that's internal.  They
8         don't have any outside creditors coming to
9         them to place accounts, that's all within the
10        same family.
11              And then what I also learned is that
12        within HRRG about a third of their business
13        is accounts that HRRG has, sort of, exhausted
14        their efforts and now these are, sort of,
15        like super delinquent debts, and they go to
16        what the witness described as a business unit
17        within HRRG, for which they use the label
18        ARS.
19              I just asked the witness, you know,
20        what's the name of the parent?  What's the --
21        is there a name under which or this group or
22        family of companies is called?  And counsel,
23        under the same -- based upon Your Honor's
24        orders limiting discovery said I wasn't
25        allowed to get that information.
```

- David Friedlander -

Page 160

```
 1              MR. SCHEUERMAN:  He was looking for
 2       discovery, it wasn't -- it's not relevant to
 3       the issue.  First of all, the fact that he
 4       can recite all this stuff is that he was able
 5       to ask questions about it at the deposition.
 6       He was getting into the corporate
 7       organization which Your Honor during the call
 8       my notes reflect that you specifically said
 9       that that was too broad.  He was going into,
10       What are the parent companies?  Is HRRG a
11       subsidiary of anything?  It's not relevant to
12       the narrow issues that Your Honor laid out in
13       her orders.
14              MR. STERN:  Your Honor, if I could just
15       briefly --
16              THE JUDGE:  Hold on.  Plaintiff needs
17       to understand who the defendant is.  By
18       giving your recitation, Mr. Stern, I think
19       you already do.  I'm not sure what the
20       question is.
21              MR. STERN:  Your Honor, all I want to
22       do is put a name on it.  I'm thinking of --
23       I'm writing a summary judgment brief and I
24       want to say, you know, HRRG is a member of
25       the Acme family of companies that provided,
```

- David Friedlander -

Page 161

1    you know, billing collection services to the

2    healthcare industry.  That's really what I

3    had in mind.  I wasn't going that far.  I

4    don't need to know who the, you know, CFO is

5    of the corporate parents or whether they are

6    publicly traded or not.  I just wanted to

7    know it.  Quite frankly, I think knowing this

8    information is probably stuff that ought to

9    be disclosed in a disclosure form anyway.

10           MR. SCHEUERMAN:  It is.  He can look at

11    my corporate disclosure form.  It was filed

12    on the docket, if that's all he wants.

13           THE JUDGE:  Right.  That's what I

14    thought immediately.

15           MR. STERN:  Maybe I didn't look.

16           THE JUDGE:  When a corporate defendant

17    files its initial filing they have to do

18    their corporate designation form.

19           MR. STERN:  I'm looking at it right

20    now.

21           MR. SCHEUERMAN:  I can't -- I think

22    there is a parent company, I can't picture it

23    in my mind.  Again, whether there's a parent

24    company and how that -- anything about the

25    parent company, I'm not sure how that relates

- David Friedlander -

Page 162

```
1        to the true name issue of whether ARS

2        typically transacts business as ARS.

3            THE JUDGE:  It may not directly satisfy

4        that inquiry, but every party gets to know

5        who the other party is and so -- I'm trying

6        to find the corporate form.

7            MR. STERN:  Your Honor, I just looked

8        at the corporate disclosure form, it's docket

9        6.  It says that HRRG, the defendant, does

10       not have a parent.  But I have a document

11       that I found on -- an Internet document

12       that -- actually one of their vendors who

13       provided them some software technology had

14       them on as a, I guess as a case study.  And

15       it says, "Healthcare Revenue Recovery Group,

16       a Division of TeamHealth.  One of the largest

17       supplies of outsourced professional staffing

18       and administrative services."  So I wanted to

19       ask about --

20           THE JUDGE:  You can ask that very

21       limited question.

22           MR. STERN:  Okay.

23           THE JUDGE:  That's it.  That's it.

24           MR. STERN:  That's fine.  I don't need

25       to explore.  That's all I want to find out.
```

- David Friedlander -

```
 1            THE JUDGE:  The corporate disclosure
 2      statement -- the only reason I'm allowing you
 3      to do that is because you seem to have opened
 4      information or discovered information
 5      contrary to the corporate disclosure
 6      statement and that's a problem.
 7            MR. STERN:  Okay.  I don't think
 8      there's anything --
 9            THE JUDGE:  But that's it, Mr. Stern.
10      You are not going into anything else just you
11      have articulated a basis for your question
12      that, in fact, goes to the identity of the
13      corporate entity.  And that is not within the
14      scope of the limited discovery I talked about
15      but that is essential background information.
16      You get to know who you are seeing and/or who
17      is suing you.
18            MR. STERN:  I don't intend to go with
19      any depth.  It's one or two questions at
20      most.
21            MR. SCHEUERMAN:  Thank you, Your Honor.
22            MR. STERN:  Thank you, Your Honor.
23            THE JUDGE:  You are welcome.  Have a
24      good day.
25            (Witness returns.)
```

- David Friedlander -

Page 164

1          MR. STERN:  We are back on the record.

2   BY MR. STERN:

3      Q.    I'm going to ask the court reporter to

4   repeat the question that was pending when your

5   counsel objected.

6          (Record read.)

7      A.    Not that I see.

8      Q.    Is HRRG a subsidiary of another company

9   or corporation?

10     A.    No.

11     Q.    So it does not have -- there's no

12  parent?

13     A.    No.

14     Q.    Back to D-3, the interrogatories.  If

15  you can go to -- actually, why don't you read to

16  yourself question 21 and the answer, then I have a

17  question for you about the answer.

18     A.    Okay.

19     Q.    Okay.  My question is specific to one

20  sentence, which is the first sentence of the last

21  paragraph of that answer.  I think it's on the

22  next page.  I'm going to read that sentence for

23  purposes of the record.

24          "In all telephone communications with

25  consumers, defendant's employees exclusively

- David Friedlander -

Page 165

1  utilize the 'ARS' name."

2      A.    Yes, I see that.

3      Q.    When you used the letters ARS you put

4  that in quotes in the answer, did you mean

5  literally just those three letters, ARS, or were

6  you referring -- in other words, does that mean

7  they don't use ARS Account Resolution Services?

8  It says they exclusively used the ARS name.  I'm

9  asking, when you say -- I'm asking, does that mean

10 they exclusively use only those three letters or

11 when you used those three letters you are

12 referring to both those three letters and the full

13 ARS Account Resolution Services?

14     A.    I mean either one.

15     Q.    Okay.  Right.  So they use either one

16 exclusively?

17     A.    Right.

18     Q.    I just didn't know if it was more

19 limited than that.

20           Are you aware that this case was

21 initially dismissed and went on appeal and the

22 appellate court reversed the decision and now it's

23 back where we are litigating it now?

24     A.    Yes.

25     Q.    Were you ever provided a copy of the

- David Friedlander -

Page 166

```
 1    decision from the appellate court?

 2         A.    Yes.

 3         Q.    Do you recall reading it?

 4         A.    Yes.

 5         Q.    In the court's decision, I'm going to

 6    read from the court's decision.  I want to ask you

 7    a question about it.

 8         A.    Is it in any of the exhibits that we

 9    had?

10         Q.    It's not, but I can mark one and give

11    it to you.  That would probably be easier.

12              (Exhibit D-5, Court's decision, marked

13         for identification, as of this date.)

14    BY MR. STERN:

15         Q.    On D-5, if you look at the third

16    page --

17              MR. SCHEUERMAN:  What page?

18              MR. STERN:  The third page.

19    BY MR. STERN:

20         Q.    There's page numbers on the bottom

21    right corner.  So on page 3, it's the paragraph

22    that follows the indented quote that begins, "At

23    the time the Levins," do you see that?

24         A.    Yes.

25         Q.    If you go down to three or four lines
```

- David Friedlander -

1    to the right, it's the last sentence, it says,

2    "While it has registered," do you see that?

3        A.    Yes.

4        Q.    I'm going to read that sentence.

5    "While it has registered the name ARS Account

6    Resolution Services in New Jersey, HRRG has

7    neither registered the standalone name ARS, nor

8    taken any other legal steps to do business under

9    that specific name."

10              Are you aware of any facts which

11   contradict the statements made in that sentence?

12              MR. SCHEUERMAN:  Objection to form.  Do

13         you want me to put the form objection on the

14         record or do you want me to tell him to

15         leave?

16              MR. STERN:  If it's just to form

17         then -- you don't have to go into substance.

18              MR. SCHEUERMAN:  I respect how you do

19         it.  I do it a different way, I like to

20         preserve the record.  I'm going to put it on

21         the report.  He can stay or leave.

22              MR. STERN:  Have him step out.  I don't

23         know what you are going to say.

24              (Witness leaves the room.)

25              MR. SCHEUERMAN:  I just note that the

- David Friedlander -

Page 168

```
 1        opinion references legal steps and is calling

 2        for a legal conclusion.  I don't know if this

 3        witness is qualified to answer.

 4             MR. STERN:  Okay.

 5             (Witness returns.)

 6   BY MR. STERN:

 7        Q.    Do you remember the question?

 8        A.    No.

 9        Q.    So if you want to take a moment, maybe

10   reread that last sentence.  You know which one?

11        A.    "While it has registered the name?"

12        Q.    Yes.

13        A.    Okay.

14        Q.    Are you aware of any facts which

15   contradict any of the statements made in that

16   sentence?

17        A.    I don't think so.

18        Q.    When you say you don't think so, that

19   suggests you might have some doubt.  What's the

20   basis for your doubt?

21        A.    Yeah, because I don't know if filing

22   for d/b/a is the same or different from

23   registering.

24        Q.    Okay.  So I'm happy to clarify that.

25   I'm willing to treat that registering that name is
```

- David Friedlander -

Page 169

1    the same as filing a d/b/a.  In other words, I'm

2    saying you can assume that --

3         A.    Registering -- saying it's registered

4    is the same if we filed for the d/b/a.

5         Q.    Yes, I'm saying that's the same.  You

6    can treat that as the same in terms of

7    understanding this.

8              MR. SCHEUERMAN:  Objection.

9         A.    Okay, then this might be wrong.

10        Q.    What would be wrong?

11        A.    Because I think we have and had at that

12   time filed for a d/b/a under the name ARS Account

13   Resolution Services.

14        Q.    I think the sentence is saying that you

15   did register that name in New Jersey.  It's saying

16   while it has registered the name in New Jersey.

17        A.    Yep.  Okay.

18        Q.    Then it says -- what it's saying is

19   what HRRG did not do is, which is neither

20   registered the standalone name ARS, nor taken any

21   other legal steps to do business under that

22   specific name.  I think they mean that specific

23   name is the standalone ARS.

24        A.    All right.  Then in this case then I

25   would say --

- David Friedlander -

Page 170

1          Q.     This is a truthful statement?

2          A.     Yes.

3          Q.     Are you aware of any debt collectors

4     that use ARS as part of their name or ARS as a

5     shortened name in the same way that ARS Account

6     Resolution Services uses ARS as a short name?

7          A.     Yes.  Yeah.

8          Q.     Do you recall who they are?

9          A.     I know there's an ARS National.

10         Q.     Okay.

11         A.     I don't know if they use the ARS alone.

12         Q.     Okay.  The last sentence of the next

13    paragraph, I'll read it aloud.  If you want to

14    take more time to look at it, it says, "And if one

15    ignores the warning an accesses the site, the

16    website begins tracking and storing information

17    about the computer user."  Do you see that?

18         A.     Yes.

19         Q.     To your knowledge, does -- if someone

20    accesses the ARS website, does it track and store

21    information about that user?

22         A.     I believe so.

23              MR. STERN:  Let's take a break.  I may

24         be done.  If I have anymore questions it's a

25         couple follow ups.

- David Friedlander -

1              (Whereupon there was a recess in the

2         proceedings from 4:39 to 4:45 p.m.)

3    BY MR. STERN:

4         Q.     The accounts which -- it's a followup

5    question to something we talked about earlier

6    today.  You explained there are -- that the

7    billing customers, I think you said of HCFS, and

8    you referred to OSB clients.

9         A.     Yes.

10        Q.     Those are the entities that would be

11   referring -- placing accounts with HRRG and/or the

12   ARS business unit; am I right?  Did I get that

13   right?

14        A.     They are a small portion of clients

15   whose physicians may not be contracted with

16   TeamHealth -- contracted through TeamHealth.

17        Q.     Who is TeamHealth?

18        A.     The ultimate parent of HCFS.

19        Q.     But it's not a parent of -- obviously,

20   because you said there's no parent -- of HRRG?

21        A.     No.

22        Q.     But HRRG -- maybe in my question I may

23   have overemphasized the OSB client.  I meant was,

24   I was trying to generally describe the universe of

25   HRRG's clients.  And HRRG's clients, that would

- David Friedlander -

Page 172

```
 1   include HRRG and ARS?
 2        A.    Yes.
 3        Q.    Those clients are HCFS -- is it HCFS or
 4   it's the billing customers of HCFS are included in
 5   that group?
 6        A.    Those are the customers of HCFS, the
 7   billing customers.
 8        Q.    Right.  Those billing customers are
 9   HRRG clients?
10        A.    Yes.
11        Q.    Are there written contracts between
12   HRRG and those clients?
13        A.    No.
14        Q.    Is there any document, contract, or
15   agreement that governs the relationship between
16   HRRG and those clients?
17        A.    There may be with HCFS.
18        Q.    Does HRRG have a contract with HCFS?
19        A.    I don't think so.
20        Q.    Okay.  That's ultimately what I was
21   getting at, I wanted to know about contracts with
22   clients.
23             Is there someone at HRRG who is -- who
24   receives any complaints from -- before I ask that.
25   To be clear, when we refer to "customers," those
```

- David Friedlander -

Page 173

```
1    are the people who, according to your records, owe
2    money; correct?  That's the term you used,
3    "customers"?
4         A.    We use consumers.
5         Q.    Consumers, okay.  Is there an
6    individual, or position, title of who oversees the
7    complaints made by consumers about either the
8    conduct of HRRG or ARS?
9         A.    Are you asking about what agency
10   oversees consumer complaints?
11        Q.    Not what agency but --
12        A.    Or are you asking --
13        Q.    When HRRG receives a complaint from a
14   consumer, in this particular case by way of -- for
15   instance, in this case, you said you are the
16   person who is in charge of this case.  Is there --
17        A.    The respondents to complaints that are
18   received are the AVPs, the assistant
19   vice-presidents.
20        Q.    Who report directly to you?
21        A.    Yes.
22        Q.    Okay.  And is there one AVP for ARS?
23        A.    Yes.
24        Q.    Is there one or more for the non-ARS
25   HRRG work?
```

- David Friedlander -

Page 174

1        A.     There were two.

2        Q.     So one on the HRRG side and one on the

3    ARS side?

4        A.     No, two on the HRRG side.

5        Q.     Okay.  And they handle -- that includes

6    both formal complaints that they get served?

7        A.     Yes.  They are handling complaints that

8    come in the mail and complaints that come through

9    the CFPB or the Better Business Bureau complaints.

10       Q.     But any complaints about your conduct?

11       A.     Yeah.  Nonlegal complaints.

12       Q.     Okay.

13       A.     Legal complaints are treated

14   differently.

15       Q.     How are legal complaints handled?

16       A.     Those are sent to the paralegal I

17   mentioned, Kim Durr, and she handles them.  She

18   notifies the appropriate people that there was a

19   legal complaint received.  She notifies our errors

20   and omissions insurance carrier.

21       Q.     Okay.  If you wanted to find out if

22   anyone has made a complaint about the phone

23   messages saying just the standing alone ARS, how

24   would you find that out?

25              MR. SCHEUERMAN:  You are talking

- David Friedlander -

Page 175

1          informal complaint, or pleading, a lawsuit?

2                MR. STERN:  I'm talking about both.

3          All of them.

4          A.    I would go probably through Kim Durr

5     and ask her to look to see.

6          Q.    And have you done that in this case?

7     Let me withdraw that.  Don't answer that yet.

8                Are you aware of any complaints, formal

9     or otherwise, that have raised the claims that are

10    raised in this case?

11         A.    No.

12         Q.    Have you asked Kim Durr about whether

13    there are -- have been other cases?

14                MR. SCHEUERMAN:  I'm going to object.

15          Kim Durr is a paralegal.  She works for a

16          corporate attorney.  So to the extent you are

17          getting into what conversations you had,

18          that's protected by attorney-client

19          privilege.

20                MR. STERN:  I haven't asked what she

21          said.  I asked if he has made the inquiry,

22          that's all I --

23                MR. SCHEUERMAN:  You can ask that.  But

24          just so everyone is clear.

25         A.    I don't think I've asked Kim Durr

- David Friedlander -

Page 176

1   specifically that.

2        Q.    Okay.

3              MR. STERN:  Pass the witness.  Do you

4        have questions?

5              MR. SCHEUERMAN:  I have a couple follow

6        ups.

7   BY MR. STERN:

8        Q.    David, there are instances in which

9   debt collector representatives from the ARS wing

10  of the company have phone communications with

11  consumers, yes or no?

12       A.    Yes.

13       Q.    And do you classify those people as --

14  what do you call them, agents, debt collectors?

15       A.    I call them agents or representatives.

16       Q.    Okay.  And if you know, how -- when

17  there's an actual phone conversation, how are

18  those people trained to identify Account

19  Resolution Services on the telephone?

20       A.    They are trained to use ARS.

21       Q.    Again, this is just during phone calls.

22  What's the reason behind during a phone call just

23  using ARS?

24       A.    They are talking to consumers and

25  potentially non-consumers, so potentially people

- David Friedlander -

Page 177

```
1    who don't have accounts in collections.  And using

2    ARS doesn't disclose the nature of the call until

3    we have had a chance to identify that we are

4    speaking with an actual debtor.

5         Q.    Okay.  The telephone message that's

6    referenced in D-4, you were asked by counsel when

7    you first started using it.  You weren't able --

8    were not able to give a specific date.  But do you

9    have an approximation when that message was --

10   when the company started using that message?

11        A.    I could tell you approximately in -- I

12   think it's the message that we started using when

13   we first started calling on behalf of ARS.

14        Q.    Okay.  When was that?

15        A.    Around 2009.

16        Q.    Okay.  So you referenced -- when you

17   were talking about the vendor Genesis, you said

18   something that they do speech analytics software.

19   What exactly is that?  Can you explain that to me?

20        A.    It is software that is able to use

21   speech recognition and can analyze large volumes

22   of call conversations and put them into -- store

23   them in electronic file folders that can be

24   brought up through queries that we can --

25        Q.    That --
```

- David Friedlander -

Page 178

```
 1      A.    So it makes the conversations more
 2 useable for training, quality assurance, and
 3 finding particular topics within the calls --
 4 within the call recordings.
 5      Q.    Do you have a quality control program
 6 where executives in the HRRG company listen to
 7 past recorded calls from agents?
 8      A.    Yes.
 9      Q.    Have you ever taken part in listening
10 to any past recorded calls relating to calls made
11 on behalf of ARS debts?
12      A.    Yes.
13      Q.    Okay.  What name is typically used by
14 those agents on the telephone when referring to
15 Account Resolution Services?
16      A.    They refer to it commonly as ARS.
17      Q.    Then you were asked a couple of times
18 with certain vendors -- strike that.
19           MR. SCHEUERMAN:  I have nothing
20      further.
21           MR. STERN:  I have some follow-up
22      things that your counsel asked you about.
23 BY MR. STERN:
24      Q.    If I understood, you said that the
25 agents are trained that when they are involved in
```

- David Friedlander -

Page 179

```
 1   a live call that they just use ARS until they know

 2   they are actually speaking with the debtor; is

 3   that -- did I understand your testimony?  Is that

 4   your testimony?

 5       A.    Yes.

 6       Q.    Once they -- I think earlier we talked

 7   about -- when I was asking you, I think you

 8   talked about a term you used was "right person."

 9       A.    Yes.

10       Q.    Same meaning, right, the debtor?

11       A.    Right party identification.

12       Q.    That's right, you said right party not

13   right person.

14            Once the agent determines that they are

15   speaking to the right party, do they mention the

16   full name ARS Account Resolution Services anytime?

17       A.    Typically not.  They use ARS for the

18   most part.

19       Q.    Are there training manuals that govern

20   what this issue -- or training materials I should

21   say.  I don't want to limit it to manuals.  Any

22   kind of written materials about what name is to be

23   used in telephone conversations?

