NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ELAINE LEVINS, WILLIAM LEVINS, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> HEALTHCARE REVENUE RECOVERY GROUP, LLC, d/b/a ARS ACCOUNT RESOLUTION SERVICES, <br><br> Defendant. | Civil No. 17-928 (RBK/KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Summary Judgement (Doc. No. 50) filed by Defendant Healthcare Revenue Recovery Group, LLC ("HRRG"). While attempting to collect a debt from Plaintiffs Elaine and William Levins, HRRG left a series of voicemail messages on Plaintiffs' telephone in which it identified itself as "ARS." While Plaintiffs allege that these voicemail messages violated the "true name" requirement of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(14), HRRG asserts that it permissibly referred to itself as "ARS." Because Plaintiffs present sufficient evidence that HRRG's use of "ARS" did not satisfy the FDCPA's "true name" requirement, HRRG's Motion is **DENIED**.

**I.   BACKGROUND**

    **A.  HRRG's Structure and Operations**

1

HRRG was formed in 2004 to take over the medical debt collection functions of a different entity known as "IMBS." (Doc. No. 53-2 at 24, 26, 34). In addition to debt collection, IMBS had also been engaged in medical billing operations, and continued such billing operations after the formation of HRRG. (*Id.* at 34). On November 1, 2007, IMBS changed its name to HCFS Health Care Financial Services, Inc. (Doc. No. 53-4 ("Pl. CSMF") at ¶ 7). On December 30, 2013, HCFS Health Care Financial Services, Inc. reorganized itself into a limited liability company known as HCFS Health Care Financial Services, LLC ("HCFS"). (Doc. No. 53-2 at 323). Since at least April 15, 2015, HCFS has been the Managing Member of HRRG. (*Id.* at 36, 329–337).

TeamHealth is the ultimate parent of HCFS. (*Id.* at 172). Presently, HCFS provides medical billing services to TeamHealth and third-party physician groups. (*Id.* at 36, 41). In turn, HRRG's role is to provide debt collection services for HCFS. (*Id.* at 43). HRRG makes no effort to solicit new clients, instead receiving consumer debts for collection only through HCFS. (*Id.* at 41–42).

"ARS Account Resolution Services" is a division of HRRG, created in 2009 to perform collection services for HRRG's more severely delinquent accounts. (*Id.* at 51–52, 74–75, 152). Consumer debts must take a winding path before being placed with the ARS division. First, the consumer must incur the debt with a healthcare provider that uses HCFS for billing services. After an "active billing process" with HCFS, debts are selected for placement with HRRG based on their age. (*Id.* at 35). At some point after placement with HRRG, these debts are evaluated and returned to HCFS. (*Id.* at 79). Finally, some of the debts returned to HCFS are transferred to the ARS division. (*Id.*).

The ARS division is about one-third the size of HRRG. (*Id.* at 76–77). HRRG has registered "ARS Account Resolution Services" as an alternate name in the state of New Jersey, but there is no evidence that it has registered "ARS" as such. (Doc. No. 50-10; Doc. No. 53-2 at

170–171). Internally, HRRG uses the acronym "ARS" to refer to the ARS division, not to HRRG as a whole. (*Id.* at 74, 104, 177).

All of the ARS division's agents and representatives are employees of HRRG, and "Healthcare Recovery Group, LLC" is the name that appears as the employer on the form W-2s of everyone who works in the ARS division. (*Id.* at 13, 96). Defendant maintains that the employees who work in the ARS division are distinct from the employees of the rest of HRRG, with their own hierarchy and management, and that the ARS division has a separate space within HRRG's office building. (*Id.* at 74–75).

ARS representatives have live telephone calls with consumers. (Doc. No. 53–2 at 177). ARS representatives are trained to identify their company as ARS when speaking to consumers during live telephone calls. (*Id.*). The reason for this policy is to avoid disclosing the nature of the call to a non-debtor third party that may answer the phone. (*Id.* at 177–78). ARS records calls between its representatives and consumers for quality control purposes. (*Id.* at 179). The President of HRRG, David Friedlander, has listened to some of these recorded calls. (*Id.*). On the calls he has listened to, the ARS representatives typically identify the company as "ARS," although there may be times when the representatives refer to the company as "ARS Account Resolution Services." (*Id.* at 180).

