## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELAINE LEVINS and WILLIAM LEVINS, *on behalf of themselves and those similarly situated*,<br><br>    Plaintiffs,<br><br>vs.<br><br>HEALTHCARE REVENUE RECOVERY GROUP, d/b/a/ ARS ACCOUNT RESOLUTION SERVICES; and JOHN and JANE DOES 1 to 25,<br><br>    Defendants. | Case 1:17-cv-00928-CPO-MJS |

---

**BRIEF ON BEHALF OF
PLAINTIFFS ELAINE LEVINS AND WILLIAM LEVINS
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**RETURNABLE: JULY 5, 2022
(ORAL ARGUMENT REQUESTED)**

---

Yongmoon Kim
Philip D. Stern
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117

*Attorneys for Plaintiffs Elaine Levins and William Levins*

# TABLE OF CONTENTS

Table of Authorities .................................................................. iii

1.   Introduction ...................................................................7

2.   The Motion Record ...........................................................7

3.   The Fair Debt Collection Practices Act .....................................8

4.   Nature of the Action.........................................................11

5.   The Ascertainable Class.....................................................15

6.   The Class Representatives...................................................20

7.   Class Counsel................................................................20

8.   Class Notice.................................................................20

9.   Requirements for Class Certification........................................21

    A.   The Elements of Rule 23(a). ...........................................24

        (1)   Numerosity.......................................................25

        (2)   Commonality......................................................26

        (3)   Typicality. .....................................................28

        (4)   Adequacy. .......................................................30

    B.   Maintaining a B(3) Class: Predominance and Superiority.................33

10.   Conclusion..................................................................37

# TABLE OF AUTHORITIES

## CASES

*Allen ex rel. Martin v. LaSalle Bank, N.A.*,
629 F.3d 364 (3d Cir. 2011)..............................................................................11

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................ 22, 24, 31, 36

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) .........................................................................................16

*Barkouras v. Hecker*,
2006 U.S. Dist. LEXIS 88998, 2006 WL 3544585 (D.N.J. Dec. 8, 2006) .....18

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998)..................................................................... 11, 24

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,
111 F.3d 1322 (7th Cir. 1997).............................................................................9

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)..............................................................................29

*Brown v. Card Serv. Ctr.*,
464 F.3d 450 (3d Cir. 2006) ..................................................................... 10, 36

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*,
550 F.3d 294 (3d Cir. 2008)..............................................................................10

*Chiang v. Veneman*,
385 F.3d 256 (3d Cir. 2004)..............................................................................26

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993)............................................................................11

*Coyle v. Hornell Brewing Co.*,
2011 U.S. Dist. LEXIS 97762, 2011 WL 3859731 (D.N.J. Aug. 30, 2011)..............................................................................................................31

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n*,
375 F.2d 648 (4th Cir. 1967).............................................................................26

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012)..............................................................................30

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .........................................................................................21

FED. R. CIV. P. 23(c)..................................................................................................7

*FTC v. Check Investors, Inc.*,
    502 F.3d 159 (3d Cir. 2007)...................................................................................9

*Gonzales v. Arrow Fin. Services, LLC*,
    660 F.3d 1055 (9th Cir. 2011).............................................................................11

*Guevarra v. Progressive Fin. Servs.*,
    2006 U.S. Dist. LEXIS 89193, 2006 WL 3613711 (N.D. Cal. Nov. 30,
    2006).....................................................................................................................18

*Guevarra v. Progressive Fin. Servs.*,
    497 F. Supp. 2d 1090 (N.D. Cal. 2007) ..............................................................19

*Hassine v. Simon's Agency*,
    2021 U.S. Dist. LEXIS 125865, 2021 WL 2646990 (D.N.J. Apr. 29,
    2021).....................................................................................................................19

*In re Cmty. Bank of N. Virginia*,
    622 F.3d 275 (3d Cir. 2010)................................................................................31

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)......................................................................... 22, 33

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)............................................................... 22, 24, 30

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................................................35

*Jacobson v. Healthcare Fin. Services, Inc.*,
    516 F.3d 85 (2d Cir. 2008)......................................................................... 10, 11

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573
    (2010) .....................................................................................................................8

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)................................................................................26

*Knight v. Midland Credit Mgmt.*,
    2019 U.S. Dist. LEXIS 59794, 2019 WL 1516941 (E.D. Pa. Apr. 5,
    2019).....................................................................................................................19

*Larson v. AT&T Mobility LLC*,
    687 F.3d 109 (3d Cir. 2012)....................................................................... 21, 30, 31

*Lesher v. Law Offices of Mitchell N. Kay, P.C.*,
    650 F.3d 993 (3d Cir. 2011).............................................................................8, 9

*Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274 (3d Cir. 2018)............................................................................................................12

*Liberty Lincoln Mercury v. Ford Mktg. Corp.*,
149 F.R.D. 65 (D.N.J. 1993) ..........................................................................26

*Little-King v. Hayt Hayt & Landau*,
2013 U.S. Dist. LEXIS 129587, 2013 WL 4874349 (D.N.J. Sep. 10, 2013)...............................................................................................................23

