| | |
|---|---|
| **MARKS, O'NEILL, O'BRIEN,** <br> **DOHERTY & KELLY, P.C.** <br> Christian M. Scheuerman, Esquire <br> Attorney I.D. 027102007 <br> Jonathan R. Stuckel, Esquire <br> Attorney I.D. 261862018 <br> 535 Route 38 East <br> Suite 501 <br> Cherry Hill, NJ   08002 <br> (856)663-4300 | **ATTORNEYS FOR DEFENDANT** <br> **Healthcare Revenue Recovery** <br> **Group, LLC** |

447-102973(CMS/JRS)

| | |
|---|---|
| Elaine Levins and William Levins, on behalf of themselves and others similarly situated <br><br> vs. <br><br> Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services | UNITED STATES DISTRICT COURT <br><br> DOCKET NO.  1:17-cv-928-RBK-KMW <br><br> CIVIL ACTION <br><br> **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant, Healthcare Recovery Group, LLC ("HRRG"), d/b/a ARS hereby submits the following statement of material facts in support of summary judgment. Defendant  submits that the following facts are undisputed:

## BACKGROUND

1. On February 12, 2017, the Plaintiffs filed a putative class action complaint for alleged violations of the FDCPA.  (See Complaint, **Exhibit A**).

{NJ288792.1}

2.  In response to a motion to dismiss, on April 12, 2017, the Plaintiffs filed a First Amended Complaint.  (See First Amended Complaint, **Exhibit B**).

3.  The amended complaint alleges that Defendant left pre-recorded telephone messages with the Plaintiffs that allegedly violated the FDCPA.  The messages are transcribed in the amended complaint as follows:

> ARS calling.  Please return our call at 1-800-694-3048.  ARS is a debt collector.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.  Again, our number is 1-800-649-3048.  Visit us at www.ars.payment.com.

(**Exhibit B**, paragraph 30-31).

4.  Defendant filed a motion to dismiss the amended complaint, which the Judge Robert B. Kugler granted on September 26, 2017.  (See September 26, 2017 Order and Opinion attached as **Exhibit C**).

5.  The Plaintiffs appealed the September 26, 2017 Order.

6.  On August 22, 2018, the Third Circuit issued an Opinion vacating in part and affirming in part the September 26, 2017 Order.  (See Third Circuit Decision attached as **Exhibit D**).

7.  The Third Circuit concluded that the amended complaint had stated a *prima facie* claim under FDCPA §1692e(14), but that the Plaintiffs failed to state a claim under FDCPA §1692d(6) or §1692e(10).  (**Exhibit D**, page 3).

8.  In addressing the §1692e(14) claim, the Third Circuit stated that,

{NJ288792.1}

> The FTC has interpreted the 'true name' requirement contained in § 1692e(14) to permit a debt collector to 'use its full business name, the name under which it usually transacts business, or a commonly used acronym[,]' as long as it consistently uses the same name when dealing with a particular consumer.

(**Exhibit D**, page 11).

9. The claim that Defendant did not use its true name when communicating with Plaintiffs is the only one remaining in this case. (**Exhibit D**).

10. On December 16, 2018, Plaintiffs served Rule 26 disclosures which contained the concession that "Plaintiff does not assert any actual damages." Instead, Plaintiffs seek only statutory damages. (See Plaintiffs' Rule 26 Disclosures attached as **Exhibit E**).

11. Further, Plaintiffs' responses to Interrogatories further concede that they seek **only** statutory damages. (See Plaintiffs' Responses to Defendant's Interrogatories, No. 10, attached as **Exhibit F**).

### DEFENDANT'S FIRST SUMMARY JUDGMENT MOTION WAS DENIED AS THE COURT RULED THE RECORD WAS DEVOID OF EVIDENCE THAT HRRG CONSISTENTLY USED THE NAME ARS WHEN COMMUNICATING WITH PLAINTIFFS

12. On January 24, 2020 Defendant filed a motion for summary judgment seeking dismissal of the remaining §1692e(14) claim.

13. On June 15, 2020, Judge Kugler issued an Order denying summary judgment. (See Opinion attached as **Exhibit G**).

{NJ288792.1}

14. Judge Kugler concluded at that time that "HRRG did not consistently use the name "ARS" when attempting to collect Plaintiffs' debt." (**Exhibit G**, page 8).

15. This Court further ruled that "…the record shows that HRRG sent Plaintiffs three letters and left them five voicemails which identified the entity attempting to collect Plaintiffs' debt as HRRG." (internal quotations omitted) (**Exhibit G**, page 8).

16. The Court concluded that Defendant's use of HRRG in letter correspondence to Plaintiffs was plainly inconsistent with HRRG's use of "ARS" in the subsequent voicemail communications. (**Exhibit G**).

### ARS IS AN UNINCORPORATED DIVISION OF HRRG THAT HANDLES MORE SEVERELY DELINQUENT ACCOUNTS

17. "ARS Account Resolution Services" is a registered alternative trade name in New Jersey for HRRG. (See trade name registration attached as **Exhibit H**).

18. ARS Account Resolution Services is an unincorporated division of HRRG. (See deposition transcript of David Friedlander, page 50:14-16, attached as **Exhibit I**).

19. ARS performs collection services on more severely delinquent and older accounts as compared with HRRG. (See deposition transcript of David Friedlander, page 73:23-74:1, attached as **Exhibit I**).

