**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
**Christian M. Scheuerman, Esquire**
**Attorney I.D. 027102007**
**Jonathan R. Stuckel, Esquire**
**Attorney I.D. 261862018**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ 08002**
**(856)663-4300**

**ATTORNEYS FOR DEFENDANT**
**Healthcare Revenue Recovery**
**Group, LLC**

447-102973(CMS/JRS)

Elaine Levins and William Levins, on behalf of themselves and others similarly situated

vs.

Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services

UNITED STATES
DISTRICT COURT
CAMDEN VICINAGE

DOCKET NO. 1:17-cv-00928-RBK-KMW

CIVIL ACTION

---

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF HEALTHCARE REVENUE RECOVERY GROUP, LLC

MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, New Jersey 08002

**On The Brief:**
**Christian M. Scheuerman, Esquire**
**Jonathan R. Stuckel, Esquire**

{NJ288793.1}                    {}

## **<u>TABLE OF CONTENTS</u>**

**PRELIMINARY STATEMENT** ..................................................................1

**PROCEDURAL HISTORY** ....................................................................2

**STANDARD OF REVIEW** .....................................................................3

**LEGAL ARGUMENT** ...........................................................................5

    I.   PLAINTIFFS LACK ARTICLE III STANDING BECAUSE EVEN THEY ADMIT THAT THEY DID NOT SUFFER AN INJURY-IN-FACT ............5

    II.  THE FDCPA § 1692E(14) CLAIM FAILS BECAUSE "ARS" IS THE NAME UNDER WHICH DEFENDANT CONSISTENTLY TRANSACTS BUSINESS AND PLAINTIFFS WERE NOTIFIED THAT ARS WAS A DIVISION OF HRRG BEFORE THEIR DEBT WAS PLACED WITH ARS ..................................................................................................12

**CONCLUSION**......................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................................4

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247 (3d Cir. 2014) ..............................5

Bock v. Pressler & Pressler, LLP, 2017 U.S. Dist. LEXIS 81058 (D.N.J. 2017) .....6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..........................................................3

Davis v. Universal Prot. Servs., LLC, 2021 U.S. Dist. LEXIS 167510 (E.D. Pa. 2021)................................................................................................................11

Gray v. York Newspapers, Inc., 957 F.2d 1070 (3d Cir. 1992) ................................4

Hamilton v. Leavy, 322 F.3d 776 (3d Cir. 2003) .......................................................4

In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262 (3d Cir. 2016)..............5

In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432 (3d Cir. 2009) .....4

Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274 (3d Cir. 2018).12

Oh v. Collecto, Inc., 2021 U.S. Dist. LEXIS 159187 (D.N.J. 2021)........................10

Robins v. Spokeo, 578 U.S. 330 (2016) .......................................................... 5, 6, 9

Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008)..............................................3

TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021) ..................................... 6, 7, 8

Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884 (3d Cir. 1992) ..............................................................................4

Wadsworth v. Kross, Lieberman & Stone, Inc., 12 F.4th 665 (7th Cir. 2021) .........9

Ward v. Nat'l Patient Acct. Servs. Sols., Inc., 9 F.4th 357 (6th Cir. 2021)...........8, 9

**Statutes**

15 U.S.C. § 1692e(10) ................................................................................3

15 U.S.C. § 1692e(14) ................................................................ 2, 10, 11, 13

15 U.S.C. § 1692d(6) ..................................................................................2

**Rules**

Fed. R. Civ. P. 26 ....................................................................................1, 5

Fed. R. Civ. P. 56 .......................................................................................3

**Regulations**

Statements of General Policy or Interpretation Staff Commentary On the Fair Debt
   Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988) ................... 11, 12

## **PRELIMINARY STATEMENT**

This is a Fair Debt Collection Practices Act (hereafter "the FDCPA") case in which Plaintiffs claim that the Defendant violated the statute by leaving them a pre-recorded message which allegedly failed to use its "true name,"[1] in violation of 15 U.S.C. 1692e(14). Plaintiffs' claim, however, fails on both procedural and substantive grounds.