24       A.    There are.  There are memos that are

25   used, there are materials they access that are
```

- David Friedlander -

Page 180

1    electronic and stored in directories that are

2    accessible to staff.

3          Q.    Just to be clear, when we are talking

4    about agents, are we talking about only the agents

5    that work for the ARS business unit use those

6    terms, correct; in other words, used the term ARS

7    in their phone calls?

8          A.    Yes.  I'm talking specifically about

9    agents working on behalf of ARS.

10         Q.    Okay.  And the agents that -- the other

11   agents who work for HRRG don't refer to ARS at

12   all; correct?  Rephrase that.  Do they refer to

13   ARS -- withdrawn.

14               Do the agents employed by HRRG who are

15   not working for ARS receive any training on using

16   either ARS or ARS Account Resolution Services in

17   their telephone communications with consumers?

18         A.    No.

19         Q.    Were you involved in the creation or

20   approval of the script that was used to create the

21   message that was involved here?

22         A.    Yes.

23         Q.    What role -- you were not president at

24   the time, right?  Correct?

25               MR. SCHEUERMAN:  I'm sorry.  What --

- David Friedlander -

Page 181

1        objection to form.  Do you want me to have

2        him go out?  It's one word I'm going to use.

3               MR. STERN:  I'll rephrase the question.

4               MR. SCHEUERMAN:  Thank you.

5   BY MR. STERN:

6        Q.    I think you testified in response to

7   your counsel's question that the message that was

8   used here was a message that started being used in

9   2009; is that correct?

10       A.    Yes.

11       Q.    I thought you testified you had been

12  president for six years?

13       A.    2013 I think I became president.

14       Q.    So the last six years.  And prior to

15  that you were vice-president.  So you were

16  vice-president at the time that the message was

17  started to be used?

18       A.    Yes.

19       Q.    So what role did you play with respect

20  to either the development or approval of the

21  message?

22       A.    I worked with the assistant

23  vice-presidents in creating the message.

24       Q.    Who else was involved in creating the

25  message?

- David Friedlander -

Page 182

1       A.    I don't know that anyone else was

2   involved.

3       Q.    It was you and the assistant

4   vice-president?

5       A.    Yes.

6       Q.    Who was that assistant vice-president?

7       A.    I think at the time it was Judy

8   Oberman.

9       Q.    Can you spell the last name?

10      A.    O-B-E-R-M-A-N.

11      Q.    Is she still with HRRG?

12      A.    No.

13      Q.    Do you know where she is?

14      A.    She is not alive.  She passed away.

15           MR. STERN:  I have nothing further.

16           MR. SCHEUERMAN:  Neither do I.

17           COURT REPORTER:  Mr. Scheuerman, did

18   you want a copy?

19           MR. SCHEUERMAN:  Yes, ma'am.

20           (Time noted: 5:50 p.m.)

21

22

23

24

25

- David Friedlander -

Page 183

1                 C E R T I F I C A T E

2

3

4             I, Kathleen Swenor, do hereby certify

5    that prior to the commencement of the examination,

6    DAVID FRIEDLANDER, was duly sworn by me to tell

7    the truth, the whole truth, and nothing but the

8    truth.

9             I do further certify that the foregoing

10   is a true and accurate transcript of the testimony

11   as taken stenographically by and before me at this

12   time, place and date hereinbefore set forth.

13            I do further certify that I am neither

14   a relative nor employee nor attorney nor counsel

15   of any of the parties to this action, and that I

16   am neither a relative nor employee of such

17   attorney or counsel, and that I am not financially

18   interested in the action.

19

20

21

22

                          ____35. Signature____

23            Kathleen Swenor, RPR, CCR

24

25

# *Exhibit 2*

LEVINS185

## TERMS USED IN DEPOSITIONS

## BUSINESS NAME:

## Healthcare Revenue Recovery Group, LLC

Source: Defendant's Document Production at ARS 03:

**1. BUSINESS NAME:**

HEALTHCARE REVENUE RECOVERY GROUP, LLC

## ALTERNATE NAME:

## ARS Account Resolution Services

Source: Defendant's Document Production at ARS 03:

**3. ALTERNATE NAME:**

ARS ACCOUNT RESOLUTION SERVICES

## ABBREVIATION OF ALTERNATE NAME:

## ARS

Source: Defendant's response to Interrogatory No. 1:

**Since then, "ARS" has always been used by the
Defendant as an abbreviation for ARS Account Resolution Services.**



*Levins v. Healthcare Revenue Recovery Group, LLC*                Page **1** of **1**
Case 1:17-cv-00928-RBK-KMW

LEVINS186

*Exhibit 3*

LEVINS187

## ARTICLES OF ORGANIZATION

### OF

### HEALTHCARE REVENUE RECOVERY GROUP, LLC

The undersigned, pursuant to the provisions of Chapter 608 of the Florida Statutes, for the purpose of forming a limited liability company under the laws of the State of Florida, hereby adopts the following Articles of Organization.

#### ARTICLE I – NAME

The name of the limited liability company is Healthcare Revenue Recovery Group, LLC (the "Company").

#### ARTICLE II – ADDRESS

The mailing address and the street address of the principal office of the Company is:

1801 NW 66th Avenue
Suite 200A
Plantation, FL 33313

#### ARTICLE III – REGISTERED AGENT AND ADDRESS

The name of the Registered Agent for the Company is Corporation Service Company and its street address is as follows:

1201 Hays Street
Tallahassee, Florida 32301-2525

#### ARTICLE IV – MANAGEMENT

The Company shall be managed by one or more managers and is, therefore, a manager-managed company.

IN WITNESS WHEREOF, the undersigned has executed these Articles of Organization on this 20th day of December, 2004.

John R. ____

DEPOSITION
EXHIBIT
D.2
102491

CONFIDENTIAL

ARS 01

LEVINS188

## STATEMENT OF ACCEPTANCE OF REGISTERED AGENT

The undersigned, being the corporation named in the Articles of Organization of Healthcare Revenue Recovery Group, LLC, as the Registered Agent of this limited liability company, hereby consents to and accepts the appointment as Registered Agent of the Company and agrees to act in such capacity. The undersigned further agrees to comply with the provisions of all statutes relating to the proper and complete performance of the undersigned's duties as Registered Agent. The undersigned states that it is familiar with and accepts the responsibilities and obligations of its position as the Registered Agent of the Company, as provided for in Chapter 608, Florida Statutes.

Corporation Service Company

By _____

Its _____ Cynthia L. Harris _____
          as its agent

CONFIDENTIAL

ARS 02

LEVINS189

*NEW JERSEY DEPARTMENT OF THE TREASURY*
*DIVISION OF REVENUE AND ENTERPRISE SERVICES*

HEALTHCARE REVENUE RECOVERY GROUP, LLC

0600233404

I, the Treasurer of the State of New Jersey, do hereby certify
that the above-name did on 20th day of November, 2013 file and
record in the department a Certificate of  Renewal of Alternate
Name.

1. BUSINESS NAME:

   HEALTHCARE REVENUE RECOVERY GROUP, LLC

2. BUSINESS ID.:

   0600233404

3. ALTERNATE NAME:

   ARS ACCOUNT RESOLUTION SERVICES

4. ALTERNATE NAME IS VALID UNTIL:

   December 19, 2018

5. ACTIVITY TO BE CONDUCTED USING ALTERNATE NAME:

   Business intend to use the name in New Jersey.

*IN TESTIMONY WHEREOF, I have*
*hereunto set my hand and affixed my*
*Official Seal at Trenton, this*
*20th day of November, 2013*

*Andrew P Sidamon-Eristoff*
*State Treasurer*

Certification #   130272537
Verify this certificate at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

CONFIDENTIAL

ARS 03

LEVINS190

ARS
PO BOX 459079
SUNRISE FL 33345-9079

November 30, 2015

Account Resolution Services
a division of HRRG, LLC
P.O. Box 459079
Sunrise, FL 33345-9079
Toll Free Phone 800-694-3048
En Español 800-694-3397

ARS A 019461 Y/AABB
ELAINE LEVINS
84 LINCOLN DR
CLEMENTON NJ 08021-2856

www.arspayment.com
PIN# 2.80864955.S25

Re: 80864955 Validation Notice

Dear Elaine Levins:

The healthcare creditor(s) shown below hired ARS Account Resolution Services (ARS) to collect the balance due. We may report any outstanding balances to the major credit bureaus. To pay, just fill in your credit card information on the reverse side of this notice, or enclose your check/money order payable to the creditor, along with the payment voucher below. To pay using our automated IVR accessible 24 hours a day, call 844-PAY-ARS2 (844-729-2772) or visit our website at www.arspayment.com. Both options require the PIN # and the RE: # listed above along with the last four digits of your social security number.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. (NOTICE : SEE REVERSE FOR IMPORTANT INFORMATION).

✂

Client Account: 0411 - 44427216

Amount Enclosed $_

| Creditor | Account # | Regarding | Amt Owed | ServDate |
|---|---|---|---|---|
| REDACTED | 0139549982-44427216 | LEVINS REDACTED | 169.82 | 09/02/14 |

ARS
PO BOX 630806
CINCINNATI OH 45263-0806

3 080864955 000016982 0139549982 3 8

CONFIDENTIAL

ARS 04

PLEASE NOTE: This transaction will appear on your next credit card statement as "ARS"

For your convenience you may pay by MasterCard, VISA, American Express or Discover. Check the appropriate box, print the cardholder's name as it appears on the card, the card number, the expiration date, sign and return this portion of your statement.

| CREDIT CARD PAYMENT | Please Check Appropriate Box | CHANGE OF ADDRESS |
|---|---|---|
| CARD NUMBER | | Address: |
| EXP DATE | PAYMENT AMOUNT | Apt./Unit#: |
| | | City: |
| SIGNATURE | PHONE NUMBER | State: |
| NAME AS IT APPEARS ON CARD - PLEASE PRINT | | Zip: |

CONFIDENTIAL

ARS 05

LEVINS192

Make A Payment - ARS Account Resolution ServicesARS Account Resol...    Page 1 of 1

**Payment**      **Request**      **FAQs**      **Notices**      **Contact**      **Inicio**

 

This is an attempt to collect a debt and any information obtained shall be used for that purpose.
This communication is from a debt collector.

### Make A Payment

To make an online payment, you will need a copy of the original letter sent to you from ARS Account Resolution Services. This transaction will appear as "ARS" on your credit card statement. If you do not have this letter available, please contact our Collections department at (800) 694-3048 (For English) or (800) 664-3397 (Para Español) to obtain the information required to logon to your account.

For added convenience, you can also make a payment through our Automated Payment System by calling 1-844-PAY-ARS() - 844-729-2772.

[ MAKE A PAYMENT ]

### English

Home

Make A Payment

Request Paid In Full Letter

FAQs

View My Notices

Credit Report Issue

Contact Us

### Español

Inicio

Efectuar un pago

Solicitar carta de pago total

Preguntas Frecuentes

Noticias

Puntos controvertidos del

informe crediticio

Contacto

*This is an attempt to collect a debt and any information obtained shall be used for that purpose. This communication is from a debt collector. Nuestro objetivo es cobrar las sumas adeudadas y toda la información recopilada se usará para tal fin. Esta comunicación la emite una entidad a cargo del cobro de deudas. Copyright © 2017 ARSPAYMENT.COM.*

CONFIDENTIAL

ARS 06

LEVINS193

```
02/17/17                              ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                              SELECTED
--------------------------------------------------------------------------------
COLLECTOR         HSE - 0    HOUSE ROUTE

STATUS            Acct:80864955    Disposition:3ATY REPRESENTED BY ATTNY      Wait: 02/17/17

DEBTOR            Name:LEVINS REDACTED                    Ssn: REDACTED    Cbr:  Ph:856-REDACTED
                  Rp:LEVINS, REDACTED                     Ssn: REDACTED    Rp Ph:
                  Adr1:84 LINCOLN DR                                        Lgl:  POE Ph:856-REDACTED
                  Adr2:                                         Freq:       Pay:       0.00
                  City:CLEMENTON                Cty:CLEMENTON   Canc:       Born:REDACTED
                   St: NJ  Zip:08021             St: NJ  Zip:08021   COF:N    Sal:

                  Clnt:004610 ATLANTIC ER PHYS TEAM PED, TURNERSVILLE NJ, 0139549982-44427216     Org:   169.82
                  List:11/24/15 Srv:09/02/14 Ltrs:1    Time:5    Calls:67  Con:0    Bal:   169.82

MULTIPLE ACCOUNTS
RM# Acct       Name / Client    Chk# / Lst   Srv       Lpy  Col Disp     Bal      Check Reason        Drivers Licen
      PRN        INT      LI3    LI4   AIN    CC        ATY      MS1      PJI
1  80864955* LEVINS REDACTED
0139549982-44427216/004610/ATLA   11/24/15 09/02/14         HSE 3ATY     169.82
    169.82     0.00     0.00    0.00   0.00   0.00      0.00     0.00     0.00

PAYMENTS No payments.

NOTES             GAP 11/24/15  9:48P Created a Link request using Service Type ARSWEBREC et
                  GAP 11/24/15  9:48P PRESCRUB index 191138373 (A-80864955)
                  GAP 11/24/15  9:48P Updated udw 510,18 with 11/24/2015 et PRESCRUB index
                  GAP 11/24/15  9:48P 191138374 (A-80864955)
                  GAP 11/24/15  9:48P WEBRECON REQUEST et PRESCRUB index 191138375
                  GAP 11/24/15  9:48P WR (ARSWEBREC) Created skiptrace request for 'DEBTOR'
                  GAP 11/24/15  9:48P window 2 (TID #9289486).
                  GAP 11/25/15  8:44  hrg SYS 09/17/14 12:00M IN FC 03134 NJ BCBS EA-5010 FORM
                  GAP 11/25/15  8:44  PREPARED
                  GAP 11/25/15  8:44  hrg SYS 10/28/14 12:00M IN FC BS OF NEW JERSEY TO 6567
                  GAP 11/25/15  8:44  40902
                  GAP 11/25/15  8:44  hrg SYS 10/28/14 12:00M IN FC HORIZON BCBS OF NJ AD TO 534
                  GAP 11/25/15  8:44  hrg SYS 11/26/14 12:00M IN FC SELF PAY AFTER INSURA TO 10
                  GAP 11/25/15  8:44  hrg SYS 01/24/15 12:00M IN FC CREDIT LETTER SENT TO 994
                  GAP 11/25/15  8:44  hrg SYS 01/26/15 12:59P BS CC
                  GAP 11/25/15  8:44  hrg -CB 01/27/15 7:56 SN A
                  GAP 11/25/15  8:44  hrg SYS 01/28/15 3:57 CC CC
                  GAP 11/25/15  8:44  hrg SYS 01/28/15 4:30 CC MI
                  GAP 11/25/15  8:44  hrg SYS 02/10/15 11:14 TR NA CMP01
                  GAP 11/25/15  8:44  hrg SYS 02/14/15 10:47 TR NA CMP01
                  GAP 11/25/15  8:44  hrg SYS 02/18/15 11:34 TR NA CMP01
                  GAP 11/25/15  8:44  hrg SYS 02/23/15 9:25 TR NA
                  GAP 11/25/15  8:44  hrg -CB 03/03/15 8:21 SN B
```

CONFIDENTIAL

LEVINS194

```
02/17/17                                   ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                                       SELECTED
          GAP 11/25/15  8:44  hrg SYS 03/03/15 6:49P TR NA CMP01
          GAP 11/25/15  8:44  hrg SYS 03/09/15 12:51P TR NA CMP01
          GAP 11/25/15  8:44  hrg SYS 03/13/15 11:29 TR NA CMP01
          GAP 11/25/15  8:44  hrg SYS 03/18/15 9:12 TR NA
          GAP 11/25/15  8:44  hrg SYS 03/26/15 10:13 TR NA
          GAP 11/25/15  8:44  hrg gc 07/24/15 11:26 res 856-566-1979 Left Msg Answering
          GAP 11/25/15  8:44  Machine
          GAP 11/25/15  8:44  hrg gc 07/24/15 11:26 3000 Active Account (11) Answering
          GAP 11/25/15  8:44  hrg nje 07/28/15 11:30P Letter #7 Final Notice - S
          GAP 11/25/15  8:44  requested et OLDLT7 index
          GAP 11/25/15  8:44  hrg nje 07/28/15 11:30P 189323068 1
          GAP 11/25/15  8:44  hrg nje 07/28/15 11:30P LTR 7 (FORMER S NTC) SENT et OLDLT7
          GAP 11/25/15  8:44  index 189323070
          GAP 11/25/15  8:44  hrg nje 07/28/15 11:30P LTR 7(S) Sent on Route.This acct
          GAP 11/25/15  8:44  included on 7(S) Notice.
          GAP 11/25/15  8:44  hrg nje 07/28/15 11:30P et OLDLT7 index 189323071
          GAP 11/25/15  8:44  hrg JZM 07/29/15 8:48 Letter #7 Final Notice - S sent
          GAP 11/25/15  8:44  hrg JZM 07/29/15 9:04 enDO NORDRECM changed DU20114 from to
          GAP 11/25/15  8:44  072915
          GAP 11/25/15  8:44  hrg gc 09/09/15 10:58 res 856-566-1979 Left Msg Answering
          GAP 11/25/15  8:44  hrg gc 09/09/15 10:58 3000 Active Account (11) Answering
          GAP 11/25/15  8:44  hrg gc 10/01/15 2:22P res 856-566-1979 Left Msg Answering
          GAP 11/25/15  8:44  hrg gc 10/01/15 2:22P 3000 Active Account (11) Answering
          GAP 11/25/15  8:44  hrg gc 10/28/15 9:27 res 856-566-1979 Left Msg Answering
          GAP 11/25/15  8:44  hrg gc 10/28/15 9:27 3000 Active Account (11) Answering
          GAP 11/25/15  8:44  hrg gc 11/09/15 8:55 res 856-566-1979 Left Msg Answering
          GAP 11/25/15  8:44  hrg gc 11/09/15 8:55 3000 Active Account (11) Answering
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 Stopped 0 letters et return14 index
          GAP 11/25/15  8:44  256622346
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 Untied account from route 2784932 et
          GAP 11/25/15  8:44  return14 index
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 256622347 (A-2784932)
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 0900 REQUEST TO CANCEL set c.c. 14
          GAP 11/25/15  8:44  w/ovrde N et return14
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 index 256622351
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 Transferred to collector AEE et
          GAP 11/25/15  8:44  return14 index 256622352
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 (R-2784932)
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 Placement period ended.Code 14
          GAP 11/25/15  8:44  Cancel to IDX.Await et
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 return14 index 256622353
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 Await data from client to show 2ndry
          GAP 11/25/15  8:44  Agency et return14
          GAP 11/25/15  8:44  hrg OXH 11/11/15 10:42 index 256622354
          GAP 11/25/15  8:44  hrg OXH 11/24/15 9:04 enDI CANCELCH changed DU20122 from 14
          GAP 11/25/15  8:44  to ARS
          GAP 11/25/15  8:44  hrg OXH 11/24/15 9:04 Untied account from route 2784932
          GAP 11/25/15  8:44  enDI CANCELCH
          GAP 11/25/15  8:44  hrg OXH 11/24/15 9:04 9000 CANCEL enDI CANCELCH
          GAP 11/25/15 10:39  2500 REQUESTING INFO et DS2000 index 194038452
```

CONFIDENTIAL

```
02/17/17                                          ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                                              SELECTED
                  GAP 11/25/15  2:34P enDI MEDLYTIX changed ESSCORE from  to 950
                  GAP 11/25/15  2:34P enDI MEDLYTIX changed DU30001 from 850 to 950
                  GAP 11/25/15  2:34P enDI MEDLYTIX changed DU51005 from  to 11252015
                  GAP 11/25/15  2:34P 2501 Info Ret from Medlyt enDI MEDLYTIX
                  GAP 11/25/15  3:46P WK (ARSWEBREC) Received skiptrace results for 'DEBTOR'
                  GAP 11/25/15  3:46P window 2 (TID #9289486).
                  GAP 11/25/15  3:46P Updated udw 510,19 with 11/25/2015 et WEBRECNOHT index
                  GAP 11/25/15  3:46P 194420468 (A-80864955)
                  GAP 11/25/15  3:46P WEBRECON NO HIT et WEBRECNOHT index 194420469
                  GAP 11/30/15  8:59  Letter series #1 started et 950 index 207464489
                  GAP 11/30/15  8:59  Letter #1 AR-A Validation Notice requested et 950 1
                  GAP 11/30/15  8:59  Updated udw 894,4 with lb BATCH1 et 950 index 207464490
                  GAP 11/30/15  8:59  (A-80864955)
                  GAP 11/30/15  8:59  Updated udw 894,5 with 12/12/2015 et 950 index 207464491
                  GAP 11/30/15  9:21  Letter #1 AR-A Validation Notice sent
                  GAP 11/30/15  9:21  Set tie parameters to Y,Y,Y et p3000H index 207625626
                  GAP 11/30/15  9:21  (A-80864955)
                  GAP 11/30/15  9:21  Set assignment parameters to HSU,,,0 et p3000H index
                  GAP 11/30/15  9:21  207625627 (A-80864955)
                  GAP 11/30/15  9:21  3000 BEGIN REG COLLECT et SUCCLS index 207625625
                  GAP 11/30/15  9:21  This user has no route. et SUCCLS index 207625628
                  GAP 11/30/15  9:21  (R-80864955)
                  GAP 11/30/15  9:43  enDO NORDRECM changed DU20114 from  to 113015
                  gc  12/10/15  3:37P res 856-566-1979 Left Msg Answering Machine
                  gc  12/10/15  3:37P 3000 BEGIN REG COLLECT Answering Machine
                  gc  12/14/15  7:05P res 856-566-1979 Left Msg Answering Machine
                  gc  12/14/15  7:05P 3000 BEGIN REG COLLECT Answering Machine
                  gc  12/23/15 10:59  res 856-566-1979 Left Msg Answering Machine
                  gc  12/23/15 10:59  3000 BEGIN REG COLLECT Answering Machine
                  gc  01/07/16  3:49P res 856-566-1979 Left Msg Answering Machine
                  gc  01/07/16  3:49P 3000 BEGIN REG COLLECT Answering Machine
                  gc  02/11/16  5:26P res 856-566-1979 Left Msg Answering Machine
                  gc  02/11/16  5:26P 3000 BEGIN REG COLLECT Answering Machine
                  gc  02/17/16  9:34  res 856-566-1979 Left Msg Answering Machine
                  gc  02/17/16  9:34  3000 BEGIN REG COLLECT Answering Machine
                  gc  02/20/16  8:57  res 856-566-1979 Left Msg Answering Machine
                  gc  02/20/16  8:57  3000 BEGIN REG COLLECT Answering Machine
                  gc  02/24/16  1:12P res 856-566-1979 Left Msg Answering Machine
                  gc  02/24/16  1:12P 3000 BEGIN REG COLLECT Answering Machine
                  gc  03/02/16  8:54  res 856-566-1979 Left Msg Answering Machine
                  gc  03/02/16  8:54  3000 BEGIN REG COLLECT Answering Machine
                  gc  03/08/16  9:59  res 856-566-1979 Left Msg Answering Machine
                  gc  03/08/16  9:59  3000 BEGIN REG COLLECT Answering Machine
                  gc  03/11/16  4:36P res 856-566-1979 Left Msg Answering Machine
                  gc  03/11/16  4:36P 3000 BEGIN REG COLLECT Answering Machine
                  gc  03/16/16 11:19  res 856-566-1979 Left Msg Answering Machine
                  gc  03/16/16 11:19  3000 BEGIN REG COLLECT Answering Machine
                  gc  03/19/16  9:23  res 856-566-1979 Left Msg Answering Machine
                  gc  03/19/16  9:23  3000 BEGIN REG COLLECT Answering Machine
                  gc  03/22/16  3:10P res 856-566-1979 Left Msg Answering Machine
```

CONFIDENTIAL

LEVINS196

```
02/17/17                              ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                               SELECTED
          gc  03/22/16   3:10P 3000 BEGIN REG COLLECT Answering Machine
          gc  03/25/16   2:44P res 856-566-1979 Left Msg Answering Machine
          gc  03/25/16   2:44P 3000 BEGIN REG COLLECT Answering Machine
          gc  03/29/16   3:01P res 856-566-1979 Left Msg Answering Machine
          gc  03/29/16   3:01P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/01/16   9:18  res 856-566-1979 Left Msg Answering Machine
          gc  04/01/16   9:18  3000 BEGIN REG COLLECT Answering Machine
          gc  04/04/16   6:05P res 856-566-1979 Left Msg Answering Machine
          gc  04/04/16   6:05P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/07/16   7:26P res 856-566-1979 Left Msg Answering Machine
          gc  04/07/16   7:28P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/13/16   2:21P res 856-566-1979 Left Msg Answering Machine
          gc  04/13/16   2:21P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/16/16  12:23P res 856-566-1979 Left Msg Answering Machine
          gc  04/16/16  12:23P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/20/16   2:15P res 856-566-1979 Left Msg Answering Machine
          gc  04/20/16   2:15P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/26/16   7:36P res 856-566-1979 Left Msg Answering Machine
          gc  04/26/16   7:36P 3000 BEGIN REG COLLECT Answering Machine
          gc  04/29/16   9:44  res 856-566-1979 Left Msg Answering Machine
          gc  04/29/16   9:44  3000 BEGIN REG COLLECT Answering Machine
          gc  05/04/16   8:57  res 856-566-1979 Left Msg Answering Machine
          gc  05/04/16   8:57  3000 BEGIN REG COLLECT Answering Machine
          gc  05/11/16   9:45  res 856-566-1979 Left Msg Answering Machine
          gc  05/11/16   9:45  3000 BEGIN REG COLLECT Answering Machine
          gc  05/18/16   3:47P res 856-566-1979 Left Msg Answering Machine
          gc  05/18/16   3:47P 3000 BEGIN REG COLLECT Answering Machine
          gc  05/25/16   6:00P res 856-566-1979 Left Msg Answering Machine
          gc  05/25/16   6:00P 3000 BEGIN REG COLLECT Answering Machine
          gc  06/02/16  10:06  res 856-566-1979 Left Msg Answering Machine
          gc  06/02/16  10:06  3000 BEGIN REG COLLECT Answering Machine
          gc  06/14/16   3:58P res 856-566-1979 Left Msg Answering Machine
          gc  06/14/16   3:58P 3000 BEGIN REG COLLECT Answering Machine
          gc  06/21/16   7:31P res 856-566-1979 Left Msg Answering Machine
          gc  06/21/16   7:31P 3000 BEGIN REG COLLECT Answering Machine
          gc  06/30/16   5:04P res 856-566-1979 Left Msg Answering Machine
          gc  06/30/16   5:04P 3000 BEGIN REG COLLECT Answering Machine
          gc  07/13/16   7:33P res 856-566-1979 Left Msg Answering Machine
          gc  07/13/16   7:33P 3000 BEGIN REG COLLECT Answering Machine
          gc  07/19/16   7:49P res 856-566-1979 Left Msg Answering Machine
          gc  07/19/16   7:49P 3000 BEGIN REG COLLECT Answering Machine
          gc  07/27/16   8:44  res 856-566-1979 Left Msg Answering Machine
          gc  07/27/16   8:44  3000 BEGIN REG COLLECT Answering Machine
          gc  08/03/16   8:52  res 856-566-1979 Left Msg Answering Machine
          gc  08/03/16   8:52  3000 BEGIN REG COLLECT Answering Machine
          gc  08/09/16   5:24P res 856-566-1979 Left Msg Answering Machine
          gc  08/09/16   5:24P 3000 BEGIN REG COLLECT Answering Machine
          gc  08/17/16   4:39P res 856-566-1979 Left Msg Answering Machine
          gc  08/17/16   4:39P 3000 BEGIN REG COLLECT Answering Machine
          gc  08/23/16   6:34P res 856-566-1979 Left Msg Answering Machine
```

CONFIDENTIAL

LEVINS197

```
02/17/17                           ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                              SELECTED
          gc  08/23/16   6:34P 3000 BEGIN REG COLLECT Answering Machine
          gc  08/30/16   2:50P res 856-566-1979 Left Msg Answering Machine
          gc  08/30/16   2:50P 3000 BEGIN REG COLLECT Answering Machine
          gc  09/02/16  11:05   res 856-566-1979 Left Msg Answering Machine
          gc  09/02/16  11:05   3000 BEGIN REG COLLECT Answering Machine
          PJB 09/03/16  10:30P Created a Link request using Service Type ARSBANKOADD et
          PJB 09/03/16  10:30P BANKOMONDD index 691191925 (A-80864955)
          PJB 09/03/16  10:30P Updated udw 510,1 with 09/03/2016 et BANKOMONDD index
          PJB 09/03/16  10:30P 691191926 (A-80864955)
          PJB 09/03/16  10:30P BANKO REQUEST et BANKOMONDD index 691191927
          PJB 09/03/16  10:30P LN (ARSBANKOADD) Created skiptrace request for 'DEMO'
          PJB 09/03/16  10:30P window 2 (TID #25870019).
          gc  09/07/16   7:46P res 856-566-1979 Left Msg Answering Machine
          gc  09/07/16   7:46P 3000 BEGIN REG COLLECT Answering Machine
          gc  09/13/16   7:14P res 856-566-1979 Left Msg Answering Machine
          gc  09/13/16   7:14P 3000 BEGIN REG COLLECT Answering Machine
          PJB 09/15/16  10:28P LN (ARSBANKOADD) Received skiptrace results for 'DEMO'
          PJB 09/15/16  10:28P window 2 (TID #25870019).
          PJB 09/15/16  10:28P BANKO RETURNED NO HIT et BANKONOHIT index 718053965
          PJB 09/15/16  10:28P Updated udw 510,2 with 09/15/2016 et BANKONOHIT index
          PJB 09/15/16  10:28P 718053967 (A-80864955)
          gc  09/20/16   5:20P res 856-566-1979 Left Msg Answering Machine
          gc  09/20/16   5:20P 3000 BEGIN REG COLLECT Answering Machine
          gc  09/23/16   9:28   res 856-566-1979 Left Msg Answering Machine
          gc  09/23/16   9:28   3000 BEGIN REG COLLECT Answering Machine
          gc  09/27/16   5:15P res 856-566-1979 Left Msg Answering Machine
          gc  09/27/16   5:15P 3000 BEGIN REG COLLECT Answering Machine
          gc  09/30/16   4:39P res 856-566-1979 Left Msg Answering Machine
          gc  09/30/16   4:39P 3000 BEGIN REG COLLECT Answering Machine
          gc  10/11/16   1:49P res 856-566-1979 Left Msg Answering Machine
          gc  10/11/16   1:49P 3000 BEGIN REG COLLECT Answering Machine
          gc  10/14/16   9:40   res 856-566-1979 Left Msg Answering Machine
          gc  10/14/16   9:40   3000 BEGIN REG COLLECT Answering Machine
          gc  10/19/16   1:52P res 856-566-1979 Left Msg Answering Machine
          gc  10/19/16   1:52P 3000 BEGIN REG COLLECT Answering Machine
          gc  10/24/16   3:11P res 856-566-1979 Left Msg Answering Machine
          gc  10/24/16   3:11P 3000 BEGIN REG COLLECT Answering Machine
          gc  10/27/16  10:27   res 856-566-1979 Left Msg Answering Machine
          gc  10/27/16  10:27   3000 BEGIN REG COLLECT Answering Machine
          gc  11/04/16   9:32   res 856-566-1979 Left Msg Answering Machine
          gc  11/04/16   9:32   3000 BEGIN REG COLLECT Answering Machine
          gc  11/11/16   3:20P res 856-566-1979 Left Msg Answering Machine
          gc  11/11/16   3:20P 3000 BEGIN REG COLLECT Answering Machine
          gc  11/17/16  11:18   res 856-566-1979 Left Msg Answering Machine
          gc  11/17/16  11:18   3000 BEGIN REG COLLECT Answering Machine
          gc  11/23/16  10:14   res 856-566-1979 Left Msg Answering Machine
          gc  11/23/16  10:14   3000 BEGIN REG COLLECT Answering Machine
          gc  12/01/16   2:31P res 856-566-1979 Left Msg Answering Machine
          gc  12/01/16   2:31P 3000 BEGIN REG COLLECT Answering Machine
          gc  12/07/16   6:07P res 856-566-1979 Left Msg Answering Machine
```

CONFIDENTIAL

LEVINS198