HRRG's mail vendor, Nordis, receives electronic data from HRRG, which Nordis merges with templates of form letters to create HRRG's collection letters. (Doc. No. 53-2 at 44–45). Nordis then prints the letters, places them in envelopes, and mails them. (*Id.*). HRRG uses Nordis to send collection letters for its ARS and non-ARS divisions. (*Id.* at 88). The contract for these services is between HRRG and Nordis; the ARS division does not have a separate contract. (*Id.* at 51).

HRRG uses speech analytic software to categorize recorded telephone conversations between its representatives and consumers. (*Id.* at 67). HRRG's vendor for this software is GenSys. (*Id.*). HRRG's contract with GenSys covers the ARS division; the ARS division does not have a separate contract with GenSys. (*Id.*).

### B. Plaintiffs' Experience

HRRG's internal records show that Plaintiffs incurred a medical debt in September 2014 and that HRRG began attempting to collect this debt soon thereafter. (*Id.* at 22, 194). At first, Plaintiffs' debt was not placed with the ARS division, but was instead serviced by the non-ARS division of HRRG. (*Id.* at 109). While Plaintiffs' account was still placed with the non-ARS division, HRRG sent three collection letters to Plaintiffs—an "A" notice on January 27, 2015, a "B" notice on March 3, 2015, and a "Final" notice on July 28, 2015. (*Id.* at 126–28). None of these letters made any mention of the ARS division. (*Id.*).

On March 3, 2015, HRRG placed a call to Plaintiffs that was not answered. (*Id.* at 121). Pursuant to HRRG's policies, had Plaintiffs answered this call, they would have been transferred to a trained HRRG agent, who would have been supposed to state that the call was from HRRG, but would not have mentioned the ARS division. (*Id.* at 121–22).

On July 24, 2015, HRRG left a prerecorded message in Plaintiffs' voicemail inbox, and did so again on September 9, 2015, October 1, 2015, October 28, 2015, and November 9, 2015; all of these messages identified the caller as HRRG, and none of them made any mention of the ARS division. (*Id.* at 125, 131, 195).

Plaintiffs' account was not placed with the ARS division until November 24, 2015, and the ARS division did not begin making calls to Plaintiffs until December 10, 2015. (*Id.* at 106). HRRG's records show that it left prerecorded voicemail messages on Plaintiffs' phone on

4

numerous occasions between December 10, 2015 and January 19, 2019. (*Id.* at 131–36, 196–99).

All of these messages used the following script:

> This is ARS calling. Please return our call at 1-800-694-3048. ARS is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Again, our number is 1-800-694-3048. Visit us at www.arspayment.com.

(*Id.* at 81, 150–51, 209).

HRRG's records also indicate that the ARS division sent one collection letter to Plaintiffs. (*Id.* at 106, 194). Defendant maintains that it sent Plaintiffs a letter dated November 30, 2015; this letter identifies the sender as "Account Resolution Services, a division of HRRG, LLC," and uses "ARS" as a short-form of " ARS Account Resolution Services" throughout. (Doc. No. 50-13). The letter seeks to collect a healthcare debt. (*Id.*). Plaintiffs maintain that they never saw this letter prior to the initiation of this lawsuit. (*Id.* at 310, 313–14).

### C. Procedural History

Plaintiffs initiated this lawsuit on February 12, 2017 by filing their Complaint (Doc. No. 1) in this Court. On March 22, 2017, HRRG filed a Motion to Dismiss (Doc. No. 7), to which Plaintiffs responded by filing an Amended Complaint on April 12, 2017 (Doc. No. 9). On April 26, 2017, HRRG filed a new Motion to Dismiss (Doc. No. 10), which the Court granted on September 26, 2017, *see Levins v. Healthcare Revenue Recovery Grp., LLC*, No. 17-928, 2017 WL 4269467 (D.N.J. Sept. 26, 2017).