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) .................................................................. 17, 36

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012).................................................................... 16, 33

*Martsolf v. JBC Legal Group, P.C.*,
2008 U.S. Dist. LEXIS 6876, 2008 WL 275719 (M.D. Pa. Jan. 30, 2008) ....28

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001)................................................................... 25, 27

*Nyby v. Convergent Outsourcing Inc.*,
2017 U.S. Dist. LEXIS 122056. 2017 WL 3315264 (D.N.J. Aug. 3, 2017)...............................................................................................................27

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .......................................................................................21

*Pro v. Hertz Equip. Rental Corp.*,
72 Fed.R.Serv.3d 485 (D.N.J. 2008)..............................................................33

*Saldana v. Resurgent Capital Servs., LP*,
2021 U.S. Dist. LEXIS 160759, 2021 WL 3758080 (D.N.J. Aug. 25, 2021)...............................................................................................................17

*Schultz v. Midland Credit Mgmt.*,
2020 U.S. Dist. LEXIS 98824, 2020 WL 3026531 (D.N.J. June 5, 2020)......23

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010).................................................................... 30, 32

*Smith v. Prof'l Billing & Mgmt. Servs.*,
2007 U.S. Dist. LEXIS 86189, 2007 WL 4191749 (D.N.J. Nov. 21, 2007)...............................................................................................................27

*Stair ex rel. Smith v. Thomas & Cook*,
254 F.R.D. 191 (D.N.J. 2008).................................... 23, 26, 28, 29, 33, 34, 35

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)...............................................................25, 26, 27

*Taylor v. Perrin, Landry, deLaunay & Durand*,
103 F.3d 1232 (5th Cir. 1997).......................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................24, 27

*Weiss v. Regal Collections*,
385 F.3d 337 (3d Cir. 2004)..........................................................................10

*Weiss v. York Hosp.*,
745 F.2d 786 (3d Cir. 1984)..........................................................................29

*Williams v. Pressler & Pressler, LLP*,
2013 U.S. Dist. LEXIS 139643, 2013 WL 5435068 (D.N.J. Sept. 27,
2013)..............................................................................................................23

## STATUTES

15 U.S.C. § 1692(a) ...........................................................................................9

15 U.S.C. § 1692(b) ......................................................................................9, 36

15 U.S.C. § 1692(e) ...........................................................................................8

15 U.S.C. § 1692f..............................................................................................12

15 U.S.C. § 1692g(a) ........................................................................................23

15 U.S.C. § 1692k .......................................................................................16, 17

28 U.S.C. § 1927...............................................................................................19

## OTHER AUTHORITIES

FED. R. CIV. P. 23(b)(3)........................................17, 20, 22, 28, 33, 34, 37

FED. R. CIV. P. 23(c)(1)(A)..............................................................21, 37

FED. R. CIV. P. 23(c)(1)(B)..............................................................30, 37

FED. R. CIV. P. 23(d).............................................................................21

FED. R. CIV. P. 23(g) ...............................................20, 30, 31, 32

FED. R. CIV. P. 23(g)(1)(B).................................................................32

*Newberg on Class Actions* (5th ed.)..................................................31, 34

## 1. INTRODUCTION

Defendant Healthcare Revenue Recovery Group ("HRRG") collects debts owed for healthcare services. HRRG is alleged to have violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* with respect to a pre-recorded message which HRRG leaves on consumer's answering machines or voicemail which identify the caller as "ARS."

According to HRRG's business records, it left 28 identical messages for Plaintiffs Elaine Levins and William Levins and at least five of the same messages for 784 other New Jersey residents when attempting to collect a debt alleged to be owed to Atlantic Emergency Physicians-Team Pediatric Associates.

Plaintiffs now moves to certify this action as a class action pursuant to FED. R. CIV. P. 23(c).

## 2. THE MOTION RECORD

This Motion is supported by four declarations. Two are from the Plaintiffs and proposed class representatives, Elaine Levins and William Levins. The other two are from Plaintiffs' attorneys, Yongmoon Kim, Esq., and Philip D. Stern, Esq.

The motion record is also supported by matters of record in this action which includes the Third Circuit's partial reversal of the dismissal of this action, the Court's denial of Defendant's summary judgment motion, and the factual record

supporting Plaintiffs' Counterstatement of Undisputed Material Facts filed in opposition to Defendant's summary judgment motion.

### 3. THE FAIR DEBT COLLECTION PRACTICES ACT

This case arises under the FDCPA, which simultaneously advances two objectives: it protects vulnerable citizens while also promoting a competitive marketplace. 15 U.S.C. § 1692(e).

Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes and ellipsis omitted). The Third Circuit echoed the Supreme Court's rationale from *Jerman*, "Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to 'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 996 (3d Cir. 2011).

Congress has found abundant evidence indicating that abusive, deceptive, and unfair debt collection practices are employed by a nearly countless number of debt collectors. These unsavory practices actively contribute to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual

privacy. 15 U.S.C. § 1692(a). It also found that existing consumer protection laws were inadequate. 15 U.S.C. § 1692(b). Therefore, "Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act." *Lesher*, 650 F.3d at 997.