20. ARS Account Resolution Services began its operations in January 2009. Since then, "ARS" has been the name under which it usually transacts business with the public. (See ARS Interrogatory responses, number 10, attached as **Exhibit J**).

21. Employees of ARS are separate and distinct from employees of HRRG. (See deposition transcript of David Friedlander, page 74:4-6, attached as **Exhibit I**).

22. While ARS occupies office space within the same building as HRRG, it is separate and ARS has its own structure of hierarchy and management. (See deposition transcript of David Friedlander, page 74:7-16, attached as **Exhibit I**).

23. ARS' website, arspayment.com, advises that "ARS" will appear on a consumer's credit card statement after an online payment is made. (See ARS Interrogatory responses, number 9, attached as **Exhibit J**).

**NEW EVIDENCE HAS BEEN PRODUCED BY DEFENDANT SHOWING THAT HRRG SPECIFICALLY IDENTIFIED ARS IN CORRESPONDENCE PRECEDING THE ARS PHONE CALLS**

24. In addition to other discovery exchanged since the Court's summary judgment Order, on November 9, 2020, Defendant produced a "Final Notice" sample letter in a form sent to consumers at the time it would have sent such a letter to Plaintiffs. (See HRRG Sample Letter, ARS 15-16, attached as **Exhibit K**).

25. As set forth in the Declaration of David Friedlander, HRRG does not retain the sent copies of the actual "Final Notice" letter sent to each consumer. (See Declaration of David Friedlander attached as **Exhibit L**).

26. The "Final Notice" sample letter provided is nearly the identical letter that was sent to Plaintiffs. (**Exhibit K, L**).

27. Plaintiffs' Final Notice contained the same substantive information with the addition of their personalized biographical information filled in by HRRG's letter vendor. (**Exhibit L**).

28. This "Final Notice" letter identified ARS Account Resolution Services and the short form abbreviated "ARS" by name, and informed the consumer that debt may be transferred to ARS for continued collection activity. Specifically, the letter advised that HRRG may transfer the debt, "…to ARS Account Resolution Services (ARS)…" (**Exhibit K**).

29. The letter clearly identifies ARS as "a division of HRRG." (**Exhibit K**).

30. Plaintiffs were sent a letter in the form of the Final Notice sample letter with their information and the creditor's information merged into the appropriate fields. (**Exhibit L**).

31. This letter would have preceded any and all phone calls to, or correspondence with Plaintiffs by the ARS division. (**Exhibit L**).

32. This letter provided advanced notice to Plaintiffs of ARS' identity and future role in the debt collection process while the account was still with HRRG. (**Exhibit L**).

## THE RECORD ESTABLISHES THAT DEFENDANT USED THE NAME UNDER WHICH IT USUALLY TRANSACTS BUSINESS AND/OR A COMMONLY USED ACRONYM IN EVERY COMMUNICATION WITH PLAINTIFFS

33. Thereafter, the Plaintiffs were mailed a collection letter from ARS on November 30, 2015.  (See November 30, 2015 collection letter attached as **Exhibit M**).

34. The upper left hand corner of the letter, which is the only portion visible through the window envelope, refers to Defendant simply as "ARS."  The name "ARS" appears in that location on the letter in a font twice as large as any other font in the letter.  (**Exhibit M**).

35. The first sentence of the November 30, 2015 letter indicates that "ARS" will be used as a short form for ARS Account Resolution Services throughout the letter.  The letter states that, "[t]he healthcare creditor(s) shown below hired ARS Account Resolution Services (ARS) to collect the balance due."  (**Exhibit M**).

36. The bottom of the November 30, 2015 letter directs that all payments should be mailed to:

> ARS
> P.O. Box 630806
> Cincinnati, OH 45263-0806

(**Exhibit M**).

37. Plaintiffs expressly alleged in their amended complaint that in all telephone communications with the Defendant, Defendant used the name "ARS." (See complaint par. 31, **Exhibit B**).

38. Specially, multiple telephone messages were left with Plaintiffs on various dates, and in every one, the caller was identified as "ARS." (See Defendant Interrogatory answers no. 3, **Exhibit J**).

39. ARS representatives frequently conduct live telephone calls with consumers. (See deposition transcript of David Friedlander, page 176:8-12, attached as **Exhibit I**).

40. ARS representatives are trained to identify the company as ARS during telephone conversations between ARS representatives and consumers. (See deposition transcript of David Friedlander, page 176:16-20, attached as **Exhibit I**).

41. The reason ARS representatives are trained to identify the company as ARS during live telephone conversations is that it is possible that a non-debtor third party may answer the debtor's telephone. Using ARS prevents the inadvertent disclosure of the nature of the call to any potential third-party who may answer the telephone. (See deposition transcript of David Friedlander, page 176:24-177:4, attached as **Exhibit I**).

42. ARS has developed and implemented a quality control program whereby managers in the company listen to past recorded telephone conversations between

{NJ288792.1}

ARS representatives and consumers.  HRRG and ARS President, David Friedlander, has listened to many past calls between ARS representatives and consumers.  (See deposition transcript of David Friedlander, page 178:5-12, attached as **Exhibit I**).

43.    The only name used by ARS representatives in the recorded telephone calls which Mr. Friedlander has listened to is ARS.  (See deposition transcript of David Friedlander, page 178:13-16, attached as **Exhibit I**).