Procedurally, Plaintiffs lack Article III standing to pursue their claim because they have alleged no concrete, particularized, injury. Plaintiffs' First Amended Complaint alleges only a pure statutory violation, for which they seek only statutory damages. (First Amended Complaint ("FAC") ¶¶ 18, 69). Plaintiffs do not claim, nor have they presented any evidence of the existence of any concrete injury.

The U.S. Supreme Court has *twice* in recent years confirmed that the existence of a concrete injury is necessary in order for Plaintiffs to be entitled to pursue their FDCPA claim in Federal Court. In fact, Plaintiffs expressly concede in their Fed. R. Civ. P. 26 disclosures that they have not suffered "any actual damages." **(Statement of Facts ("SOF") ¶¶10 and 11)**.

Substantively, new evidence produced by Defendant bolsters the position that HRRG d/b/a ARS did not violate the "true name" requirement of the FDCPA. After

---

[1] Although Plaintiffs' amended complaint included other claims, those claims have already been dismissed, leaving only the "true name" claim.

the last motion, Defendant produced a "Final Notice" sample letter that was in the form sent to Plaintiffs before they were ever directly contacted by ARS. **(SOF ¶24).** The letter identified ARS as a division of HRRG, and advised Plaintiffs that ARS may pursue additional collection efforts. **(SOF ¶28)**. Subsequent communications with the Plaintiffs *consistently* used the name ARS. **(SOF ¶38)**. Thus, the Defendant did not violate FDCPA 15 Section U.S.C. 1692e(14), and summary judgment is appropriate.

## PROCEDURAL HISTORY

On February 12, 2017, the Plaintiffs filed a putative class action complaint for alleged violations of the FDCPA. **(SOF ¶1)**. In response to a motion to dismiss, on April 12, 2017, the Plaintiffs filed a First Amended Complaint. **(SOF ¶2)**. Defendant filed a motion to dismiss the amended complaint, which Judge Kugler granted on September 26, 2017. **(SOF ¶4)**. The Plaintiffs appealed the September 26, 2017 Order. **(SOF ¶5)**.

On August 22, 2018, the Third Circuit issued an opinion vacating in part and affirming in part the September 26, 2017 Order. **(SOF ¶6)**. The Third Circuit concluded that the amended complaint stated a *prima facie* claim under FDCPA §1692e(14), but that the Plaintiffs failed to state a claim under FDCPA § 1692d(6) or § 1692e(10). **(SOF ¶7)**. The claim based on the allegation that Defendant did not

use its true name when communicating with Plaintiffs is the only claim remaining in the case. **(SOF ¶9)**.

Thereafter, Defendant filed a motion for summary judgment seeking dismissal of the remaining §1692e(14) claim. **(SOF ¶12)**. On June 15, 2020, Judge Kugler issued an Order denying summary judgment. **(SOF ¶13)**. Since Judge Kugler's Order, new evidence has been produced by Defendant which alters the Court's prior analysis.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).   The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23.  Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. <u>Id.</u> at 256-57; Fed. R. Civ. P. 56(c)(1)(A).  Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." <u>Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO,</u> 982 F.2d 884, 890-91 (3d Cir. 1992) (quoting <u>Gray v. York Newspapers, Inc.,</u> 957 F.2d 1070, 1078 (3d Cir. 1992)).

The Third Circuit has recognized several circumstances in which it would permit the filing of a new motion for summary judgment. Such circumstances exist where (1) new evidence is available; (2) a supervening new law has been announced; (3) the order clarifies or corrects an earlier, ambiguous ruling; and (4) where a prior ruling, even if unambiguous, might lead to an unjust result. <u>In re Pharmacy Benefit Managers Antitrust Litig.,</u> 582 F.3d 432, 439 (3d Cir. 2009). The "new evidence" exception applies where the evidence "differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision." <u>Hamilton v. Leavy</u>, 322 F.3d 776, 787 (3d Cir. 2003).