```
02/17/17                              ACCOUNT RESOLUTION SERVICES
10:33 AM  PJB                                 SELECTED
                gc  12/07/16  6:07P 3000 BEGIN REG COLLECT Answering Machine
                gc  12/13/16  6:41P res 856-566-1979 Left Msg Answering Machine
                gc  12/13/16  6:41P 3000 BEGIN REG COLLECT Answering Machine
                gc  12/21/16  1:37P res 856-566-1979 Left Msg Answering Machine
                gc  12/21/16  1:37P 3000 BEGIN REG COLLECT Answering Machine
                gc  12/29/16  1:25P res 856-566-1979 Left Msg Answering Machine
                gc  12/29/16  1:25P 3000 BEGIN REG COLLECT Answering Machine
                gc  01/06/17  4:29P res 856-566-1979 Left Msg Answering Machine
                gc  01/06/17  4:29P 3000 BEGIN REG COLLECT Answering Machine
                gc  01/11/17  5:40P res 856-566-1979 Left Msg Answering Machine
                gc  01/11/17  5:40P 3000 BEGIN REG COLLECT Answering Machine
                gc  01/19/17  8:55  res 856-566-1979 Left Msg Answering Machine
                gc  01/19/17  8:55  3000 BEGIN REG COLLECT Answering Machine
                gc  02/07/17  1:25P res 856-566-1979 AM NO MSG LEFT
                gc  02/07/17  1:25P 3000 BEGIN REG COLLECT Answering Machine
                PJB 02/10/17  6:13P SoL Date changed from blank to 09/02/2024.
                PJB 02/10/17  6:13P SoL Date changed from 09/02/2024 to 09/02/2020.
                PJB 02/17/17 10:32  Changed wait date to 02/17/17 et 3ATY index 844966190
                PJB 02/17/17 10:32  (R-80864955)
                PJB 02/17/17 10:32  Transferred to collector HSE et 3ATY index 844966191
                PJB 02/17/17 10:32  (R-80864955)
                PJB 02/17/17 10:32  Stopped 0 letters et 3ATY index 844966192
                PJB 02/17/17 10:32  3ATY REPRESENTED BY ATTNY et WIN22 index 844966189
                PJB 02/17/17 10:32  DBPF value changed to ! et WIN22 index 844966193
                PJB 02/17/17 10:32  (A-80864955)