Following the Court's dismissal of their Amended Complaint, Plaintiffs appealed to the Third Circuit. On August 22, 2018, the Third Circuit issued a decision affirming this Court's ruling in part, vacating it in part, and remanding the case for further proceedings. *Levins v. Healthcare Revenue Recovery Grp., LLC*, 902 F.3d 274 (3d Cir. 2018). While the Third Circuit affirmed this

Court's dismissal of Plaintiffs' claims under 15 U.S.C. §§ 1692d(6) and 1692e(10), it found that Plaintiffs had successfully stated a claim under 15 U.S.C. § 1692e(14).

On January 24, 2020, HRRG filed the present Motion for Summary Judgment (Doc. No. 50), seeking dismissal of Plaintiffs' Section 1692e(14) claim, the only claim remaining in this case. This motion is now fully briefed and ripe for decision.

## II.     LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id.* at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing

6

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.     DISCUSSION**

To establish a claim under the FDCPA, a plaintiff must show that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Levins*, 902 F.3d at 280 (internal quotation omitted). When assessing whether a particular practice violates the FDCPA, courts "employ a 'least sophisticated debtor' standard." *Id.* (internal quotation omitted). Under this standard, "the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Id.* (internal quotation omitted).

On the present motion, the only issue in dispute is whether the voicemail messages HRRG left on Plaintiffs' telephone violated Section 1692e(14), which prohibits debt collectors from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization" when attempting to collect a debt. In the Third Circuit, a debt collector may satisfy this "true name" requirement by using "'its full business name, the name under which it usually transacts business, or a commonly used acronym,' as long as 'it consistently uses the same name when dealing with a particular consumer.'" *Levins*, 902 F.3d at 281 (quoting *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988)).

HRRG maintains that the voicemails it left for Plaintiffs satisfied Section 1692e(14)'s "true name" requirement because "ARS" is a name under which HRRG usually transacts business and is a commonly used acronym of its registered alternate name "ARS Account Resolution Services."

(Doc. No. 50-4 ("Def. Brief") at 7). While there is some evidence supporting HRRG's contention, the Court does not need to rule on this issue because, viewing the facts in the light most favorable to Plaintiffs, HRRG did not consistently use the name "ARS" when attempting to collect Plaintiffs' debt. Rather, the record shows that HRRG sent Plaintiffs three letters and left them five voicemails which identified the entity attempting to collect Plaintiffs' debt as "HRRG"[1] and made no mention of the ARS division. (Doc. No. 53-2 at 125–31, 195). This use of "HRRG" when communicating with Plaintiffs is plainly inconsistent with HRRG's subsequent use of the name "ARS."

HRRG seems to deny the veracity of the evidence showing its failure to consistently use the name "ARS" when communicating with Plaintiffs, as it claims that Plaintiffs have admitted that in every telephone message left by HRRG, HRRG identified itself as "ARS." (Doc. No. 57 ("Def. Reply") at 6). While Plaintiffs' admit that every voicemail message alleged in their Amended Complaint identified the caller as "ARS," this admission is obviously far less sweeping than HRRG makes it out to be. (*See* Doc. No. 53-3 ("Pl. RSUMF") at ¶ 22). Given that the Court must accept the truth of the evidence upon which Plaintiff relies, HRRG is not entitled to summary judgment.

**IV.   CONCLUSION**

For the foregoing reasons, HRRG's Motion for Summary Judgment is **DENIED**. An Order follows.


Dated: 6/12/2020                                    /s/ Robert B. Kugler
                                                                                                   ROBERT B. KUGLER
                                                                                                    United States District Judge

---

[1] Although the record is somewhat unclear as to whether these letters and voicemails identified HRRG by its full name, "Healthcare Revenue Recovery Group, LLC," by the acronym "HRRG," or some other moniker, the precise name used by HRRG in these communications is immaterial for the disposition of the present Motion.