Thus, the intended effect of these private enforcement actions was not only to lessen marital instability and reduce the number of personal bankruptcies, job losses, and invasions of individual privacy caused by abusive, deceptive, and unfair debt collection practices, but also to simultaneously promote a competitive marketplace for those debt collectors who voluntarily conduct business in good faith, treating consumers with honesty and respect.

"Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC*, 502 F.3d at 165 quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

The FDCPA is construed broadly to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 n.1 (3d Cir. 2006). Thus, by way of example, "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id*. at 455. "This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008).

"Congress also intended the FDCPA to be self-enforcing by private attorneys general." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). As at least one court found:

> In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.

*Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

"Congress encouraged private enforcement by permitting aggrieved individuals to

bring suit as private attorneys general." *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Except where the Act expressly requires knowledge or intent, the "FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation," *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

A debt collector who violates any provision of the FDCPA is liable for any actual damages, "additional damages" (also called "statutory damages"), and attorney's fees and costs. 15 U.S.C. § 1692k(a). However, "the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson*, *supra*, 516 F.3d at 96.

### 4.  NATURE OF THE ACTION.

The FDCPA prohibits debt collectors from using any "name other than the true name of the debt collector's business, company, or organization" when

attempting to collect a debt. 15 U.S.C. § 1692e(14). In this case, *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 281 (3d Cir. 2018), the Third Circuit adopted the FTC's interpretation "to permit a debt collector to use [1] its full business name, [2] the name under which it usually transacts business, or [3] a commonly-used acronym, as long as it consistently uses the same name when dealing with a particular consumer." (Internal quotation marks and editing omitted.)

Conceding HRRG's use of "ARS" does not fall within the first two categories, HRRG moved for summary judgment as to the third category. The Court denied that motion based on the existence of disputed facts. It explained, "viewing the facts in the light most favorable to Plaintiffs, HRRG did not consistently use the name 'ARS' when attempting to collect Plaintiffs' debt." [D.E. 58 at 8.]

In its Opinion denying HRRG's summary judgment motion, the Court explained that "HRRG was formed in 2004 to take over the medical debt collection functions of a different entity known as 'IMBS.'" [D.E. 58 at 2.] "While it has registered the name 'ARS ACCOUNT RESOLUTION SERVICES' in New Jersey, HRRG has neither registered the stand-alone name 'ARS' nor taken any other legal steps to do business under that specific name." *Levins*, 902 F.3d at 278;

*Friedlander*[1] 167:4-12 and 168:14-170:2. In 2009, HRRG created a team or

division within HRRG "to perform collection services for HRRG's more severely

delinquent accounts." [D.E. 58 at 2.] That division is internally referred to as

"ARS." The Court explained how an account is placed with the ARS team:

> Consumer debts must take a winding path before
> being placed with the ARS division. First, the
> consumer must incur the debt with a healthcare
> provider that uses HCFS for billing services. After an
> "active billing process" with HCFS, debts are
> selected for placement with HRRG based on their
> age. (*Id.* at 35). At some point after placement with
> HRRG, these debts are evaluated and returned to
> HCFS. (*Id.* at 79). Finally, some of the debts returned
> to HCFS are transferred to the ARS division. (*Id.*).

[D.E. 58 at 2.]

When HRRG's autodialer is calling to collect an account assigned to the

ARS division and reaches a consumer's voicemail, it leaves the following pre-

recorded telephone voice message:

> This is ARS calling. Please return our call at
> 1-800-694-3048. ARS is a debt collector.
> This is an attempt to collect a debt. Any
> information obtained will be used for that

---

[1] Citations to *Friedlander* refer to the internal page and line numbers in the
transcript of the Deposition of David M. Friedlander, one of HRRG's Rule
30(b)(6) witnesses. The transcript was previously filed in opposition to HRRG's
summary judgment motion as part of D.E. 53-2 (at PageID 512 through 694).
Exhibits D-1 through D-5 marked at the deposition appear in D.E. 53-2 (at Page ID
695 through 731).

se

> purpose. Again, our number is 1-800-694-
> 3048. Visit us at www.arspayment.com.

[D.E. 53-2 at Page ID 652 (*Friedlander* 141:15-19), and PageID 719 (Deposition

Ex. D-4).]

HRRG's account notes reflect that it left that message for Plaintiffs on

various dates at various times from December 15, 2015 through January 19, 2017.

[*See, Friedlander* 131:16-132:7, 133:1-9, and 135:10-18 confirming that each

paired lines appearing on PageID 706-710 represents a telephone call resulting in

leaving the pre-recorded message identifying HRRG as ARS.] From spreadsheets

produced by HRRG, it left the ARS pre-recorded message 28 times. *Stern Decl.*

¶31.