Further, standing is a jurisdictional issue that may be raised at any time by either a party or by the court. <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 280 (3d Cir. 2014). Standing is essential to the exercise of jurisdiction, and thus lack of standing cannot be waived and the Court has an obligation to examine same. <u>Id.</u>

## LEGAL ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING BECAUSE EVEN THEY ADMIT THAT THEY DID NOT SUFFER AN INJURY-IN-FACT

Since Plaintiffs only seek statutory damages under the FDCPA **(SOF ¶11)**, and Plaintiffs allege no "concrete" injury, the First Amended Complaint fails to plead any facts establishing that Plaintiffs have Article III standing to pursue their sole remaining claim, and it should therefore be dismissed.  Plaintiffs also concede in their Fed. R. Civ. P. 26 disclosures that they have not sustained "any actual damages." **(SOF ¶10)**.

Under Article III of the United States Constitution, a plaintiff invoking the jurisdiction of federal courts must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." <u>In re Nickelodeon Consumer Privacy Litig.</u>, 827 F.3d 262, 272 (3d Cir. 2016).  <u>See also</u> <u>Robins v. Spokeo</u>, 578 U.S. 330 (2016)

{NJ288793.1}                                  5

As discussed in <u>Bock v. Pressler & Pressler, LLP</u>, 2017 U.S. Dist. LEXIS

81058 (D.N.J. 2017),

> <u>Spokeo</u> teaches, however, that a mere wave of the Congressional hand-
> i.e., the creation of a cause of action—is not enough to render an
> abstract injury concrete. Allegations of a 'bare procedural violation,
> divorced from any concrete harm' cannot satisfy the Article III injury-
> in-fact requirement. <u>Spokeo</u>, 136 S. Ct. at 1549 (citing <u>Summers v.</u>
> <u>Earth Island Inst.</u>, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1
> (2009) ("[D]eprivation of a procedural right without some concrete
> interest that is affected by the deprivation . . . is insufficient to create
> Article III standing.")); <u>Nickelodeon</u>, 827 F.3d at 274 (citing id. at
> 1550).  In other words, a bare violation of a procedural right granted by
> statute is not inherently injurious; to constitute an injury-in-fact, such a
> violation must result in a concrete harm. That requirement persists even
> where a statute "purports to authorize [a] person to sue to vindicate [a
> statutory procedural] right." <u>Id.</u>; <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n.3,
> 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) ("It is settled that Congress
> cannot erase Article III's standing requirements by statutorily granting
> the right to sue to a plaintiff who would not otherwise have standing.").
> "Thus, standing based [only] on a violation of a statutorily created right
> turns on whether such a right is substantive or merely procedural."
> <u>Fuentes v. AR Res., Inc.</u>, No. CV157988FLWLHG, 2017 U.S. Dist.
> LEXIS 48923, 2017 U.S. Dist. LEXIS 48923, 2017 WL 1197814, at *3

<u>Bock v. Pressler & Pressler, LLP</u>, 2017 U.S. Dist. LEXIS 81058 at * 13-14.

On June 25, 2021, the United States Supreme Court reiterated that Article III

standing requires an injury-in-fact and not merely "bare procedural violations[s],

divorced from any concrete harm." <u>See</u> <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct.

2190, 2213 (2021) (quoting <u>Spokeo</u>, 578 U.S. at 341). In <u>TransUnion</u>, plaintiffs filed

a class action under the Fair Credit Reporting Act because they alleged that

TransUnion failed to ensure the accuracy of consumers' credit files.

The Court made a clear distinction between that which is a true concrete harm and that which is simply the mere risk of future harm. In TransUnion, plaintiffs filed a class action lawsuit alleging their credit files maintained by the defendants contained a misleading "OFAC" alert which labeled them as potential terrorists. Id. at 2207. The Court's analysis divided the class of 8,185 individuals into two categories: (1) 1,853 class members whose credit files were disseminated to third parties; and (2) 6,332 class members whose credit files were never disseminated to third-parties. Id.

In ruling that only the first category of class members had standing to sue, the Court opined that, "…the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." Id. at 2210-11. The Court ruled that while the 1,853 class members whose credit files were disseminated to third-parties could allege that they suffered actual harm; the 6,332 class members whose files were not disseminated to third-parties could not articulate the type of concrete harm required to confer Article III standing.