        ** END OF REPORT **
```

CONFIDENTIAL

LEVINS199

*Exhibit 4*

LEVINS200

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
BY: Christian M. Scheuerman, Esquire
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, NJ 08002
(856)663-4300

**ATTORNEY FOR DEFENDANT**
Healthcare Revenue Recovery Group,
LLC

447-102973 (SXK/CMS)

| | |
|---|---|
| **ELAINE LEVINS and WILLIAM LEVINS,** on behalf of themselves and other similarly situated | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CAMDEN VICINAGE** |
| VS. | **Case No. 1:17-cv-00928-RBK-KMW** |
| **HEALTHCARE REVENUE RECOVERY GROUP, LLC D/B/A ARS ACCOUNT RESOLUTION SERVICES AND JOHN and JANE DOES 1 THROUGH 25** | **CIVIL ACTION** **DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES** |

Defendant, Healthcare Revenue Recovery Group, LLC, herby responds to Plaintiff's
Interrogatories as follows:

1.   What is the name and last known address of each human being who provided any
     information used to respond to any of these Interrogatories?

     **ANSWER:**   **Objection. The question of overbroad. Without waiving same,
                    Defendant drafted the responses with assistance of counsel.
                    Information was obtained from various sources, including David
                    Friedlander.**

2.   What is the name and last known address of each human being who investigated the
     factual allegations set forth in the Complaint?

     **ANSWER:**   **Objection, this question is improper in that is suggests a non-existent
                    legal obligation to "investigate" Plaintiffs' allegations. To the
                    contrary, it is solely Plaintiffs' burden to establish a cause of action
                    against Defendant. Defendant denies all allegations in the complaint.
                    The question is also over broad to the extent it inquires as to conduct
                    by "human beings" beyond Defendant. In addition, to the extent this
                    question inquires as to investigation of allegations by the Defendant
                    and its counsel, it improperly calls for the disclosure of attorney work
                    produce and/or privileged information.**

{PH374768.1}



DEPOSITION
EXHIBIT
D-3
102410

LEVINS201

3.   Describe each Communication You made or sent to either or both Plaintiffs. The
     description for each Communication should be sufficient to distinguish it from all other
     Communications. Such detail can include, but is not limited to, the date and time of the
     Communication, the way the Communication was made, and the content of the
     Communication.

     **ANSWER:**   **On November 30, 2015, a letter was mailed to Elaine Levins.**
                   **Thereafter, multiple telephone messages were left with the Plaintiffs**
                   **on various dates, and in every one the caller was identified as "ARS."**
                   **The content of the letter speaks for itself.**

4.   Describe each Communication You received from either or both Plaintiffs. The
     description for each Communication should be sufficient to distinguish it from all other
     Communications. Such detail can include, but is not limited to, the date and time of the
     Communication, the way the Communication was made, and the content of the
     Communication.

     **ANSWER:**   **Answering Defendant did not receive any communications from the**
                   **Plaintiffs. In particular, the Plaintiffs never disputed that they owed**
                   **the debt and never called Defendant in response to the telephone**
                   **messages.**

5.   How do You create and store records of each written and oral Communication between
     You and a Consumer? If any records are stored in a database, include a description of
     each field in the database.

     **ANSWER:**   **Objection. This question is overbroad and beyond the scope of**
                   **discovery established in the November 7, 2018 Order. It has nothing**
                   **to do with whether Defendant regularly transacts business using**
                   **"ARS," or whether "ARS" is a commonly used acronym.**

6.   What is the meaning of each abbreviation, code, letter, numeral, or symbol regularly used
     in Your records of collection activities?

     **ANSWER:**   **Objection. This question is overbroad and beyond the scope of**
                   **discovery established in the November 7, 2018 Order. It has nothing**
                   **to do with whether Defendant regularly transacts business using**
                   **"ARS," or whether "ARS" is a commonly used acronym.**

7.   What is the name and last known address of each human being who attempted to collect
     the Obligation on HRRG's behalf?

     **ANSWER:**   **Objection, this question is overly vague in the context of the**
                   **allegations in this case. Without waiving same, no person from**

{PI1374768.1}

Defendant has attempted to collect the obligation from the Plaintiffs. More specifically, the letter and telephone messages left for the Plaintiffs were not generated by a specific individual.

8.    State each name, acronym, and abbreviation under which Healthcare Revenue Recovery Group, LLC has identified itself to others since its formation and, for each, include dates when the name, acronym, or abbreviation was first used and last used.

**ANSWER:    Objection.  This question is overbroad as to time frame and subject matter in light of the November 7, 2018 Order.  Without waiving same, "ARS Account Resolution Services" began operations in January 2009.  Since then, "ARS" has always been used by the Defendant as an abbreviation for ARS Account Resolution Services. Transactions also appear as "ARS" on credit card statements.**

9.    Describe with reasonable particularity each Communication which You made during the Term in which you used "ARS" but in which you did not include one of the following in the same Communication: "Healthcare Revenue Recovery Group", "HRRG", or "Account Resolution Services".

**ANSWER:    Objection.  This question is overbroad as to time frame and subject matter in light of the November 7, 2018 Order.  Without waiving same, the telephone message left with Plaintiffs refers only to  "ARS." In addition, if the Plaintiffs had made a payment on Defendant's website, arspayment.com, the transaction would only appear as "ARS" on the credit card statement.  In addition, the only business name visible on the outside of the Plaintiffs' November 30, 2015 collection letter was "ARS."  "ARS" is prominently displayed in the upper left have corner of the Plaintiff's collection letter and is placed in font which is twice as large as any other font in the letter.  The bottom left hand portion of the letter also directs consumers to send payments to "ARS."**

10.    State the factual basis for Your decision to use "ARS Account Resolution Services" to either describe or identify Healthcare Revenue Recovery Group, LLC.  If the factual basis includes any Documents, describe each Document with reasonable particularity enough to identify it.

**ANSWER:    Objection.  This question as phrased is  vague and unintelligible in referring to some undefined "decision."  By way of further objection, any such "decision" is not probative of any material issue in this case. Without waiving same, ARS Account Resolution Services began operations in January 2009, and since then "ARS" is the name under which it usually transacts with the public.**

{PH374768.1}

11.    State the factual basis for Your decision to use "ARS" (i.e., "ARS" alone and not followed by "Account Resolution Services") to either describe or identify Healthcare Revenue Recovery Group, LLC to others. If the factual basis includes any Document, describe each Document with reasonable particularity enough to identify it.

       **ANSWER:**    **Objection. This question as phrased is vague and unintelligible in referring to some undefined "decision." ARS Account Resolution Services is a registered trade name. By way of further objection, any such "decision" is not probative of any material issue in this case.**

12.    When did You begin using "ARS" (i.e., "ARS" alone and not followed by "Account Resolution Services") in voicemail messages left for Consumers?

       **ANSWER:**    **ARS Account Resolution Services began operations in January 2009, and "ARS" has been utilized since that time.**

13.    State all facts that support Your contention that this Court lacks jurisdiction over the subject matter of Plaintiffs First Amended Complaint.

       **ANSWER:**    **Based on discovery produced to date, Defendant does not anticipate relying on this affirmative defenses at this time.**

14.    State all facts that support Your contention that Plaintiffs' claims are barred by the applicable Statute of Limitations and/or Laches.

       **ANSWER:**    **Some communications between the Defendant and the Plaintiffs took place more than a year prior to the filing of Plaintiffs' complaint and such claims are therefore time barred**

15.    State all facts that support Your contention that the Answering Defendant owed no duty to Plaintiff at the time of Plaintiff's alleged injuries.

       **ANSWER:**    **It is Plaintiffs' burden to establish each element of the cause of action alleged, including the existence, nature, and scope of a legal duty to Plaintiffs. Defendant denies that Plaintiffs have satisfied that burden.**

16.    State all facts that support Your contention that if the damages of the Plaintiffs are true and proven then such damages were not caused by any conduct of Answering Defendant, which was secondary and passive, but were caused by the primary and active conduct of third parties over whom the Answering Defendant had no control.

{PH374768 1}

> **ANSWER:** Based on discovery produced to date, Defendant does not anticipate relying on this affirmative defenses at this time.

17. State all facts that support Your contention that the claims of Plaintiffs are barred in whole or in part by the Entire Controversy Doctrine.

> **ANSWER:** Based on discovery produced to date, Defendant does not anticipate relying on this affirmative defenses at this time.

18. State all facts that support Your contention that the claims of Plaintiffs are barred by the doctrines of arbitration and award, estoppel, res judicata, and/or waiver.

> **ANSWER:** Based on discovery produced to date, Defendant does not anticipate relying on this affirmative defenses at this time.

19. State all facts that support Your contention that Plaintiffs' claims are barred for failure to exhaust all administrative remedies.

> **ANSWER:** Based on discovery produced to date, Defendant does not anticipate relying on this affirmative defenses at this time.

20. State all facts that support Your contention that Defendant is entitled to the bona fide error defense.

> **ANSWER:** The bona fide error defense provides that a debt collector may not be held liable if it can show that a violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such procedures. Defendant shall rely upon all documents produced by all parties and third-parties, all interrogatory responses, and all party and third-party depositions to support this defense.

21. State all facts that support Your contention that "ARS" is either the name under which HRRG usually transacts business or a commonly used acronym of its registered name, "ARS Account Resolution Services."

> **ANSWER:** ARS Account Resolution Services began operations in January 2009, and since then "ARS" is the name under which it usually transacts with the public. In all of the written and oral communications with the Plaintiffs, Defendant consistently used the name "ARS." The only business name visible on the outside of the Plaintiffs' November 30, 2015 collection letter was "ARS." "ARS" is prominently displayed in the upper left hand corner of the written correspondence to Plaintiffs

{PH374768 1}

in font which is twice as large as any other font in the letter.  The bottom left hand portion of the letter also directs Plaintiffs to send payments to "ARS."

In all telephone communications with consumers Defendant's employees exclusively utilize the "ARS" name.  In addition, Defendant's website is identified as "arspayment.com."  All payments by consumers made via the website  will appear as "ARS" on a consumer's credit card statement.  In addition, Defendant uses "ARS" in dealings with vendors.

22.   If You contend that each voicemail message You left for either or both Plaintiffs did not misrepresent your identity as being that of another debt collector, state all facts which support that contention.

ANSWER:          **Objection.  This question incorrectly suggests it is Defendant's burden to establish a negative.  To the contrary it is Plaintiffs' burden to establish each element of cause of action.  Moreover,  discovery has demonstrated no evidence of any misrepresentation of the identity of "ARS."  To the contrary, the telephone messages to Plaintiffs identified the caller as "ARS."  A website and telephone number were provided.  The identity of the caller and nature of the call is fully and plainly disclosed.  The actual website is even provided to allow payments to be made.  The website advises that "ARS" will appear on a consumer's credit card statement after an online payment is made.  In addition, well before the Plaintiffs received the alleged telephone message, Defendant sent Elaine Levins a letter.  The only business name visible on the outside of the Ms. Levins' November 30, 2015 letter was "ARS."**

23.   If You contend that "ARS" (i.e., "ARS" alone and not followed by "Account Resolution Services") is an acronym commonly used by You to identify yourself, state all facts which support that contention.

ANSWER:     **See response to no. 21.**

24.   If You contend You consistently used "ARS" (i.e., "ARS" alone and not followed by "Account Resolution Services") when dealing with either or both Plaintiffs, state all facts which support your contention.

ANSWER:     **See response to no. 21.**

{PII374768.1}

**CORPORATE DECLARATION**

I am authorized to make this declaration. I declare under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*David Friedlander*

David M. Friedlander
President, Healthcare Revenue Recovery
Group, LLC

Dated:    3/13/2019

{PH374768.1}

LEVINS207

# *Exhibit 5*

LEVINS208

# TELEPHONE MESSAGE TRANSCRIPT



This is

[1] ∧ARS calling.

[2]  Please return our call at 1-800-694-3048.

[3]  ARS is a debt collector.

[4]  This is an attempt to collect a debt.

[5]  Any information obtained will be used for that purpose.

[6]  Again, our number is 1-800-694-3048.

[7]  Visit us at www.arspayment.com.



*Levins v. Healthcare Revenue Recovery Group, LLC*
Case 1:17-cv-00928-RBK-KMW

Page **1** of **1**

# *Exhibit 6*

LEVINS210

902 F.3d 274
United States Court of Appeals, Third Circuit.

Elaine LEVINS; William Levins, on behalf of
themselves and others similarly situated, Appellants

v.

HEALTHCARE REVENUE RECOVERY GROUP LLC, a/k/a ARS
Account Resolution Services; John and Jane Does 1 through 25

No. 17-3330
|
Argued June 5, 2018
|
Filed: August 22, 2018

**Synopsis**

**Background:** Debtor brought putative class action against debt collector, alleging that debt collector's voicemail messages violated Fair Debt Collection Practices Act (FDCPA). The United States District Court for the District of New Jersey, No. 1-17-cv-00928, Robert B. Kugler, J., 2017 WL 4269467, granted debt collector's motion to dismiss for failure to state claim. Debtor appealed.

**Holdings:** The Court of Appeals, Jordan, Circuit Judge, held that:

debtor stated claim under FDCPA provision prohibiting use of names other than debt collector's true name;

debt collector did not violate FDCPA provision prohibiting placement of telephone calls without meaningful disclosure of caller's identity; and

debt collector did not violate FDCPA provision prohibiting use of false representations or deceptive means.

Affirmed in part, vacated in part, and remanded.

DEPOSITION
EXHIBIT
D-5
102419

**\*277** On Appeal from the United States District Court for the District of New Jersey, (D.C. No. 1-17-cv-00928), District Judge: Honorable Robert B. Kugler

**Attorneys and Law Firms**

Daniel A. Frischberg, 525 Route 73 South, Evesham Commons, Marlton, NJ 08053, Philip D. Stern [ARGUED], Andrew T. Thomasson, Stern Thomasson, 150 Morris Avenue, 2nd Floor, Springfield, NJ 07081, Counsel for Appellants

Sean X. Kelly, Christian M. Scheuerman [ARGUED], Marks O'Neill O'Brien Doherty & Kelly, 535 Route 38 East, Suite 501, Cherry Hill, NJ 08002, Counsel for Appellee

Before: AMBRO, JORDAN, and VANASKIE, Circuit Judges

OPINION

JORDAN, Circuit Judge.

In this appeal, we interpret three provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. Elaine and William Levins allege that Healthcare Revenue Recovery Group LLC ("HRRG") violated §§ 1692e(14), 1692d(6), and 1692e(10) by leaving telephone voice messages that did not use its true name, did not meaningfully disclose its identity, and used false representations and deceptive means to collect or attempt to collect a debt or obtain information about a consumer. In particular, the Levinses complain that voicemail messages in which HRRG went by the name of "ARS" were insufficient to identify it as HRRG or even as "ARS ACCOUNT RESOLUTION SERVICES," which is an alternative business name used by HRRG. HRRG moved to dismiss the complaint, as amended, for failure to state a claim, and the District Court granted that motion.

We conclude that the Levinses have stated a plausible claim that HRRG violated § 1692e(14)'s "true name" provision, but they have not stated plausible claims under §§ 1692d(6) or 1692e(10). Accordingly, **\*278** we will vacate in part and affirm in part the dismissal of their case.

## I. BACKGROUND

### A. Allegations In The Complaint[1]

[1]   For convenience, we refer to the amended complaint simply as "the complaint." We construe the allegations of that pleading in the light most favorable to the Levinses. *See infra* note 2.

The Levinses, who live in New Jersey, purportedly incurred a debt that was transferred to HRRG for collection. HRRG then began leaving pre-recorded voicemail messages

Levins v. Healthcare Revenue Recovery Group LLC, 902 F.3d 274 (2018)

on the Levinses' phone in an attempt to collect the debt. The following is a transcription of the message:

> ARS calling. Please return our call at 1-800-694-3048. ARS is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Again, our number is 1-800-694-3048. Visit us at www.arspayment.com.

(App. at 22 ¶ 31.)

At the time the Levinses received that message over and over, they did not know the identity of the caller. They had never received any written communication from HRRG. Having recently gone through bankruptcy, they knew of a debt collector with the full name "ARS National Services, Inc." that was known as "ARS" for short. That company, however, turns out to be wholly unrelated to HRRG. While it has registered the name "ARS ACCOUNT RESOLUTION SERVICES" in New Jersey, HRRG has neither registered the stand-alone name "ARS" nor taken any other legal steps to do business under that specific name.

There are numerous businesses that use the name "ARS," including the debt collector the Levinses had heard of, which is a California corporation registered to transact business in New Jersey. According to the Levinses, "by reputation the name 'ARS' is, without more, associated in the nation's debt collection industry with ARS National Services Inc." (App. at 23 ¶ 41.) A Google search of "ARS" along with "debt" or "collector" will result in links to many debt collectors other than HRRG. Reference to www.arspayment.com, the website that HRRG mentioned in the pre-recorded messages it left for the Levinses, does not narrow the field. It only leads to a browser privacy warning that blocks access to the website. And, if one ignores the warning and accesses the site, the website begins tracking and storing information about the computer user.

### B. Procedural History

Within a year of receiving the voicemail messages from HRRG, the Levinses filed their putative class-action complaint alleging that HRRG violated the FDCPA when attempting to collect debts from them and others similarly situated. They eventually filed an amended complaint in which they claimed that the pre-recorded messages violate 15 U.S.C. §§ 1692e(14), 1692d(6), and 1692e(10) because they "use the name of any business, company or organization other than the true name of the debt collector's business, company, or organization"; "fail to provide meaningful disclosure of HRRG's

identity"; and "use false representations and deceptive means to collect or attempt to collect any debt and to obtain information concerning a consumer[.]" (App. at 19 ¶ 13.)

HRRG moved to dismiss the case, invoking Federal Rule of Civil Procedure 12(b)(6). Along with its motion, HRRG filed an attorney declaration with supporting documents. Among those was a certificate stating that it is registered to do **\*279** business in New Jersey under the name "ARS ACCOUNT RESOLUTION SERVICES," and a collection letter that it purports to have sent to Elaine Levins in November 2015. The Levinses opposed HRRG's motion and submitted their own attorney declaration with documents listing hundreds of businesses registered in New Jersey under names that include "ARS." After reviewing the parties' submissions, the District Court granted the motion to dismiss.

The Levinses have timely appealed.

## II. DISCUSSION [2]

[2]   The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over a district court's dismissal for failure to state a claim under Rule 12(b)(6), applying the same standard as the district court." *Glover v. FDIC*, 698 F.3d 139, 144 (3d Cir. 2012). "We will affirm an order dismissing a complaint only when the complaint fails to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rotkiske v. Klemm*, 890 F.3d 422, 424 n.2 (3d Cir. 2018) (en banc) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). We construe the allegations in the complaint in the light most favorable to the non-moving parties, the plaintiffs. *Id.*

In appealing the order dismissing their complaint for failure to state a claim, the Levinses make three arguments. First, they say that HRRG violated § 1692e(14) because it did not use its true name in the voicemail messages. Next, they argue that HRRG violated § 1692d(6) because the messages did not meaningfully disclose the caller's identity. And finally, they assert that HRRG violated § 1692e(10) because forcing consumers to call HRRG or navigate its website is a deceptive means to collect debts and obtain information about a consumer.

HRRG of course disputes all of those contentions. It says that it did not violate § 1692e(14) because "ARS" is an abbreviation of its registered alternative business name "ARS Account Resolution Services," which is a true name. It then contends that it did not violate § 1692d(6) because the messages said that the caller was a debt collector, pointed out that the purpose of the call was to collect a debt, and provided a phone number and website for the consumer to use, all of which was a sufficient disclosure of identity. And, last, it argues that it did not use deceptive collection practices in violation

of § 1692e(10) because the messages informed consumers that any information obtained would be used to collect a debt.

Before turning to the parties' competing arguments, though, we must determine which materials can properly be considered in evaluating the District Court's decision to dismiss the claims under Rule 12(b)(6).

### A. We Decline To Rely On The Collection Letter Attached To HRRG's Motion To Dismiss Because The Complaint Does Not Reference Or Rely On It.

We "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when evaluating whether dismissal under Rule 12(b)(6) was proper. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But we can also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* We may do so because "the primary problem raised by looking to documents outside the complaint— lack **\*280** of notice to the plaintiff—is dissipated where the plaintiff has actual notice ... and has relied upon [those] documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks, alteration, and citation omitted).

Here, HRRG asks us to consider the collection letter that it claims to have mailed to the Levinses in November 2015. The letter bears a company logo consisting of the letters "ARS," says in the letterhead that "Account Resolution Services" is "a division of HRRG, LLC," and, in the body of the letter, uses "ARS" as an abbreviated name. (App. at 38.) HRRG urges us to conclude that the Levinses received that collection letter before the phone messages and so would have understood ARS and HRRG to be one and the same. The Levinses respond that the letter is off limits at this stage of the litigation, and they are right. We will not consider it because the claims in the Levinses' complaint are not based on it. Rather, the claims are based on the pre-recorded phone messages that the Levinses allegedly received. Indeed, the Levinses specifically allege that they have never received any written communication from HRRG, and we must take that as true, *see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (construing allegations in the complaint in the light most favorable to the non-moving party).[3]

---

[3]  The District Court's decision likewise did not reference that collection letter. We will, however, consider the certificate stating that HRRG is registered to do business in New Jersey under the name "ARS ACCOUNT RESOLUTION SERVICES," (App. at 35), because it is a matter of public record, *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The District Court referenced the certificate in its decision, and neither party disputes that choice on appeal. That is the limit of what we are considering outside of the complaint.

Of course, our decision not to consider the letter at this stage does not mean that it is irrelevant or forever precluded from consideration. Assuming it is properly tendered to the District Court, HRRG may rely on it later in a motion for summary judgment or at trial.

With that decided, we can now consider whether the Levinses have stated their FDCPA claims with sufficient plausibility to withstand the motion to dismiss.

### B. The Levinses Have Stated A Plausible Claim Under § 1692e(14).

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692. Because it is a remedial statute, "we construe its language broadly, so as to effect its purpose." *Tatis*, 882 F.3d at 427 (internal quotation marks and citation omitted). In evaluating whether a particular debt-collection practice violates the Act, "we employ a 'least sophisticated debtor' standard[.]" *Id.* (citation omitted). "The standard is objective, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Id.* (internal quotation marks, emphasis, and citation omitted). "[That] standard aims to protect the gullible as well as the shrewd, but it nevertheless preserves a quotient of reasonableness[.]" *Id.* (internal quotation marks, alterations, and citations omitted).

To state a claim under the FDCPA, a plaintiff must allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Id.* Here, the parties only dispute **\*281** the fourth element, *i.e.*, whether the messages violated §§ 1692e(14), 1692d(6), or 1692e(10) of the Act.

We conclude that the Levinses have stated a plausible claim under § 1692e(14) because, as alleged in the complaint, "ARS" is neither HRRG's full business name, the name under which it usually transacts business, nor a commonly used acronym of its registered name "ARS ACCOUNT RESOLUTION SERVICES." Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It contains a non-exhaustive list of prohibited conduct, one sort of which is "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." *Id.* § 1692e(14).

The FDCPA is enforced by the Federal Trade Commission ("FTC"), which has offered guidance on how to interpret that statute. *Hawthorne v. Mac Adjustment, Inc.*, 140

F.3d 1367, 1372 n.2 (11th Cir. 1998). Although the FTC's guidance "does not have the force of law and is not entitled to deference in FDCPA cases[,]" we may adopt its interpretation when we find its logic persuasive. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (internal quotation marks, alterations, and citation omitted). The FTC has interpreted the "true name" requirement in § 1692e(14) to permit a debt collector to "use its full business name, the name under which it usually transacts business, or a commonly-used acronym[,]" as long as "it consistently uses the same name when dealing with a particular consumer." *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988) [hereinafter *FTC Commentary*]. That is a sound interpretation of the statutory requirement, and we adopt it as our own.

Here, at this early stage in the case, when we must take the allegations in the complaint as true, the Levinses have plausibly alleged facts suggesting that "ARS" is not the "true name" of HRRG. While they do not deny that "ARS" is a name HRRG may use, they say that the acronym is commonly associated with other debt collection companies, including "ARS National Services, Inc.," and that it could refer to hundreds of other businesses registered to do business in New Jersey under names that include "ARS." (App. at 23 ¶¶ 37, 41; App. at 41.) *See also Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 248 (5th Cir. 2017) (abbreviating defendant "Advanced Recovery Systems, Inc." as "ARS"); *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1074 (9th Cir. 2017) (abbreviating defendant "ARS National Services, Inc." as "ARS"). Nothing in the information properly before us indicates that "ARS" is HRRG's full business name, the name under which it usually transacts business, or its commonly used acronym. To the extent HRRG argues to the contrary, it is doing so without proper record support. It will have an opportunity later to expand the record, but for now taking the allegations in the complaint as true, we conclude that the Levinses have stated a plausible claim for relief under § 1692e(14). [4]

4    The District Court reached the opposite conclusion by relying on *Pescatrice v. Elite Recovery Service, Inc.*, No. 06-61130, 2007 WL 1192441 (S.D. Fla. Apr. 23, 2007), and *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004). Those cases, however, are distinguishable.
    In *Pescatrice*, the court held that there was no violation of § 1692e(10) when a debt collector used an abbreviation of its company name in the return address of a mailing. 2007 WL 1192441, at *4; *see also* 15 U.S.C. § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"); *infra* Section II.D. Similarly, in *Strand*, the court held that a collection agency's practice of using its initials and corporate logo on an envelope's exterior did not violate § 1692f(8). 380 F.3d at 319; *see also* 15 U.S.C. § 1692f(8) (prohibiting "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business"). Both of those cases were based on different provisions of the FDCPA, and we do not interpret them as deciding the "true name" question that is at issue here.

**\*282  C. The Levinses Have Not Stated A Plausible Claim Under § 1692d(6).**

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It too, like § 1692e, contains a non-exhaustive list of prohibited conduct, one type of which is "the placement of telephone calls without meaningful disclosure of the caller's identity." *Id.* § 1692d(6). Here, though the issue is close, we conclude that the District Court was correct to rule that the Levinses have not stated a claim under § 1692d(6). The voicemail messages provided enough information about the caller's identity for the least sophisticated debtor to know that the call was from a debt collector and was an attempt to collect a debt.

The statute does not define "meaningful disclosure[,]" but in *Hart v. Credit Control, LLC*, the United States Court of Appeals for the Eleventh Circuit interpreted "meaningful disclosure" as requiring a debt collector's voice message to provide two types of information: first, "the name of the debt collection company[,]" and second, "the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company[.]" 871 F.3d 1255, 1260 (11th Cir. 2017). The court held that there was no violation of § 1692d(6) when the individual calling on behalf of the debt collector did not leave his or her personal name in a message because that individual provided a company name and stated that the call was from a debt collector. *Id.* at 1259-60; *see also id.* at 1256 ("This is Credit Control calling with a message. This call is from a debt collector. Please call us at 866–784–1160. Thank you."). District courts in our Circuit have similarly interpreted "meaningful disclosure" as requiring a debt collector "to reveal itself as a collection agency when leaving messages" because "[m]eaningful disclosure requires a debt collector to disclose enough information so as not to mislead the recipient as to the purpose of the call." *See Pisarz v. GC Servs. Ltd. P'ship*, No. 16-4552, 2017 WL 1102636, at \*6 (D.N.J. Mar. 24, 2017) (internal quotation marks and citation omitted); *see also id.* (citing district court cases).

The Levinses claim that saying "ARS" was not enough meaningful disclosure of the caller's identity to be lawful under § 1692d(6). As with their claim under § 1692e(14), they again argue that, from the words of the messages, it is not clear that "ARS" would uniquely refer to HRRG because there are other companies in the debt collection industry that are associated with the name "ARS," and there are other businesses registered in New Jersey with business names or associated names that include "ARS." Although we agreed with that contention with respect to § 1692e(14)'s "true name" requirement, it  \*283  has less force in the context of § 1692d(6) for two reasons.

Levins v. Healthcare Revenue Recovery Group LLC, 902 F.3d 274 (2018)

First, although it is possible for a debt collector's phone message to violate both §§ 1692d(6) and 1692e(14),[5] a violation of one provision is not necessarily a violation of the other because "meaningful disclosure of the caller's identity" is not restricted to providing the name of the debt collector. As explained above, "meaningful disclosure of the caller's identity" has been interpreted to include information that discloses the call is from a debt collector so as not to mislead the least sophisticated debtor of the purpose of the call. Here, the voicemail messages would not mislead the least sophisticated debtor because the messages gave some identifying information about the caller, stated that the call was from a debt collector, and stated that the call was an attempt to collect a debt. Even though the Levinses have sufficiently alleged that "ARS" is, as already discussed, less than a "true name" as defined by § 1692e(14), they have not plausibly alleged that using the abbreviation "ARS," which is associated with a registered identity of HRRG, amounts to a lack of meaningful disclosure of the sort forbidden by § 1692d(6). Nothing in the messages rises to the level of "harass[ment], oppress[ion], or abuse ... in connection with the collection of a debt," which is the target of § 1692d.

5    The FTC regards a debt collector's use of "a false business name in a phone call" as violating both §§ 1692e(14) and 1692d(6). *See FTC Commentary*, 53 Fed. Reg. at 50105 ("A debt collector who uses a false business name in a phone call to conceal his identity violates [§ 1692e(14) ], as well as [§ 1692d(6) ]."); *id.* at 50107 ("When a debt collector uses a false business name in a phone call, he violates [§ 1692d(6) ] as well as [§ 1692e(14) ]."). We agree that such conduct would violate both §§ 1692e(14) and 1692d(6), but here the Levinses have not alleged that "ARS" is a "false business name" of HRRG. They have only alleged and argued that the name "ARS" could refer to any number of companies that use the name "ARS," which falls short of saying that "ARS" is a "false business name" of HRRG.

Second, and closely related, if we were to say that use of anything less than a debt collector's "true name" was a violation of § 1692d(6), we would make § 1692d(6) superfluous in light of § 1692e(14). *See Everage v. Nat'l Recovery Agency*, No. 14-2463, 2015 WL 1071757, at *5 (E.D. Pa. Mar. 11, 2015) (declining to import § 1692e(14)'s "true name" requirement into § 1692d(6) ). When Congress enacted the FDCPA, it used the term "true name" in § 1692e(14), whereas it used "meaningful disclosure of the caller's identity" in § 1692d(6). Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 874, 877-78 (1977). The difference must have significance. If Congress had wanted § 1692d(6) also to require that a debt collection company use its "true name[,]" then it would have so specified. *See Loughrin v. United States*, —— U.S. ——, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (noting "when Congress includes particular language in one section of a statute but omits it in another[,] ... th[e Supreme] Court presumes that Congress intended a difference in meaning" (internal quotation marks, citation, and alteration omitted) ). We will not rewrite the statute and import the "true name" requirement of § 1692e(14) into § 1692d(6).

For those reasons, the District Court properly dismissed the Levinses' claim under § 1692d(6).

LEVINS219

Levins v. Healthcare Revenue Recovery Group LLC, 902 F.3d 274 (2018)

**D. The Levinses Have Not Stated A Plausible Claim Under § 1692e(10).**

Finally, we also agree with the District Court's conclusion that the Levinses failed **\*284** to state a claim under § 1692e(10) because the messages adequately warned that any information obtained would be used to collect a debt. Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Violations of § 1692e(10) usually "include impersonating a public official, falsely representing that unpaid debts will be referred to an attorney, and misrepresenting the amount of the debt owed." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (internal citations omitted); *see also, e.g., Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir. 1989) (holding attorney violated § 1692e(10) when he sent a collection letter that falsely represented that a mortgage foreclosure case was already in litigation, that threatened to take action within one week, and that failed to inform debtor of her right to cure). To state a claim under § 1692e, a false statement "must be material when viewed through the least sophisticated debtor's eyes[,]" which means "it has the potential to affect the decision-making process of the least sophisticated debtor[.]" *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (emphasis omitted).

Here, nothing in the messages rises to the level of being materially deceptive, misleading, or false. The plain language of each message reveals that the caller is a debt collector, that the call is part of an attempt to collect a debt, and that any information obtained will be used in that attempt. Given those clear disclosures, even the least sophisticated debtor is fairly on notice that calling the phone number provided in the message or visiting the website might result in the debt collector obtaining information that it could use in trying to collect the debt. The caller's purpose is transparent and the messages are far removed from the false representations that typically have been held to violate § 1692e(10). The District Court thus properly dismissed the claim brought under that FDCPA subsection.

**III. CONCLUSION**

For the foregoing reasons, we will vacate the District Court's dismissal of the § 1692e(14) claim and remand for further proceedings. We will affirm, however, the District Court's dismissal of the claims under §§ 1692d(6) and 1692e(10).

Levins v. Healthcare Revenue Recovery Group LLC, 902 F.3d 274 (2018)

## All Citations

902 F.3d 274

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

LEVINS221

*Exhibit 7*

LEVINS222

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

DISTRICT OF NEW JERSEY

Case number *(if known)* _____

Chapter you are filing under:

■ Chapter 7
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Check if this an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/15

The bankruptcy forms use you and Debtor 1 to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use you to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **William**<br>First name<br>**Michael**<br>Middle name<br>**Levins**<br>Last name and Suffix (Sr., Jr., II, III) | **Elaine**<br>First name<br>**Marie**<br>Middle name<br>**Levins**<br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. |  | **Elaine McConnell** |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-5748 | xxx-xx-0664 |

**LEVINS223**

Debtor 1   **William Michael Levins**
Debtor 2   **Elaine Marie Levins**

Case number *(if known)*

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ■ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs | ■ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs |
| **5. Where you live** | **84 Lincoln Drive**<br>**Laurel Springs, NJ 08021**<br>Number, Street, City, State & ZIP Code<br><br>**Camden**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br><br>Number, P.O. Box, Street, City, State & ZIP Code | If Debtor 2 lives at a different address:<br><br><br>Number, Street, City, State & ZIP Code<br><br><br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br><br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) |

| Debtor 1 | **William Michael Levins** | | Case number *(if known)* | |
|---|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | | | |

| **Part 2:** | **Tell the Court About Your Bankruptcy Case** |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010))*. Also, go to the top of page 1 and check the appropriate box.

■ Chapter 7

☐ Chapter 11

☐ Chapter 12

☐ Chapter 13

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
|---|---|---|---|---|
| District | _____ | When | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When | Case number, if known | _____ |

**11.** **Do you rent your residence?**

■ No.   Go to line 12.

☐ Yes.   Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

LEVINS225

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document        Page 4 of 58

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | | Case number *(if known)* | |

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.    Go to Part 4.

☐ Yes.    Name and location of business

Name of business, if any

Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.    What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property?

Number, Street, City, State & Zip Code

---

LEVINS226

Debtor 1    **William Michael Levins**

Debtor 2    **Elaine Marie Levins**

Case number *(if known)* _____

**Part 5:**    Explain Your Efforts to Receive a Briefing About Credit Counseling

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

  ☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

  ☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

  ☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

  ☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

  ☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

  ☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

LEVINS227

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 6 of 58

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | | Case number *(if known)* |

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

| **16.** | **What kind of debts do you have?** | 16a. | **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." |
|---|---|---|---|
| | | | ☐ No. Go to line 16b. |
| | | | ■ Yes. Go to line 17. |
| | | 16b. | **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment. |
| | | | ☐ No. Go to line 16c. |
| | | | ☐ Yes. Go to line 17. |
| | | 16c. | State the type of debts you owe that are not consumer debts or business debts |

| **17.** | **Are you filing under Chapter 7?** | ☐ No. | I am not filing under Chapter 7. Go to line 18. |
|---|---|---|---|
| | **Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?** | ■ Yes. | I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors? |
| | | | ☐ No |
| | | | ■ Yes |

| **18.** | **How many Creditors do you estimate that you owe?** | ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|---|---|
| | | ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| | | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| | | ☐ 200-999 | | |

| **19.** | **How much do you estimate your assets to be worth?** | ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
|---|---|---|---|---|
| | | ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| | | ■ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| | | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| **20.** | **How much do you estimate your liabilities to be?** | ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
|---|---|---|---|---|
| | | ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| | | ■ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| | | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| /s/ William Michael Levins | /s/ Elaine Marie Levins |
|---|---|
| **William Michael Levins** | **Elaine Marie Levins** |
| Signature of Debtor 1 | Signature of Debtor 2 |
| Executed on  **March 29, 2016** | Executed on  **March 29, 2016** |
| MM / DD / YYYY | MM / DD / YYYY |

LEVINS228

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document       Page 7 of 58

| Debtor 1 | **William Michael Levins** |
| Debtor 2 | **Elaine Marie Levins** |

Case number *(if known)* _____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Andrew B. Finberg** _____
Signature of Attorney for Debtor

Date    **March 29, 2016**
MM / DD / YYYY

**Andrew B. Finberg**
Printed name

**Law Offices of Andrew B. Finberg, LLC**
Firm name

**525 Route 73 South, Suite 200**
**Marlton, NJ 08053**
Number, Street, City, State & ZIP Code

Contact phone    **856-988-9055**

Email address    **andy@sjbankruptcylaw.com**

Bar number & State

---

LEVINS229

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (if known) | |

☐ Check if this is an
amended filing

# Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

| Part 1: | **Summarize Your Assets** |
|---|---|

| | **Your assets** |
|---|---|
| | Value of what you own |

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B.................................................... $ **170,000.00**

   1b. Copy line 62, Total personal property, from Schedule A/B............................................ $ **9,655.00**

   1c. Copy line 63, Total of all property on Schedule A/B..................................................... $ **179,655.00**

| Part 2: | **Summarize Your Liabilities** |
|---|---|

| | **Your liabilities** |
|---|---|
| | Amount you owe |

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D...* $ **120,083.57**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy  the  total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*.................... $ **600.00**

   3b.  Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*......................... $ **100,362.00**

**Your total liabilities** $ **221,045.57**

| Part 3: | **Summarize Your Income and Expenses** |
|---|---|

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*.................................................. $ **5,000.00**

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*........................................... $ **5,153.00**

| Part 4: | **Answer These Questions for Administrative and Statistical Records** |
|---|---|

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Debtor 1    **William Michael Levins**
Debtor 2    **Elaine Marie Levins**

Case number *(if known)*

8.   **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
     122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.                                              $            **4,118.51**

9.   **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $            **0.00** |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $            **600.00** |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $            **0.00** |
| 9d. Student loans. (Copy line 6f.) | $            **0.00** |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $            **0.00** |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$            **0.00** |
| 9g. **Total.** Add lines 9a through 9f. | $            **600.00** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                                   Best Case Bankruptcy

**LEVINS231**

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

| 1.1 | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|
| **84 Lincoln Drive** | ■ Single-family home | |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | **Current value of the entire property?**    **Current value of the portion you own?** |
| | ☐ Land | $170,000.00    $170,000.00 |
| **Laurel Springs    NJ    08021-0000** | ☐ Investment property | |
| City    State    ZIP Code | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | ☐ Other _____ | **Fee simple** |
| | **Who has an interest in the property?** Check one | |
| **Camden** | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | ☐ **Check if this is community property** (see instructions) |
| | ■ Debtor 1 and Debtor 2 only | |
| | ☐ At least one of the debtors and another | |
| | **Other information you wish to add about this item, such as local property identification number:** | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

**LEVINS232**

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document     Page 11 of 58

| Debtor 1 | **William Michael Levins** |
|---|---|
| Debtor 2 | **Elaine Marie Levins** |

Case number *(if known)* _____

---

**1.2**   **If you own or have more than one, list here:**

**Ocean Resort Master Association Timeshare**
_____
Street address, if available, or other description
_____
_____

| City | State | ZIP Code |

_____
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☑ Timeshare
☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Timeshare to be surrendered**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **Unknown** | **Unknown** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
_____

☐ Check if this is community property
(see instructions)

---

**1.3**   **If you own or have more than one, list here:**

**Ocean Resort Master Association**
_____
Street address, if available, or other description
_____
_____

| City | State | ZIP Code |

_____
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☑ Timeshare
☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Timeshare to be surrendered**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **Unknown** | **Unknown** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
_____

☐ Check if this is community property
(see instructions)

---

**2.**   **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>**

| **$170,000.00** |

**Part 2:**   Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**LEVINS233**

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document   Page 12 of 58

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* | |

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

3.1 Make: **Honda**

Model: **CR-V**

Year: **1999**

Approximate mileage:

Other information:

Who has an interest in the property? Check one

☐ Debtor 1 only

☐ Debtor 2 only

☑ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this is community property
   (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,000.00** | **$1,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here....................................................................=>

**$1,000.00**

**Part 3:** Describe Your Personal and  Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☑ Yes. Describe.....

| Misc. Household Goods and Furnishings | **$2,500.00** |
|---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe.....

| Electronics | **$1,000.00** |
|---|---|

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ☑ Yes. Describe.....

| Books, Pictures, Misc. items<br>-books and pictures have only personal/sentimental value | **$50.00** |
|---|---|

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

**LEVINS234**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 13 of 58

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* | |

☐ Yes. Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
☐ No
■ Yes. Describe.....

| Shotgun (1) | $100.00 |
|---|---|

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

| Clothing | $500.00 |
|---|---|

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes. Describe.....

| Engagement Ring, His & Her's Wedding Band, Tennis Bracelet | $3,000.00 |
|---|---|

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................

| $7,150.00 |
|---|

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following?** | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes...................................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes.......................

Institution name:

| 17.1. | **Checking** | **TD Bank (checking)** -personal checking account -account number ending in #2370 | $363.00 |
|---|---|---|---|

| 17.2. | **Checking** | **TD Business Checking Account** -account number ending in #3142 | $108.00 |
|---|---|---|---|

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**LEVINS235**

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* | |

| | | | |
|---|---|---|---|
| 17.3. | **Business Checking** | **Columbia Bank (checking)**<br>-business account ending in #4972 | **$225.00** |
| 17.4. | **Savings** | **TD Bank (Savings)**<br>-personal account ending in #6409 | **$94.00** |
| 17.5. | | **TD Bank (UTTM) account**<br>-wife is custodial parent for daughter's account<br>-account number ending in #3291 | **$714.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes..................        Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☐ No
   ■ Yes.  Give specific information about them...................
   
   Name of entity:                               % of ownership:

   **Nuvonium, LLC**
   **-liabilities exceed assets**
   **-business leases space and has no assets**
   **-business has only nominal receivables**                   **%**       **$1.00**

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
                    Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ☐ No
   ■ Yes. List each account separately.
          Type of account:              Institution name:

          **IRA**
          **-in husband's name**
          **-retirement account listed for informational**
          **purposes**                                    **Unknown**

          **IRA**
          **-in wife's name**
          **-retirement account listed for informational**
          **purposes**                                    **Unknown**

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................          Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............    Issuer name and description.

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document     Page 15 of 58

| Debtor 1 | **William Michael Levins** | | |
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* | |

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
☑ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
☑ No
☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
☑ No
☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
☑ No
☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
☑ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☑ No
☐ Yes. Give specific information......

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
☑ No
☐ Yes.  Give specific information..

31. **Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
☑ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Term Life Insurance for Both Debtors** **-No cash surrender value** **-listed for informational purposes** | | **$0.00** |

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
☑ No
☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☑ No

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                      Best Case Bankruptcy
**LEVINS237**

Debtor 1    **William Michael Levins**
Debtor 2    **Elaine Marie Levins**

Case number *(if known)*

☐ Yes.  Describe each claim.........

34.  **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

35.  **Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.......................................................

| | |
|---|---|
| | **$1,505.00** |

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37.  **Do you own or have any legal or equitable interest in any business-related property?**
■ No. Go to Part 6.
☐ Yes.  Go to line 38.

**Part 6:**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
■ No. Go to Part 7.
☐ Yes.  Go to line 47.

**Part 7:**  Describe All Property You Own or Have an Interest in That You Did Not List Above

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
■ No
☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

| | |
|---|---|
| | **$0.00** |

**Part 8:**  List the Totals of Each Part of this Form

55.  **Part 1: Total real estate, line 2** ......................................................................... | | **$170,000.00**
56.  **Part 2: Total vehicles, line 5** | **$1,000.00** |
57.  **Part 3: Total personal and household items, line 15** | **$7,150.00** |
58.  **Part 4: Total financial assets, line 36** | **$1,505.00** |
59.  **Part 5: Total business-related property, line 45** | **$0.00** |
60.  **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** |
61.  **Part 7: Total other property not listed, line 54** + | **$0.00** |

62.  **Total personal property.** Add lines 56 through 61... | **$9,655.00** | Copy personal property total | **$9,655.00**

63.  **Total of all property on Schedule A/B.** Add line 55 + line 62 | | **$179,655.00**

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **William Michael Levins** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Elaine Marie Levins** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ■ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **84 Lincoln Drive Laurel Springs, NJ 08021  Camden County**<br>Line from *Schedule A/B*: **1.1** | $170,000.00 | ■  $45,950.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(1)** |
| **1999 Honda CR-V**<br>Line from *Schedule A/B*: **3.1** | $1,000.00 | ■  $1,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(2)** |
| **Misc. Household Goods and Furnishings**<br>Line from *Schedule A/B*: **6.1** | $2,500.00 | ■  $2,500.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Electronics**<br>Line from *Schedule A/B*: **7.1** | $1,000.00 | ■  $1,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Books, Pictures, Misc. items -books and pictures have only personal/sentimental value**<br>Line from *Schedule A/B*: **8.1** | $50.00 | ■  $50.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

LEVINS239

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document        Page 18 of 58

| Debtor 1 | William Michael Levins | | |
| Debtor 2 | Elaine Marie Levins | | Case number (if known) |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| **Clothing**<br>Line from *Schedule A/B*: **11.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Engagement Ring, His & Her's Wedding Band, Tennis Bracelet**<br>Line from *Schedule A/B*: **12.1** | $3,000.00 | ■ $3,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(4)** |
| **Checking: TD Business Checking Account**<br>**-account number ending in #3142**<br>Line from *Schedule A/B*: **17.2** | $108.00 | ■ $108.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Business Checking: Columbia Bank (checking)**<br>**-business account ending in #4972**<br>Line from *Schedule A/B*: **17.3** | $225.00 | ■ $225.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Savings: TD Bank (Savings)**<br>**-personal account ending in #6409**<br>Line from *Schedule A/B*: **17.4** | $94.00 | ■ $94.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **TD Bank (UTTM) account**<br>**-wife is custodial parent for daughter's account**<br>**-account number ending in #3291**<br>Line from *Schedule A/B*: **17.5** | $714.00 | ■ $714.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Nuvonium, LLC**<br>**-liabilities exceed assets**<br>**-business leases space and has no assets**<br>**-business has only nominal receivables**<br>Line from *Schedule A/B*: **19.1** | $1.00 | ■ $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **IRA**<br>**-in husband's name**<br>**-retirement account listed for informational purposes**<br>Line from *Schedule A/B*: **21.1** | Unknown | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(12)** |
| **IRA**<br>**-in wife's name**<br>**-retirement account listed for informational purposes**<br>Line from *Schedule A/B*: **21.2** | Unknown | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(12)** |

3. **Are you claiming a homestead exemption of more than $155,675?**
(Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.)

■ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

☐ No

☐ Yes

Official Form 106C          **Schedule C: The Property You Claim as Exempt**          page 2 of 2

**LEVINS240**

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document   Page 19 of 58

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | William Michael Levins | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Elaine Marie Levins | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property
**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:   List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|

**2.1** **Ocean Resort Master Association**
Creditor's Name

PO Box 30510
Honolulu, HI 96820-0510
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred

Describe the property that secures the claim:

Ocean Resort Master Association Timeshare
Timeshare to be surrendered

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Last 4 digits of account number

Column A: **$1,131.00**  Column B: Unknown  Column C: Unknown

**2.2** **Ocean Resort Master Association**
Creditor's Name

PO Box 30510
Honolulu, HI 96820-0510
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Describe the property that secures the claim:

Ocean Resort Master Association
Timeshare to be surrendered

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Column A: **$2,833.00**  Column B: Unknown  Column C: Unknown

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                        Best Case Bankruptcy

LEVINS241

| | | |
|---|---|---|
| Debtor 1 | **William Michael Levins** | |
| | First Name    Middle Name    Last Name | Case number (if know) |
| Debtor 2 | **Elaine Marie Levins** | |
| | First Name    Middle Name    Last Name | |

Date debt was incurred _____   Last 4 digits of account number _____

---

| 2.3 | **PNC Mortgage** | Describe the property that secures the claim: | $71,656.60 | $170,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**PO Box 6534
Carol Stream, IL
60197-6534**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

> **84 Lincoln Drive Laurel Springs, NJ
> 08021  Camden County**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **First Mortgage**

Date debt was incurred _____   Last 4 digits of account number _____

---

| 2.4 | **TD Bank** | Describe the property that secures the claim: | $44,462.97 | $170,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**Operations Center
PO Box 219
Lewiston, ME 04243**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

> **84 Lincoln Drive Laurel Springs, NJ
> 08021  Camden County**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Second Mortgage**

Date debt was incurred _____   Last 4 digits of account number _____

---

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $120,083.57 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $120,083.57 |

**Part 2:   List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**LEVINS242**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:**    List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**

   ☐ No. Go to Part 2.

   ☐ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

|  | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|

| 2.1 | **Internal Revenue Service** | Last 4 digits of account number ____ ____ ____ ____ | $300.00 | $300.00 | $0.00 |

Priority Creditor's Name

**PO Box 7346**
**Philadelphia, PA 19101-7346**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

■ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify _____

**LEVINS243**

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if know)* | |

---

**2.2** | **New Jersey Division of**

Priority Creditor's Name

**Taxation**
**50 Barrack Street**
**Trenton, NJ 08695**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ☑ No
- ☐ Yes

Last 4 digits of account number _____ _____ _____ _____     **$300.00**     **$300.00**     **$0.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of PRIORITY unsecured claim:**

- ☐ Domestic support obligations
- ☑ Taxes and certain other debts you owe the government
- ☐ Claims for death or personal injury while you were intoxicated
- ☐ Other. Specify _____

---

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |
|---|---|

**3.    Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes.

**4.    List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

Total claim

**4.1** | **AMCOL SYSTEMS INC**

Nonpriority Creditor's Name

**PO Box 21625**
**Columbia, SC 29221-1625**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ☑ No
- ☐ Yes

Last 4 digits of account number _____ _____ _____ _____     **$60.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify    **Collection Account**

---

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document      Page 23 of 58

| Debtor 1 | **William Michael Levins** |
| Debtor 2 | **Elaine Marie Levins** |

Case number (*if know*) _____

---

**4.2**

| **American Express** | Last 4 digits of account number ___ ___ ___ ___ | **$8,158.00** |

Nonpriority Creditor's Name

**PO Box 981535**
**El Paso, TX 79998-1535**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☐ Unliquidated
☐ Disputed

☐ **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No
☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

**4.3**

| **American Express** | Last 4 digits of account number ___ ___ ___ ___ | **$18,296.00** |

Nonpriority Creditor's Name

**c/o Jaffe & Asher**
**600 Third Avenue**
**New York, NY 10016-1901**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☐ Unliquidated
☐ Disputed

☐ **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No
☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Collection Account**

---

**4.4**

| **ARS National Services Inc** | Last 4 digits of account number ___ ___ ___ ___ | **$1,190.00** |

Nonpriority Creditor's Name

**Po Box 463023**
**Escondido, CA 92046**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Contingent
☐ Unliquidated
☐ Disputed

☐ **Check if this claim is for a community debt**

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No
☐ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

Debtor 1  **William Michael Levins**
Debtor 2  **Elaine Marie Levins**

Case number (if know) _____

---

**4.5**  **Atlantic Credit and Finance Inc.**
Nonpriority Creditor's Name
**PO Box 12966**
**Roanoke, VA 24030-2966**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a  community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$15,727.00**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

**4.6**  **Capital One**
Nonpriority Creditor's Name
**PO Box 30285**
**Salt Lake City, UT 84130-0285**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a  community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$5,262.00**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

**4.7**  **CHOP**
Nonpriority Creditor's Name
**3401 Civic Center Blvd**
**Philadelphia, PA 19104**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim is for a  community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$1,179.00**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Medical Bills**

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

**LEVINS246**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 25 of 58

Debtor 1    **William Michael Levins**
Debtor 2    **Elaine Marie Levins**                                       Case number (if know) _____

| 4.8 | **Citibank** | Last 4 digits of account number _____ | **$6,447.00** |
|---|---|---|---|

Nonpriority Creditor's Name
**PO Box 6004**                                   When was the debt incurred?  _____
**Sioux Falls, SD 57117-6004**
Number Street City State Zip Code                 **As of the date you file, the claim is:** Check all that apply
**Who incurred the debt?** Check one.

☐ Debtor 1 only                                   ☐ Contingent
☐ Debtor 2 only                                   ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                      ☐ Disputed
☐ At least one of the debtors and another         **Type of NONPRIORITY unsecured claim:**
☐ **Check if this claim is for a  community**      ☐ Student loans
**debt**                                          ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**                report as priority claims
                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☑ No
☐ Yes                                             ☑ Other. Specify   **Credit card purchases** _____

| 4.9 | **FMA Alliance, Ltd.** | Last 4 digits of account number _____ | **$479.00** |
|---|---|---|---|

Nonpriority Creditor's Name
**12339 Cutten Road**                             When was the debt incurred?  _____
**Houston, TX 77066**
Number Street City State Zip Code                 **As of the date you file, the claim is:** Check all that apply
**Who incurred the debt?** Check one.

☐ Debtor 1 only                                   ☐ Contingent
☐ Debtor 2 only                                   ☐ Unliquidated
☑ Debtor 1 and Debtor 2 only                      ☐ Disputed
☐ At least one of the debtors and another         **Type of NONPRIORITY unsecured claim:**
☐ **Check if this claim is for a  community**      ☐ Student loans
**debt**                                          ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**                report as priority claims
                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☑ No
☐ Yes                                             ☑ Other. Specify   **Credit card purchases** _____

| 4.10 | **Global Credit & Collection Corp** | Last 4 digits of account number _____ | **$4,931.00** |
|---|---|---|---|

Nonpriority Creditor's Name
**5440 N. Cumberland Ave.**                        When was the debt incurred?  _____
**Chicago, IL 60656**
Number Street City State Zip Code                 **As of the date you file, the claim is:** Check all that apply
**Who incurred the debt?** Check one.

☐ Debtor 1 only                                   ☐ Contingent
☐ Debtor 2 only                                   ☐ Unliquidated
☑ Debtor 1 and Debtor 2 only                      ☐ Disputed
☐ At least one of the debtors and another         **Type of NONPRIORITY unsecured claim:**
☐ **Check if this claim is for a  community**      ☐ Student loans
**debt**                                          ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**                report as priority claims
                                                  ☐ Debts to pension or profit-sharing plans, and other similar debts
☑ No
☐ Yes                                             ☑ Other. Specify   **Collection Account** _____

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document   Page 26 of 58

| Debtor 1 | **William Michael Levins** | |
|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | |

Case number (if know) _____

---

| 4.1 | | | | |
|---|---|---|---|---|
| 1 | **Global Credit & Collection Corp** | Last 4 digits of account number _____ | | **$2,065.00** |

Nonpriority Creditor's Name

**5440 N. Cumberland Ave.**
**Chicago, IL 60656**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Collection Account**

---

| 4.1 | | | | |
|---|---|---|---|---|
| 2 | **HRRG** | Last 4 digits of account number _____ | | **$170.00** |

Nonpriority Creditor's Name

**PO Box 459080**
**Sunrise, FL 33345-9080**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Medical Bills**

---

| 4.1 | | | | |
|---|---|---|---|---|
| 3 | **J. Kars** | Last 4 digits of account number _____ | | **$5,126.00** |

Nonpriority Creditor's Name

**Collections Dept.**
**PO Box 8058**
**Mason, OH 45040**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Collection Account**

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

**LEVINS248**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 27 of 58

Debtor 1    **William Michael Levins**
Debtor 2    **Elaine Marie Levins**

Case number (if know)

---

**4.1 4**

**Kennedy Health System**
Nonpriority Creditor's Name
**500 Marlboro Ave**
**Cherry Hill, NJ 08034**
Number Street City State Zip Code

**Who incurred the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

Last 4 digits of account number _____          **$684.00**

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify  **Medical Bills**

---

**4.1 5**

**Kennedy Health System**
Nonpriority Creditor's Name
**500 Marlboro Ave**
**Cherry Hill, NJ 08034**
Number Street City State Zip Code

**Who incurred the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

Last 4 digits of account number _____          **$684.00**

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify  **Medical Bills**

---

**4.1 6**

**Kohls**
Nonpriority Creditor's Name
**PO Box 3084**
**Milwaukee, WI 53201**
Number Street City State Zip Code

**Who incurred the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

Last 4 digits of account number _____          **$422.00**

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify  **Credit card purchases**

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**LEVINS249**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 28 of 58

| Debtor 1 | **William Michael Levins** | |
|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number (if know) |

---

**4.17**

| **Midland Credit Management** | Last 4 digits of account number | $0.00 |
|---|---|---|
| Nonpriority Creditor's Name | | |

**2365 Northside Drive Suite 300**
**San Diego, CA 92106**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

When was the debt incurred?

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  **Notice Purpose Only**

---

**4.18**

| **Monarch Recovery Mgmt. Inc.** | Last 4 digits of account number | $2,227.00 |
|---|---|---|
| Nonpriority Creditor's Name | | |

**10965 Decatur Road**
**Philadelphia, PA 19154**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

When was the debt incurred?

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  **Collection Account**

---

**4.19**

| **MRS Associates, Inc.** | Last 4 digits of account number | $7,276.00 |
|---|---|---|
| Nonpriority Creditor's Name | | |

**1930 Olney Ave.**
**Cherry Hill, NJ 08003**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

When was the debt incurred?

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  **Collection Account**

---

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 29 of 58

Debtor 1   **William Michael Levins**
Debtor 2   **Elaine Marie Levins**

Case number (if know)

---

| 4.2 0 | **MRS Associates, Inc.** | Last 4 digits of account number | | $3,715.00 |

**MRS Associates, Inc.**
Nonpriority Creditor's Name
**1930 Olney Ave.**
**Cherry Hill, NJ 08003**
Number Street City State Zip Code

Last 4 digits of account number

When was the debt incurred?

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Collection Account**

---

| 4.2 1 | | | | $2,403.00 |

**Target Card Services**
Nonpriority Creditor's Name
**3901 West 53rd St.**
**Sioux Falls, SD 57106-4216**
Number Street City State Zip Code

Last 4 digits of account number

When was the debt incurred?

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

| 4.2 2 | | | | $2,410.00 |

**TD Bank**
Nonpriority Creditor's Name
**Operations Center**
**PO Box 219**
**Lewiston, ME 04243**
Number Street City State Zip Code

Last 4 digits of account number

When was the debt incurred?

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit card purchases**

---

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document    Page 30 of 58

| Debtor 1 | **William Michael Levins** | | |
| Debtor 2 | **Elaine Marie Levins** | Case number (if know) | |

---

| 4.2 3 | **TD Bank** | Last 4 digits of account number | | **$9,321.00** |

Nonpriority Creditor's Name

**Attn Bankruptcy**
**PO Box 9547**
**Portland, ME 04112**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☐ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify   **Credit card purchases**

---

| 4.2 4 | **United Recvoery Systems** | Last 4 digits of account number | | **$0.00** |

Nonpriority Creditor's Name

**5800 North Course Drive**
**Houston, TX 77072**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☐ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify   **Notice Purpose Only**

---

| 4.2 5 | **Virtua Health** | Last 4 digits of account number | | **$2,130.00** |

Nonpriority Creditor's Name

**Po Box 8500**
**Lockbox 7542**
**Philadelphia, PA 19178**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☐ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify   **Medical Bills**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you**

Debtor 1   **William Michael Levins**

Debtor 2   **Elaine Marie Levins**

Case number (if know) _____

have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

**Part 4:**   **Add the Amounts for Each Type of Unsecured Claim**

6.  Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | Total Claim |
|---|---|---|---|
| **Total claims from Part 1** | 6a. | Domestic support obligations | 6a. $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. $ 600.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. $ 600.00 |

| | | | Total Claim |
|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. $ 100,362.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. $ 100,362.00 |

**LEVINS253**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases          12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1.  **Do you have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1 **Volvo Car Financial**<br>**PO Box 91300**<br>**Mobile, AL 36691-1300** | **2014 Volvo S60** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**LEVINS254**

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **William Michael Levins** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Elaine Marie Levins** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

**Official Form 106H**
# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|---|
| **3.1** | Name | ☐ Schedule D, line _____ |
| | | ☐ Schedule E/F, line _____ |
| | | ☐ Schedule G, line _____ |
| | Number    Street | |
| | City    State    ZIP Code | |
| **3.2** | Name | ☐ Schedule D, line _____ |
| | | ☐ Schedule E/F, line _____ |
| | | ☐ Schedule G, line _____ |
| | Number    Street | |
| | City    State    ZIP Code | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                         Best Case Bankruptcy

**LEVINS255**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| Debtor 2<br>(Spouse, if filing) | **Elaine Marie Levins** |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number<br>(If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
MM / DD / YYYY

## Official Form 106I

## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   **Describe Employment**

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| Occupation | | Marketing/Advertising | Marketing/Advertising |
| Employer's name | | Nuvonium, LLC (Self-Employed) | Nuvonium, LLC (Self-Employed) |
| Employer's address | | 1405 Chews Landing Road, #4 Clementon, NJ 08021 | 1405 Chews Landing Road, #4 Clementon, NJ 08021 |
| How long employed there? | | 4 years | 4 years |

**Part 2:**   **Give Details About Monthly Income**

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ 0.00 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 0.00 | $ 0.00 |

Debtor 1   **William Michael Levins**

Debtor 2   **Elaine Marie Levins**

Case number (*if known*) _____

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here | 4. | $ 0.00 | $ 0.00 |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 0.00 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. | Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. | Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 | + $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.   6.   $ 0.00   $ 0.00

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.   7.   $ 0.00   $ 0.00

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 5,000.00 | $ 0.00 |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ 0.00 |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. | **Other monthly income.** Specify: | 8h.+ | $ 0.00 | + $ 0.00 |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.   9.   $ 5,000.00   $ 0.00

10. **Calculate monthly income.** Add line 7 + line 9.   10.   $ 5,000.00   + $ 0.00   = $ 5,000.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____   11.   + $ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies   12.   $ 5,000.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
■   No.
☐   Yes. Explain: _____

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| Debtor 2 (Spouse, if filing) | **Elaine Marie Levins** |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

MM / DD / YYYY

---

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Your Household

1. **Is this a joint case?**

   ☐ No. Go to line 2.

   ■ Yes. **Does Debtor 2 live in a separate household?**

       ■ No

       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ☐ No

   Do not list Debtor 1 and Debtor 2.   ■ Yes.   Fill out this information for each dependent..............

   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Daughter** | **5** | ☐ No  ■ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ■ No
   ☐ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | **Your expenses** |
|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. $ 1,710.00 |
| | If not included in line 4: | |
| 4a. | Real estate taxes | 4a. $ 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ 200.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ 0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ 708.00 |

Debtor 1    **William Michael Levins**

Debtor 2    **Elaine Marie Levins**                                     Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ | 350.00 |
| | 6b. Water, sewer, garbage collection | 6b. | $ | 90.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 125.00 |
| | 6d. Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 900.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 250.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 200.00 |
| 10. | **Personal care products and services** | 10. | $ | 150.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 100.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 250.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 50.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 20.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | 0.00 |
| | 15b. Health insurance | 15b. | $ | 0.00 |
| | 15c. Vehicle insurance | 15c. | $ | 0.00 |
| | 15d. Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. Other. Specify: | 17c. | $ | 0.00 |
| | 17d. Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. Real estate taxes | 20b. | $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify:    **Pet Care/food** | 21. | +$ | 50.00 |

22. **Calculate your monthly expenses**

22a. Add lines 4 through 21.                                                          $    **5,153.00**

22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    $

22c. Add line 22a and 22b.  The result is your monthly expenses.                        $    **5,153.00**

23. **Calculate your monthly net income.**

23a. Copy line 12 *(your combined monthly income)* from Schedule I.        23a. $    **5,000.00**

23b. Copy your monthly expenses from line 22c above.                       23b. -$    **5,153.00**

23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*.    23c. $    **-153.00**

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☒ No.

☐ Yes.    Explain here: _____

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name                Middle Name                Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse if, filing) | First Name                Middle Name                Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (if known) | |

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules                              12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☒ No

☐ Yes.  Name of person _____   Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X  **/s/ William Michael Levins** | X  **/s/ Elaine Marie Levins** |
|---|---|
| **William Michael Levins** | **Elaine Marie Levins** |
| Signature of Debtor 1 | Signature of Debtor 2 |
| | |
| Date   **March 29, 2016** | Date   **March 29, 2016** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | **Elaine Marie Levins** |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 107

## Statement of Financial Affairs for Individuals Filing for Bankruptcy      12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.   **What is your current marital status?**

■ Married
☐ Not married

2.   **During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

3.   **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2    Explain the Sources of Your Income**

4.   **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | **$14,409.73** | ☐ Wages, commissions, bonuses, tips | **$0.00** |
| | ☐ Operating a business | | ☐ Operating a business | |

| Debtor 1 | **William Michael Levins** |
| Debtor 2 | **Elaine Marie Levins** |

Case number *(if known)* _____

|  | **Debtor 1** | | **Debtor 2** | |
| --- | --- | --- | --- | --- |
|  | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2015 ) | ■ Wages, commissions,<br>bonuses, tips | $61,116.65 | ☐ Wages, commissions,<br>bonuses, tips | $0.00 |
|  | ☐ Operating a business |  | ☐ Operating a business |  |
| **For the calendar year before that:**<br>(January 1 to December 31, 2014 ) | ■ Wages, commissions,<br>bonuses, tips | $62,917.00 | ☐ Wages, commissions,<br>bonuses, tips | $0.00 |
|  | ☐ Operating a business |  | ☐ Operating a business |  |

5. **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

■ No.
☐ Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
| --- | --- | --- | --- | --- |
|  | Sources of income<br>Describe below.. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions and exclusions) |

---

**Part 3:**   **List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
   ☐ **No.**   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,225* or more?
   ☐ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $6,225* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.

   ■ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

   ■ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
| --- | --- | --- | --- | --- |

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
| --- | --- | --- | --- | --- |

---

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document      Page 41 of 58

| Debtor 1 | **William Michael Levins** | | | |
|---|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | | Case number *(if known)* | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ■ No
   ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|
| | | | | |

| Part 4: | Identify Legal Actions, Repossessions, and Foreclosures |
|---|---|

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ■ No
   ☐ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| | | | |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ■ No
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|
| | | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
    ■ No
    ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
    ■ No
    ☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---|---|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
    ■ No
    ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity**
    ■ No
    ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address *(Number, Street, City, State and ZIP Code)* | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| | | | |

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster,**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

**LEVINS263**

Debtor 1    **William Michael Levins**
Debtor 2    **Elaine Marie Levins**

Case number *(if known)*

or gambling?

■ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
| --- | --- | --- | --- |

**Part 7:**   List Certain Payments or Transfers

16.   **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |

17.   **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |

18.   **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
| --- | --- | --- | --- |

19.   **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
| --- | --- | --- |

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20.   **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
■ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
| --- | --- | --- | --- | --- |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**LEVINS264**

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
Document      Page 43 of 58

| Debtor 1 | **William Michael Levins** | |
|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* |

| Name of Financial Institution and Address *(Number, Street, City, State and ZIP Code)* | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| **TD Bank**<br>**1235 Blackwood Clementon Road**<br>**Clementon, NJ 08021** | XXXX-1294 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **October 2015** | $100.00 |
| **TD Bank**<br>**1235 Blackwood Clementon Road**<br>**Clementon, NJ 08021** | XXXX-0770 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **October 2015** | $130.00 |

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

☐ No
■ Yes. Fill in the details.

| Name of Financial Institution<br>Address *(Number, Street, City, State and ZIP Code)* | Who else had access to it?<br>Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
|---|---|---|---|
| **TD Bank**<br>**55 S. White Horse Pike**<br>**Stratford, NJ 08084** | **William & Elaine Levins**<br>**84 Lincoln Dr.**<br>**Laurel Springs, NJ**<br>**08021-2856** | **Mortgage Docs, Deeds for Timeshares, Savings Bonds for Daughter** | ■ No<br>☐ Yes |

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address *(Number, Street, City, State and ZIP Code)* | Who else has or had access to it?<br>Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
|---|---|---|---|
| | | | |

| **Part 9:** | **Identify Property You Hold or Control for Someone Else** |
|---|---|

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes. Fill in the details.

| Owner's Name<br>Address *(Number, Street, City, State and ZIP Code)* | Where is the property?<br>*(Number, Street, City, State and ZIP Code)* | Describe the property | Value |
|---|---|---|---|
| | | | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                             Best Case Bankruptcy

**LEVINS265**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 44 of 58

| Debtor 1 | **William Michael Levins** |
| Debtor 2 | **Elaine Marie Levins** |

Case number *(if known)*

**Part 10:**   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

- ■   *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
- ■   *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
- ■   *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24.   **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■   No
☐   Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25.   **Have you notified any governmental unit of any release of hazardous material?**

■   No
☐   Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26.   **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■   No
☐   Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:**   Give Details About Your Business or Connections to Any Business

27.   **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐   **A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time**

☐   **A member of a limited liability company (LLC) or limited liability partnership (LLP)**

☐   **A partner in a partnership**

☐   **An officer, director, or managing executive of a corporation**

☐   **An owner of at least 5% of the voting or equity securities of a corporation**

☐   No. None of the above applies.  Go to Part 12.

■   Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| **Nuvonium, LLC<br>1405 Chews Landing Road, Suite 4<br>Clementon, NJ 08021-2769** | **Web Design & Marketing** | **Dates business existed**<br><br>EIN:   45-4983453<br><br>From-To   2012- Present |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                 Best Case Bankruptcy

**LEVINS266**

| Debtor 1 | **William Michael Levins** | | |
|---|---|---|---|
| Debtor 2 | **Elaine Marie Levins** | Case number *(if known)* | |

**28.** **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**
☐ **Yes. Fill in the details below.**

| **Name** **Address** (Number, Street, City, State and ZIP Code) | **Date Issued** |
|---|---|
| | |

---

**Part 12:**  Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

| /s/ William Michael Levins | /s/ Elaine Marie Levins |
|---|---|
| **William Michael Levins** | **Elaine Marie Levins** |
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date   **March 29, 2016** | Date   **March 29, 2016** |

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

LEVINS267

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **William Michael Levins** | |
| | First Name    Middle Name    Last Name | |
| Debtor 2 | **Elaine Marie Levins** | |
| (Spouse if, filing) | First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: | DISTRICT OF NEW JERSEY | |
| Case number (if known) | _____ | |

☐ Check if this is an amended filing

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7
12/15

If you are an individual filing under chapter 7, you must fill out this form if:
- ■ creditors have claims secured by your property, or
- ■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

---

| Part 1: | List Your Creditors Who Have Secured Claims |
|---|---|

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Ocean Resort Master Association** | ■ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a *Reaffirmation Agreement*. <br> ☐ Retain the property and [explain]: | ☐ No <br><br> ■ Yes |
| Description of property securing debt: **Ocean Resort Master Association Timeshare Timeshare to be surrendered** | | |
| Creditor's name: **Ocean Resort Master Association** | ■ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a *Reaffirmation Agreement*. <br> ☐ Retain the property and [explain]: | ☐ No <br><br> ■ Yes |
| Description of property securing debt: **Ocean Resort Master Association Timeshare to be surrendered** | | |

| Part 2: | List Your Unexpired Personal Property Leases |
|---|---|

For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

LEVINS268

Debtor 1   **William Michael Levins**
Debtor 2   **Elaine Marie Levins**

Case number (*if known*)

Lessor's name:        **Volvo Car Financial**

☐ No

■ Yes

Description of leased        **2014 Volvo S60**
Property:

| Part 3: | Sign Below |
|---|---|

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

X   **/s/ William Michael Levins**                    X   **/s/ Elaine Marie Levins**
    **William Michael Levins**                            **Elaine Marie Levins**
    Signature of Debtor 1                                 Signature of Debtor 2

    Date    **March 29, 2016**                        Date    **March 29, 2016**

Official Form 108        **Statement of Intention for Individuals Filing Under Chapter 7**        page 2

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **William Michael Levins** |
| Debtor 2 (Spouse, if filing) | **Elaine Marie Levins** |
| United States Bankruptcy Court for the: | District of New Jersey |
| Case number (if known) | |

**Check one box only as directed in this form and in Form 122A-1Supp:**

☑ 1. There is no presumption of abuse

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

## Official Form 122A - 1
## Chapter 7 Statement of Your Current Monthly Income
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

| **Part 1:** | **Calculate Your Current Monthly Income** |
|---|---|

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ☑ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** You and your spouse are:

   ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

   ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C § 707(b)(7)(B).

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 0.00 | $ 0.00 |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ 0.00 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**

| | **Debtor 1** | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ 8,298.47 | | |
| Ordinary and necessary operating expenses | -$ 4,179.96 | | |
| Net monthly income from a business, profession, or farm | $ 4,118.51 | **Copy here ->** $ 4,118.51 | $ 0.00 |

6. **Net income from rental and other real property**

| | **Debtor 1** | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ 0.00 | | |
| Ordinary and necessary operating expenses | -$ 0.00 | | |
| Net monthly income from rental or other real property | $ 0.00  Copy here -> | $ 0.00 | $ 0.00 |

| 7. | **Interest, dividends, and royalties** | $ 0.00 | $ 0.00 |
|---|---|---|---|

Debtor 1   **William Michael Levins**
Debtor 2   **Elaine Marie Levins**

Case number (*if known*) _____

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 8. | **Unemployment compensation** | $          0.00 | $          0.00 |
| | Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: | | |
| | For you _____ | $          0.00 | |
| | For your spouse _____ | $          0.00 | |
| 9. | **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. | $          0.00 | $          0.00 |
| 10. | **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total below. | | |
| | ._____ | $          0.00 | $          0.00 |
| | _____ | $          0.00 | $          0.00 |
| | Total amounts from separate pages, if any. | + $          0.00 | $          0.00 |
| 11. | **Calculate your total current monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B. | $     4,118.51 | + $          0.00  =  $     4,118.51 |

Total current monthly income

---

**Part 2:**   Determine Whether the Means Test Applies to You

12. **Calculate your current monthly income for the year.** Follow these steps:

    12a. Copy your total current monthly income from line 11.        **Copy line 11 here=>**    $     4,118.51

    Multiply by 12 (the number of months in a year)    **x 12**

    12b. The result is your annual income for this part of the form    12b.  $    49,422.12

13. **Calculate the median family income that applies to you.** Follow these steps:

    Fill in the state in which you live.    **NJ**

    Fill in the number of people in your household.    **3**

    Fill in the median family income for your state and size of household.    13.  $    89,983.00
    To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

14. **How do the lines compare?**

    14a.  ■  Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.* Go to Part 3.

    14b.  ☐  Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.* Go to Part 3 and fill out Form 122A-2.

---

**Part 3:**   Sign Below

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

X /s/ William Michael Levins _____    X /s/ Elaine Marie Levins _____
    **William Michael Levins**                **Elaine Marie Levins**
    Signature of Debtor 1                    Signature of Debtor 2

Date **March 29, 2016** _____    Date **March 29, 2016** _____
    MM / DD / YYYY                    MM / DD / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

---

**LEVINS271**

Case 16-16093-JNP    Doc 1    Filed 03/31/16    Entered 03/31/16 11:14:33    Desc Main
Document      Page 50 of 58

## Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

**This notice is for you if:**

> **You are an individual filing for bankruptcy,** and

> **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

> Chapter 7 - Liquidation

> Chapter 11 - Reorganization

> Chapter 12 - Voluntary repayment plan for family farmers or fishermen

> Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $75 | administrative fee |
| + $15 | trustee surcharge |
| $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

> most taxes;

> most student loans;

> domestic support and property settlement obligations;

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

LEVINS272

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

| | $1,167 | filing fee |
|---|---|---|
| + | $550 | administrative fee |
| | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

## Read These Important Warnings

**Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.**

**Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.**

**You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.**

**Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

LEVINS274

### Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days **before** you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html.

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCredit AndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

B2030 (Form 2030) (12/15)

## United States Bankruptcy Court
### District of New Jersey

In re | **William Michael Levins**
**Elaine Marie Levins**

Case No.

_____
Debtor(s)

Chapter     **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

    For legal services, I have agreed to accept ........................................................ $ _____ **1,615.00**

    Prior to the filing of this statement I have received ............................................. $ _____ **1,615.00**

    Balance Due ........................................................................................................ $ _____ **0.00**

2. The source of the compensation paid to me was:

    ■ Debtor    ☐ Other (specify):

3. The source of compensation to be paid to me is:

    ■ Debtor    ☐ Other (specify):

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d. [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
        **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**March 29, 2016**
_____
*Date*

**/s/ Andrew B. Finberg**
**Andrew B. Finberg**
*Signature of Attorney*
**Law Offices of Andrew B. Finberg, LLC**
**525 Route 73 South, Suite 200**
**Marlton, NJ 08053**
**856-988-9055  Fax: 856-988-9678**
**andy@sjbankruptcylaw.com**
*Name of law firm*

---

# United States Bankruptcy Court
### District of New Jersey

In re    **William Michael Levins**
**Elaine Marie Levins**                                            Case No.
                                    Debtor(s)            Chapter        **7**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtors hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:    **March 29, 2016**                    **/s/ William Michael Levins**
                                        **William Michael Levins**
                                        Signature of Debtor

Date:    **March 29, 2016**                    **/s/ Elaine Marie Levins**
                                        **Elaine Marie Levins**
                                        Signature of Debtor

AMCOL SYSTEMS INC
PO Box 21625
Columbia, SC 29221-1625


American Express
PO Box 981535
El Paso, TX 79998-1535


American Express
c/o Jaffe & Asher
600 Third Avenue
New York, NY 10016-1901


ARS National Services Inc
Po Box 463023
Escondido, CA 92046


Atlantic Credit and Finance Inc.
PO Box 12966
Roanoke, VA 24030-2966


Capital One
PO Box 30285
Salt Lake City, UT 84130-0285


CHOP
3401 Civic Center Blvd
Philadelphia, PA 19104


Citibank
PO Box 6004
Sioux Falls, SD 57117-6004


FMA Alliance, Ltd.
12339 Cutten Road
Houston, TX 77066


Global Credit & Collection Corp
5440 N. Cumberland Ave.
Chicago, IL 60656


HRRG
PO Box 459080
Sunrise, FL 33345-9080

LEVINS278

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346


J. Kars
Collections Dept.
PO Box 8058
Mason, OH 45040


Kennedy Health System
500 Marlboro Ave
Cherry Hill, NJ 08034


Kohls
PO Box 3084
Milwaukee, WI 53201


Midland Credit Management
2365 Northside Drive Suite 300
San Diego, CA 92106


Monarch Recovery Mgmt. Inc.
10965 Decatur Road
Philadelphia, PA 19154


MRS Associates, Inc.
1930 Olney Ave.
Cherry Hill, NJ 08003


New Jersey Division of
Taxation
50 Barrack Street
Trenton, NJ 08695


Ocean Resort Master Association
PO Box 30510
Honolulu, HI 96820-0510


PNC Mortgage
PO Box 6534
Carol Stream, IL 60197-6534


Target Card Services
3901 West 53rd St.
Sioux Falls, SD 57106-4216

Case 16-16093-JNP   Doc 1   Filed 03/31/16   Entered 03/31/16 11:14:33   Desc Main
                    Document      Page 58 of 58

TD Bank
Operations Center
PO Box 219
Lewiston, ME 04243


TD Bank
Attn Bankruptcy
PO Box 9547
Portland, ME 04112


United Recvoery Systems
5800 North Course Drive
Houston, TX 77072


Virtua Health
Po Box 8500
Lockbox 7542
Philadelphia, PA 19178


Volvo Car Financial
PO Box 91300
Mobile, AL 36691-1300

# *Exhibit 8*

LEVINS281

2/12/2019                                                                    ARS collector - Google Search



All | Shopping | News | Images | Maps | More            Settings    Tools

About 8,270,000 results (0.46 seconds)

**ARS National Services Inc | Move forward with your life | payars.com**
[Ad] www.payars.com/ ▼
Contact us by phone or manage your account info here. Access Your Account. Contact Us Today.
Services: Credit Management, Debt Payment, Receivable Management.

**Contact Us**                                    **Make A Payment**
Get in touch with our team                        Login to your account and
with any questions                                make a payment online

**ARS Collections: How to Deal With & Remove From Credit Report in ...**
https://www.preventloanscams.org/dealing-with-ars-collections/ ▼
Sep 12, 2018 - Tips for how to deal with **ARS** Collections in 2019, a common healthcare debt **collector**.
Find out how to remove their entries from your credit ...
What Can ARS Legally Do? · What Can't ARS Do Legally? · Your Rights

**Advanced Recovery Systems / ARS Collections - Flowood, MS**
www.arscollections.com/ ▼
The **ARS** advantages are clear and simple: Technology, Training and Diligence. Every debt, every dollar,
is carefully and exhaustively qualified by our.
Contact Us · Services · About Us



People also ask

| Who does ARS collect for? | ⌄ |
|---|---|
| What is ARS account resolution? | ⌄ |
| What is ARS in medical terms? | ⌄ |
| What is an asset recovery specialist? | ⌄ |

*Feedback*

https://www.google.com/search?num=20&ei=-E5jXLDaKs-1ggfzh4jACg&q=ARS+collector&oq=ARS+collector&gs_l=psy-ab.3..0i22i30j0i22i10i30j0i22i30l3.177090.179785..18

**LEVINS282**

2/12/2019                                                ARS collector - Google Search

### ARS National Services Inc: Home
https://www.arsnational.com/ ▼
Why Did **ARS** Contact Me? ... A NATIONAL LEADER: **ARS** is a proven leader in the account receivables ..... This communication is from a debt **collector**. This is ...

### ARS and Collector - Active Roles Forum - Active Roles - Quest ...
https://www.quest.com/community/one-identity/active-roles/f/.../ars-and-collector ▼
May 28, 2018 - Subject: **ARS** and **Collector** Hi, i am using **Collector** to gathering **ARS** Event Log information and use = Reporting console to report group membership change.

| | |
|---|---|
| **ARS** Server **Collector** | May 27, 2018 |
| **ARS** Management History | May 25, 2018 |
| **ARS Collector** not able to see extended and virtual attributes ... | May 25, 2018 |
| **ARS** Configuration **Collection** Wizard Error | May 25, 2018 |

More results from www.quest.com

### Asset Recovery Solutions ARS Collection Complaints? Stop the calls
https://www.lemberglaw.com › ... › Info & complaints › Asset Recovery Solutions ▼
★☆☆☆☆ Rating: 1 - Review by James Hamlett, Google User
Asset Recovery Solutions LLC, also called **ARS** Solutions is a debt **collection** agency, which receives a lot of consumer complaints to our law firm for debt ...

### Advanced Recovery Services ARS Collections Complaints. Stop the ...
https://www.lemberglaw.com › ... › Info & complaints › Advanced Recovery Services ▼
Advanced Recovery Services inc or **ARS** is a debt **collection** agency, which receives a lot of consumer complaints to our law firm for debt harassment. Find out ...

### ARS Account Resolution Services
https://www.arspayment.com/ ▼
For flexibility and convenience **ARS** Account Resolution Services now makes it possible to pay towards your account balance online using a credit card or check ...

### Negotiating collection account with ARS National Services.
https://consumerrecoverynetwork.com/.../negotiating-settling-ars-national-sercvices/ ▼
Negotiating a lower lump sum payoff with **ARS** National Services is similar to settling with most debt **collection** agencies.

### PayARSLog In
https://www.payars.com/ ▼
Please access your account by entering your **ARS** account information below: ... A consumer has the right to request in writing that a debt **collector** or **collection** ...

**LEVINS283**

2/12/2019                                         ARS collector - Google Search

Videos


3:08


5:16


2:23

ARS National Services -
What Is ARS Collections

ARS Collections - How
To Settle with ARS
National Services

Are you getting calls
from ARS National
Service Inc?

Dan Willis
YouTube - Oct 19, 2015

Dan Willis
YouTube - Oct 19, 2015

jodaymelendez
YouTube - Nov 10, 2010

ARS Collection for Chase....CONFUSED! - myFICO® Forums - 2132467
https://ficoforums.myfico.com/t5/Rebuilding-Your.../ARS-Collection-for.../2132467 ▼
May 10, 2013 - 9 posts
I see benefit in making payment through the debt collector as opposed to ... I called the CA (**ARS**
**Collection**---My Rep was VERY VERY NICE!

Working as a Collector at ARS National Services: Employee Reviews ...
https://www.indeed.com/cmp/Ars-National-Services/reviews?fjobtitle=Collector... ▼
★★★☆☆ Rating: 3.2 - 167 reviews
This was my first Collections Job. I actually applied for a different department all together but they
said I would make more and would be a better **collector**.

Advanced Recovery Systems | Debt Collection
https://www.arscollects.com/ ▼
Who we are. Advanced Recovery Systems, Inc., is a national accounts receivable management service
located in Valley Forge, Pennsylvania. Since 1996, **ARS** ...

My adventures in court with a debt collector - Ars Technica OpenForum
https://arstechnica.com/civis/viewtopic.php?f=25&t=65824 ▼
Mar 17, 2009 - As time went on I cleaned up my act, attempted to work with all my **collectors** to get
them paid off. They were all happy to make arrangements ...

LEVINS284

2/12/2019                                        ARS collector - Google Search

### Al Lowe reveals his Sierra source code collection ... - Ars Technica
https://arstechnica.com/.../al-lowe-reveals-his-sierra-source-code-collection-then-puts-... ▼
Nov 30, 2018 - Al Lowe reveals his Sierra source code **collection**—then puts all of it on eBay. "This is
the only copy!" and "I backed everything up because I ...

### Collector at Ars | Profiles, Jobs, Skills, Articles, Salaries | LinkedIn
https://www.linkedin.com/title/collector-at-ars
Check out **Collector** profiles at **Ars**, job listings & salaries. Review & learn skills to be a **Collector**.

### ARS Equine Collection
www.arssales.com/collection.html ▼
The CSU Model™ Equine Artificial Vagina Kit contains everything needed to collect stallion semen for
an equine artificial insemination program. Both Standard ...

### ARS National Services Debt Collector Salaries | Glassdoor
https://www.glassdoor.com › Salaries › Debt Collector ▼
Oct 29, 2015 - Average salaries for **ARS** National Services Debt **Collector**: $13. **ARS** National Services
hourly pay trends based on salaries posted ...

### ARS Audiotape Collection - Online Archive of California
https://oac.cdlib.org/findaid/ark:/13030/c8f769x2/entire_text/ ▼
The **ARS** Audio Miscellany **Collection** consists of audio recordings on tape, largely from small
donations and with limited documentation and context. Although ...

### Is it possible to schedule the ARS Collector's Process Gathered Events ...
https://support.oneidentity.com/.../is-it-possible-to-schedule-the-ars-collector-s-process-g... ▼
Aug 18, 2017 - It is not currently possible to schedule this event cleanup process, it must be run
manually. STATUS. Enhancement request number ...

### Ars Debt Collection Agency | Find Ars Debt Collection Agency
[Ad] www.info.com/web ▼
Search **Ars** Debt **Collection** Agency. Visit & Lookup Immediate Results Now.


Searches related to ARS collector

https://www.google.com/search?num=20&ei=-E5jXLDaKs-1ggfzh4jACg&q=ARS+collector&oq=ARS+collector&gs_l=psy-ab.3..0i22i30j0i22i10i30j0i22i30l3.177090.179785...18

LEVINS285

2/12/2019

ARS collector - Google Search

ars **payment fake**

ars **systems**

ars **collections capital one**

ars **llc collections**

ars **national services settlement**

ars **collections michigan**

ars **collections chase**

ars **online payments**



› 

1 2 3 4 5 6 7 8 9 10   Next

⬤ **Springfield Township, New Jersey** - Reported by this computer - Use precise location - Learn more

Help    Send feedback    Privacy    Terms

https://www.google.com/search?num=20&ei=-E5jXLDaKs-1ggfzh4jACg&q=ARS+collector&oq=ARS+collector&gs_l=psy-ab.3..0i22i30j0i22i10i30j0i22i30l3.177090.179785..18

**LEVINS286**

# *Exhibit 9*

LEVINS287

2/12/2019                                                ARS debt - Google Search



https://www.google.com/search?q=ARS+debt

LEVINS288

2/12/2019                                                          ARS debt - Google Search

### ARS Collections: How to Deal With & Remove From Credit Report in ...
https://www.preventloanscams.org/dealing-with-ars-collections/ ▾
Sep 12, 2018 - ARS Collections provides these debt collection services in order to collect **unpaid** debt from patients: Check Collection: they will collect checks from debtors to creditors and make sure the funds are handled properly.
What Can ARS Legally Do? · What Can't ARS Do Legally? · Your Rights

### Advanced Recovery Systems / ARS Collections - Flowood, MS
www.arscollections.com/ ▾
The **ARS** advantages are clear and simple: Technology, Training and Diligence. Every **debt**, every dollar, is carefully and exhaustively qualified by our.
Contact Us · About Us · Services

### ARS National Services Inc: Home
https://www.arsnational.com/ ▾
Why Did **ARS** Contact Me? ... A NATIONAL LEADER: **ARS** is a proven leader in the account receivables ..... This communication is from a **debt** collector. This is ...

### Negotiating collection account with ARS National Services.
https://consumerrecoverynetwork.com/.../negotiating-settling-ars-national-sercvices/ ▾
When you are on the phone with the ARS debt collector, only offer information that supports there is no ability to make monthly payments, and only limited funds to offer as a **pay** off (it helps when your **credit** reports show there are other debts owed).

### PayARSLog In
https://www.payars.com/ ▾
Please access your account by entering your **ARS** account information below: ... The state Rosenthal Fair **Debt** Collection Practices Act and the federal Fair **Debt** ...
Terms & Conditions · Security Policy · Privacy Policy

### Advanced Recovery Services ARS Collections Complaints. Stop the ...
https://www.lemberglaw.com › ... › Info & complaints › Advanced Recovery Services ▾
Advanced Recovery Services inc or **ARS** is a **debt** collection agency, which receives a lot of consumer complaints to our law firm for **debt** harassment. Find out ...

### Account Resolution Services ARS Collections Complaints. Stop the calls
https://www.lemberglaw.com › ... › Info & complaints › Account Resolution Services ▾
★☆☆☆☆ Rating: 1 - Review by BBB Complaint
Account Resolution Services LLC or **ARS** is a **debt** collection agency, which receives a lot of consumer complaints to our law firm for **debt** harassment. Find out ...

https://www.google.com/search?q=ARS+debt

**LEVINS289**

2/12/2019                                                                     ARS debt - Google Search

### How to Remove ARS National Services From Your Credit Report
https://bettercreditblog.org/ars-national/ ▼
Jump to Put Together A **Debt** Validation Letter - It's known as a **debt** validation letter. ... This means
that **ARS** National Services may not have enough ...

### ARS Account Resolution Services
https://www.arspayment.com/ ▼
MAKE A PAYMENT **ARS** Account Resolution Services is a division of ... This is an attempt to collect a
**debt** and any information obtained shall be used for that ...

### ARS National Services – 4 Steps To Deal With ARS Collections
www.yourbadcreditcard.net › Debt Collection Agencies ▼
**ARS** National Services is a third-party collection agency, located in Escondido, California. They'll
service a variety of types of consumer **debt** including financial ...

### Is ARS National Collection Agency Harassing You? - Crediful
https://www.crediful.com/collection-agencies/ars-national/ ▼
How to deal with **ARS** National and get collections and other negative items removed ... Even after
individuals say they do not owe the **debt**, **ARS** National will ...

### ARS National Service, Inc (ARS) | Debt Collection | Tayne Law Group
https://attorney-newyork.com/ars-national-services-inc/ ▼
Has **ARS** National Service threatened you with a lawsuit? Tayne Law Group knows **ARS** well and has
resolved **debts** with them many times before!

## Videos

https://www.google.com/search?q=ARS+debt

**LEVINS290**

2/12/2019                                                ARS debt - Google Search





**ARS National Services - What Is ARS Collections**

Dan Willis
YouTube · Oct 19, 2015

**American Recovery Service - How To Pay Off ARS Collections**

Dan Willis
YouTube · Nov 11, 2017

**ARS National Services Calling? | Debt Abuse + Harassment Lawyer**

Sergei Lemberg
YouTube · Jul 30, 2014

**ARS National Services Inc | Complaints | Better Business Bureau ...**
https://www.bbb.org/us/ca/escondido/profile/collections-agencies/ars.../complaints ▼
When I filed a complaint with the CFPB, **ARS** then denied that they are the company handling my **debt**.
Even though I have the phone numbers and reverse ...

**Advanced Recovery Systems | Debt Collection**
https://www.arscollects.com/ ▼
Who we are. Advanced Recovery Systems, Inc., is a national accounts receivable management service
located in Valley Forge, Pennsylvania. Since 1996, **ARS** ...

**ARS Collection for Chase....CONFUSED! - myFICO® Forums - 2132467**
https://ficoforums.myfico.com/t5/Rebuilding-Your-Credit/ARS...for.../2132467 ▼
May 10, 2013 - 9 posts
If Chase is showing a balance they still own the **debt**. .... I received a letter from a collection agency,
**ARS** National Svcs, offering a settlement of ...

**ARS Collections – Debt Collection**
https://nexacollect.com/ars-collections/ ▼
**ARS** Collections is a **debt** collection agency located in Flowood, Mississippi. Phone, address and
details about the agency.

**ARS DEBT MANAGEMENT | LinkedIn**
https://www.linkedin.com/company/ars-debt-management

https://www.google.com/search?q=ARS+debt

**LEVINS291**

2/12/2019                                                          ARS debt - Google Search

Learn about working at **ARS DEBT** MANAGEMENT. Join LinkedIn today for free. See who you know at
**ARS DEBT** MANAGEMENT, leverage your professional ...

### ARS National Services Agency – Inconsiderate ... - Debt Academy

https://www.debtacademy.com/ars-national/  ▼

Is **ARS** National Services Agency mistreating you? We'll provide you with information on your legal
options to deal with them.

### Images for ARS debt



➜  More images for ARS debt                                        Report images

### 2019's Top 10 Debt Relief | Best Debt Solutions Reviewed

[Ad] www.consumersadvocate.org/Debt-Relief/Best10-Programs  ▼

View Editor's #1 Pick. Unbiased Expert Reviews & Ratings. Compare Offers, Now! 2019's 10 Best
Companies. Free Expert Consultations. Trusted by Over 3,497,000. Instant Access. Any Credit OK.
Types: Personal Loans, Credit Card **Debt**, Medical Bills.

Top Debt Relief Companies · 1st- National Debt Relief · Ranking Methodology

### Debt Collection - We Buy Debts | Get 75% of Value. AAA Rated

[Ad] www.financiallawllc.com/  ▼

Are you owed $2,000 to $2 million Business or Consumer. Call Now! Free Advice

### Debt Relief - Who is the Best? | Top 10 Companies Reviewed

[Ad] www.topconsumerreviews.com/  ▼

Free Independent Reviews & Ratings. BBB A+ Accredited Companies. Get a Savings Estimate. National
**Debt** Relief is Our Highest Rated **Debt** Relief Company on All the Parameters. Credit Cards Maxed Out?
BBB & AFCC Rated Programs. Resolve Credit Card **Debt**. Compare Your Options.

One Low Monthly Payment · Detailed Reviews & Rating · 1st -National Debt Relief

## Searches related to ARS debt

https://www.google.com/search?q=ARS+debt

**LEVINS292**

2/12/2019                                                                ARS debt - Google Search

ars **payment fake**                            ars **collections chase**

ars **collections capital one**                 ars **online payments**

ars **llc collections**                          ars debt **collections houston texas**

ars **systems**                                  ars **credit report**



1  2  3  4  5  6  7  8  9  10        Next

Springfield Township, New Jersey - Reported by this computer - Use precise location - Learn more

Help        Send feedback        Privacy        Terms

https://www.google.com/search?q=ARS+debt

**LEVINS293**

*Exhibit 10*

LEVINS294



**LEVINS295**

*Exhibit 11*

LEVINS296

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0600233404