HRRG also claims to have mailed a letter to Plaintiffs after the account was

placed with the ARS division. The letter is included in Exhibit D-2 marked during

the Friedlander deposition and can be found in D.E. 53-2 at PageID 701. In the

letter, HRRG used "ARS" in parenthesis in the first line of its letter which,

according to HRRG's President, is "***just to clarify in the remainder of the text of***

***the letter*** that we may use just the initials ARS to mean ARS Account Resolution

Services" so someone reading the letter would understand that letter's subsequent

use of ARS meant ARS Account Resolution Services without having to call or go

to the website. [*Friedlander* 51:11-15; 142:1-21 (emphasis added).] Unlike that

letter, there is nothing in HRRG's pre-recorded message which clarifies that its use

of "ARS" means "ARS Account Resolution Services" which is HRRG's registered alternate name.

When denying HRRG's summary judgment motion, the Court stated, "viewing the facts in the light most favorable to Plaintiffs, HRRG did not consistently use the name 'ARS' when attempting to collect Plaintiffs' debt." [D.E. 58 at 8.]

Plaintiffs seek statutory damages as allowed under the FDCPA. Specifically, up to $1,000 for each Plaintiff and up to the lesser of $500,000 or 1% of HRRG's net worth for the class. (Discovery of HRRG's net worth abides the outcome of the instant motion.)

## 5.  THE ASCERTAINABLE CLASS.

Plaintiffs seek to certify the following Class:

> All natural persons to whom, according to the business records of Healthcare Revenue Recovery Group (HRRG), HRRG placed at least five telephone calls in an attempt to collect a debt alleged to be owed to ATLANTIC ER PHYS TEAM PED, each call was answered by an answering machine or voicemail system anytime from February 12, 2016 through March 12, 2017, and during each call the following pre-recorded message was played:
>
> > This is ARS calling. Please return our call at 1-800-694-3048. ARS is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that

> purpose.  Again,  our  number  is  1-800-694-
> 3048. Visit us at www.arspayment.com.

This definition allows for an ascertainable class which is "an essential prerequisite of a class action." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592 (3d Cir. 2012). Ascertainability requires that "the class must be currently and readily ascertainable based on objective criteria." *Id.* at 593. The proposed definition allows for identification of each class member derived from HRRG's own business records. Those records allow for identifying the obligor on each account filtered by a specific creditor to which telephone calls were placed on specific dates resulting in playing a pre-recorded message.

According HRRG's records, the Class consists of 783 natural persons. *Stern Decl.* ¶27. The Class increases to 878 if defined to require only one message and decreases to 432 if defined to require at least fifteen messages. *Stern Decl.* ¶32.

As explained in the *Stern Decl.* at ¶¶28-31, to eliminate Defendant's charge that sometimes its records reflect a false positive—that a message was left but, due some technical glitch, none was left—setting a minimum number of messages increases the likelihood that at least one offending message was left.

The start date, February 12, 2016, for the Class is the date which is one year prior to the commencement of this action. Under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the claim of each class member is tolled as of the commencement of this action. Under 15 U.S.C. § 1692k(d), the statute of

limitations on an FDCPA claim is one year. An FDCPA claim arising from the transmittal of a voice message arises when the message is sent. *Saldana v. Resurgent Capital Servs., LP*, 2021 U.S. Dist. LEXIS 160759 at n. 7, 2021 WL 3758080 (D.N.J. Aug. 25, 2021).

The Class is defined based on the common facts shared with both Plaintiffs. The qualifying factors—the content of the telephonic voice message and the geographic scope (New Jersey) of the addressee—promote manageability (which is a factor relevant to the predominance and superiority requirements under FED. R. CIV. P. 23(b)(3)) and is consistent with the FDCPA. Under 15 U.S.C. § 1692k(a)(2), a class can recover up to 1% of the debt collector's net worth but no more than $500,000 "without regard to a minimum individual recovery."

In an oft-cited case, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997), the Seventh Circuit reversed the district court's denial of class certification. Plaintiff asserted an FDCPA letter violation but proposed to limit the class geographically to Wisconsin addressees. According to the district court, limiting the class exposed the debt collector to multiple statewide classes which, in the aggregate, would effectively abrogate the FDCPA's 1% limitation on class recovery. However, the district court refused to certify a nationwide class because

17

it would be so large that the individual recovery would be *de minimis*.[2] The

Seventh Circuit reversed. It found no basis for prohibiting a narrow class definition

which reduces the class. To the extent doing so exposes a debt collector to serial

class actions, a court could address the problem if such a circumstance were to

actually arise.

Limiting an FDCPA class by the creditor, or other germane qualifying

factors, is not improper. In *Guevarra v. Progressive Fin. Servs.*, 2006 U.S. Dist.

LEXIS 89193, 2006 WL 3613711 (N.D. Cal. Nov. 30, 2006), the plaintiff filed a

class action complaint asserting a letter claim under the FDCPA without limiting

the class by the creditor. The debt collector had mailed the letter on behalf of

multiple creditors. Subsequently, plaintiff amended the complaint to limit the class

to letters collecting only IKEA debts "as part of some agreement with other

counsel who are proceeding against defendants for letters sent to collect debts

owed to other creditors." *Id.* Concerned that this conduct violated professional

ethics, the court ordered plaintiff's counsel to show cause why he should not be

referred to the ethics committee. However, after hearing from plaintiff's counsel,

the court concluded there was no basis to refer plaintiff's counsel to said ethics

committee. *Guevarra v. Progressive Fin. Servs.*, 497 F. Supp. 2d 1090 (N.D. Cal.