Specifically, the Court ruled that there must be evidence of a concrete, particularized, and actual or imminent harm to confer standing. TransUnion stated the following on this topic:

Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a " 'personal stake' " in the case—in other words, standing. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: " 'What's it to you?' "

To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. **If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve."**

Id. at 2203 (internal citations omitted) (emphasis added).

Since the TransUnion decision, Courts in other jurisdictions have already addressed cases analogous to Plaintiffs' claims in the present case. In a recent decision, the Sixth Circuit addressed the issue of whether a debt collector's voicemails violated the § 1692e(14) "true name" requirement where the collector identified itself as "NPAS" rather than "NPAS, Inc." Ward v. Nat'l Patient Acct. Servs. Sols., Inc., 9 F.4th 357 (6th Cir. 2021). The Court independently evaluated whether plaintiffs' allegations conferred Article III standing in light of the TransUnion decision.

Specifically, the plaintiff argued that there were two possible varieties of concrete injury. Id. at 361. First, he contended that the violation of his procedural rights under the FDCPA alone constitutes a concrete injury. Id. Second, he argued

that the confusion he suffered, the expense of counsel, and the phone call that he received from defendant qualified as independent concrete injuries. Id.

The Sixth Circuit rejected both arguments. As to the first point raised, the Court reiterated that the "Supreme Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. (citing Spokeo, 578 U.S. at 341) (internal quotations omitted). As to the second point, the Court held that there was no independent concrete harm because **"confusion alone is not a concrete injury"** and paying for an attorney to file suit was a voluntary expense. Id. 363.

In Wadsworth v. Kross, Lieberman & Stone, Inc., 12 F.4th 665 (7th Cir. 2021), plaintiff alleged a debt collector failed to provide complete written notice within five days of the initial communication and the debt collector who called never identified herself as a debt collector or stated that she was attempting to collect a debt. The Court held that a "debtor has suffered a concrete injury 'only if it impairs the [debtor's] 'ability to use [that information] for a substantive purpose that the statute envisioned . . . such as 'paying money she did not owe' or would have disputed." Id. at 668; see id. at 669 ("Federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had

the debt collector complied with the Act.")  Plaintiff contended only that she suffered emotion harms, which the court held were not injuries in fact.

District courts within the Third Circuit have likewise begun to apply the Supreme Court's <u>TransUnion</u> analysis to bar plaintiffs from pursuing FDCPA claims that were merely procedural violations in the absence of any concrete injury. <u>See</u> <u>Oh v. Collecto, Inc.</u>, 2021 U.S. Dist. LEXIS 159187, *2 (D.N.J. Aug. 23, 2021). In <u>Oh v. Collecto, Inc.</u>, the plaintiff alleged that a letter she received was deceptive and in violation of the FDCPA because it threatened actions the debt collector could not take under the law. <u>Id.</u> During discovery, the plaintiff's testimony established that she did not "really open letters that much" because she cannot read English. <u>Id.</u> at *7.

Regarding the letter, the District Court held that plaintiff had not shown she experienced violations of the FDCPA because she testified that she had not seen the letter and does not read English. <u>Id.</u> The Court opined that, even assuming the plaintiff received the letter and that the letter violated sections of the FDCPA, Article III standing did not exist because there was no concrete injury stemming from the alleged statutory violation. Specifically, since plaintiff testified that she could not read the letter, it could not have confused her about her rights, or otherwise harmed her. <u>Id.</u>

In another recent Third Circuit case from the Eastern District of Pennsylvania, a plaintiff alleged violations of the FDCPA when a potential employer failed to provide her with copies of her consumer report and pre-adverse action notice when the employer decided not to hire the plaintiff because of her criminal record. Davis v. Universal Prot. Servs., LLC, 2021 U.S. Dist. LEXIS 167510, *1 (E.D. Pa. 2021). In ruling in favor of the defendant, the Court cited the Sixth Circuit's Ward decision and held that plaintiff's complaint merely alleged procedural violations and failed to set forth any cognizable concrete injury. Id. at 14-15.