```
Status Report For:     HEALTHCARE REVENUE RECOVERY GROUP, LLC
Report Date:           2/12/2017
Confirmation Number:   70431066722
```

**IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION**

```
     Business ID Number:    0600233404
     Business Type:         FOREIGN LIMITED LIABILITY COMPANY
     Status:                ACTIVE
     Original Filing Date:  04/12/2005
     Stock Amount:          N/A
     Home Jurisdiction:     FL
     Status Change Date:    NOT APPLICABLE
```

**REVOCATION/SUSPENSION INFORMATION**

```
     DOR Suspension Start   N/A
     Date:
     DOR Suspension End     N/A
     Date:
     Tax Suspension Start   N/A
     Date:
     Tax Suspension End     N/A
     Date:
```

**ANNUAL REPORT INFORMATION**

```
     Annual Report Month:   APRIL
     Last Annual Report     03/14/2016
     Filed:
     Year:                  2016
```

**AGENT/SERVICE OF PROCESS (SOP) INFORMATION**

```
     Agent:                 CORPORATION SERVICE COMPANY
     Agent/SOP Address:     PRINCETON SOUTH CORPORATE CTR STE 160, 100
                            CHARLES EWING BLVD,EWING,NJ,08628
     Address Status:        DELIVERABLE
     Main Business Address: 1643 N. HARRISON PARKWAY, BUILDING H, SUITE
                            100, SUNRISE, FL, 33323
     Principal Business     N/A
     Address:
```

**ASSOCIATED NAMES**

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0600233404

```
        Associated Name:       ARS ACCOUNT RESOLUTION SERVICES
        Type:                  FC
```

**PRINCIPALS**

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

```
        Title:                 PRESIDENT
        Name:                  FRIEDLANDER,DAVID
        Address:               1643 N. HARRISON PARKWAY, BUILDING H, SUITE
                               100, SUNRISE, FL, 33323
        Title:                 VICE PRESIDENT
        Name:                  CARMAN,JOE
        Address:               1643 N. HARRISON PARKWAY, BUILDING H, SUITE
                               100, SUNRISE, FL, 33323
```

**FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS**

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

```
        Original Filing        2005
        (Certificate)Date:
```

Changes and Amendments to the Original Certificate:

```
        Filing Type            Year Filed
        ALTERNATE NAME FILING  2008
        ALTERNATE NAME RENEWAL 2013
        Annual Report Filing   2015
        with address change
```

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0600233404

Annual Report filing    2016
with officer/member
change

Note:
Copies of some of the charter documents above, particularly those filed before June
1988 and recently filed documents (filed less than 20 work days from the current date),
may not be available for online download.

- For older filings, contact the Division for instructions on how to order.
- For recent filings, allow 20 work days from the estimated filing date, revisit the
  service center at https://www.njportal.com/DOR/businessrecords/Default.aspx
  periodically, search for the business again and build a current list of its
  filings. Repeat this procedure until the document shows on the list of documents
  available for download.

The Division cannot provide information on filing requests that are in process. Only
officially filed documents are available for download.

*Exhibit 12*

LEVINS300

Philip D. Stern, Esq.
Andrew T. Thomasson, Esq.
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
(973) 379-7500

*Attorneys for Plaintiffs, Elaine Levins and*
    *William Levins*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELAINE LEVINS and WILLIAM LEVINS, on behalf of themselves and others similarly situated,<br><br>                  Plaintiffs,<br><br>*vs.*<br><br>HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT RESOLUTION SERVICES, and JOHN AND JANE DOES 1 THROUGH 25,<br><br>                  Defendants. | Case 1:17-cv-00928-RBK-KMW<br><br><br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION** |

TO:    Christian M. Scheuerman, Esq.
       Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
       535 Route 38 East, Suite 501
       Cherry Hill, NJ 08002
       CScheuerman@moodklaw.com
       *Attorneys for Defendant, Healthcare Revenue Recovery Group, LLC*

Plaintiffs Elaine Levins and William Levins request that Defendant, Healthcare Revenue

Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") admit or deny the

Requests for Admission below, in accordance with the Federal Rules of Civil Procedure, the

Local Rules of the United States District Court for the District of New Jersey, and any applicable

Court Orders.

Page **1** of **3**

## I.  DEFINITIONS

1.      "Consumer" is defined at 15 U.S.C. § 1692a(3).

2.      "Creditor" means a Person who claims it is owed a Debt.

3.      "Debt" is defined at 15 U.S.C. § 1692a(5).

4.      "Debt Collector" is defined at 15 U.S.C. § 1692a(6).

5.      "Defendant" means the company identified in the document appearing on the

docket of this action at Page ID 93 (which can be found in Doc. 10-4 at page 16 of 22).

6.      "Term" shall mean the period from and including February 12, 2016 through and

including March 12, 2017.

## II.  REQUESTS

**Admission Request No. 1:**   At all times during the Term, Defendant was a Debt Collector.

**Admission Request No. 2:**   During the Term, Defendant's principal purpose was the collection
of Debts owed or due or asserted to be owed or due to another.

**Admission Request No. 3:**   During the Term, Defendant regularly collected Debts owed or due
or asserted to be owed or due to another.

**Admission Request No. 4:**   During the Term, Defendant regularly attempted to collect Debts
owed or due or asserted to be owed or due to another.

**Admission Request No. 5:**   During the Term, Defendant collected Debts from Consumers.

**Admission Request No. 6:**   Plaintiff Elaine Levins is a Consumer.

**Admission Request No. 7:**   Plaintiff William Levins is a Consumer.

Page **2** of **3**

Dated: January 18, 2019

*Philip D. Stern*

Philip D. Stern (NJ Bar # 045921984)
Andrew T. Thomasson (NJ Bar # 048362011)
    *Attorneys for Plaintiffs, Elaine Levins and*
    *William Levins*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone (973) 379-7500
E-mail: Philip@SternThomasson.com
E-mail: Andrew@SternThomasson.com

## III. PROOF OF SERVICE

The requests for admission above were served today pursuant to Fed.R.Civ.P. 5 by email and regular first class mail on the attorney to whom it is directed.

Dated: January 18, 2019

*Philip D. Stern*

LEVINS303

# *Exhibit 13*

LEVINS304

# MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.

www.moodklaw.com

NEW JERSEY OFFICE
*Cherry Tree Corporate Center*
*Suite 501*
*535 Route 38 East*
*Cherry Hill, NJ 08002*
*(856) 663-4300 Fax: (856) 663-4439*

*Christian M. Scheuerman*
Member NJ & PA Bars
CScheuerman@moodklaw.com

March 7, 2019

**Via Email & N.J.L.S.**
Philip D. Stern, Esquire
Stern Thomasson, LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081

RE: Elaine Levins and William Levins v. Healthcare Revenue Recovery
Group, LLC d/b/a ARS Account Resolution Services
Docket No. 1:17-cv-00928-RBK-KMW
Our File No.: 447-102973(SXK/CMS)

Dear Mr. Stern:

Enclosed please find defendant's request for admission responses.

Very truly yours,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Christian M. Scheuerman*
Christian M. Scheuerman

CMS/jad
Encl.

{NJ946390.1}

| Philadelphia | Pittsburgh | New York | Westchester County | Wilmington | Towson |
|---|---|---|---|---|---|
| Pennsylvania | Pennsylvania | New York | New York | Delaware | Maryland |

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
BY: Christian M. Scheuerman, Esquire
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, NJ 08002
(856)663-4300

**ATTORNEY FOR DEFENDANT**
**Healthcare Revenue Recovery Group,**
**LLC**

447-102973 (SXK/CMS)

| | |
|---|---|
| **ELAINE LEVINS and WILLIAM LEVINS,** on behalf of themselves and other similarly situated | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CAMDEN VICINAGE** |
| **VS.** | **Case No. 1:17-cv-00928-RBK-KMW** |
| **HEALTHCARE REVENUE RECOVERY GROUP, LLC D/B/A ARS ACCOUNT RESOLUTION SERVICES AND JOHN and JANE DOES 1 THROUGH 25** | **CIVIL ACTION** **ANSWERS TO REQUESTS FOR ADMISSIONS** |

Defendant Healthcare Revenue Recovery Group, LLC, hereby respond to Plaintiffs' requests for admissions as follows:

1.    At all times during the Term, Defendant was a Debt Collector.

   **Answer:**    **Objection. This request seeks an improper legal conclusion. Requests for admissions are not to be employed as means to establish questions of law. Caruso v. Coleman Co., 1995 U.S. Dist. LEXIS 7934, at * 6 (E.D. Pa. 1995) (ruling that a request for admission as to a pure matter of law that seeks a conclusion of law is not permitted). Without waiving same, Defendant does not dispute that the communications with Plaintiff were for the purpose of collecting a debt as defined by the FDCPA.**

2.    During the Term, Defendant's principal purpose was the collection of Debts owed or due or asserted to be owed or due to another.

   **Answer:**    **Admitted that the principle business of Answering Defendant is the collection of debts.**

3.    During the Term, Defendant regularly collected Debts owed or due or asserted to be owed or due to another.

{NJ958018.1}

LEVINS306

> **Answer:**     **Objection.  This request as phrased is vague.  Among other things, the term "regularly collected" is undefined.  Admitted that the principle business of Answering Defendant is the collection of debts.**

4.    During the Term, Defendant regularly attempted to collect Debts owed or due or asserted to be owed or due to another.

> **Answer:**     **Objection.  This request as phrased is overbroad, vague, and incapable of a response.  Among other things, the term "regularly collected" is undefined.  Admitted that the principle business of Answering Defendant is the collection of debts.**

5.    During the Term, Defendant collected Debts from Consumers.

> **Answer:**     **Admitted.**

6.    Plaintiff Elaine Levins is a Consumer.

> **Answer:**     **Admitted.**

7.    Plaintiff William Levins is a Consumer.

> **Answer:**     **Admitted.**

*/s/ Christian M. Scheuerman, Esq.*
Christian M. Scheuerman, Esq.
Attorney for Defendant HRRG

{NJ958018.1}

# *Exhibit 14*

LEVINS308

ELAINE LEVINS                                        August 02, 2019
LEVINS vs HEALTHCARE REVENUE RECOVERY                            1

```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
 2              CASE NO.  1:17-CV-00928-RBK-KMW

 3

 4   ELAINE LEVINS and WILLIAM LEVINS,
     on behalf of themselves and others
 5   similarly situated,

 6              Plaintiff(s),

 7        vs.

 8   HEALTHCARE REVENUE RECOVERY GROUP,
     LLC, d/b/a ARS ACCOUNT RESOLUTION
 9   SERVICES,

10              Defendant(s).

11   _____

12         DEPOSITION UNDER ORAL EXAMINATION OF

13                    ELAINE LEVINS

14              DATE:  August 2, 2019

15        REPORTED BY:  MICHAEL FRIEDMAN, CCR

16

17

18

19

20

21

22
            ESQUIRE DEPOSITION SOLUTIONS, LLC
23             1384 Broadway - 22nd Floor
               New York, New York  10018
24                  (212) 687-2010

25   JOB  #  J 4202544
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1        Q    Sends, I'm sorry.

 2             MR. STERN:  Still the same

 3        objection.

 4        A    I'm sorry, I'm not sure.

 5        Q    Have you ever seen -- I will

 6   rephrase.

 7             Have you ever seen a letter from

 8   the defendant?

 9        A    Only since this case started.

10        Q    Okay.  And what letter did you see?

11        A    I saw a letter -- it was a

12   collection letter, but I don't --

13        Q    Was it addressed to you?

14        A    Yes.

15        Q    Okay.  And did the letter that you

16   saw in this case contain, quotation marks,

17   ARS, closed quotation marks, anywhere on the

18   letter?

19        A    I believe it did.

20        Q    And I'm correct it was on the upper

21   left-hand corner of the letter?

22        A    I believe so.

23        Q    Okay.  And I'm correct it was also

24   on the bottom of the letter?

25        A    I'm not certain.
```



# *Exhibit 15*

LEVINS311

```
 1                UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
 2               CASE NO.  1:17-CV-00928-RBK-KMW

 3


 4    ELAINE LEVINS and WILLIAM LEVINS,
      on behalf of themselves and others
 5    similarly situated,

 6               Plaintiff(s),

 7        vs.

 8    HEALTHCARE REVENUE RECOVERY GROUP,
      LLC, d/b/a ARS ACCOUNT RESOLUTION
 9    SERVICES,

10               Defendant(s).

11    _____

12          DEPOSITION UNDER ORAL EXAMINATION OF

13                   WILLIAM LEVINS

14             DATE:  August 2, 2019

15          REPORTED BY:  MICHAEL FRIEDMAN, CCR

16

17

18

19

20

21

22
             ESQUIRE DEPOSITION SOLUTIONS, LLC
23             1384 Broadway - 22nd Floor
               New York, New York  10018
24                   (212) 687-2010

25    JOB  #  J 4202544
```



WILLIAM LEVINS                                       August 02, 2019
LEVINS vs HEALTHCARE REVENUE RECOVERY

1    And do you have any knowledge of

2    what abbreviation, if any, ARS Account

3    Resolution Services, uses?

4        A    No.

5        Q    Do you have any knowledge one way

6    or the other what appears on a credit card

7    statement if a payment is made to ARS Account

8    Resolution Services?

9             MR. STERN:  Objection to the form.

10       A    Can you repeat that?

11       Q    Sure.  Do you have any idea what

12   appears on your credit card statement if you

13   make a payment to ARS Account Resolution

14   Services?

15            MR. STERN:  Same objection.

16       A    I have no idea how to answer that.

17   It's pretty confusing.

18       Q    Okay.  Have you ever made a payment

19   to defendant?

20       A    Not -- what defendant, ARS?  The

21   Account Resolution Services?

22       Q    Yes.

23       A    I have no idea.

24       Q    Okay.  And have you ever received a

25   collection letter from the defendant?

*800.211.DEPO (3376)*
*EsquireSolutions.com*



*800.211.DEPO (3376)*
*EsquireSolutions.com*

WILLIAM LEVINS                          August 02, 2019
LEVINS vs HEALTHCARE REVENUE RECOVERY

1     could not recall or answer that.

2    Don't know.

3        Q    Okay.  Do you know how -- strike

4    that.

5            Do you know what name ARS Account

6    Resolution Services uses when it has

7    communications with the public?

8        A    I do not.

9        Q    Okay.

10       A    I would assume it would be Account

11   Resolution Services.

12       Q    What is the basis for that

13   assumption?

14       A    You repeated it multiple times.

15       Q    Other than me repeating it multiple

16   times, what is the basis for that assumption?

17           MR. STERN:  Asked and answered.

18           MR. FRISCHBERG:  Asked and

19       answered.

20           MR. STERN:  You asked him the

21       question, he answered --

22           MR. SCHEUERMAN:  He can still

23       answer.

24       Q    Other than me repeating it -- it's

25   a different question.

800.211.DEPO (3376)
EsquireSolutions.com



800.211.DEPO (3376)
EsquireSolutions.com

# *Exhibit 16*

LEVINS315

# P95000091667

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____   Certificates of Status _____

```
Special Instructions to Filing Officer:




```

Office Use Only



100108423741

RECEIVED
07 NOV -1   PM 12: 40
DIVISION OF CORPORATIONS
TALLAHASSEE, FLORIDA

FILED
2007 NOV -1   PM 4:56
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

11/1/07
PDR

❋ 02250, 02544, 02976, 00672



**CORPORATION SERVICE COMPANY**

```
              ACCOUNT NO.   :   072100000032

              REFERENCE   :   299332      7182683

           AUTHORIZATION   :

              COST LIMIT   :   $ 35.00
```
-----------------------------------------------------------------
```
ORDER DATE :  November 1, 2007

ORDER TIME :  10:21 AM

ORDER NO.  :  299332-005

CUSTOMER NO:   7182683
```
-----------------------------------------------------------------

<u>DOMESTIC AMENDMENT FILING</u>

        NAME:   IMBS, INC.


        EFFECTIVE DATE:


<u>XX</u>___   ARTICLES OF AMENDMENT
_____  RESTATED ARTICLES OF INCORPORATION


PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

_____  CERTIFIED COPY
<u>XX</u>_____  PLAIN STAMPED COPY
_____  CERTIFICATE OF GOOD STANDING


CONTACT PERSON:  Kathy Drake -- EXT# 2959

                        EXAMINER'S INITIALS: _____

LEVINS317



RECEIVED

07 NOV -5 AM 8:43

**FLORIDA DEPARTMENT OF STATE**
Division of Corporations

DIVISION OF CORPORATIONS
TALLAHASSEE, FLORIDA

November 1, 2007

CSC
Atten: Kathy Drake
1201 Hays Street
Tallahassee, FL 32301

SUBJECT: IMBS, INC.
Ref. Number: P95000091667

We have received your document for IMBS, INC. and the authorization to debit your account in the amount of $35.00. However, the document has not been filed and is being returned for the following:

The name designated in your document is unavailable since it is the same as, or it is not distinguishable from the name of an existing entity.

Please select a new name and make the correction in all appropriate places. One or more major words may be added to make the name distinguishable from the one presently on file.

**Adding "of Florida" or "Florida" to the end of a name is <u>not</u> <u>acceptable</u>.**

The document number of the name conflict is M06000003082

If you have any questions concerning the filing of your document, please call (850) 245-6907.

Annette Ramsey
Regulatory Specialist II                    Letter Number: 407A00063998



RESUBMIT
Please give original
submission date as file date.

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

## ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION
### OF
### IMBS, INC.

FILED

2007 NOV -1 PM 4:56

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

The undersigned Florida profit corporation, in accordance with Section 607.1006 of the Florida Business Corporation Act, hereby adopts the following Articles of Amendment to its Articles of Incorporation:

    1.    The name of the corporation is IMBS, Inc.

    2.    The Articles of Incorporation are amended by the following resolution adopted by the shareholders on November 1, 2007:

    RESOLVED, that the officers of the Corporation be, and they hereby are, authorized to take the necessary measures to amend the Corporation's Articles of Incorporation by changing the name of the Corporation from IMBS, Inc. to HCFS Health Care Financial Services, Inc.

    3.    The First Article of the Corporation's Articles of Incorporation is hereby amended in its entirety so as to read, after amendment, as follows:

    FIRST:    The name of the corporation (hereinafter called the "Corporation") is:  HCFS Health Care Financial Services, Inc.

    4.    This Amendment has been adopted by the unanimous written action of all of the Directors and Shareholders of the corporation dated as of the 1st day of November, 2007.

    5.    This Amendment shall be effective upon filing with the Florida Department of State.

    IN WITNESS WHEREOF, the undersigned has executed and signed these Articles of Amendment on behalf of the corporation this 1st day of November, 2007

IMBS, Inc.

By: _____

John R. Stitt
Its:  Assistant Secretary

*Exhibit 17*

LEVINS320

# #L13000178359

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

[ ] PICK-UP     [ ] WAIT     [ ] MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____     Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



100253927041

EFFECTIVE DATE
12-31-2013

RECEIVED
DEPARTMENT OF STATE
13 DEC 30 AM 1:51

FILED
13 DEC 30 AM 10: 29
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

K. SALY
EXAMINER
DEC 31 2013



**CORPORATION SERVICE COMPANY**

```
        ACCOUNT NO.   :   I20000000195

            REFERENCE  :   942494      4369500

    AUTHORIZATION   :

        COST LIMIT  :   $ 180.00
-----------------------------------------------------------------
```

ORDER DATE :  December 27, 2013

ORDER TIME :   3:48 PM

ORDER NO.  :  942494-010

CUSTOMER NO.:   4369500