---

[2] In this District, a *de minimis* recovery is not a basis to deny certifying an FDCPA class. *Barkouras v. Hecker*, 2006 U.S. Dist. LEXIS 88998, 2006 WL 3544585 (D.N.J. Dec. 8, 2006).

2007). The court considered that the FDCPA creates an incentive to keep class sizes small and, ostensibly, while those FDCPA "mis-incentives" might conflict with the purpose of 28 U.S.C. § 1927 (allowing sanctions for multiplying the proceedings), "any remedy to this situation lies with Congress" and not with plaintiff's counsel. *Id.* at 1092.

Hence, limiting an FDCPA class by creditor is entirely legitimate. Here, Plaintiffs seek to limit the class to those for whom HRRG was attempting to collect a debt alleged to be owed to Atlantic Emergency Physicians-Team Pediatric Associates—the same creditor involved with the Levinses' account.

These limitations are applied for the purpose of manageability and to obtain a greater recovery for each class member compared with the recovery if the class were larger. Courts have expressly permitted such definitional limitations due to the FDCPA class relief formula.

For example, an FDCPA class was recently certified which limits the class to residents of West Long Branch. *Hassine v. Simon's Agency*, 2021 U.S. Dist. LEXIS 125865, 2021 WL 2646990 (D.N.J. Apr. 29, 2021). *Hassine* cited to *Knight v. Midland Credit Mgmt.*, 2019 U.S. Dist. LEXIS 59794, 2019 WL 1516941 (E.D. Pa. Apr. 5, 2019) which certified an FDCPA class limited to Philadelphia County where plaintiff argued that doing so would allow her to "obtain a greater recovery for potential class members." *Id.*, LEXIS at *29.

19

### 6.  THE CLASS REPRESENTATIVES.

The interests of Elaine and William Levins are to obtain damages on behalf

of themselves and the class as allowed under the FDCPA for Defendant's violation

of the Act. There is no conflict between his interests and those of the other

members of the proposed class. Elaine Levins Decl.; William Levins Decl.

Furthermore, Plaintiffs have been deposed and have been available as needed

including sitting for depositions. *Stern Decl.* ¶34, ¶38.

### 7.  CLASS COUNSEL.

The proposed Class Counsel is the Kim Law Firm LLC. The Declarations of

Messers. Kim and Stern submitted with this Motion set forth (a) the work

performed in identifying and investigating potential claims in this action, (b)

generally describe the work performed; (c) their experience in handling class

actions, other complex litigation, and the types of claims asserted in the action,

(d) their knowledge of the applicable law, and (e) the resources they will commit to

representing the class—all required factors under FED. R. CIV. P. 23(g). *Stern Decl.*

¶¶33-35; *Kim Decl.* ¶¶15-16.)

### 8.  CLASS NOTICE.

After a class is certified under FED. R. CIV. P. 23(b)(3), "the court is required

to direct to class members the best notice practicable under the circumstances,

including individual notice to all members who can be identified through

reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Further, "Individual notice must be sent to all class members whose names and

addresses may be ascertained through reasonable effort." *Larson v. AT&T Mobility*

*LLC*, 687 F.3d 109, 124 (3d Cir. 2012).

The cost of such notice is generally borne by plaintiffs. *Eisen,* 417 U.S. at

178-179. The Supreme Court has expressly recognized that, with respect to

identification of class members, "the defendant may be able to perform a necessary

task with less difficulty or expense than could the representative plaintiff."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978). "In such cases, we

think that the district court properly may exercise its discretion under

FED. R. CIV. P. 23(d) to order the defendant to perform the task in question." *Id.*

Therefore, if this Motion is granted, Plaintiffs will move for approval of a

notice and, to the extent the information has not already been provided by

Defendant in discovery, to compel Defendant to provide the mailing list to the

appointed class counsel for the purpose of serving notice to the class.

## 9.  REQUIREMENTS FOR CLASS CERTIFICATION.

"At an early practicable time after a person sues or is sued as a class

representative, the court must determine by order whether to certify the action as a

class action." FED. R. CIV. P. 23(c)(1)(A).

The Third Circuit explained:

> In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b).

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir. 1998).

Here, Elaine and William Levins seek to maintain the class under FED. R. CIV. P. 23(b)(3). "In order to pass muster under Rule 23(b)(3), the district court must determine that common questions of law or fact predominate and that the class action mechanism is the superior method for adjudicating the case." *Id.*

"The dominant concern of Rule 23(a) and (b) [is] that a proposed class have sufficient unity so that absentees can fairly be bound by class representatives' decisions." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal quotation marks omitted). Factual determinations are made based on a preponderance of the evidence. *Id.* at 307. Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.*

Claims arising from a debt collector's false identifications, like those included in the messages sent to Plaintiffs and each class member, present ideal circumstances for class treatment. *Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191 (D.N.J. 2008), involved a claim that a form letter violated the FDCPA. There, the issue concerned a form letter alleged to contradict the notice of the consumer's 30-day rights required under 15 U.S.C. § 1692g(a). *Id.* at 194, 198. Here, the claim concerns the false identification uniformly made in HRRG's telephonic voice messages. First Am. Compl. (ECF No. 9) at ¶¶ 30-31.