Plaintiffs' allegations in this case are analogous to the above cases in that their failure to allege an injury-in-fact is fatal to their FDCPA claim. Here, Plaintiffs simply allege that Defendant violated §1692e(14) by using the name ARS rather than HRRG in voicemails left for them. Plaintiffs fail to suggest any causal link between that alleged violation and ***any*** injury-in-fact. Plaintiffs even openly conceded that they do not have "any actual damages" in their Rule 26 disclosures and written interrogatory responses. **(SOF ¶10-11)**. Because they have not alleged and cannot prove any particularized, concrete, injury stemming from the alleged FDCPA violation, Plaintiffs lack Article III standing to pursue that claim.

Accordingly, Defendant respectfully requests that the Court grant it summary judgment and dismiss the amended complaint for lack of standing.

**II.   THE FDCPA § 1692E(14)  CLAIM FAILS BECAUSE "ARS" IS THE NAME UNDER WHICH DEFENDANT CONSISTENTLY TRANSACTS BUSINESS AND PLAINTIFFS WERE NOTIFIED THAT ARS WAS A DIVISION OF HRRG BEFORE THEIR DEBT WAS PLACED WITH ARS**

As a separate and distinct basis for summary judgment in Defendant's favor, Plaintiffs' FDCPA claim fails because uncontroverted evidence establishes that Defendant consistently identified itself as "ARS" in communications with Plaintiffs after the account was placed with this HRRG Division, and Plaintiffs were previously notified, while the debt was still with HRRG, that the debt would likely be transferred to ARS for further collection activity.

FDCPA "Section 1692e prohibits a debt collector from 'us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 281 (3d Cir. 2018).  The Third Circuit has adopted the FTC interpretation of the "true name" requirement of §1692e(14).  Levins, 902 F.3d at 281.  This requires a debt collector to use its full business name, the name under which it usually transacts business, or a commonly-used acronym when communicating with consumers, and to "consistently use[] the same name when dealing with a particular consumer." Id. (quoting Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988)) (hereinafter "FTC Commentary").

{NJ288793.1}                    12

But importantly, although the Third Circuit's decision requires a debt collector to "consistently" use the same name when dealing with a particular consumer, the Third Circuit **does not require a debt collector to *exclusively* use the same name**. In fact, the text of the FTC Commentary relied upon by the Third Circuit in <u>Levins</u> further states the following on the subject:

> When the collector uses multiple names in its various affairs, it does not violate this subsection if it consistently uses the same name when dealing with a particular consumer.

<u>Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act</u>, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988).

A collector is permitted to use more than one name when dealing with a consumer as long as its use is "consistent." The FTC Commentary specifically comments on the permitted use of an alternative name in communications with consumers.  An individual debt collector may use an alternative name if it is used consistently and if it does not interfere with another party's ability to identify him. <u>Id.</u> at 50103. Further, a debt collector employee's use of an alternative name that permits identification of the debt collector constitutes a meaningful disclosure of the caller's identity per provisions of the FDCPA. <u>Id.</u> at 50105.

Here, the Third Circuit did not have the benefit of all evidence now before this Court, because the decision addressed the dismissal of the lawsuit on a motion to dismiss. The uncontroverted evidence discussed below establishes that in every

communication with the Plaintiffs after ARS was identified to Plaintiffs by HRRG, Defendant consistently used the name "ARS," which is a short form of its registered trade name. The evidence further establishes that Defendant usually transacts business using the name "ARS," and that "ARS" is a commonly used abbreviation of its registered trade name. Thus, the Defendant did not violate FDCPA §1692e(14) by failing to use its "true name" under the FTC Commentary adopted by the Third Circuit, and summary judgment is therefore appropriate.

After the Defendant's prior summary judgment motion was denied, Defendant produced in discovery a sample "Final Notice" letter sent to consumers. **(SOF ¶24)**. As set forth in the Declaration of David Friedlander, HRRG does not retain the sent copies of the "Final Notice" letter sent to consumers. **(SOF ¶25)**. However, the "Final Notice" sample letter produced is nearly the identical letter that Plaintiffs would have received. **(SOF ¶26)**. Plaintiffs' Final Notice letter would have contained the same substantive information with the addition of their biographical information, which would have been filled in by HRRG's letter vendor. **(SOF ¶27)**.