```
-----------------------------------------------------------------
```

<u>DOMESTIC AMENDMENT FILING</u>


     NAME:     HCFS HEALTH CARE FINANCIAL
               SERVICES, INC.


    EFFECTIVE DATE:


<u>XX</u>    CERTIFICATE OF CONVERSION


PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

XX_____ CERTIFIED COPY


CONTACT PERSON:  Susie Knight -- EXT# 52956

                          EXAMINER'S INITIALS:  _____

LEVINS322





**Certificate of Conversion**
For
**"Other Business Entity"**
Into
**Florida Limited Liability Company**

This Certificate of Conversion **and attached Articles of Organization** are submitted to convert the following **"Other Business Entity" into a Florida Limited Liability Company** in accordance with s.608.439, Florida Statutes.

1. The name of the "Other Business Entity" immediately prior to the filing of this Certificate of Conversion is:
HCFS HEALTH CARE FINANCIAL SERVICES, INC.   # P95000091667   .
(Enter Name of Other Business Entity)

2. The "Other Business Entity" is a corporation                                    .
(Enter entity type. Example: corporation, limited partnership,<br>general partnership, common law or business trust, etc.)

first organized, formed or incorporated under the laws of Florida                          
(Enter state, or if a non-U.S. entity, the name of the country)

on 11/30/1995                          .
(Enter date "Other Business Entity" was first organized, formed or incorporated)

3. If the jurisdiction of the "Other Business Entity" was changed, the state or country under the laws of which it is now organized, formed or incorporated:

                                                                        .

4. The name of the Florida Limited Liability Company as set forth in the **attached Articles of Organization:**

HCFS HEALTH CARE FINANCIAL SERVICES, LLC                          .
(Enter Name of Florida Limited Liability Company)

5. If not effective on the date of filing, enter the effective date: By:11:59 pm EST on 12/31/13 pursuant to*
**(The effective date: 1) cannot be prior to nor more than 90 days after the date this document is filed by the Florida Department of State; AND 2) must be the same as the effective date listed in the attached Articles of Organization, if an effective date is listed therein.)**
*Fla. Stat. Section 608.439(3)(d)
6. The conversion is permitted by the applicable law(s) governing the other business entity and the conversion complies with such law(s) and the requirements of s.608.439, F.S., in effecting the conversion.

7. The "Other Business Entity" currently exists on the official records of the jurisdiction under which it is currently organized, formed or incorporated.

Page 1 of 2

Signed this _____ 27 day of _____ December _____ 20 __13__

**Signature of Member or Authorized Representative of Limited Liability Company:**
Individual signing affirms that the facts stated in this document are true. Any false information
constitutes a third degree felony as provided for in s.817.155, F.S.

Signature of Member or Authorized Representative: _____
Printed Name: John R. Stair _____    Title: Assistant Secretary

**Signature(s) on behalf of Other Business Entity:** Individual(s) signing affirm(s) that the facts stated in
this document are true. Any false information constitutes a third degree felony as provided for in
s.817.155, F.S. [See below for required signature(s).]

Signature: _____
Printed Name: John R. Stair _____    Title: Assistant Secretary

Signature: _____
Printed Name: _____    Title: _____

Signature: _____
Printed Name: _____    Title: _____

Signature: _____
Printed Name: _____    Title: _____

Signature: _____
Printed Name: _____    Title: _____

Signature: _____
Printed Name: _____    Title: _____

**If Florida Corporation:**
Signature of Chairman, Vice Chairman, Director, or Officer.
If Directors or Officers have not been selected, an Incorporator must sign.

**If Florida General Partnership or Limited Liability Partnership:**
Signature of one General Partner.

**If Florida Limited Partnership or Limited Liability Limited Partnership:**
Signatures of **ALL** General Partners.

**All others:**
Signature of an authorized person.

**Fees:**

| | |
|---|---|
| Certificate of Conversion: | $25.00 |
| Fees for Florida Articles of Organization: | $125.00 |
| Certified Copy: | $30.00 (Optional) |
| Certificate of Status: | $5.00 (Optional) |

**Page 2 of 2**

LEVINS324





# ARTICLES OF ORGANIZATION
## OF
### HCFS HEALTH CARE FINANCIAL SERVICES, LLC

### ARTICLE I — Name:

The name of the Limited Liability Company is HCFS Health Care Financial Services, LLC (the "Company").

### ARTICLE II — Address:

The mailing address and street address of the principal office of the Company is 265 Brookview Centre Way, Suite 400, Knoxville, Tennessee 37919.

### ARTICLE III — Duration:

The period of duration for the Company shall be perpetual.

### ARTICLE IV — Registered Agent:

The street address of the initial registered office of the Company shall be 1201 Hays Street, Tallahassee, Florida 32301, and the name of the initial registered agent of the Company at that address is Corporation Service Company.

### ARTICLE V — EFFECTIVE DATE:

The filing of these Articles of Organization shall be effective as of 11:59 p.m. on December 31, 2013 pursuant to Fla. Stat. 608.409(2).

### ARTICLE VI – Indemnification

The Company shall indemnify and hold harmless its members and directors against any and all claims and demands whatsoever.

### ARTICLE VII – Amendment

These Articles of Organization may be altered, amended or repealed in accordance with the Limited Liability Company Agreement of the Company in accordance with the Florida Limited Liability Company Act.

DM_US 48631955-1 055674.0010

LEVINS325

**IN WITNESS WHEREOF**, the undersigned, pursuant to laws of the State of Florida, has executed these Articles of Organization as of December 27, 2013.

John R. Stair, Authorized Representative

-2-

DM_US 48631955-1 055674.0010

LEVINS326

<u>STATEMENT ACCEPTING APPOINTMENT AS REGISTERED AGENT</u>

### HCFS HEALTH CARE FINANCIAL SERVICES, LLC

*Having been named as registered agent and to accept service of process for the above-stated limited liability company at the place designated by this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with the obligations of my position as a registered agent as provided for in Chapter 608, F.S.*

Corporation Service Company

By:
Print Name:
Print Title:_____ Sue G. Knight
                    Assistant Vice President

Dated: December 27, 2013

-3-

DM_US 48631955-1.055674.0010

LEVINS327

# *Exhibit 18*

LEVINS328

**2015  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L04000092223

**Entity Name:** HEALTHCARE REVENUE RECOVERY GROUP, LLC

**Current Principal  Place of Business:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323

**Current Mailing Address:**

265 BROOKVIEW CENTRE WAY, SUITE 400
ATTN: LEGAL
KNOXVILLE,  TN  37919

**FEI Number: 90-0533366**

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301-2525  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

                          Electronic Signature of Registered Agent                                                          Date

**Authorized Person(s) Detail :**

Title            MGRM

Name         HCFS HEALTH CARE FINANCIAL
                   SERVICES, LLC

Address     265 BROOKVIEW CENTRE WAY,
                   SUITE 400

City-State-Zip:  KNOXVILLE  TN  37919

**FILED**
**Apr 14, 2015**
**Secretary of State**
**CC3669891248**

**Certificate of Status Desired:**  No

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: JOHN R. STAIR                                ASST. SECRETARY OF        04/14/2015
                                                                              MEMBER

                     Electronic Signature of Signing Authorized Person(s) Detail                                     Date

LEVINS329

# *Exhibit 19*

LEVINS330

## 2016  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L04000092223

**Entity Name:** HEALTHCARE REVENUE RECOVERY GROUP, LLC

**FILED**
**Mar 15, 2016**
**Secretary of State**
**CC7459492379**

**Current Principal  Place of Business:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323

**Current Mailing Address:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323  US

**FEI Number: 90-0533366**                                        **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301-2525  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

_____ Electronic Signature of Registered Agent _____ Date

**Authorized Person(s) Detail :**

| | | | | |
|---|---|---|---|---|
| Title | MGRM | | Title | PRESIDENT |
| Name | HCFS HEALTH CARE FINANCIAL SERVICES, LLC | | Name | FRIEDLANDER, DAVID M |
| Address | 265 BROOKVIEW CENTRE WAY, SUITE 400 | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| City-State-Zip: | KNOXVILLE  TN  37919 | | City-State-Zip: | SUNRISE  FL  33323 |
| | | | Title | VP |
| Title | VP | | Name | VETRANO, ANTONIO B. |
| Name | CARMAN, JOSEPH B. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |
| | | | Title | VP, TREASURER |
| Title | ASST. SECRETARY | | Name | JONES, DAVID P. |
| Name | STAIR, JOHN R. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |
| Title | ASST. TREASURER | | | |
| Name | BELMAR, CAROLE | | | |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | | |
| City-State-Zip: | SUNRISE  FL  33323 | | | |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DAVID M. FRIEDLANDER                           PRESIDENT                  03/15/2016

_____ Electronic Signature of Signing Authorized Person(s) Detail _____ Date

LEVINS331

# *Exhibit 20*

LEVINS332

## 2017  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L04000092223

**FILED**
**Apr 11, 2017**
**Secretary of State**
**CC6611913853**

**Entity Name:** HEALTHCARE REVENUE RECOVERY GROUP, LLC

**Current Principal  Place of Business:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323

**Current Mailing Address:**

265 BROOKVIEW CENTRE WAY, SUITE 400
ATTN: KELLY GREANEY
KNOXVILLE,  TN  37919  US

**FEI Number: 90-0533366**                    **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301-2525  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

                    Electronic Signature of Registered Agent                                                            Date

**Authorized Person(s) Detail :**

| | | | | |
|---|---|---|---|---|
| Title | MGRM | | Title | PRESIDENT |
| Name | HCFS HEALTH CARE FINANCIAL SERVICES, LLC | | Name | FRIEDLANDER, DAVID  M |
| Address | 265 BROOKVIEW CENTRE WAY, SUITE 400 | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| City-State-Zip: | KNOXVILLE  TN  37919 | | City-State-Zip: | SUNRISE  FL  33323 |
| | | | Title | VP |
| Title | VP | | Name | VETRANO, ANTONIO B. |
| Name | CARMAN, JOSEPH B. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |
| | | | Title | VP, TREASURER |
| Title | ASST. SECRETARY | | Name | JONES, DAVID P. |
| Name | STAIR, JOHN R. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: JOHN R. STAIR                                      ASSISTANT SECRETARY      04/11/2017

                    Electronic Signature of Signing Authorized Person(s) Detail                                        Date

LEVINS333

# *Exhibit 21*

LEVINS334

**2018  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L04000092223

**Entity Name:** HEALTHCARE REVENUE RECOVERY GROUP, LLC

**FILED**
**Apr 11, 2018**
**Secretary of State**
**CC7049940942**

**Current Principal  Place of Business:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323

**Current Mailing Address:**

265 BROOKVIEW CENTRE WAY, SUITE 400
ATTN: KELLY GREANEY
KNOXVILLE,  TN  37919  US

**FEI Number: 90-0533366**                                  **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301-2525  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                           Date

**Authorized Person(s) Detail :**

| | | | | |
|---|---|---|---|---|
| Title | MGRM | | Title | PRESIDENT |
| Name | HCFS HEALTH CARE FINANCIAL SERVICES, LLC | | Name | FRIEDLANDER, DAVID M |
| Address | 265 BROOKVIEW CENTRE WAY, SUITE 400 | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| City-State-Zip: | KNOXVILLE  TN  37919 | | City-State-Zip: | SUNRISE  FL  33323 |
| | | | Title | VP |
| Title | VP | | Name | VETRANO, ANTONIO B. |
| Name | CARMAN, JOSEPH B. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |
| | | | Title | VP, TREASURER |
| Title | ASST. SECRETARY | | Name | JONES, DAVID P. |
| Name | STAIR, JOHN R. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DAVID MICHAEL FRIEDLANDER                    PRESIDENT                    04/11/2018

Electronic Signature of Signing Authorized Person(s) Detail                                          Date

**LEVINS335**

# *Exhibit 22*

LEVINS336

**2019  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L04000092223

**Entity Name:** HEALTHCARE REVENUE RECOVERY GROUP, LLC

**Current Principal  Place of Business:**

1643 NORTH HARRISON PARKWAY
BUILDING H, SUITE 100
SUNRISE,  FL  33323

**FILED**
**Apr 10, 2019**
**Secretary of State**
**9584990530CC**

**Current Mailing Address:**

265 BROOKVIEW CENTRE WAY, SUITE 400
ATTN: LEGAL DEPT.
KNOXVILLE,  TN  37919  US

**FEI Number: 90-0533366**                                    **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301-2525  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

                          Electronic Signature of Registered Agent                                                                                            Date

**Authorized Person(s) Detail :**

| | | | | |
|---|---|---|---|---|
| Title | MGRM | | Title | PRESIDENT |
| Name | HCFS HEALTH CARE FINANCIAL SERVICES, LLC | | Name | FRIEDLANDER, DAVID M |
| Address | 265 BROOKVIEW CENTRE WAY, SUITE 400 | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| City-State-Zip: | KNOXVILLE  TN  37919 | | City-State-Zip: | SUNRISE  FL  33323 |
| | | | Title | VP |
| Title | VP | | Name | VETRANO, ANTONIO B. |
| Name | CARMAN, JOSEPH B. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | Title | VP, TREASURER |
| Title | ASST. SECRETARY | | Name | JONES, DAVID P. |
| Name | STAIR, JOHN R. | | Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 |
| Address | 1643 NORTH HARRISON PARKWAY BUILDING H, SUITE 100 | | City-State-Zip: | SUNRISE  FL  33323 |
| City-State-Zip: | SUNRISE  FL  33323 | | | |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: JOHN R STAIR                                        ASSISTANT SECRETARY      04/10/2019
_____
          Electronic Signature of Signing Authorized Person(s) Detail                                                                    Date

LEVINS337

*Exhibit 23*

LEVINS338

MARKS, O'NEILL, O'BRIEN,
      DOHERTY & KELLY, P.C.

www.moodklaw.com

NEW JERSEY OFFICE
*Cherry Tree Corporate Center*
*Suite 501*
*535 Route 38 East*
*Cherry Hill, NJ 08002*
*(856) 663-4300 Fax: (856) 663-4439*

*Christian M. Scheuerman*
Member NJ & PA Bars
CScheuerman@moodklaw.com

March 13, 2019

**Via Email & N.J.L.S.**
Philip D. Stern, Esquire
Stern Thomasson, LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081

> RE:  Levins v. HRRG
>      Docket No.: 1:17-cv-00928-RBK-KMW
>      Our File No.: 447-102973(SXK/CMS)

Dear Mr. Stern:

Enclosed please find Defendant's responses to interrogatories, document requests, and documents bates stamped ARS 1-12.

Very truly yours,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Christian M. Scheuerman*
Christian M. Scheuerman

CMS/jad
Encl.

{NJ965484.1}

| Philadelphia | Pittsburgh | New York | Westchester County | Wilmington | Towson |
|---|---|---|---|---|---|
| Pennsylvania | Pennsylvania | New York | New York | Delaware | Maryland |

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
BY: Christian M. Scheuerman, Esquire          **ATTORNEY FOR DEFENDANT**
Cherry Tree Corporate Center                  **Healthcare Revenue Recovery Group,**
Suite 501                                     **LLC**
535 Route 38 East
Cherry Hill, NJ 08002
(856)663-4300

447-102973 (SXK/CMS)

| | |
|---|---|
| ELAINE LEVINS and WILLIAM LEVINS, on behalf of themselves and other similarly situated | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br>**CAMDEN VICINAGE** |
| VS. | **Case No. 1:17-cv-00928-RBK-KMW** |
| HEALTHCARE REVENUE RECOVERY GROUP, LLC D/B/A ARS ACCOUNT RESOLUTION SERVICES AND JOHN and JANE DOES 1 THROUGH 25 | **CIVIL ACTION**<br><br>**DEFENDANT'S RESPONSES TO**<br>**PLAINTIFFS' REQUESTS FOR**<br>**PRODUCTION OF DOCUMENTS** |

Defendant Healthcare Revenue Recovery Group, LLC, hereby respond to Plaintiffs' request for production of documents as follows:

1.  All Documents showing all alternate business names You have used since Your inception.

    **ANSWER:**  **Objection. This question is overbroad as to time frame and subject matter in light of the November 7, 2018 Order. Without waiving same, "ARS Account Resolution Services" began operations in January 2009. Since then, "ARS" has always been used by the Defendant as an abbreviation for ARS Account Resolution Services. Transactions also appear as "ARS" on credit card statements. See attached letter to Elaine Levins, excerpts from Defendant's website, and the recorded telephone call to Plaintiffs of which counsel already possesses.**

2.  All Documents showing each name under which You have transacted business since the inception of HRRG including the dates when (a) You began using it and (b) You ceased using it.

{NJ958092.1}

22.    All Documents You submitted during the past three years to any governmental authority in connection with Your registration with, or licensing in, the State of New Jersey.

    **ANSWER:**    **See response to no. 21.**

23.    All Documents You submitted to, or received from, any regulatory authorities concerning complaints about Your debt collection practices during the past four years.

    **ANSWER:**    **See response to no. 21.**

24.    All manuals, memoranda, instructions, reports, and other Documents which discuss, describe or set forth standards, criteria, guidelines, policies, practices, or usage relating to Your leaving voice messages for Consumers.

    **ANSWER:**    **Objection. The requested discovery is not proportional to the needs of the case. It has a low importance in resolving the central issues raised in the complaint and the burden/expense of the proposed discovery outweighs its likely benefit. Specifically, there is no allegation in the complaint that any individual collector acted inappropriately during a communication with Plaintiffs. Pursuant to the Court's November 7, 2018 Order, the scope of discovery is limited to whether Defendant typically transacts business as "ARS" and/or whether it is a commonly used acronym.**

25.    All Documents You reviewed, used, and/or relied upon when investigating the Complaint's factual allegations.

    **ANSWER:**    **Objection. The question inquires as to investigation of allegations by the Defendant and its counsel, so it improperly calls for the disclosure of attorney work produce and/or privileged information.**

26.    All skip tracing or other reports that You obtained to Identify or locate Plaintiffs in connection with Your attempt to collect their Obligation.

    **ANSWER:**    **See response to no. 21.**

27.    All Documents referenced, but not previously produced, in Your Fed. R. Civ. P. 26(a) initial disclosures.

    **ANSWER:**    **Defendants do not possess any relevant documents.**

28.    Complete copies of Your Account notes relating to Plaintiffs.

    **ANSWER: See attached.**

{NJ958092.1}

*Exhibit 24*

LEVINS342

*Search Results for registered entities whose name begins with ARS.*          **Page 0**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 1**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                **Page 2**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 3**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 4**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 5**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 6**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 7**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 8**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 9**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 10**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*        **Page 11**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 12**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*     **Page 13**



*Search Results for registered entities whose name begins with ARS.*     **Page 14**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 15**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 16**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*                    **Page 17**



*Search Results for registered entities whose name begins with ARS.*                    **Page 18**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 19**



*Search Results for registered entities whose name begins with ARS.*                    **Page 20**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 21**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*         **Page 22**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 23**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

LEVINS366

*Search Results for registered entities whose name begins with ARS.*                    **Page 24**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 25**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 26**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*          **Page 27**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities whose name begins with ARS.*      **Page 28**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

# *Exhibit 25*

LEVINS372

*Search Results for registered entities with an associated name beginning with ARS.*   **Page 1**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities with an associated name beginning with ARS.*   **Page 2**



*Search Results for registered entities with an associated name beginning with ARS.*    **Page 3**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

*Search Results for registered entities with an associated name beginning with ARS.*    **Page 4**



Source (accessed May 24, 2017):
https://www.njportal.com/DOR/businessrecords/EntityDocs/BusinessStatCopies.aspx

# *Exhibit 26*

LEVINS377

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In Re:                                              Case No.:  16-16093-JNP
                                                    Chapter:   7
William Michael Levins and Elaine Marie Levins      Judge:     Jerrold N. Poslusny Jr.

---

### NOTICE OF PROPOSED ABANDONMENT

   JOHN W. HARGRAVE, Trustee, in this case proposes to abandon property of the estate described below as being of inconsequential value. If you object to the abandonment, you must file a written objection with the Clerk of the United States Bankruptcy Court and serve it on the party named below not later than 7 days before the hearing date.

Address of the Clerk:

Clerk, US Bankruptcy court
401 Market Street
Camden, NJ 08102

If an objection is filed, a hearing will be held before the Honorable Jerrold N. Poslusny Jr. on July 12, 2016 at 10 a.m. at the United States Bankruptcy Court, Courtroom no. 4C. (Hearing date must be at least 28 days from the date of this notice). If no objection is filed, the abandonment shall take effect on entry by the clerk of a Certification of no Objection.

Description and value of property:

| | Description of Real Property | Petition Value |
|---|---|---|
| 1 | Single-family home84 Lincoln Drive Laurel Springs NJ 08021-0000Camden | $170,000.00 |
| 2 | Ocean Resort Master Association Timeshare | $0.00 |
| 3 | Ocean Resort Master Association Timeshare to be surrendered | $0.00 |

Liens on property:

| | Description of Real Property | Creditors Info | Amount of Claim |
|---|---|---|---|
| 1 | Single-family home84 Lincoln Drive Laurel Springs NJ 08021-0000Camden | 1st mortgage—PNC<br>2ndmortgage--- TD Bank | $71,656.<br>44,462. |
| 2 | Ocean Resort Master Association Timeshare | Ocean Resort Master Association | $1,131.00 |
| 3 | Ocean Resort Master Association Timeshare to be surrendered | Ocean Resort Master Association | $2,833.00 |

Amount of Equity claimed as exempt:

| | Description of Real Property | Value of Claimed Exemption |
|---|---|---|
| 1 | Single-family home84 Lincoln Drive Laurel Springs NJ 08021-0000Camden | $45,950.00 |
| 2 | Ocean Resort Master Association Timeshare | $0.00 |
| 3 | Ocean Resort Master Association Timeshare to be surrendered | $0.00 |

Objections must be served on, and requests for additional information directed to:

Name:        /s/ John W. Hargrave

Address:     117 Clements Bridge Road, Barrington, NJ 08007

Telephone No.:  (856) 547-6500

Case 16-16093-JNP   Doc 8   Filed 06/10/16   Entered 06/11/16 00:33:57   Desc Imaged
Certificate of Notice   Page 2 of 3
United States Bankruptcy Court
District of New Jersey

In re:                                                                Case No. 16-16093-JNP
William Michael Levins                                                Chapter 7
Elaine Marie Levins
        Debtors

# CERTIFICATE OF NOTICE

District/off: 0312-1          User: admin              Page 1 of 2            Date Rcvd: Jun 08, 2016
                             Form ID: pdf905           Total Noticed: 31


Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 10, 2016.
db/jdb          +William Michael Levins,    Elaine Marie Levins,    84 Lincoln Drive,
                 Laurel Springs, NJ 08021-2856
smg              U.S. Attorney,    970 Broad St.,    Room 502,   Rodino Federal Bldg.,    Newark, NJ 07102-2534
516092137        AMCOL SYSTEMS INC,    PO Box 21625,    Columbia, SC 29221-1625
516092140       +ARS National Services Inc,    Po Box 463023,    Escondido, CA 92046-3023
516092138        American Express,    PO Box 981535,    El Paso, TX 79998-1535
516092139        American Express,    c/o Jaffe & Asher,    600 Third Avenue,    New York, NY 10016-1901
516092143       +CHOP,   3401 Civic Center Blvd,    Philadelphia, PA 19104-4319
516092142        Capital One,    PO Box 30285,    Salt Lake City, UT 84130-0285
516092144        Citibank,    PO Box 6004,    Sioux Falls, SD 57117-6004
516092145       +FMA Alliance, Ltd.,    12339 Cutten Road,    Houston, TX 77066-1807
516092147        HRRG,   PO Box 459080,    Sunrise, FL 33345-9080
516092149       +J. Kars,   Collections Dept.,    PO Box 8058,   Mason, OH 45040-8058
516092150       +Kennedy Health System,    500 Marlboro Ave,    Cherry Hill, NJ 08002-2020
516092154       +MRS Associates, Inc.,    1930 Olney Ave.,    Cherry Hill, NJ 08003-2016
516092152       +Midland Credit Management,    2365 Northside Drive Suite 300,    San Diego, CA 92108-2709
516092153       +Monarch Recovery Mgmt. Inc.,    10965 Decatur Road,    Philadelphia, PA 19154-3210
516092155       +New Jersey Division of,    Taxation,    50 Barrack Street,    Trenton, NJ 08695-0001
516092156        Ocean Resort Master Association,    PO Box 30510,    Honolulu, HI 96820-0510
516092157        PNC Mortgage,    PO Box 6534,    Carol Stream, IL 60197-6534
516092158        Target Card Services,    3901 West 53rd St.,    Sioux Falls, SD 57106-4216
516092162       +Virtua Health,    Po Box 8500,    Lockbox 7542,   Philadelphia, PA 19178-0001
516092163        Volvo Car Financial,    PO Box 91300,    Mobile, AL 36691-1300

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg             +E-mail/Text: ustpregion03.ne.ecf@usdoj.gov Jun 08 2016 22:59:19    United States Trustee,
                 Office of the United States Trustee,    1085 Raymond Blvd.,   One Newark Center,   Suite 2100,
                 Newark, NJ 07102-5235
516092140       +E-mail/Text: legal@arsnational.com Jun 08 2016 22:59:08     ARS National Services Inc,
                 Po Box 463023,    Escondido, CA 92046-3023
516092141        E-mail/Text: ACF-EBN@acf-inc.com Jun 08 2016 22:58:25     Atlantic Credit and Finance Inc.,
                 PO Box 12966,    Roanoke, VA 24030-2966
516092146       +E-mail/Text: bankruptcy@afflglo.com Jun 08 2016 22:59:22     Global Credit & Collection Corp,
                 5440 N. Cumberland Ave.,    Chicago, IL 60656-1490
516092148        E-mail/Text: cio.bncmail@irs.gov Jun 08 2016 22:58:52     Internal Revenue Service,
                 PO Box 7346,    Philadelphia, PA 19101-7346
516092151       +E-mail/Text: bnckohlsnotices@becket-lee.com Jun 08 2016 22:58:42     Kohls,   PO Box 3084,
                 Milwaukee, WI 53201-3084
516114508        E-mail/PDF: gecsedi@recoverycorp.com Jun 08 2016 22:54:53     Synchrony Bank,
                 c/o of Recovery Management Systems Corp,    25 S.E. 2nd Avenue, Suite 1120,
                 Miami, FL 33131-1605
516092159       +E-mail/Text: bankruptcy@td.com Jun 08 2016 22:59:23     TD Bank,   Operations Center,
                 PO Box 219,    Lewiston, ME 04243-0219
516092160       +E-mail/Text: bankruptcy@td.com Jun 08 2016 22:59:23     TD Bank,   Attn Bankruptcy,
                 PO Box 9547,    Portland, ME 04112-9547
516092161       +E-mail/Text: bnc@ursi.com Jun 08 2016 22:58:32    United Recovery Systems,
                 5800 North Course Drive,    Houston, TX 77072-1613
                                                                                         TOTAL: 10


               ***** BYPASSED RECIPIENTS *****
NONE.                                                                       TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 10, 2016                                   Signature:  /s/Joseph Speetjens

Case 16-16093-JNP    Doc 8    Filed 06/10/16    Entered 06/11/16 00:33:57    Desc Imaged
Certificate of Notice    Page 3 of 3

District/off: 0312-1          User: admin              Page 2 of 2              Date Rcvd: Jun 08, 2016
                             Form ID: pdf905           Total Noticed: 31

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on June 7, 2016 at the address(es) listed below:
          Andrew B. Finberg   on behalf of Joint Debtor Elaine Marie Levins andy@sjbankruptcylaw.com,
          ABFECF@gmail.com
          Andrew B. Finberg    on behalf of Debtor William Michael Levins andy@sjbankruptcylaw.com,
          ABFECF@gmail.com
          John W. Hargrave   on behalf of Trustee John W. Hargrave trustee@hargravelaw.com,
          jhargrave@ecf.epiqsystems.com;jwh@trustesolutions.net
          John W. Hargrave   trustee@hargravelaw.com,  jhargrave@ecf.epiqsystems.com;jwh@trustesolutions.net
                                                                                         TOTAL: 4

*Exhibit 27*

LEVINS381

| **Information to identify the case:** | | |
|---|---|---|
| Debtor 1 | **William Michael Levins** | Social Security number or ITIN    **xxx−xx−5748** |
| | First Name    Middle Name    Last Name | EIN    _ _−_ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | **Elaine Marie Levins** | Social Security number or ITIN    **xxx−xx−0664** |
| | First Name    Middle Name    Last Name | EIN    _ _−_ _ _ _ _ _ _ |
| United States Bankruptcy Court    **District of New Jersey** | | |
| Case number:    **16−16093−JNP** | | |

# Order of Discharge

**12/15**

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

William Michael Levins

Elaine Marie Levins
aka Elaine McConnell

<u>7/22/16</u>

**By the court:**  <u>Jerrold N. Poslusny Jr.</u>
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**For more information, see page 2 >**

Case 16-16093-JNP    Doc 16    Filed 07/24/16    Entered 07/25/16 00:40:51    Desc Imaged
Certificate of Notice    Page 2 of 4

**Some debts are not discharged**

Examples of debts that are not discharged are:

♦ debts that are domestic support obligations;

♦ debts for most student loans;

♦ debts for most taxes;

♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

♦ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

♦ some debts which the debtors did not properly list;

♦ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

---

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

---

Official Form 318                    **Order of Discharge**                    page 2

LEVINS383

Case 16-16093-JNP    Doc 16    Filed 07/24/16    Entered 07/25/16 00:40:51    Desc Imaged
Certificate of Notice    Page 3 of 4
United States Bankruptcy Court
District of New Jersey

In re:                                                                    Case No. 16-16093-JNP
William Michael Levins                                                    Chapter 7
Elaine Marie Levins
        Debtors

# CERTIFICATE OF NOTICE

District/off: 0312-1          User: admin              Page 1 of 2            Date Rcvd: Jul 22, 2016
                             Form ID: 318              Total Noticed: 32

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jul 24, 2016.
db/jdb         +William Michael Levins,   Elaine Marie Levins,   84 Lincoln Drive,
                Laurel Springs, NJ 08021-2856
cr             +VCFS Auto Leasing Co.,   PO Box 91300,   Mobile, AL 36691-1300
516092137       AMCOL SYSTEMS INC,   PO Box 21625,   Columbia, SC 29221-1625
516092143      +CHOP,   3401 Civic Center Blvd,   Philadelphia, PA 19104-4319
516092147       HRRG,   PO Box 459080,   Sunrise, FL 33345-9080
516092149      +J. Kars,   Collections Dept.,   PO Box 8058,   Mason, OH 45040-8058
516092150      +Kennedy Health System,   500 Marlboro Ave,   Cherry Hill, NJ 08002-2020
516092154      +MRS Associates, Inc.,   1930 Olney Ave.,   Cherry Hill, NJ 08003-2016
516092152      +Midland Credit Management,   2365 Northside Drive Suite 300,   San Diego, CA 92108-2709
516092153      +Monarch Recovery Mgmt. Inc.,   10965 Decatur Road,   Philadelphia, PA 19154-3210
516092155      +New Jersey Division of,   Taxation,   50 Barrack Street,   Trenton, NJ 08695-0001
516092156       Ocean Resort Master Association,   PO Box 30510,   Honolulu, HI 96820-0510
516092157       PNC Mortgage,   PO Box 6534,   Carol Stream, IL 60197-6534
516092162      +Virtua Health,   Po Box 8500,   Lockbox 7542,   Philadelphia, PA 19178-0001
516092163       Volvo Car Financial,   PO Box 91300,   Mobile, AL 36691-1300

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg             E-mail/Text: usanj.njbankr@usdoj.gov Jul 22 2016 22:32:38     U.S. Attorney,   970 Broad St.,
                Room 502,   Rodino Federal Bldg.,   Newark, NJ 07102-2534
smg            +E-mail/Text: ustpregion03.ne.ecf@usdoj.gov Jul 22 2016 22:32:37     United States Trustee,
                Office of the United States Trustee,   1085 Raymond Blvd.,   One Newark Center,   Suite 2100,
                Newark, NJ 07102-5235
516092140      +EDI: ARSN.COM Jul 22 2016 22:28:00     ARS National Services Inc,   Po Box 463023,
                Escondido, CA 92046-3023
516092139       EDI: AMEREXPR.COM Jul 22 2016 22:28:00     American Express,   c/o Jaffe & Asher,
                600 Third Avenue,   New York, NY 10016-1901
516092138       EDI: AMEREXPR.COM Jul 22 2016 22:28:00     American Express,   PO Box 981535,
                El Paso, TX 79998-1535
516092141       E-mail/Text: ACF-EBN@acf-inc.com Jul 22 2016 22:32:20     Atlantic Credit and Finance Inc.,
                PO Box 12966,   Roanoke, VA 24030-2966
516092142       EDI: CAPITALONE.COM Jul 22 2016 22:28:00     Capital One,   PO Box 30285,
                Salt Lake City, UT 84130-0285
516092144       EDI: CITICORP.COM Jul 22 2016 22:28:00     Citibank,   PO Box 6004,
                Sioux Falls, SD 57117-6004
516092145      +EDI: FMAALLIANCE.COM Jul 22 2016 22:28:00     FMA Alliance, Ltd.,   12339 Cutten Road,
                Houston, TX 77066-1807
516092146      +EDI: LEADINGEDGE.COM Jul 22 2016 22:28:00     Global Credit & Collection Corp,
                5440 N. Cumberland Ave.,   Chicago, IL 60656-1490
516092148       EDI: IRS.COM Jul 22 2016 22:28:00     Internal Revenue Service,   PO Box 7346,
                Philadelphia, PA 19101-7346
516092151      +EDI: CBSKOHLS.COM Jul 22 2016 22:28:00     Kohls,   PO Box 3084,   Milwaukee, WI 53201-3084
516114508       EDI: RMSC.COM Jul 22 2016 22:28:00     Synchrony Bank,
                c/o of Recovery Management Systems Corp,   25 S.E. 2nd Avenue, Suite 1120,
                Miami, FL 33131-1605
516092159      +EDI: TDBANKNORTH.COM Jul 22 2016 22:28:00     TD Bank,   Operations Center,   PO Box 219,
                Lewiston, ME 04243-0219
516092160      +EDI: TDBANKNORTH.COM Jul 22 2016 22:28:00     TD Bank,   Attn Bankruptcy,   PO Box 9547,
                Portland, ME 04112-9547
516092158       EDI: WTRRNBANK.COM Jul 22 2016 22:28:00     Target Card Services,   3901 West 53rd St.,
                Sioux Falls, SD 57106-4216
516092161      +EDI: URSI.COM Jul 22 2016 22:28:00     United Recvoery Systems,   5800 North Course Drive,
                Houston, TX 77072-1613
                                                                                        TOTAL: 17

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                       TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 24, 2016                          Signature:  /s/Joseph Speetjens

Case 16-16093-JNP    Doc 16    Filed 07/24/16    Entered 07/25/16 00:40:51    Desc Imaged
Certificate of Notice    Page 4 of 4

District/off: 0312-1          User: admin              Page 2 of 2            Date Rcvd: Jul 22, 2016
                             Form ID: 318              Total Noticed: 32

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on July 22, 2016 at the address(es) listed below:
     Andrew B. Finberg    on behalf of Joint Debtor Elaine Marie Levins andy@sjbankruptcylaw.com,
    ABFECF@gmail.com
     Andrew B. Finberg    on behalf of Debtor William Michael Levins andy@sjbankruptcylaw.com,
    ABFECF@gmail.com
     John W. Hargrave    on behalf of Trustee John W. Hargrave trustee@hargravelaw.com,
    jhargrave@ecf.epiqsystems.com;jwh@trustesolutions.net
     John W. Hargrave    trustee@hargravelaw.com,   jhargrave@ecf.epiqsystems.com;jwh@trustesolutions.net
                                                                         TOTAL: 4