Any factual variations between *Stair* and the present matter are distinctions without a difference. *Stair* granted class certification because—like HRRG—the debt collector included the same language in its collection communications to the plaintiff and each class member. *See also Schultz v. Midland Credit Mgmt.*, 2020 U.S. Dist. LEXIS 98824, 2020 WL 3026531 (D.N.J. June 5, 2020) (certifying a FDCPA class who were sent a form letter with a certain IRS language who had a current balance of less than $600); *Williams v. Pressler & Pressler, LLP*, 2013 U.S. Dist. LEXIS 139643, 2013 WL 5435068 (D.N.J. Sept. 27, 2013) (certifying a class for alleged FDCPA violation based on language in a form letter); *Little-King v. Hayt Hayt & Landau*, 2013 U.S. Dist. LEXIS 129587, 2013 WL 4874349 (D.N.J. Sep. 10, 2013) (same).

## A.   The Elements of Rule 23(a).

For a lawsuit to be maintained as a class action under Rule 23, a named

plaintiff must establish each of the four threshold requirements of subsection (a) of

the rule, which provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if:
>
> > (1) the class is so numerous that joinder of all
> > members is impracticable;
> >
> > (2) there are questions of law or fact common to
> > the class;
> >
> > (3) the claims or defenses of the representative
> > parties are typical of the claims or defenses of the
> > class; and
> >
> > (4) the representative parties will fairly and
> > adequately protect the interests of the class.

FED. R. CIV. P. 23(a). See, *e.g.*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir.

1998); *Prudential*, 148 F.3d at 308-09.

Before addressing the specific factors, it is important to recognize, as did the

Supreme Court, that commonality, typicality, and adequacy tend to merge as each

element attempts to address the overriding issue as to whether the interests of

absent class members will be sufficiently protected by the representatives. *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338 n.5 (2011); *Amchem Products, Inc. v.*

*Windsor*, 521 U.S. at 593.

Furthermore, when evaluating commonality and typicality, the Third Circuit observed:

> We have set a low threshold for satisfying both requirements. That is, Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards. [N]either of these requirements mandates that all putative class members share identical claims. Nevertheless, we require courts to examine them separately because the criteria remain distinct.

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (internal quotation marks and citations omitted).

In the case at bar, all four of the required elements of Rule 23(a) are easily satisfied.

### (1) Numerosity.

FED. R. CIV. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." A class of 40 is presumed to be sufficiently numerous. *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

Nevertheless, numerosity is not purely based on numbers; the factors include "the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed

members of the class would be able to pursue remedies on an individual basis."

*Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993).

Thus, courts have found numerosity for classes with as few as 18 members.

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648,

653 (4th Cir. 1967).

Here, litigation and discovery have revealed HRRG transmitted the subject

collection communication to 783 individuals. *Stern Decl.* ¶27. Thus, the size is

sufficient under *Stewart, supra*. Moreover, as defined, the class consists of those

who were sent collection letters to a New Jersey address. Thus, the class members

are connected to this District, and identifying them and their addresses is relatively

easy as Defendant has already identified them using its records. *Id*. Therefore, like

in *Stair,* numerosity is satisfied.

### (2) Commonality.

FED. R. CIV. P. 23(a)(2) requires that there be "questions of law or fact

common to the class."

The commonality requirement is not "a high bar." *Chiang v. Veneman*, 385

F.3d 256, 265 (3d Cir. 2004). Commonality "does not require an identity of claims

or facts among class members." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178,

184 (3d Cir. 2001). Instead, it is met if the plaintiff's grievances share at least one

question of law or of fact with the prospective class. *Smith v. Prof'l Billing &*

*Mgmt. Servs.*, 2007 U.S. Dist. LEXIS 86189, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) (citing *Newton,* 259 F.3d at 183). As the Supreme Court has found, "[w]e quite agree that for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotes, citations and editing omitted); *Stewart*, 275 F.3d at 227 ("commonality requirement … satisfied if the named plaintiffs share *at least* one question of fact or law with the grievances of the prospective class").

In the present case, Plaintiffs and the proposed class share the common facts that HRRG transmitted to each of them collection communications containing a false identification of the contacting collector. These communications were made with the intention of securing payment on an alleged debt. They also share the common question of law as to whether HRRG's deceptive practice violated the plain language of § 1692e of the FDCPA. As there exists at least one common question of law or fact shared between Plaintiffs and the proposed class, the commonality requirement is satisfied. See *Nyby v. Convergent Outsourcing Inc.*, 2017 U.S. Dist. LEXIS 122056. 2017 WL 3315264 (D.N.J. Aug. 3, 2017) (certifying a class for settlement purposes consisting of persons from whom defendant sought to collect a time-barred debt); *Martsolf v. JBC Legal Group, P.C.*, 2008 U.S. Dist. LEXIS 6876, at *6, 2008 WL 275719 (M.D. Pa. Jan. 30,

2008) (referring to prior class certification order in action asserting FDCPA violations based on attempts to collect time-barred debts).