This "Final Notice" sample letter identifies ARS Account Resolution Services and the short form abbreviated "ARS" by name, and informs the consumer that debt may be transferred to ARS for continued collection activity. **(SOF ¶28)**. The letter identifies ARS as "a division of HRRG" and Plaintiffs were sent a substantially similar letter preceding all phone calls by the ARS division. **(SOF ¶29)**. After

sending this "Final Notice" letter to Plaintiffs, Defendant consistently used the name ARS in all future communications with Plaintiffs.

"ARS Account Resolution Services" is a registered alternative trade name in New Jersey for HRRG, and ARS Account Resolution Services is an unincorporated division of HRRG.  **(SOF ¶17-18)**. ARS Account Resolution Services performs collection services on more severely delinquent and older accounts than HRRG. **(SOF ¶19)**.  ARS Account Resolution Services began its operations in January 2009. Since then, "ARS" has always been the name under which ARS Resolution Services transacts business with the public. **(SOF ¶20)**.

After they were sent the "Final Notice" sample letter, Plaintiffs next received a collection letter from ARS on November 30, 2015. **(SOF ¶33)**.  The upper left hand corner of the letter, the only portion visible through the window envelope, refers to Defendant as "ARS." The name "ARS" appears in that location of the letter in a font twice as large as any other font in the letter.  **(SOF ¶34)**.

The first sentence of the November 30, 2015 letter indicates that "ARS" will be used as an abbreviation for ARS Account Resolution Services throughout the letter.  The letter states that, "[t]he healthcare creditor(s) shown below hired ARS Account Resolution Services (ARS) to collect the balance due."  **(SOF ¶35)**.  The bottom of the November 30, 2015 letter directs that all payments should be mailed to:

ARS
P.O. Box 630806
Cincinnati, OH 45263-0806

**(SOF ¶36)**.

Plaintiffs allege in their amended complaint that in all telephone communications with the Defendant, Defendant used the name "ARS." **(SOF ¶37)**. Specifically, multiple telephone messages were left with Plaintiffs on various dates, and in every one the caller was consistently identified as "ARS." **(SOF ¶38)**.

ARS representatives have frequent live telephone calls with consumers. **(SOF ¶39)**. ARS representatives are specifically trained to identify the company as "ARS" during all telephone conversations between ARS representatives and consumers. **(SOF ¶40)**. The reason for Defendant's representatives' consistent use of "ARS" in telephone communications with consumers is that it is always possible that a non-debtor third party may answer the telephone of the debtor or overhear a portion of the conversation, and using "ARS" prevents inadvertent disclosure of the nature of the call to any potential third parties. **(SOF ¶41)**.

ARS has developed and implemented a quality control program whereby managers in the company listen to past recorded telephone conversations between ARS representatives and consumers.  HRRG and ARS President, David Friedlander, has listened to many past calls between ARS representatives and consumers.  **(SOF**

**¶42)**.  The name used by ARS representatives in the recorded telephone calls which Mr. Friedlander has listened to is "ARS."  **(SOF ¶43)**.

Summary judgment is appropriate here because the evidence establishes that the name ARS was used by Defendant in all communications with the Plaintiffs after the account was sent to the ARS division. The Third Circuit's earlier ruling in this matter does not require Defendant to *exclusively* use the name ARS. Rather, the Court's ruling simply requires *consistent* use of that name. The uncontroverted evidence produced by Defendant establishes that the "Final Notice" letter and November 30, 2015 collection letter sent to Plaintiffs properly identified ARS as a division of HRRG. Thereafter, Defendant only ever communicated with Plaintiffs using the name ARS.

Notably, although the statute only requires ***consistent*** use of the name ARS, it is uncontroverted in the record that the Defendant's use of this name was ***exclusive*** after the "Final Notice" letter was sent to Plaintiffs. The record evidence also establishes that the name ARS is the name under which Defendant usually transacts business with consumers, and is a commonly used alias of its registered trade name.

## <u>CONCLUSION</u>

For the above reasons, the Court should respectfully grant summary judgment and dismiss the amended complaint with prejudice.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Jonathan R. Stuckel*
Christian M. Scheuerman, Esquire
Jonathan R. Stuckel, Esquire
Attorneys for Defendant