In *Stair,* 254 F.R.D. at 198, the Court observed that, because commonality is subsumed by the predominance requirement under Fed. R. Civ. P. 23(b)(3), commonality was addressed under the Court's predominance analysis. We discuss predominance in **Part 9.B.,** *infra*.

### (3) Typicality.

FED. R. CIV. P. 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.

> To evaluate typicality, we ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir. 1994). "'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Id.* at 58 (quoting *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992)). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal,* 43 F.3d at 55.

*Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). Thus, typicality often merges with adequacy. *Id.*

Typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984).

The requirement is met here. The facts amongst the class and Plaintiffs are the same: HRRG transmitted the identical pre-recorded standardized telephonic voice message which failed to identify HRRG by its "true name" in violation of the FDCPA. The central legal issue in the Plaintiffs' and class members' claims is whether "ARS" is HRRG's true name.

In *Stair*, the court found no impediment to typicality, in part "[b]ecause the letter Plaintiff received from [the collector] was identical to those received by the class members in all relevant respects, Plaintiff's claim is legally typical of the class members' claim." *Stair*, 254 F.R.D. at 199. Similarly, HRRG's records demonstrate that it left the same pre-recorded voice message for Plaintiffs and each member of the class.

Here, the same prerecorded telephonic voice message was transmitted to the Levinses and to each class member at least five times in the same manner with

respect to a debt owed to the same creditor. Plaintiffs' claims are, therefore, typical of the class's claim.

### (4) Adequacy.

The final requirement under FED. R. CIV. P. 23(a) is set forth in subsection 23(a)(4). It requires that "the representative parties will fairly and adequately protect the interests of the class." It looks at whether the representatives and their counsel will prosecute the class claims vigorously to ensure that the absent class members' interests will be properly advocated. Consequently, it also looks at conflicts of interest between those of the representatives and those of the class.

Prior to the 2003 amendment to Rule 23, adequacy focused on both the plaintiff and plaintiff's counsel. *See, e.g., Prudential*, 148 F.3d at 312. The Third Circuit recognized, however, that the amendment transferred consideration of class counsel's adequacy to FED. R. CIV. P. 23(g). *Larson*, 687 F.3d at 132 n. 36; *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 n. 13 (3d Cir. 2012); and, *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Furthermore, FED. R. CIV. P. 23(g), when read in conjunction with FED. R. CIV. P. 23(c)(1)(B), appears to sever the determination of counsel's adequacy from the consideration as to whether to certify a class. *Id.,* at 133.

Courts have been slow to recognize this change and, referring to *Sheinberg,* one authority acknowledged the Third Circuit is the only appellate court to do so.

*Newberg on Class Actions* (5th ed.) §3:80 at 421. Nevertheless, there is continued

difficulty eliminating all consideration of counsel under 23(a)(4). The Third Circuit

observed:

> "Realistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative." *Pelt v. Utah,* 539 F.3d 1271, 1288 (10th Cir. 2008). As our own Judge Aldisert has explained, "[e]xperience teaches that it is counsel for the class representative and not the named parties ... who direct and manage [class] actions. Every experienced federal judge knows that any statements to the contrary [are] sheer sophistry." *Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 832 n. 9 (3d Cir. 1973).

*In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 292 (3d Cir. 2010). Similarly, in

*Coyle v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 97762, 2011 WL 3859731

(D.N.J. Aug. 30, 2011), the court suggested that *Sheinberg* did not extract

consideration of counsel's adequacy from FED. R. CIV. P. 23(a)(4) but merely

required that the FED. R. CIV. P. 23(g) factors be considered.

Consequently, the adequacy of both the Plaintiffs and their counsel are

addressed here, incorporating the requirements under FED. R. CIV. P. 23(g).

Beginning with Plaintiffs' adequacy, the focus is on whether Plaintiffs'

interests conflict with the class. "The adequacy inquiry under Rule 23(a)(4) serves

to uncover conflicts of interest between named parties and the class they seek to

represent." *Amchem,* 521 U.S. at 625; *Larson*, 687 F.3d at 132.

Elaine and William Levins disavow the existence of any conflicts of interest (*Elaine Levins Decl.* ¶10; *William Levins Decl.* ¶10) and have been active participants throughout all phases of this litigation (*Stern Decl.* ¶¶33-38). Indeed, their interests and the class's interests are the same, precluding the possibility that their interests are antagonistic. All seek statutory damages awardable under the FDCPA and Plaintiffs' pursuit of those statutory damages for themselves is not in conflict with the class's objectives. To the contrary, they all seek the same objectives; Elaine and William Levins meet the adequacy requirement.

Regarding class counsel's adequacy, the Court must consider four factors:

    (i)   the work counsel has done in identifying or investigating potential claims in the action;

    (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii) counsel's knowledge of the applicable law; and

    (iv) the resources that counsel will commit to representing the class[.]

FED. R. CIV. P. 23(g)(1)(A); *Sheinberg,* 606 F.3d at 132-133. In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B); *Sheinberg,* 606 F.3d at 132-133.

The Declarations of Mr. Kim and Mr. Stern explain that Plaintiffs' counsel has undertaken extensive work investigating and identifying and pursuing potential

claims, counsel's significant experience handling class actions including the types of claims asserted here, counsel's knowledge of the FDCPA, and that, not only is counsel willing to commit sufficient resources to representing the class, but that counsel has already done so. (*Kim Decl.* ¶¶15-16; *Stern Decl.* ¶33-38). *See also Pro v. Hertz Equip. Rental Corp.*, 72 Fed.R.Serv.3d 485, *7 (D.N.J. 2008) (willingness to commit resources evidenced by having already expended significant resources).

Under these circumstances, both the Plaintiffs and their proposed class counsel have satisfied the adequacy requirements under FED. R. CIV. P. 23(a)(4).

**B.    Maintaining a B(3) Class: Predominance and Superiority**

Like in *Stair*, "predominance and superiority requirements are easily satisfied here." *Stair*, 254 F.R.D. at 200.

The Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Predominance considers the extent to which proof of the class members' claims can be shown "through evidence that is common to the class rather than individual to its members." *Marcus*, 687 F.3d at 600 (quoting *Hydrogen Peroxide*). Thus, it requires the Court to "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at

33

311. One commentator observed that "the predominance analysis logically entails two distinct steps… A court must first *characterize* the issue in the case as common or individual and then *weigh* which predominates. * * * This is more of a qualitative than quantitative analysis." *Newberg on Class Actions* (5th ed.) § 4:50 at 196-7.

The Court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This analysis requires comparing a representative action to multiple individual claims. *Newberg on Class Actions* (5th ed.) § 4:64 at 250.

Rule 23(b)(3), enumerates four factors to be considered in resolving the predominance and superiority issues:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

"All four factors weigh in favor of class certification here." *Stair*, 254 F.R.D. at 201. Indeed, just like in *Stair*, Plaintiffs and each class member received the same collection communication in the form of a pre-recorded telephonic voice message, which contained the same standardized language attempting to collect a debt. In this case, the standardized language included deceptive, false, and

misleading identification by HRRG. Although each communication was generated and initiated with information specific as to each member's identity and account information, that individualized information is irrelevant to the class claim.

Rather, the class claim addresses HRRG's standardized practice of using a name other than its true name as a means of securing payment on an alleged debt. Thus, proof of the class's claim is based on evidence common to all class members. There is no need for individualized evidentiary submissions. Instead, the ultimate question as to whether the telephonic voice message HRRG transmitted to all class members violated the FDCPA can be readily proven with evidence common to all class members.

In addition, here, the statutory cap on the quantum of damages renders individualized prosecution of each class member's claims inefficient and, therefore, unlikely. "[I]ndividual consumer class members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). Consequently, aggregating those claims is more efficient and economical. *Stair*, 254 F.R.D. at 201.

The Supreme Court has recognized the advantage of class actions.

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not

> provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products,* 521 U.S. at 617. Significantly, the *Amchem* Court was quoting *Mace*, 109 F.3d at 344, a case which specifically considered the effects flowing from the FDCPA's imposition of caps on statutory damages.

Adjudicating the class claims in one forum also makes practical sense. Here, one limitation to be being a class member is that the consumer was a New Jersey resident at the time HRRG left its message. As New Jersey is a single District, adjudicating the claims in the District of New Jersey is efficient.

There should be no difficulty in managing the class. There is no indication of any individualized facts. The class consists of individuals to whom HRRG transmitted the same communication. The communication is not evaluated from the individual or subjective perspective of the Plaintiff or any class member, but, instead, from the objective perspective of the least sophisticated consumer. That "standard comports with a basic purpose of the FDCPA: as previously stated, to protect all consumers, the gullible as well as the shrewd." *Brown*, 464 F.3d at 454 (internal quotation marks omitted). Furthermore, the award of statutory damages is based on factors specified at 15 U.S.C. § 1692(b)(2), namely: "[1] the frequency and persistence of noncompliance by the debt collector, [2] the nature of such

noncompliance, [3] the resources of the debt collector, [4] the number of persons adversely affected, and [5] the extent to which the debt collector's noncompliance was intentional." None of the factors suggest the inability to manage the class.

For all of those reasons, the predominance and superiority requirements are satisfied sufficient to certify this class under FED. R. CIV. P. 23(b)(3).

## 10. CONCLUSION

For the foregoing reasons, Plaintiffs Elaine Levins and William Levins respectfully request the Court enter an Order (1) certifying this action as a class action under FED. R. CIV. P. 23(b)(3) pursuant to FED. R. CIV. P. 23(c)(1)(A); and (2) define the class and the class claims, appoint Plaintiffs as class representative, and appoint class counsel pursuant to FED. R. CIV. P. 23(c)(1)(B).

Respectfully submitted,

KIM LAW FIRM LLC

Dated: June 6, 2022

*s/Philip D. Stern*
Philip D. Stern
